UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JENNIFER SHARKEY,

        Plaintiff,

   -against-

J.P. MORGAN CHASE & CO., JOE KENNEY,
ADAM GREEN, and LESLIE LASSITER in their
official and individual capacities,

        Defendants.

------------------------------------------------------------X

**COMPLAINT**



        Jennifer Sharkey ("Plaintiff" or "Ms. Sharkey") by and through her attorneys, Thompson Wigdor and Gilly LLP, as and for her complaint against J.P. Morgan Chase & Co. ("J.P. Morgan"), Joe Kenney ("Mr. Kenney"), Adam Green ("Mr. Green"), and Leslie Lassiter ("Ms. Lassiter) (collectively, "Defendants"), hereby alleges as follows:

### NATURE OF ACTION

        1.    On August 5, 2009, Ms. Sharkey was terminated from her position as a Vice President and Wealth Manager at J.P Morgan because she caused an investigation and assisted in the investigation into allegations of a long term J.P Morgan client's involvement in mail fraud, bank fraud and money laundering (hereinafter, the "Suspect Client"). In compliance with her obligations under J.P Morgan's Code of Conduct (the "Code"), starting in January 2009 when she was first assigned to the Suspect Client and learned of his potentially unlawful conduct, Ms. Sharkey repeatedly informed her superiors of the potential unlawful activities of the Suspect Client, but Defendants ignored her concerns. Following J.P. Morgan procedure, Ms. Sharkey

initiated an internal audit of the Suspect Client's activities, and on July 30, 2009, after the completion of the audit, recommended to Defendants that J.P Morgan's relationship with the Suspect Client be terminated. Instead, less than a week later, J.P. Morgan unlawfully terminated Ms. Sharkey's employment without notice and for no performance-related reason.

2.  Ms. Sharkey accordingly brings this action to recover damages arising from the Defendants' unlawful termination of her employment in retaliation for her protected whistleblower activities in violation of Section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A (the "Sarbanes-Oxley Act"), and for breach of the implied contract created by the Code, which prohibits retaliation against employees for making good faith reports of any actual or suspected violations of the Code.

## JURISDICTION, VENUE AND PROCEDURAL PREREQUISITES

3.  Jurisdiction is conferred on this Court by 18 U.S.C § 1514A and 28 U.S.C. §§ 1331. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

4.  Venue is appropriate in this district under 28 U.S.C. § 1391(a) as the acts which give rise to this Complaint, as well as certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws took place in this District.

5.  On October 22, 2009, Plaintiff filed a timely Complaint with the Occupational Safety and Health Administration ("OSHA") of the U.S. Department of Labor alleging violations of the "whistleblower" provisions of the Sarbanes-Oxley Act (hereinafter, the "Administrative Complaint").

6.  By letter dated April 12, 2010, OSHA issued its findings and preliminary order.

7. OSHA did not issue a final decision on Plaintiff's Administrative Complaint within 180 days of the Administrative Complaint's filing. Accordingly, pursuant to 18 U.S.C. § 1514A, Plaintiff is entitled to seek de novo review of her Complaint from this Court.

8. By letter dated April 22, 2010, Plaintiff informed OSHA, the U.S. Department of Labor and the Office of the Chief Administrative Law Judge of the U.S. Department of Labor that Plaintiff intended to seek de novo review in this Court rather than continue to seek relief through OSHA's procedural mechanisms.

## PARTIES

9. From October 2006 until her termination on August 5, 2009, Ms. Sharkey worked as a Vice President and Wealth Manager in J.P. Morgan's Private Wealth Management department. At all relevant times, Ms. Sharkey worked at J.P. Morgan's New York branch office, located at 345 Park Avenue, New York, New York 10154.

10. In this role, Ms. Sharkey managed more than 75 "High Net Worth Client" relationships, the assets of which totaled more than $500 million. Ms. Sharkey excelled in this role and, prior to her termination, she was ranked the second highest producer in her department.

11. Defendant J.P. Morgan is one of the world's largest financial advisory and asset management firms, with offices in more than 50 locations worldwide. As a publicly held corporation, J.P. Morgan issues multiple classes of securities required to be registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78) and is required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d)). At all relevant times, J.P. Morgan maintained a New York branch office located at 345 Park Avenue, New York, New York 10154.

12. Mr. Kenney was, at all relevant times, the Chief Executive Officer for J.P. Morgan's Private Wealth Management department.

13. Mr. Green was, at all relevant times, the Northeast Regional Director for J.P. Morgan's Private Wealth Management department.

14. Ms. Lassiter was, at all relevant times, a Managing Director and a Market Director for J.P. Morgan's Private Wealth Management department in New York City. As Ms. Sharkey's direct supervisor, Ms. Lassiter conducted semi-annual performance evaluations and repeatedly gave Ms. Sharkey positive reviews.

15. Mr. Kenney, Mr. Green, and Ms. Lassiter all worked for J.P. Morgan at its New York office located at 345 Park Avenue, New York, New York 10154.

16. At all relevant times, Mr. Kenney, Mr. Green, and Ms. Lassiter had supervisory authority over Ms. Sharkey and had the power to investigate, discover, or terminate misconduct as alleged herein and are otherwise covered by the provisions of 18 U.S.C. § 1514A.

17. As set forth in more detail below, during her employment, Ms. Sharkey provided information to Mr. Kenney, Mr. Green, Ms. Lassiter, and other members of senior management that serious violations of the federal securities laws were occurring on an ongoing basis.

## PLAINTIFF'S PROTECTED ACTIVITY

18. On or about January 2009, following the departure of one of Ms. Sharkey's colleagues, Ms. Lassiter assigned Ms. Sharkey to the Suspect Client, who was a high-revenue producing Israeli client. For more than 20 years, J.P. Morgan had managed the Suspect Client's account, which generated quarterly returns of approximately $150,000.

19. Mere days after Ms. Sharkey was assigned to the Suspect Client's account, members of J.P. Morgan's compliance and risk management team contacted Ms. Sharkey to

express their concerns regarding the Suspect Client's alleged involvement in illegal activities, including allegations of mail fraud, bank fraud, and money laundering. Ms. Sharkey immediately relayed this information to Ms. Lassiter.

20. For the next several weeks, Ms. Sharkey conducted independent research and communicated with J.P. Morgan's compliance and risk management departments to determine whether the Suspect Client was violating federal securities laws, as suspected. Based on her research, Ms. Sharkey formed a reasonable belief that the Suspect Client was engaged in illegal activities, and that J.P. Morgan should immediately terminate the client relationship. Ms. Sharkey shared her conclusions with Mr. Kenney, Mr. Green, and Ms. Lassiter, both in the form of verbal and written recommendations.

21. Mr. Kenney, Mr. Green, and Ms. Lassiter ignored Ms. Sharkey's recommendations.

22. With no other recourse, and because she reasonably believed that the Suspect Client was violating federal securities laws, Ms. Sharkey coordinated with J.P. Morgan's compliance department to begin a "Know Your Client" assessment process (the "KYC process") on the Suspect Client's account. Within J.P. Morgan, the KYC process operates as an internal audit of a client, the purpose of which is to ensure that J.P. Morgan and its clients remain at all times in compliance with federal securities laws and regulations.

23. J.P. Morgan's compliance department set a July 31, 2009 deadline for completion of the KYC audit on the Suspect Client's account. On July 30, 2009, Ms. Sharkey submitted her final KYC report, which contained her recommendation that J.P. Morgan immediately exit the relationship with the Suspect Client. Mr. Kenney, Mr. Green, Ms. Lassiter, and members of J.P.