Morgan's compliance and risk management departments received a copy of Ms. Sharkey's completed KYC audit on the Suspect Client's account.

24. Six days later, on August 5, 2009, Defendants unlawfully terminated Ms. Sharkey's employment.

## DEFENDANTS' UNLAWFUL RETALIATION

25. Mr. Kenney, Mr. Green, and Ms. Lassiter downplayed the extent of Ms. Sharkey's complaints and views because they directly contradicted their own and they believed Ms. Sharkey's complaints would expose weaknesses in J.P. Morgan's risk processing procedures, particularly since J.P. Morgan had continued a relationship with the Suspect Client for more than 20 years.

26. Mr. Kenney, Mr. Green, and Ms. Lassiter pressured Ms. Sharkey to condone the Suspect Client's practices and when she refused, they retaliated against Ms. Sharkey in a blatant attempt to silence her.

27. Specifically, beginning in June 2009, Ms. Lassiter retaliated against Ms. Sharkey by removing her from several client accounts. This decision was nothing more than a further attempt to isolate Ms. Sharkey within J.P. Morgan and to stunt her professional growth.

28. In that same month, Ms. Lassiter also excluded Ms. Sharkey from important meetings involving Ms. Sharkey's own clients. Ms. Lassiter's exclusion of Ms. Sharkey's attendance at these meetings was nothing more than a blatant attempt to retaliate against Ms. Sharkey because of her complaints regarding the Suspect Client's account.

29. In a further act of retaliation, J.P. Morgan has refused to pay Ms. Sharkey her 2009 bonus.

30. Mr. Kenney and Mr. Green also retaliated against Ms. Sharkey, as they both were integrally involved with all of the aforementioned actions by Ms. Lassiter.

31. This marginalization of Ms. Sharkey adversely and materially affected the terms and conditions of her employment with J.P. Morgan, and was done in retaliation for Ms. Sharkey's reporting of potential violations of federal securities laws and in a transparent effort to keep other members of senior management in the dark about the unlawful activity.

## DEFENDANTS' UNLAWFUL TERMINATION

32. Defendants' mistreatment of Ms. Sharkey culminated when, on August 5, 2009, Steven Grande summoned Ms. Sharkey to his office. Mr. Grande is a Vice President of Human Resources in the Private Wealth Management department. During this meeting, Mr. Grande informed Ms. Sharkey that Defendants had decided to terminate her employment. When Ms. Sharkey asked why she was being terminated, Mr. Grande stated, "It was an abrupt decision that has nothing to do with your performance, but instead was made by Ms. Lassiter because she feels she cannot trust you anymore."

33. Ms. Sharkey's termination was without warning or prior notice, and had no performance-based justification.

34. Mr. Kenney and Mr. Green both were aware of Ms. Lassiter's unlawful decision to terminate Ms. Sharkey.

35. As is clear from the foregoing, Ms. Sharkey engaged in lawful activity protected under § 806 of the Sarbanes-Oxley Act. Defendants were aware of such activity and unlawfully retaliated against Ms. Sharkey by adversely altering the terms and conditions of her employment, denying her a bonus payment, and ultimately terminating her employment.

36. These actions were taken in unlawful retaliation for Ms. Sharkey's efforts to report and prevent what Ms. Sharkey reasonably believed to be Defendants' violations of the applicable securities regulations and laws, including without limitation, the federal securities fraud statutes; the USA Patriot Act, 31 U.S.C. § 5328; and 18 U.S.C. §§ 1341, 1343, and 1348.

37. The pervasive and ongoing retaliation to which Ms. Sharkey was subjected has no conceivable legitimate explanation.

38. Defendants' unlawful retaliation and otherwise unlawful conduct has caused Ms. Sharkey to suffer severe emotional distress and mental anguish, as well as substantial economic damages and harm to her professional reputation and career progression.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Sarbanes-Oxley Act Violation: All Defendants)

39. Plaintiff repeats and realleges each of the allegations contained in each of the preceding paragraphs as though fully set forth herein.

40. As set forth above, Defendants violated the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, by taking adverse employment actions against Ms. Sharkey, including, but not limited to, termination, in retaliation for Ms. Sharkey's lawful conduct in providing information, causing information to be provided, or otherwise assisting in investigations of the Suspect Client's account with J.P. Morgan.

41. As a direct and proximate cause of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer severe financial, mental and emotional hardship and injury including the loss of compensation, reduced possibilities for equivalent future compensation, and other additional damages, including interest, attorney's fees, costs and disbursements.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract: Defendant J.P. Morgan)

42. Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

43. Ms. Sharkey and Defendant J.P Morgan are parties to enforceable contractual relationship that includes Defendant J.P Morgan's obligation to avoid retaliating against Ms. Sharkey for making good faith reports of violations of the Company's Code of Conduct, implied by the fact of J.P Morgan's anti-retaliation policy.

44. Defendant J.P Morgan willfully and wantonly breached the contract by retaliating against Ms. Sharkey for making good faith reports of violations of the Company's Code of Conduct.

45. As a direct and proximate result of Defendant J.P Morgan's breach of contract, Mr. Sharkey has suffered and continues to suffer substantial monetary and/or economic damages, including but not limited to, loss of past and future income, damage to reputation, and emotional pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that an award be issued in her favor containing the following relief:

    A.    Reinstatement;

    B.    Back pay, raises, bonuses, deferred compensation, benefits, reinstatement of seniority and tenure, and other orders necessary to make Plaintiff whole;

    C.    An order requiring Defendants to abate and refrain from any further violations of the whistleblower provisions of the Sarbanes-Oxley Act;

D. An order expunging Plaintiff's termination, and ordering Defendants to remove any records of termination against Plaintiff;

E. An order prohibiting Defendants from disclosing any disparaging information about Plaintiff to prospective employees, or otherwise interfering with any applications she might make in the future;

F. Compensatory monetary damages in an amount determined to be fair and equitable compensation for Plaintiff's emotional distress and loss of reputation;

G. Pre-judgment interest on all amounts due;

H. An award of costs and expenses, as well as reasonable attorneys' fees, incurred by Plaintiff in this action to the fullest extent permitted by law; and

I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  New York, New York
        May 10, 2010

                                    Respectfully submitted,

                                    THOMPSON WIGDOR & GILLY LLP

                                    By: _____
                                        Douglas H. Wigdor

                                    85 Fifth Avenue
                                    New York, NY 10003
                                    Telephone: (212) 257-6800
                                    Facsimile: (212) 257-6845

                                    *COUNSEL FOR PLAINTIFF*

10