**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

JENNIFER SHARKEY               :

                               :

                Plaintiff,     :

                               :      Civil Action No. 10-CIV-3824 (RWS)

       v.                  :

                               :

J.P. MORGAN CHASE & CO., JOE KENNEY  :
ADAM GREEN, and LESLIE LASSITER in,   :
their official and individual capacities,      :

                               :

                Defendants.  :
-------------------------------------------------------------X

 

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

 

THOMPSON WIGDOR & GILLY LLP
Douglas H. Wigdor
85 Fifth Avenue
New York, New York 10003
Tel: (212) 257-6800
Fax: (212) 257-6845

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 5

I.   STANDARD FOR A MOTION TO DISMISS ................................................... 5

II.  PLAINTIFF HAS STATED A CLAIM UNDER THE SARBANES-OXLEY
     WHISTLEBLOWER PROVISION ....................................................................... 6

     A.  PLAINTIFF ALLEGES FACTS SUFFICIENT TO ESTABLISH THAT SHE ENGAGED
         IN PROTECTED ACTIVITY ............................................................................. 8

         1.  Plaintiff's Reports Concerning The Suspect's Client's Illegal
             Activities Constitute Protected Activity Under Sarbanes-Oxley ............... 9

         2.  Plaintiff's Reports And Recommendations Regarding The Suspect
             Client Implicated Potential Violations Of SOX By Defendants ............... 11

         3.  Plaintiff Has Adequate Pled Facts Which Establish That She
             Reasonably Believed That The Conduct She Reported Constituted
             An Actual Violation Of The Law ............................................................. 12

         4.  Plaintiff's Allegations Regarding Her Protected Activity Are
             Sufficiently Specific ................................................................................ 13

     B.  PLAINTIFF ALLEGES FACTS SUFFICIENT TO ESTABLISH THAT DEFENDANT
         J.P. MORGAN KNEW ABOUT PLAINTIFF'S PROTECTED ACTIVITY ............ 16

III. PLAINTIFF HAS PROPERLY PLEAD A CAUSE OF ACTION FOR BREACH OF
     CONTRACT ..................................................................................................... 17

CONCLUSION .................................................................................................................. 19

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Allen v. Admin. Review Bd.*,
    514 F.3d 468 (5th Cir. 2008) ........................................................................................9, 12

*Alston v. New York City Transit Auth.*,
    14 F. Supp. 2d 308 (S.D.N.Y. 1998)..............................................................................16

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009)........................................................................................................5

*Baron v. Port Auth. Of N.Y. and N.J.*,
    271 F.3d 81 (2d Cir. 2001)...............................................................................................18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554 (2007).............................................................................................................5

*Brady v. Calyon Sec.*,
    No. 05 Civ. 3470, 2007 U.S. Dist. LEXIS 92602 (S.D.N.Y. Dec. 17, 2007)....................17

*Conley v. Gibson*,
    355 U.S. 41 (1947).............................................................................................................5

*Cosmas v. Hassett*,
    886 F.2d 8 (2d Cir. 1989)...................................................................................................4

*Erickson v. Pardus*,
    551 U.S. 89 (2007).............................................................................................................5

*Fraser v. Fiduciary Trust Co. Int'l*,
    417 F. Supp. 2d 310 (S.D.N.Y. 2006).................................................................6, 11, 13

*Fraser v. Fiduciary Trust Co., Int'l*,
    No. 04 Civ. 9658, 2009 U.S. Dist. LEXIS 6958 (S.D.N.Y. Aug. 25, 2009) ......................9

*Gattegno v. Admin. Rev. Bd.*,
    353 Fed. Appx. 498 (2d Cir. 2009).....................................................................................6

*Gordon v. New York City Bd. of Educ.*,
    232 F.3d 111 (2d Cir. 2000)...............................................................................................16

*Harp v. Charter Commc'ns, Inc.*,
    558 F.3d 722 (7th Cir. 2009) ...........................................................................................12

*Leavitt v. Bear Sterns & Co.*,
 340 F.3d 94 (2d Cir. 2007)..................................................................................6

*Mahoney v. Keyspan Corporation*,
 No. 04 Civ. 554, 2007 U.S. Dist. LEXIS 22042 (E.D.N.Y. Mar. 12, 2007) ..........7, 11, 13

*McKeever v. N.Y. Med. Coll.*,
 96 Civ. 7066, 1999 U.S. Dist. LEXIS 3984 (S.D.N.Y. March 31, 1999).........................17

*Palkovic v. Johnson*,
 No. 06 Civ. 12600, 2008 U.S. App. LEXIS 12600 (2d Cir. June 13, 2008) ......................5

*Pardy v. Gray*,
 No. 07 Civ. 6324, 2008 U.S. Dist. LEXIS 53997 (S.D.N.Y. July 15, 2008) ...........6, 9, 16

*Portes v. Wyeth Pharm., Inc.*,
 No. 06 Civ. 2689, 2007 U.S. Dist. LEXIS 60824 (S.D.N.Y. Aug. 20, 2007) ....................9

*Reed v. A.W. Lawrence & Co.*,
 95 F.3d 1170 (2d. Cir. 1996)..............................................................................16

*Rolon v. Henneman*,
 517 F.3d 140 (2d Cir. 2008)................................................................................5

*Sira v. Morton*,
 380 F.3d 57 (2d Cir. 2004).................................................................................4

*Smith v. Corning, Inc.*,
 496 F. Supp. 2d 244 (W.D.N.Y. 2007) ..............................................................13

*Staehr v. Hartford Fin. Servs. Group*,
 547 F.3d 406 (2d Cir. 2008)...............................................................................4

*Welch v. Chao*,
 536 F.3d 269 (5th Cir. 2008) ...........................................................................13

**STATE AND ADMINISTRATIVE CASES**

*Gorman v. Nat'l Med. Care, Inc.*,
 No. 95 Civ. 103604, 1998 WL 1050970 (Sup. Ct., N.Y. County, Aug. 13, 1998)...........17

*Lerbs v. Buca Di Beppo, Inc.*,
 No. 2004-SOX-8, 2004 DOLSOX LEXIS 65 (Dep't of Labor June 15, 2004) ...............13

*Lobosco v. New York Tel. Co.,*
    96 N.Y.2d 312 (2001) ........................................................................18

*Mulder v. Donaldson, Lufkin & Jenrette,*
    623 N.Y.S. 2d 560 (1st Dep't 1995) ...............................................17

*Weiner v. McGraw-Hill Inc.,*
    57 N.Y.2d 458 (1982) .......................................................................17

## OTHER STATUTES

18 U.S.C. § 1514A(a) ....................................................................6, 9, 15

S. Rep. No. 107-146, at 5 (2002) .......................................................10

*Legislative History of Title VII of HR 2673: The Sarbanes-Oxley Act of 2002,*
    148 Cong. Rec. S7418, S7420 (July 26, 2002).................................11

Plaintiff Jennifer Sharkey ("Plaintiff" or "Ms. Sharkey") respectfully submits this memorandum of law in opposition to Defendants J.P. Morgan Chase & Co. ("J.P. Morgan" or the "Company"), Joe Kenney ("Defendant Kenney"), Adam Green ("Defendant Green"), and Leslie Lassiter's ("Defendant Lassiter") (Defendants Kenney, Green and Lassiter are hereinafter referred to collectively as the "Individual Defendants" and with Defendant J.P. Morgan as "Defendants") Motion to Dismiss the Complaint. For the reasons set forth below, Defendants' motion is devoid of merit and should be denied in its entirety.

## PRELIMINARY STATEMENT

In moving to dismiss Plaintiff's claims under Section 806 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley" or "SOX"), 18 U.S.C. § 1514A, Defendants adopt an unduly narrow and constrained view of the SOX whistleblower provisions which is unsupported by the caselaw and is inconsistent with both a broad reading of that statute and the motion to dismiss standard. The crux of Defendants' argument is that Ms. Sharkey did not engage in protected activity because her reports to her supervisors and J.P. Morgan's risk and compliance team were limited to potential fraud and violation of federal securities law not by J.P. Morgan itself, but by an existing client of J.P. Morgan. This argument is both factually and legally wrong. Defendants' argument is factually wrong because Ms. Sharkey's reports and recommendations that J.P. Morgan terminate its relationship with this client implicated potential wrongdoing and violations of federal securities laws on the part of J.P. Morgan. Similarly, Defendants' argument is devoid of legal merit because SOX does not limit its protections to those employees that report potential fraud or violations of federal securities law by their employer as Defendants would have the Court believe. Instead, SOX prohibits retaliation against employees that report any fraud or violation of securities law, regardless of whether such report relates to directly to their employer

1

or a third party, including where, as here, that directly implicates J.P. Morgan itself. Indeed, adopting Defendants' argument would turn SOX on its head as it would permit an employer to retaliate against an employee that reports potential fraud or violations of federal securities law by a client of the employer where the employer turns a blind eye to the client's unlawful conduct and even permits and/or aids and abets the continuation of the unlawful conduct by not following both internal and external rules and regulations. This is clearly at odds with the unmistakable intent of the statute and is contrary to the interests that SOX is meant to serve. Accordingly, Defendants' argument should be rejected.[1]

Defendant J.P. Morgan's argument with respect to Plaintiff's breach of contract claim also fails as a matter of law. Contrary to Defendant J.P. Morgan's position, the presence of a provision disclaiming the creation of employment contract in its Code of Conduct is not dispositive, especially when such disclaimer is not conspicuously and prominently placed within J.P. Morgan's 32 page, single spaced Code of Conduct, let alone in the section that provides the protection against retaliation in a situation such as here. As explained more fully below, Plaintiff has adequately pled a breach of contract claim and Defendant's motion should be denied.

## STATEMENT OF FACTS

From October 2006 until her termination on August 5, 2009, Ms. Sharkey worked as a Vice President and Wealth Manager in J.P. Morgan's Private Wealth Management department. Complaint, ¶ 9. In this capacity, Ms. Sharkey managed more than 75 "High Net Worth Client" relationships, the assets of which totaled more than $500 million, and was ranked the second highest producer in her department. *Id.* at ¶ 10. In or around January 2009, Defendant Lassiter, Ms. Sharkey's direct supervisor, assigned her to manage a long term client of J.P. Morgan

---

[1]     Notwithstanding the above, in the event that the Court finds Plaintiff has not sufficiently pled that she reported what she reasonably believed to be wrongdoing on the part of J.P. Morgan, Plaintiff requests that the Court grant Plaintiff leave to replead her SOX claim.

(hereinafter "Suspect Client"). *Id.* at ¶ 18. The Suspect Client, a high-revenue producing Israeli client, had been a client of J.P. Morgan for more than 20 years and generated quarterly returns for the Company of approximately $150,000. *Id.*

Almost immediately after Ms. Sharkey was assigned to manage the Suspect Client, J.P. Morgan's compliance and risk management team contacted Ms. Sharkey to express their concerns regarding the Suspect Client's involvement in illegal activities, including allegations of mail fraud, bank fraud, and money laundering, all of which Ms. Sharkey immediately conveyed to Ms. Lassiter. Complaint, ¶ 19. Over the course of the next few weeks, Ms. Sharkey conducted independent research into the Suspect Client's activities and communicated with J.P. Morgan's compliance and risk management departments to determine whether Suspect Client was violating federal securities laws. *Id.* at ¶ 20. Based on her research, Ms. Sharkey formed a reasonable belief that the Suspect Client was engaged in such illegal activities and that, as a result, J.P. Morgan should terminate the client relationship. *Id.* When Ms. Sharkey shared the conclusions of her research and her recommendation with the Individual Defendants – both in the form of verbal and written recommendations – they ignored her concerns and recommendations. *Id.* at ¶¶ 20-21. Instead, the Individual Defendants downplayed and dismissed Ms. Sharkey's concerns, both because they directly contradicted their own and because her concerns exposed weaknesses in J.P. Morgan's risk processing procedures, particularly since J.P. Morgan had been doing business with the Suspect Client for more than 20 years. *Id.* at ¶ 25. When Ms. Sharkey refused the Individual Defendants' pressure to condone the Suspect Client's business activities, the Individual Defendants began to retaliate against her by removing her from several client accounts, excluding her from important meetings involving

her own clients, refusing to pay Ms. Sharkey her 2009 bonus and ultimately terminating her employment with J.P. Morgan. *Id.* at ¶¶ 24, 26-29, 32.

Following the Individual Defendants refusal to take any action regarding Ms. Sharkey's concerns that Suspect Client was violating federal securities laws, Ms. Sharkey contacted J.P. Morgan's compliance department to begin a "Know Your Client" assessment process ("the KYC Process") on the Suspect Client's account. Complaint, ¶ 22. The KYC Process operates as an internal audit of a client, the purpose of which is to ensure that J.P. Morgan and its clients remain at all times in compliance with federal securities laws and regulations. *Id.* On July 30, 2009, Ms. Sharkey submitted her final KYC report regarding the Suspect Client, which included her recommendation that J.P. Morgan immediately terminate its relationship with the Suspect Client. *Id.* at ¶ 23. While Ms. Sharkey's report was submitted to J.P. Morgan's compliance and risk management department, the Individual Defendants also received copies of her report and were aware of her recommendation to J.P. Morgan's compliance and risk management department. *Id.* Six days later, on August 5, 2010, Ms. Sharkey's employment with J.P. Morgan was terminated without warning or prior notice. *Id.* at ¶¶ 24, 33. When Ms. Sharkey inquired as to the reasons for her termination, the J.P. Morgan Human Resources employee that communicated the decision to her stated that, "It was an abrupt decision that has nothing to do with your performance, but instead was made by Ms. Lassiter because she feels she cannot trust you anymore." *Id.* at ¶ 32.

On October 22, 2009, Ms. Sharkey filed a timely complaint with the Occupational Safety and Health Administration ("OSHA") of the U.S. Department of Labor alleging violations of

SOX.  Complaint, ¶ 5.  On or about April 12, 2010, OSHA issued its findings and preliminary

order.  *Id.* at ¶ 8.[2]  Plaintiff now seeks *de novo* review of OSHA's finding and preliminary order.

## ARGUMENT

### I.    STANDARD FOR A MOTION TO DISMISS

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of

the claim showing that the pleader is entitled to relief," a standard that merely requires that a

complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1947); *see also Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 554, 555 (2007).  Subsequent to *Twombly*, the Supreme Court clarified any

doubt about a heightened pleading standard by reiterating that Rule 8(a)(2) "requires only 'a

short and plain statement of the claim showing that the pleader is entitled to relief' and that

"[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89,

(2007) (citing *Twombly*, 550 U.S. at 555).  "When there are well-pleaded factual allegations, a

court should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  Further, when deciding a

motion to dismiss pursuant to Rule 12(b)(6), "[t]he appropriate inquiry is not whether a plaintiff

is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims."

---

[2]    Defendants improperly attach a copy of OSHA's order with their motion to dismiss.  As a general rule, "a district court may not look outside the complaint and the documents attached thereto in ruling on a motion to dismiss." *Staehr v. Hartford Fin. Servs. Group*, 547 F. 3d 406, 426 (2d Cir. 2008).  In certain limited circumstances, however, documents that are "incorporated in [the complaint] by reference are deemed part of the pleading and may be considered" (*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)), however, Plaintiff's reference to the OSHA order does not serve to incorporate this document by reference into the Complaint. *See Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (mere discussion of and limited quotation from documents does not constitute incorporation by reference); *Sira v. Morton*, 380 F.3d 57, 67-68 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.").  Further, any consideration of the OSHA order is inconsistent with 18 U.S.C. § 1514(b) which provides for *de novo* review of SOX claims filed in district court.  Thus, Plaintiff respectfully requests that the Court disregard the OSHA order attached as Exhibit A to the Declaration of Michael D. Schissel.

*Palkovic v. Johnson*, No. 06 Civ. 12600, 2008 U.S. App. LEXIS 12600, at *5 (2d Cir. June 13, 2008).

Therefore, in considering Defendants' motion to dismiss, the Court must accept as true all of the factual allegations in the Complaint and draw all inferences in Plaintiff's favor. *See Rolon v. Henneman*, 517 F.3d 140, 142 (2d Cir. 2008). Further, the Court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Leavitt v. Bear Sterns & Co.*, 340 F.3d 94, 101 (2d Cir. 2007). As set forth below, the Complaint certainly satisfies this standard.

## II.   PLAINTIFF HAS STATED A CLAIM UNDER THE SARBANES-OXLEY WHISTLEBLOWER PROVISION

The whistleblower provisions of SOX provide, in relevant part:

> No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 . . . or that is required to file reports under section 15(d) of the Securities Exchange Act . . ., or any officer, employee . . . or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee –
>
> > (1) to provide information, cause information to be provided, or otherwise assist in any investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by --
> >
> > > (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct).

18 U.S.C. § 1514A(a).

To assert a whistleblower claim under SOX, a plaintiff must show that: (i) she engaged in protected activity; (ii) the employer knew of the protected activity; (iii) she suffered an unfavorable personnel action; and (iv) circumstances exist to suggest that the protected activity

6

was a contributing factor to the unfavorable action. *See Gattegno v. Admin. Rev. Bd.*, 353 Fed. Appx. 498, 500 (2d Cir. 2009); *see also Fraser v. Fiduciary Trust Co. Int'l*, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006); *Pardy v. Gray*, No. 07 Civ. 6324, 2008 U.S. Dist. LEXIS 53997, *12 (S.D.N.Y. July 15, 2008). Further, "SOX protects employees who provide information, which the employee 'reasonably believes constitutes a violation' of any SEC rule or regulation or 'Federal law relating to fraud against shareholders.'" *Fraser*, 417 F. Supp. 2d at 322.

Because SOX is a statute designed to promote corporate ethics by protecting whistleblowers from retaliation, it should not be read as narrowly as Defendants argue in their brief. *See Mahoney v. Keyspan Corporation*, No. 04 Civ. 554, 2007 U.S. Dist. LEXIS 22042, *13 (E.D.N.Y. Mar. 12, 2007) ("it is reasonable to construe the statute broadly."). Indeed, a broad reading of the whistleblower provisions is exactly what Congress intended when it drafted SOX. *See* 149 Cong. Rec. S1725 (Jan. 29, 2003) (statement of Sen. Leahy) ("The law was intentionally written to sweep broadly, protecting any employee of a publicly traded company who took reasonable action to try to protect investors and the market.").

In the instant motion, Defendants' argument centers on the first and second prong of a SOX retaliation claim as Defendants argue that Plaintiff has failed to plead facts which establish that she engaged in protected activity and does not allege that Defendant J.P. Morgan knew of Plaintiff's protected activity. Thus, for purposes of this motion Defendant acknowledges that Plaintiff has alleged facts which establish that she suffered an adverse employment action and circumstances exist which suggest that the protected activity was a contributing factor to the unfavorable action.[3]

---

[3]   While Defendants assert that Plaintiff's Complaint does not satisfy any of the elements of a *prima facie* case (*see* Def. Brief. at p. 6 ("The Complaint satisfies *none* of these elements.") (emphasis in original)), Defendants fail to address the third and fourth prongs of a prima facie SOX whistleblower claim. Consistent with this, and in an

### A. PLAINTIFF ALLEGES FACTS SUFFICIENT TO ESTABLISH THAT SHE ENGAGED IN PROTECTED ACTIVITY

Contrary to Defendants' narrow reading of Plaintiff's Complaint, which is both inconsistent with the standard for a motion to dismiss and inconsistent with a broad reading of the whistleblower provisions of SOX, Plaintiff has pled facts which are more than sufficient to establish that she engaged in activity protected by SOX. Specifically, Plaintiff alleges that:

- Upon forming a reasonable belief that the Suspect Client was engaged in illegal activities and J.P. Morgan should immediately terminate its relationship with Suspect Client, Ms. Sharkey informed the Individual Defendants of her conclusions and recommendation (*see Complaint*, ¶ 20);

- Ms. Sharkey coordinated with J.P. Morgan's compliance department to begin the KYC Process, which serves as an internal audit of a client to ensure that J.P. Morgan and its clients remain at all times in compliance with federal securities laws and regulations (*Id.* at ¶ 22);

- Ms. Sharkey submitted her final KYC report to J.P. Morgan's compliance department (with copies to the Individual Defendants), which contained her recommendation that J.P. Morgan immediately terminate its client relationship with Suspect Client (*Id.* at ¶ 23); and

- Ms. Sharkey resisted the Individual Defendants' pressure and refused to condone Suspect Client's illegal practices (*Id.* at ¶ 26).

Defendants' argument is based on the faulty premise that the SOX whistleblower provision does not protect employees that report misconduct of third parties where, as here, that misconduct directly implicates the employer itself. While Defendants cite to a string of a cases which purportedly support their position, in actuality these cases are inapposite. As such, Defendants have failed to cite any authority which establishes that SOX is limited to those situations where an employee reports illegal activity of the employer itself as opposed to a client that the employer is making it possible to commit potential violations of securities and banking laws. Indeed, it would be a perversion of the whistleblower provisions and their broad remedial

---

effort not to unnecessarily waste the Court's time in addressing matters not currently in dispute, Plaintiff will limit her arguments to the first and second elements of a prima facie SOX retaliation claim.

purpose to hold that an employer can retaliate against an employee who reports conduct which

she reasonably believes constitutes a violation of federal securities law or federal law relating to

fraud against shareholders simply because the conduct relates to a client of the employer and not

the employer itself.  Defendants' argument also fails because they ignore the clear implication

inherent in Plaintiff's reports and recommendations that J.P. Morgan, by continuing its

relationship with the Suspect Client despite knowing that the Suspect Client was engaged in

illegal activity, was complicit in such illegal activity.  Accordingly, Ms. Sharkey's report clearly

fall within the ambit of the SOX whistleblower provisions.

### 1.   Plaintiff's Reports Concerning The Suspect's Client's Illegal Activities Constitute Protected Activity Under Sarbanes-Oxley

As much as Defendants would like to limit the SOX whistleblower provisions to reports

made by employees regarding conduct of their employer, the plain language of the statute does

not support such a narrow reading.  Instead, SOX precludes an employer from retaliating against

any employee who provides information or otherwise assists in an investigation regarding

conduct which the employee reasonably believes constitutes a violation of "section 1341 [Frauds

and Swindles], 1343 [Fraud by Wire, Radio or Television], 1344 [Bank Fraud], or 1348

[Securities and Commodities Fraud], any rule or regulation of the [SEC], or any provision of

Federal law relating to fraud against shareholders."  18 U.S.C. 1514A(a)(1).  Nowhere does the

statute require that the fraudulent conduct or violation of federal securities law be committed

directly by the employer that takes the retaliatory action.  Further, the cases cited by Defendants

do not stand for the proposition that the SOX protections are limited only to those employees that

report that their employer engaged in conduct prohibited by those statutes referenced in 18

U.S.C. § 1514A(a)(1).  *See, e.g., Fraser v. Fiduciary Trust Co., Int'l*, No. 04 Civ. 9658, 2009

U.S. Dist. LEXIS 6958 (S.D.N.Y. Aug. 25, 2009) (hereinafter, "*Fraser II*"); *Portes v. Wyeth*

*Pharm., Inc.*, No. 06 Civ. 2689, 2007 U.S. Dist. LEXIS 60824 (S.D.N.Y. Aug. 20, 2007); *Pardy v. Gray*, No. 07 Civ. 6324, 2008 U.S. Dist. LEXIS 53997 (S.D.N.Y. July 15, 2008); *Allen v. Admin. Review Bd.*, 514 F.3d 468 (5th Cir. 2008).  In each of the cases cited by Defendants, the plaintiffs alleged that their employer had been the entity which engaged in the conduct which was believed to have violated one of the enumerated categories of 18 U.S.C. § 1514A(a)(1). Thus, the Court was not presented with the issue of whether reports by an employee that a client is engaging in fraud through the use of the employer's accounts would constitute protected activity and these decisions do not stand for the proposition upon which Defendants' argument relies and consequently, do not support dismissal of Plaintiff's claims.

As discussed above, the legislative history concerning the SOX whistleblower provision does not support a narrow reading of this provision of the statute.  Indeed Sarbanes-Oxley was enacted to counteract a corporate culture that "discourages employees from reporting fraudulent behavior not only to the proper authorities such as the FBI and the SEC, but even internally. This 'corporate code of silence' not only hampers investigations, but also creates a climate where ongoing wrongdoing can occur with virtual impunity.  The consequences of this corporate code of silence for investors in publicly traded companies, in particular, and for the stock market, in general, are serious and adverse, and they must be remedied."  S. Rep. No. 107-146, at 5 (2002). Thus, in light of the plain language of the statute and the clear legislative history, Plaintiff has properly pled that she engaged in conduct protected by 18 U.S.C. § 1514A when she repeatedly reported her concerns regarding the Suspect Client's illegal activity to the Individual Defendants and J.P. Morgan's risk and compliance team.

10

**2.      Plaintiff's Reports And Recommendations Regarding The Suspect
         Client Implicated Potential Violations Of SOX By Defendants**

In addition to the above referenced protected activity, Ms. Sharkey also engaged in

protected activity when she repeatedly recommended to the Individual Defendants and the

Company's risk and compliance team that J.P. Morgan terminate its relationship with the

Suspect Client.  Though not explicitly stated in the Complaint, it is plainly obvious from Ms.

Sharkey's recommendation that J.P. Morgan terminate its relationship with the Suspect Client

that she was expressing her concerns about J.P. Morgan giving the Suspect Client the platform to

engage in illegal activities, thus implicating J.P. Morgan in the wrongdoing and exposing the

Company to potential liability for its complicity in the Suspect Client's illegal activities,

including mail fraud, bank fraud and money laundering, by continuing to do business with the

Suspect Client.  Complaint, ¶¶ 20, 23, 26, 36.  Additionally, as alleged in the Complaint, the

Individual Defendants retaliated against Ms. Sharkey because her complaints and views

contradicted their own and "exposed weaknesses in J.P. Morgan's risk processing procedures,

particularly since J.P. Morgan had continued a relationship with the Suspect Client for more than

20 years." *Id.* at ¶ 25.  Thus, viewing the allegations contained in the Complaint in the light most

favorable to Plaintiff, it is clear that Plaintiff has pled sufficient facts to establish that she engage

in protected activity; however, in the event that the Court finds Plaintiff has not sufficiently pled

that she reported what she reasonably believed to be wrongdoing on the part of J.P. Morgan,

Plaintiff requests that the Court grant Plaintiff leave to replead her SOX claim.  *See Ronzani v.*

*Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("When a motion to dismiss is granted, "the usual

practice is to grant leave to amend the complaint.").

11

3.    **Plaintiff Has Adequately Pled Facts Which Establish That She Reasonably Believed That The Conduct She Reported Constituted An Actual Violation Of The Law**

In order to state a whistleblower claim under SOX, a "plaintiff need not show an actual violation of the law," instead, "SOX protects employees who provide information which the employee 'reasonably believes constitutes a violation' of any SEC rule or regulation or "Federal law relating to fraud against shareholders." *Fraser v. Fiduciary Trust Co. Int'l*, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006) (hereinafter "*Fraser I*") (citing 18 U.S.C. § 1514A(a)(1)).  In the instant matter, Plaintiff clearly satisfies this standard as she alleges that "she reasonably believed that the Suspect Client was violating federal securities laws" and was engaged in "illegal activities, including mail fraud, bank fraud and money laundering." *See* Complaint, ¶¶ 20, 22.

In assessing the reasonableness of a plaintiff's belief regarding the illegality of the particular conduct at issue, courts look to the "basis of knowledge available to a reasonable person in the circumstances with the employee's training and experience." *See Mahoney*, 2007 U.S. Dist. LEXIS 22042 at * 15-16 (denying summary judgment because "a fair and reasonable juror could find that Plaintiff reasonably believed that the company was engaging in accounting practices that needed to be corrected before its financial statements misled shareholders").  The legislative history of SOX provides that the reasonableness test "is intended to impose the normal reasonable person standard used and interpreted in a wide variety of legal contexts." *Legislative History of Title VII of HR 2673: The Sarbanes-Oxley Act of 2002*, 148 CONG. REC. S7418, S7420 (July 26, 2002).  "The threshold is intended to include all good faith and reasonable reporting of fraud, and there should be no presumption that reporting is otherwise, absent specific evidence." *Id.*  In the present case, the well-pled allegations in the Complaint

clearly satisfy this standard and there is no specific evidence that Ms. Sharkey's beliefs were anything but reasonable.

With respect to the reasonableness of Plaintiff's belief that the Suspect Client was engaged in fraud and other violations of federal securities law, Plaintiff's Complaint alleges that members of J.P. Morgan's compliance and risk management team had contacted her to express their concerns that the Suspect Client was involved in illegal activities, including mail fraud, bank fraud and money laundering and that Ms. Sharkey had conducted her own independent research to determine whether the Suspect Client was engaged in such illegal activities. *See* Complaint, ¶¶ 19-20. Such allegations, when accepted as true and viewed in the light most favorable to Plaintiff as the non-moving part, are more than sufficient to establish the reasonableness of Plaintiff's belief.

Indeed, in tacit recognition of the weakness of their argument in this regard, Defendants citations are limited to cases in which – unlike the instant matter – the court had the benefit of a fully developed record from which to determine the reasonableness of the plaintiff's belief that the conduct at issue violated federal fraud or securities laws. *See Harp v. Charter Commc'ns, Inc.*, 558 F. 3d 722 (7th Cir. 2009) (summary judgment); *Allen v. Admin. Review Bd.*, 514 F.3d 468 (5th Cir. 2008) (review of order of U.S. Dep't of Labor's Administrative Review Board). Thus, Plaintiff has pled sufficient facts which, if proven, plausibly establish the reasonableness of Plaintiff's belief. *See Fraser I*, 417 F. Supp. 2d at 323-24.

### 4.      Plaintiff's Allegations Regarding Her Protected Activity Are Sufficiently Specific

As with Defendants' argument regarding the reasonableness of Plaintiff's beliefs, Defendants also improperly attempt to apply a heightened pleading standard with regard to the specificity required to assert a whistleblower claim under SOX.  Contrary to Defendants'

arguments, a whistleblower "need not 'cite a code section he believes was violated' in his communication to his employer, but the employee's communications must identify the specific conduct that the employee believes to be illegal." *Welch v. Chao*, 536 F.3d 269, 276 (5th Cir. 2008) (citing *Fraser I*, 417 F. Supp. 2d at 322)). Further, while courts have held the "protected activity must implicate the substantive law protected in Sarbanes-Oxley 'definitely and specifically'" (*see Fraser I*, 417 F. Supp. 2d at 322), contrary to Defendants' position, the "'definitely and specifically' language clearly does not impose a heightened pleading standard in Sarbanes-Oxley whistleblower cases." *Welch*, 536 F.3d at 277. Instead, "in order for a whistleblower to be protected by [SOX], the reported information must have a certain degree of specificity and must state particular concerns which, at the very least, reasonably identify a respondent's illegal conduct that the complainant believes to be illegal." *Fraser I*, 417 F. Supp. 2d at 322 (citing *Lerbs v. Buca Di Beppo, Inc.*, No. 2004-SOX-8, 2004 DOLSOX LEXIS 65, *33-34 (Dep't of Labor June 15, 2004)). Consistent with this body of case law interpreting the requirements of a prima facie SOX whistleblower claim, Plaintiff has pled facts which are more than sufficient to survive a motion to dismiss. *See Fraser I*, 417 F. Supp. 2d 310 (denying motion to dismiss); *Mahoney*, 2007 U.S. Dist. LEXIS 22042 (denying summary judgment); *Smith v. Corning, Inc.*, 496 F. Supp. 2d 244, 249 (W.D.N.Y. 2007) (denying motion to dismiss where plaintiff alleged that defendants repeatedly refused to address a problem that was resulting in incorrect financial information being reported to the company's general ledger).

As Ms. Sharkey alleges in her complaint, she was contacted by J.P. Morgan's compliance and risk management team who expressed concerns regarding the Suspect Client's involvement in illegal activities, which included mail fraud, bank fraud and money laundering. Complaint, ¶ 19. Ms. Sharkey immediately relayed this information to her supervisor, Defendant Lassiter. *Id.*

14

At this point, it could not be said that Ms. Sharkey had engaged in activity protected by SOX –

as this conduct falls into the category of general inquiries which do not constitute protected

activity – but Ms. Sharkey went further.  After the compliance department expressed their

concerns, Ms. Sharkey conducted her own research "to determine whether the Suspect Client

was violating federal securities laws, as suspected."  *Id.* at ¶ 20.  Based on this research, Ms.

Sharkey concluded that the Suspect Client was engaged in such illegal activities and shared her

conclusions with the Individual Defendants. *Id.*  Thus, while the Complaint does not specifically

state that Ms. Sharkey notified the Individual Defendants that she believed the Suspect Client

had actually violated federal securities law, it is reasonable to infer that the conclusions and

recommendations that Ms. Sharkey shared with the Individual Defendants referenced her

reasonable, good faith belief that the Suspect Client was engaged in mail fraud, bank fraud,

money laundering and violations of federal securities law.  Further, it is reasonable to infer that

the KYC report that was submitted by Ms. Sharkey to J.P. Morgan's compliance and risk

management team – which recommended that J.P. Morgan terminate its relationship with the

Suspect Client – referenced Ms. Sharkey's reasonable belief that the Suspect Client was engaged

in mail fraud, bank fraud, money laundering, and other violations of federal securities law.

Complaint, ¶ 23.

    Thus, viewing the allegations in the Complaint in the light most favorable to Plaintiff and

drawing all reasonable inferences in her favor, the allegations contained in the Complaint go far

beyond simply alleging that she informed her supervisors that she believed the Suspect Client

was engaged in "illegal activities" and J.P. Morgan should exit the relationship as Defendants

allege in their brief (*see* Def. Br. at 10), and are sufficient to allege a prima facie SOX

whistleblower claim.  Indeed, Ms. Sharkey clearly alleges as much in the Complaint, which

asserts that Defendants' "actions were taken in unlawful retaliation for Ms. Sharkey's efforts to report and prevent what Ms. Sharkey reasonably believed to be Defendants' violations of the applicable securities regulations and laws, including without limitation, the federal securities fraud statutes . . . and 18 U.S.C. §§ 1341, 1343 and 1348." Complaint, ¶ 36.

### B. PLAINTIFF ALLEGES FACTS SUFFICIENT TO ESTABLISH THAT DEFENDANT J.P. MORGAN KNEW ABOUT PLAINTIFF'S PROTECTED ACTIVITY

As with Defendants' arguments regarding whether Ms. Sharkey engaged in protected activity, Defendant J.P. Morgan's argument that the Complaint does not allege that it knew of any protected activity is wholly unsupported by the facts alleged in the Complaint.[4]  Specifically, Ms. Sharkey alleges that: (i) when she was first notified of concerns by raised by J.P. Morgan's risk and compliance team, she immediately notified Defendant Lassiter, her supervisor; (ii) following her independent research into whether the Suspect Client was violating federal securities laws,  she shared the conclusions she drew from her research and recommendations with the Individual Defendants; (iii) she resisted the Individual Defendants pressure to condone the Suspect Client's illegal practices; and (iv) she submitted her final KYC audit report regarding the Suspect Client which included her recommendation that J.P. Morgan terminate its relationship with the Suspect Client.  Complaint, ¶¶ 19, 20, 23, 26.

Based on these allegations, it is clear that Ms. Sharkey's supervisors, the Individual Defendants, and J.P. Morgan's compliance and risk management team were aware of her protected activity.  This is sufficient to establish that Defendant J.P. Morgan as a corporate entity was aware of her protected activity.  *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the

---

[4]      To the extent that Defendant J.P. Morgan is arguing that Ms. Sharkey's statements were limited to "illegal activities" and not to reporting a violation of those statutes enumerated in 18 U.S.C. 1514A(1)(a), such argument relates to whether Plaintiff's conduct constitutes protected activity (and for the reasons addressed supra at 13-16, it does) and not whether Defendant J.P. Morgan had knowledge of such protected activity.

knowledge requirement, anything more than is necessary than general corporate knowledge that the plaintiff has engaged in protected activity.") (citing, *inter alia*, *Alston v. New York City Transit Auth.*, 14 F. Supp. 2d 308, 311 (S.D.N.Y. 1998) ("In order to satisfy the second prong of her retaliation claim, plaintiff need not show that individual decision-makers within the NYCTA knew that she had filed . . . . [an] EEOC complaint."); *Reed v. A.W. Lawrence & Co.*, 95 F. 3d 1170, 1178 (2d. Cir. 1996) (holding that a plaintiff's complaint to an officer of the company communicated her concerns to the company as a whole); *see also Pardy*, 2008 U.S. Dist. LEXIS 53997 at *14 ("It is clear from the record that Plaintiff's supervisors were aware of her allegations of fraud. Thus, Plaintiff engaged in protected activity."). Thus, it is clear from the allegations of the Complaint that Defendants had knowledge of Ms. Sharkey's protected activity.

## III.   PLAINTIFF HAS PROPERLY PLEAD A CAUSE OF ACTION FOR BREACH OF CONTRACT

Contrary to Defendants' argument, Plaintiff has properly pled a cause of action for breach of contract. Defendants do not dispute that J.P. Morgan's Code of Conduct, which Defendants' attach to their counsel's declaration in support of their motion to dismiss, contains a binding obligation on behalf of the Company not to retaliate against employees who report actual or suspected violations of the Code of Conduct. Specifically, the Code of Conduct provides that the Company "strictly prohibits retaliation against employees for good faith reporting of any actual or suspected violations of the Code [of Conduct]." *See* Code of Conduct, attached as Exhibit B to the Declaration of Michael D. Schissel, at 5. Further, the introduction to the Code of Conduct describes it as "a collection of rules and policy statements intended to assist employees and directors in making decisions about their conduct in relation to the firm's business." *Id.*

In New York, an employer's right to terminate at will employment can be limited by an express provision found in the employer's handbook or compliance manual, including limitation

17

by an anti-retaliation provision.  *See Brady v. Calyon Sec.*, No. 05 Civ. 3470, 2007 U.S. Dist. LEXIS 92602, at *18-19 (S.D.N.Y. Dec. 17, 2007) (acknowledging existence of implied contract based on whistleblower provision in compliance manual); *McKeever v. N.Y. Med. Coll.*, 96 Civ. 7066, 1999 U.S. Dist. LEXIS 3984, at *45 (S.D.N.Y. March 31, 1999); *Weiner v. McGraw-Hill Inc.*, 57 N.Y. 2d 458, 465-66 (1982); *Gorman v. Nat'l Med. Care, Inc.*, No. 103604-95, 1998 WL 1050970, at *3 (Sup. Ct., N.Y. County, Aug. 13, 1998); *Mulder v. Donaldson, Lufkin & Jenrette*, 623 N.Y.S. 2d 560, 564 (1st Dep't 1995) (finding a contract created by manual's statement that "anyone [reporting wrongdoing] will be protected against reprisals").  In their motion, Defendants do not dispute this point and instead argue that the disclaimer contained within the 32 page, single spaced Code of Conduct negates any protection that may be created by the Code of Conduct's anti-retaliation provision.  The mere presence of a disclaimer, however, is not dispositive in this instance.  *See McKeever v. N.Y. Med. Coll.*, 96 Civ. 7066, 1999 U.S. Dist. LEXIS 3984, at *43-44 (S.D.N.Y. March 30, 1999) ("The Court does not discount the significance of strongly worded disclaimers.  However, standing alone, such disclaimers are not dispositive.").

In *Lobosco v. New York Tel. Co.*, 96 N.Y.2d 312 (2001), the New York Court of Appeals held that an explicit disclaimer of a contractual relationship contained on the facing page specifically disclaimed the creation of any contractual rights between the employer and the employee.  *See Lobosco*, 96 N.Y.2d at 316 ("the complaint should be dismissed because the explicit disclaimer of a contractual relationship *contained on the facing page* clearly preserves [defendant's] right to maintain an at-will employment relationship with plaintiff") (emphasis added).  Subsequent to *Lobsco*, the Second Circuit has required that to be effective, a disclaimer must be "conspicuously placed in the employee handbook such that the employee reasonably

could be expected to read it." *Baron v. Port Auth. Of N.Y. and N.J.*, 271 F.3d 81, 88 (2d Cir.

2001). In the present case, the disclaimer upon which Defendant J.P. Morgan relies was not

conspicuously placed such that Plaintiff would be expected to read it. Indeed, the disclaimer was

located within a 32 page, single-spaced document under the heading "Administration of the Code

of Conduct" and did not otherwise stand out from the remainder of the text. *See Code of*

Conduct, at 1. Because Defendant cannot establish as a matter of law that the disclaimer was

"conspicuously placed" such that Plaintiff reasonably could be expected to read it, Defendant

J.P. Morgan cannot establish that the Code of Conduct contains an effective disclaimer that

defeats Plaintiff's breach of contract claim. Thus, Plaintiff respectfully requests that the Court

deny Defendant J.P. Morgan's motion to dismiss the breach of contract claim.

## CONCLUSION

WHEREFORE, the Court should issue an order denying Defendants' motion to dismiss

in its entirety, and for such other and further relief deemed just and proper.

Dated: New York, New York          Respectfully submitted,
      June 18, 2010

                      THOMPSON WIGDOR & GILLY LLP

                      By: _____
                            Douglas H. Wigdor (DW-9737)

                      85 Fifth Avenue
                      New York, NY 10003
                      Telephone: (212) 257-6800
                      Facsimile: (212) 257-6845
                      dwigdor@twglaw.com

                      *Counsel for Plaintiff*