**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
JENNIFER SHARKEY,                                        :
                                                         :
                                        Plaintiff,       :          No. 10 Civ. 3824 (RWS)
                                                         :
                        v.                               :
                                                         :
J.P. MORGAN CHASE & CO., JOE KENNEY,                     :
ADAM GREEN, and LESLIE LASSITER, in their               :
official and individual capacities,                      :
                                                         :
                                        Defendants.      :
                                                         :
----------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**THOMPSON WIGDOR & GILLY LLP**

Douglas H. Wigdor
Basil C. Sitaras
85 Fifth Avenue
New York, NY 10003
Tel: (212) 257-6800
Fax: (212) 257-6845
dwigdor@twglaw.com
bsitaras@twglaw.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT ............................................................................................................. 9

  I.   STANDARD FOR A MOTION TO DISMISS ................................................. 9

  II.  THE COURT HAS JURISDICTION TO REVIEW ALL ALLEGATIONS IN
      THE AMENDED COMPLAINT ..................................................................... 10

  III. PLAINTIFF HAS STATED A CLAIM UNDER THE SARBANES-OXLEY
      WHISTLEBLOWER PROVISION ................................................................. 17

      A. THE AMENDED COMPLAINT PROPERLY ASSERTS A PROTECTED
          ACTIVITY UNDER SOX ........................................................................ 18

      B. THE AMENDED COMPLAINT EXPLICITLY ALLEGES EACH ENUMERATED
          SOX STATUTE WHICH PLAINTIFF BELIEVES THE SUSPECT CLIENT
          VIOLATED ............................................................................................ 21

      C. PLAINTIFF ALLEGES FACTS SUFFICIENT TO ESTABLISH THAT
          DEFENDANT J.P. MORGAN KNEW ABOUT PLAINTIFF'S PROTECTED
          ACTIVITY ............................................................................................ 24

CONCLUSION ......................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

Alston v. New York City Transit Auth.,
   14 F. Supp. 2d 308 (S.D.N.Y. 1998)............................................................................25

Ashcroft v. Iqbal,
   129 S.Ct. 1937 (2009).................................................................................... 10

Bell Atlantic Corp. v. Twombly,
   550 U.S. 554 (2007)................................................................................ 9, 10, 11

Butts v. N.Y. Dep't of Hous. Pres. & Dev.,
   990 F.2d 1397 (2d Cir.1993)............................................................................. 13

Collins v. Beazer Homes USA, Inc.,
   334 F.Supp.2d 1365 (N.D. Ga. 2004) ...........................................................17

Conley v. Gibson,
   355 U.S. 41 (1947).......................................................................................... 9

Deravin v. Kerik,
   335 F.3d 195 (2d Cir. 2003)........................................................................ 13, 14

Dodson v. CBS Broad. Inc.,
   423 F. Supp. 2d 331 (S.D.N.Y. 2006).............................................................9

Erickson v. Pardus,
   551 U.S. 89 (2007)........................................................................................ 10

Francis v. City of New York,
   235 F.3d 763 (2d Cir.2000)............................................................................. 13

Fraser v. Fiduciary Trust Co., Int'l,
   No. 04 Civ. 6958 (RMB)(GWG), 2005 WL 6328596 (S.D.N.Y. June 23, 2005)............. *passim*

Fraser v. Fiduciary Trust Co. Int'l,
   417 F. Supp. 2d 310 (S.D.N.Y. 2006)....................................................15, 17, 19, 21

Fraser v. Fiduciary Trust Co. Int'l,
   No. 04 Civ. 6958 (PAC), 2009 WL 2601389 (S.D.N.Y. Aug. 25, 2009)........................ 19, 21

Gordon v. New York City Bd. of Educ.,
   232 F.3d 111 (2d Cir. 2000) ...........................................................................25

Hanna v. WCI Communities, Inc.,
   348 F.Supp.2d 1322 (S.D. Fla. 2004) ...................................................................8

Hawkins v. 1115 Legal Service Care,
   163 F.3d 684 (2d Cir.1998)...........................................................................13

Leavitt v. Bear Sterns & Co.,
   340 F.3d 94 (2d Cir. 2007)........................................................................ 10

Mahoney v. Keyspan Corp.,
   No. 04 Civ. 554 (SJ), 2007 WL 805813 (E.D.N.Y. Mar. 12, 2007)........................................ 22

Noni v. County of Chautauqua,
   511 F. Supp. 2d 355 (W.D.N.Y. 2007) ......................................................................9

Palkovic v. Johnson,
   No. 06 Civ. 12600, 2008 U.S. App. LEXIS 12600 (2d Cir. June 13, 2008) ........................... 10

Portes v. Wyeth Pharm., Inc.,
   No. 06 Civ. 2689 (WHP), 2007 U.S. Dist. LEXIS 60824 (S.D.N.Y. Aug. 20, 2007).........11, 21

Reed v. A.W. Lawrence & Co.,
   95 F. 3d 1170 (2d. Cir. 1996)........................................................................25

Rolon v. Henneman,
   517 F.3d 140 (2d Cir. 2008).................................................................... 10, 19

Sharkey v. J.P. Morgan Chase & Co.,
   No.10 Civ. 3824 (RWS), 2011 WL 135026 (S.D.N.Y. Jan. 14, 2011) ............................ *passim*

Smith v. Corning Inc.,
   496 F. Supp. 2d 244 (W.D.N.Y. 2007) ................................................................. 23

Trusz v. UBS Realty Investors,
   No. 3:09 Civ. 268 (JBA), 2010 WL 1287148 (D. Conn. Mar. 30, 2010)........................ 11, 16

Welch v. Chao,
   536 F.3d 269 (4th Cir. 2008) ....................................................................... 23

Willis v. Vie Fin. Grp., Inc.,
   No. Civ.A 04-436, 2004 WL 1774575 (E.D. Pa. Aug. 6, 2004).........................................12, 16

Zdanok v. Glidden Co., Durkee Famous Foods Div.,
   327 F.2d 944 (2d Cir. 1964)..................................................................... 1, 24

## STATUTORY AUTHORITIES

18 U.S.C. § 1514A, Sarbanes-Oxley Act of 2002 ................................................................. *passim*

29 C.F.R. § 1980.107 ..........................................................................................................8

29 C.F.R. § 1980.109 ..........................................................................................................8

29 C.F.R. § 1980.103(c) .....................................................................................................12

148 Cong. Rec. S7418, S7420 (July 26, 2002).................................................................22

F.R.C.P Rule 8(a).............................................................................................................. 10

Plaintiff Jennifer Sharkey ("Plaintiff" or "Ms. Sharkey") respectfully submits this memorandum of law in opposition to Defendants J.P. Morgan Chase & Co. ("J.P. Morgan" or the "Company"), Joe Kenney ("Defendant Kenney"), Adam Green ("Defendant Green"), and Leslie Lassiter's ("Defendant Lassiter") (Defendants Kenney, Green and Lassiter are hereinafter referred to collectively as the "Individual Defendants" and with Defendant J.P. Morgan as "Defendants") Motion to Dismiss the Amended Complaint.  For all of the reasons set forth below, including that Defendants' arguments have already been rejected by this Court, the renewed motion is devoid of merit and should be denied in its entirety.

## PRELIMINARY STATEMENT

In originally moving to dismiss Plaintiff's claims under Section 806 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley" or "SOX"), 18 U.S.C. § 1514A, Defendants adopted an unduly narrow and constrained view of the SOX whistleblower provisions, which was appropriately rejected by this Court.  See Sharkey v. J.P. Morgan Chase & Co., No.10 Civ. 3824 (RWS), 2011 WL 135026, *6 (S.D.N.Y. Jan. 14, 2011).  The crux of Defendants' prior argument was that Ms. Sharkey did not engage in protected activity because her reports to her supervisors and J.P. Morgan's risk and compliance team were limited to potential fraud and violation of federal securities law not by J.P. Morgan itself, but by an existing client (the "Suspect Client") of J.P. Morgan.  However, this Court found that "[i]n light of the language of [SOX] and the legislative history, Plaintiff has properly pled that she engaged in conduct protected by 18 U.S.C. § 1514A when she repeatedly reported her concerns regarding the [Suspect] Client's illegal activity to the Individual Defendants and JPMC's risk and compliance team."  Id.  Thus, this holding must be considered law of the case and Defendants are not entitled to argue to the contrary at this juncture.  See Zdanok v. Glidden Co., Durkee Famous Foods Div., 327 F.2d 944,

953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

Thus, the only proper question raised by Defendants' instant motion is whether Ms. Sharkey sufficiently amended her complaint to "identif[y] the allegedly illegal conduct that forms the basis of her whistleblower complaint . . . [in light] of the SOX requirement that specific violations must be the subject of the whistle blowing . . . ," as directed by this Court. Id. at *8.  Even a cursory review of the Amended Complaint, which delineates no less than 30 specific paragraphs and subparagraphs elaborating on the potentially fraudulent and illegal conduct of the Suspect Client, reveals that Ms. Sharkey is in full compliance with this Court's direction to plead a cognizable claim under SOX.  See Amended Complaint[1] ¶¶ 25.a-25.g, 27.a-27.q, 28-37.  Nevertheless, Defendants attempt to argue that this Court, which specifically granted leave to replead the complaint with more specific factual allegations, now lacks jurisdiction to hear these same claims.  This very argument was already made and rejected by this Court and is evidence of Defendants' intention to use this renewed motion to further delay the prosecution of Ms. Sharkey's complaint.  Moreover, the additional allegations in the Amended Complaint are not "new," but instead are elaborations on the previously asserted allegations that Plaintiff submitted to both the Occupational Safety and Health Administration ("OSHA") of the U.S. Department of Labor and this Court.

Defendants' dilatorious tactics are further evinced by their alternative arguments, each of which are either barred by the Court's prior ruling or devoid of merit, namely: 1) that the Amended Complaint does not specify the illegal conduct Plaintiff reported to J.P. Morgan; 2) that Plaintiff does not allege which statute she believes the Suspect Client violated; and 3) that J.P. Morgan did not know Plaintiff engaged in a protected activity.  As explained more fully

---

[1] Hereinafter cited as "Am. Comp."

below, Plaintiff has adequately pled a whistleblower claim under SOX and it is respectfully submitted that Defendants' motion should be denied.

## **STATEMENT OF FACTS**

From October 2006 until her termination on August 5, 2009, Ms. Sharkey worked as a Vice President and Wealth Manager in J.P. Morgan's Private Wealth Management department. Am. Comp. ¶ 9.  In this capacity, Ms. Sharkey managed more than 75 "High Net Worth Client" relationships, the assets of which totaled more than $500 million, and was ranked the second highest producer in her department.  Id. ¶ 10.  In or around January 2009, Defendant Lassiter, Ms. Sharkey's direct supervisor, assigned her to manage a long term client of J.P. Morgan (referred to above and hereinafter as "Suspect Client").  Id. ¶ 18.  The Suspect Client, a high-revenue producing foreign client, had been a client of J.P. Morgan for more than 20 years and generated quarterly returns for the Company of approximately $150,000.  Id.

Mere days after Ms. Sharkey was assigned to the Suspect Client's account, members of J.P. Morgan's compliance and risk management team contacted Ms. Sharkey to express their concerns regarding the Suspect Client's alleged involvement in illegal activities, including allegations of mail fraud, bank fraud and money laundering, all of which Ms. Sharkey immediately conveyed to Ms. Lassiter.  Id. ¶ 20.  At or around the same time in the first half of 2009, the Office of the Comptroller of the Currency ("OCC"), an independent bureau of the U.S. Department of the Treasury tasked to charter, regulate and supervise all national banks, was conducting an audit of J.P. Morgan's Northeast Region's Private Wealth Management group and J.P. Morgan's compliance with Know Your Customer ("KYC") requirements.  Id. ¶ 21.  Ms. Sharkey came to learn that OCC's investigation and audit was focused in great part on the Suspect Client, several Private Wealth Management accounts that the Suspect Client created, and

J.P. Morgan's compliance – or lack thereof – with respect to KYC requirements on these accounts.[2]  In light of both the OCC audit and the concerns of J.P. Morgan's own compliance and risk management team, Ms. Sharkey came to learn of several suspicious issues surrounding the Suspect Client, such as: 1) the Suspect Client's account was opened under Private Wealth Management, where oversight was less stringent than in the Commercial Banking division; 2) prior attempts by others to ensure compliance with KYC requirements for the Suspect Client were either never completed or met with avoidance and/or obfuscation; 3) the source of the Suspect Client's wealth could not be determined; 4) there were concerns that the Suspect Client had previously been involved in a business dealing which resulted in a loss of several million dollars by another bank; and 5) there were known allegations that the Suspect Client, through a prior corporation, was involved in the unexplained disappearance of millions of dollars of a product that was the basis for his purportedly legitimate business.  Id. ¶¶ 25.a–25.f.

With this information, despite the fact that this did not arise in the course of her normal job duties, Ms. Sharkey and several other individuals assigned to the Suspect Client's account conducted research and communicated with J.P. Morgan's compliance and risk management team to determine whether the Suspect Client was engaging in fraud, money laundering, mail fraud, bank fraud, and/or violating federal securities laws, as suspected.  Id. ¶ 26.  Based on her research, Ms. Sharkey formed a reasonable belief that the Suspect Client was engaged in fraud, money laundering, mail fraud, bank fraud, and/or violating federal securities laws, and that J.P. Morgan should immediately terminate the client relationship.  Id.  Ms. Sharkey shared her

---

[2] Generally, KYC is the due diligence that financial institutions must perform to identify their clients and ascertain relevant information pertinent to doing financial business with them.  More specifically, KYC is a policy implemented by banks to conform to a Customer Identification Program ("CIP") mandated by the Bank Secrecy Act, Title III of the USA PATRIOT Act, and federal regulations to prevent, inter alia, money laundering and terrorist financing.  Am. Comp. ¶¶ 23-24.

conclusions with Mr. Kenney, Mr. Green, and Ms. Lassiter, both in the form of verbal and

written recommendations.  Id.

     More specifically, Ms. Sharkey reasonably believed that the Suspect Client was engaging

in fraud, money laundering, mail fraud, bank fraud, and/or federal securities laws violations,

based on the following suspicious and/or illegal activities:

- The Suspect Client, on the rare occasion when he would provide requested
  documentation, would use unusual or suspicious identification documents that could not
  be readily verified, such as foreign passports or documents in foreign languages.

- The Suspect Client refused, with regard to either existing or new accounts, to provide
  complete information about the nature and purpose of its business, anticipated account
  activity, prior banking relationships, the names of its officers and directors, or
  information on its business locations, or tax returns.

- Some of the Suspect Client's accounts, at times, acted as a trust or shell company, and the
  Suspect Client was reluctant to provide information on controlling parties and/or
  signatories on these accounts.

- The Suspect Client either refused or was reluctant to provide Ms. Sharkey with
  information needed to complete the mandatory KYC report.

- Funds transfer activities in the Suspect Client's accounts were unexplained, repetitive,
  and/or would show unusual patterns.

- Payments or receipts with no apparent links to legitimate contracts, goods, or services
  would be received in the Suspect Client's accounts.

- Funds transfers would be sent or received within and between the Suspect Client's own
  accounts and/or unusual transfers of funds would occur among the Suspect Client's
  related accounts or among accounts that involved the same or related principals.

- Ms. Sharkey was unable to obtain from the Suspect Client sufficient information to
  positively identify originators, beneficiaries and/or signatories of accounts.

- Payments to or from the Suspect Client's accounts and/or companies would have no
  stated or legitimate business purpose.

- The Suspect Client's transacting businesses, although not similar in their lines of
  business, would share the same address and/or exhibited other address inconsistencies,
  such as not in fact maintaining an office where one was listed.

- The Suspect Client maintained accounts and transacted deposits through multiple branches of J.P. Morgan across various geographical areas.

- The Suspect Client established multiple accounts in various corporate or individual names that lacked sufficient business purpose for the account complexities and/or appeared to be an effort to hide the beneficial ownership from J.P. Morgan.

Id. ¶¶ 27.a–27.q.

Furthermore, Ms. Sharkey discovered and reported that the Suspect Client would secure loans or margins by deposits or other readily marketable assets, such as securities, which in effect would put J.P. Morgan and its shareholders at risk if any of said loans or margins defaulted, and that the Suspect Client was involved in potentially higher-risk activities, including activities that may be subject to export/import restrictions.  Id. ¶¶ 27.j–27.k.  Of particular concern to Ms. Sharkey was a several million dollar account that the Suspect Client had set up in the name of a law firm, which she was told was supposedly set up as an escrow account to hold licensing fees associated with one of the Suspect Client's businesses.  Id. ¶ 28.  Although she was informed that this account was set up as an escrow account, the Suspect Client would trade securities in and from this account for his own benefit and, once the trade settled, the Suspect Client would wire transfer the proceeds from the trade to personal checking accounts maintained by the Suspect Client at various J.P. Morgan commercial branches, without authorization or knowledge of the law firm, and which Private Wealth Management had no means of tracking. Id. ¶ 29.  Moreover, under this same purported escrow account, the Suspect Client purchased several million dollars worth of securities on margin, i.e., on a loan from J.P. Morgan for which it and its shareholders would bear the risk.  Id. ¶ 30.

In sum, the aforementioned activities, in addition to others listed in the Amended Complaint, constitute either direct or circumstantial evidence that warranted Ms. Sharkey's conclusion that the Suspect Client may have been engaged in fraud, money laundering, bank

fraud, mail fraud, and/or federal securities laws violations.  Id. ¶ 36.  Moreover, the Suspect

Client's attempts to avoid or hinder Ms. Sharkey's efforts to conduct her investigation and/or

comply with KYC requirements, which are in turn requirements mandated by, *inter alia*, the

Bank Secrecy Act, the USA PATRIOT Act, and/or other federal securities laws, constituted

additional violations of law for which J.P. Morgan and its shareholders could be liable if it was

proven that J.P. Morgan condoned or was complicit in avoiding KYC requirements.  Id. ¶ 37.

       The results of Ms. Sharkey's investigation of the Suspect Client caused her to form an

actual, good faith belief that the Suspect Client's conduct constituted fraud, money laundering,

bank fraud, mail fraud, and/or federal securities laws violations.  Id. ¶ 38.  Ms. Sharkey

communicated her complaints regarding the illegal and/or suspicious activities alleged above to

Mr. Kenney, Mr. Green and Ms. Lassiter over an extended period of time.  Id. ¶ 39.  Ms. Sharkey

communicated her complaints regarding the illegal and/or suspicious activities alleged above to

Mr. Kenney, Mr. Green and Ms. Lassiter via e-mail, telephone calls, telephone conferences, and

in-person meetings.  Id. ¶ 40.  Despite Ms. Sharkey communicating her complaints regarding the

illegal and/or suspicious activities alleged above to Mr. Kenney, Mr. Green and Ms. Lassiter,

these complaints were continually ignored.  Id. ¶ 41.

       Thus, not only was Ms. Sharkey hindered from completing her KYC report on the

Suspect Client by his repeated failure to provide required documentation and information, but

she was now also concerned – based on the investigation she conducted above – that a continued

relationship with the Suspect Client was placing J.P. Morgan and its shareholders at risk.  Id. ¶

42.  With no other recourse, and because she reasonably believed that the Suspect Client was

engaging in fraud, money laundering, bank fraud, mail fraud, and/or federal securities laws

violations, Ms. Sharkey informed J.P. Morgan's compliance department of her good faith belief

that the Suspect Client was, based on the information above, engaged in fraud, money

laundering, bank fraud, mail fraud, and/or federal securities laws violations.  Id. ¶ 43.  Therefore,

J.P. Morgan's compliance department was also aware of the results of Ms. Sharkey's

investigation and her reasonable belief that the Suspect Client was engaged in the illegal activity

detailed above.  Id.  On July 30, 2009, Ms. Sharkey submitted her final KYC report, which

contained her recommendation that J.P. Morgan immediately exit the relationship with the

Suspect Client.  Id. ¶ 44.  Mr. Kenney, Mr. Green, Ms. Lassiter, and members of J.P. Morgan's

compliance and risk management departments received a copy of Ms. Sharkey's completed KYC

audit on the Suspect Client's account.  Id.  Additionally, as stated above, prior to submitting the

KYC report, Ms. Sharkey had already complained to Mr. Kenney, Mr. Green, and Ms. Lassiter,

as well as compliance, about her reasonable belief that the Suspect Client was engaged in fraud,

money laundering, bank fraud, mail fraud, and/or federal securities laws violations.  Id.  Six days

after submitting her final KYC report, on August 5, 2009, Defendants unlawfully terminated Ms.

Sharkey's employment.  Id. ¶ 45.

On October 22, 2009, Ms. Sharkey filed a timely complaint (the "Administrative

Complaint") with OSH, alleging violations of SOX.  Id. ¶ 5.  On or about April 12, 2010, OSHA

issued its findings and preliminary order, but did not issue a final decision on Plaintiff's

Administrative Complaint within 180 days of its filing.  Id. ¶¶ 6-7.[3]  Accordingly, pursuant to 18

---

[3] Any consideration of the OSHA order is inconsistent with 18 U.S.C. § 1514(b)(1)(B) which provides for *de novo* review of SOX claims filed in district court.  See Fraser v. Fiduciary Trust Co., Int'l, No. 04 Civ. 6958 (RMB)(GWG), 2005 WL 6328596 (S.D.N.Y. June 23, 2005) (quoting Hanna v. WCI Communities, Inc., 348 F.Supp.2d 1322, 1325 (S.D. Fla. 2004) ("under the '*de novo* review' provided by SOX, 'district courts are able to consider the merits of a plaintiff's whistle-blower [administrative] compliant as if it had not been decided previously.'").  "Under the Sarbanes-Oxley Act's procedures, it is only when a case reaches the administrative law judge that 'rules or principles designed to assure production of the most probative evidence will be applied.' Moreover, only the administrative law judge issues decisions that 'contain appropriate findings, conclusions, and an order pertaining to the remedies.'"  Hanna, 348 F. Supp. 2d at 1325 (quoting 29 C.F.R. §§ 1980.107, 1980.109).  Moreover, it is well-established that

U.S.C. § 1514A, Plaintiff is entitled to, and in fact seeks, *de novo* review of OSHA's finding and preliminary order.

On May 10, 2010, Plaintiff filed her original federal Complaint in this Court, which asserted claims of unlawful retaliation as a result of Ms. Sharkey's unlawful termination under SOX and a state law claim for breach of contract.  By Notice of Motion dated June 1, 2010, Defendants moved to dismiss the Complaint in full, which Plaintiff opposed.  As stated above, by Opinion and Order dated January 14, 2011, this Court held that Ms. Sharkey engaged in a protected activity under SOX, but that the illegal activity of the Suspect Client was not adequately alleged in the original complaint.  Sharkey, 2011 WL 135026, at *4-8.  While Plaintiff's state law breach of contract claim was dismissed with prejudice, Ms. Sharkey was granted leave to replead her SOX claims, which she accomplished by filing the Amended Complaint on February 14, 2011.  Id. at *10.

## ARGUMENT

## I.    STANDARD FOR A MOTION TO DISMISS

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard that merely requires that a complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1947); see also Bell Atlantic Corp. v.

administrative determinations offer little probative value and are traditionally ruled inadmissible, although precedent on this issue has primarily evolved under the more well-developed case law of Title VII. However, where both statues provide for *de novo* review of agency determinations, the reasoning for this position is analogous.  See Noni v. County of Chautauqua, 511 F. Supp. 2d 355, 357 (W.D.N.Y. 2007) ("Because the EEOC's determination letter contains only conclusory findings that fail to describe the nature of its investigation or the basis for its conclusions, it is of little probative value and is likely to be found inadmissible at trial."); Dodson v. CBS Broad. Inc., 423 F. Supp. 2d 331, 334-35 (S.D.N.Y. 2006) ("Given the low probative value of the EEOC determination compared to the risk that the jury will be unduly influenced despite any limiting instruction, the Court will exclude the document.").  Thus, Plaintiff respectfully requests that the Court disregard the OSHA order attached as Exhibit B to the Declaration of Michael D. Schissel.

Twombly, 550 U.S. 554, 555 (2007).  Subsequent to Twombly, the Supreme Court clarified any doubt about a heightened pleading standard by reiterating that Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief'" and that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, (2007) (citing Twombly, 550 U.S. at 555).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).  Further, when deciding a motion to dismiss pursuant to Rule 12(b)(6), "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims."  Palkovic v. Johnson, No. 06 Civ. 12600, 2008 U.S. App. LEXIS 12600, at *5 (2d Cir. June 13, 2008).

Therefore, in considering Defendants' motion to dismiss, the Court must accept as true all of the factual allegations in the Amended Complaint and draw all inferences in Plaintiff's favor.  See Rolon v. Henneman, 517 F.3d 140, 142 (2d Cir. 2008).  Further, the Court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Leavitt v. Bear Sterns & Co., 340 F.3d 94, 101 (2d Cir. 2007).  As set forth below, the Amended Complaint certainly satisfies this standard.

## II.   THE COURT HAS JURISDICTION TO REVIEW ALL ALLEGATIONS IN THE AMENDED COMPLAINT

Defendants' argument that "Plaintiff cannot simply amend her [original] Complaint to add allegations about [J.P. Morgan] employees, as the Court would not have subject matter jurisdiction to review those allegations . . ." has already been submitted to, considered by, and

rejected by this Court.  <u>See</u> Def. Reply Br. at 7.[4]  Moreover, Defendants' argument – made in

response to Plaintiff's proposal that she be granted leave to amend the original complaint, if

necessary – was *identically* presented in their original motion to dismiss, setting forth the same

factual and purportedly controlling legal arguments, which are rebutted and distinguished more

fully below.  <u>Id.</u> (citing <u>Trusz v. UBS Realty Investors</u>, No. 3:09 CV 268 (JBA), 2010 WL

1287148 (D. Conn. Mar. 30, 2010) and <u>Portes v. Wyeth Pharm., Inc.</u>, No. 06 Civ. 2689 (WHP),

2007 U.S. Dist. LEXIS 60824, *4 (S.D.N.Y. Aug. 20, 2007)).  In consideration of the parties'

prior positions, this Court ultimately granted Plaintiff leave to file the Amended Complaint and,

in so doing, rejected Defendants' jurisdictional argument.  Thus, where there is no newly-

developed factual evidence, and without a change in legal precedent, this Court's prior ruling to

grant Plaintiff leave to file an Amended Complaint by way of more detailed allegations regarding

the Suspect Client must prevail as the law of this case, and Defendants' renewed (albeit the

same) argument to dismiss the Amended Complaint for lack of jurisdiction must be denied.

Even if the Court is to reconsider Defendants' jurisdictional argument, Defendants'

position on this issue would create the illogical scenario that the Court granted Plaintiff leave to

replead the complaint to include additional and more detailed factual allegations concerning the

suspected fraudulent and illegal activity of the Suspect Client, only to inevitably lead to a

dismissal of the Amended Complaint for a lack of jurisdiction.  Specifically, Defendants submit

that the allegations contained in paragraphs 25-36 of the Amended Complaint were not included

in her Administrative Complaint, and thus this Court lacks jurisdiction to review them here.

There is no requirement under SOX or any case examining SOX that requires the plaintiff to

detail in elaborate fashion each and every factual allegation that supports his or her causes of

---

[4] Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint, dated
July 9, 2010.

action.  What is required, and what Plaintiff has done, is to put the alleged SOX-violating parties

on notice of the claims asserted against them and give OSHA (the regulating body charged with

enforcing the SOX whistle-blowing provision) an opportunity to investigate the claims.  Fraser v.

Fiduciary Trust Co., Int'l, No. 04 Civ. 6958 (RMB)(GWG), 2005 WL 6328596 (S.D.N.Y. June

23, 2005) ("Fraser I") (citing Willis v. Vie Fin. Grp., Inc., No. Civ.A 04-436, 2004 WL 1774575

(E.D. Pa. Aug. 6, 2004)); see also 18 U.S.C. § 1514A(b)(1)(A); 29 C.F.R. § 1980.103(c)

(delegating responsibility for administering SOX whistle-blowing provision to OSHA).  An

analysis and comparison of Plaintiff's Administrative Complaint and the instant Amended

Complaint demonstrates that Plaintiff has not, as Defendants would have the Court believe, made

new claims that were not asserted before OSHA.  Plaintiff has, at Defendants' request and the

Court's Order, simply added greater specificity to existing claims.  Each of these detailed

allegations originate from and/or are natural extensions of the original allegations set forth in the

OSHA Administrative Complaint and the original federal complaint.  Thus, Defendants cannot

credibly argue that they were unaware of Ms. Sharkey's allegations.

　　　　The allegations in paragraph 25 of the Amended Complaint, including all subparts, which

concern the information that Plaintiff was initially provided by J.P. Morgan's own compliance

and risk management team about the Suspect Client, are simply more detailed recitations of the

allegation in paragraph 12 of the Administrative Complaint.  See Am. Comp. ¶ 25; compare

Administrative Comp. ¶ 12.  The allegations in paragraphs 26-36 of the Amended Complaint,

including all subparts, which outline Ms. Sharkey's investigation of the Suspect Client and her

reasonable belief of fraudulent and illegal activity that arose as a result of her investigation, in

addition to her repeated communications of these fraudulent and illegal activities to the

Individual Defendants, are simply an extension of paragraph 13 of the Administrative Complaint.

See Am. Comp. ¶¶ 26-36; compare Administrative Comp. ¶ 13.  Including the more detailed, specific allegations from paragraphs 25-36 of the Amended Complaint in the Administrative Complaint was not required in order for this Court to retain jurisdiction over the facts alleged therein.  The Administrative Complaint and the subsequent proceedings that followed before OSHA gave the administrative agency ample opportunity to investigate *all* of the facts and circumstances surrounding the Amended Complaint and readily put Defendants on notice of the claims against them.

Moreover, should the Court entertain Defendants' argument on jurisdiction and analyze whether it has jurisdiction over the factual allegations contained within the Amended Complaint, it is respectfully submitted that the Court should look to the wealth of case law in connection with the "reasonably related" doctrine as it is applied to EEOC charges and subsequent ederal complaints.  The reason for this is that while courts have had decades to develop such doctrines with respect to laws such as Title VII, the body of case law surrounding SOX is in its infancy.  However, given the nearly identical purpose and framework of submitting Administrative Complaints to the EEOC and OSHA in, for example, Title VII and SOX cases, respectively, it is logical that the "reasonably related" doctrine for EEOC charges should similarly apply to whistleblowing complaints filed with OSHA.[5]  The "reasonably related" doctrine states that claims not asserted before the designated administrative agency "may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency."  Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotes and citations omitted).  "A

_____

[5] As it is under SOX, exhaustion of administrative remedies is an essential element of Title VII's statutory scheme and, as such, a precondition to bringing such claims in federal court.  See Francis v. City of New York, 235 F.3d 763, 768 (2d Cir.2000); see also Butts v. N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir.1993), superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care, 163 F.3d 684 (2d Cir.1998).

claim is considered reasonably related if the conduct complained of would fall within the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge that was made." Id. (internal quotes and citations omitted) (finding that a claim of race discrimination could reasonably be expected to grow even out of an "EEOC complaint fail[ing] to expressly allege race discrimination . . .," and thus the race discrimination claim was administratively exhausted). Thus, where it is indisputable that the more detailed allegations in the Amended Complaint are "reasonably related" to those originally raised in the Administrative Complaint, as they would have fallen – and, in fact, did – within the scope of OSHA's investigation which grew out of the Administrative Complaint, Plaintiff's administrative remedies with respect to all of the allegations in the Amended Complaint have been exhausted and are subject to the jurisdiction of this Court.

In support of their argument regarding jurisdiction, Defendants cite to Fraser I, which is clearly inapposite. In Fraser I, the defendants therein argued that the court did not have jurisdiction over a distinct claim of retaliation based on the protected activity contained within a "confidential memo" authored by the plaintiff, with the defendants claiming that this distinct allegation was not raised before OSHA. Id. at *5. This specific claim was considered part of the first of the plaintiff's four separate instances of alleged protected activity. Id. In Fraser I, the court's finding that the plaintiff failed to exhaust his administrative requirements was limited to this distinct claim pertaining to the "confidential memo," and the court proceeded to assume jurisdiction over the remaining portion of the first instance, and the whole of the second, third, and fourth instances. Moreover, the court's decision with respect to the "confidential memo" was based on a passing conclusion of the court alone, and without any analysis as to why and/or without an indication as to the plaintiff's claim to the contrary, except for a reference that the

"parties have not submitted [p]laintiff's original OSHA complaint, and [p]laintiff has failed to allege (or persuasively argue) that he satisfied [SOX's] exhaustion requirement . . . ." Id. at *6. Here, however, Plaintiff has demonstrated and persuasively argued – unlike the plaintiff in Fraser I, whose "confidential memo" claim was separate and distinct from the other instances – that all of the detailed allegations in the Amended Complaint originate and derive from the same general claim of whistleblowing originally asserted in the Administrative Complaint, and thus are entitled to the jurisdiction of this Court.

Moreover, after the plaintiff was granted leave to amend his complaint to cure certain deficiencies noted as to many of his claims by the court in Fraser I, the defendants again moved to dismiss.  Thus, in Fraser v. Fiduciary Trust Co. Int'l, 417 F. Supp. 2d 310 (S.D.N.Y. 2006) ("Fraser II"), the court again had the opportunity to consider the plaintiff's four instances of alleged protected activity, including the sub-instance regarding the "confidential memo."  Noting that it now had the opportunity to review the "confidential memo," thus implying that it was submitted to the court by the parties with respect to the amended complaint, the court went on to assume jurisdiction over the "confidential memo" claim, and thereafter ruled on the substantive legal sufficiency of the claim, finding that it did "not rise to the level of whistleblowing and [is] more reflective of [plaintiff's] complaints that [d]efendants did not follow his investment advice."  Id. at 322, 325.  While the "confidential memo" claim was ultimately dismissed by the court for reasons not present in the instant action, it is important to note that once the court had the opportunity to review the OSHA complaint in Fraser II, it assumed jurisdiction over that claim.  Clearly, given the above, Fraser I is not the case that Defendants would have this Court believe requires dismissal of Ms. Sharkey's Amended Complaint.

Defendants' other cited authorities are similarly distinguishable and unavailing.  In both Trusz and Willis, the courts were essentially presented with the question as to whether the SOX exhaustion requirement "precludes recovery for a *discrete act of retaliation that arose after the filing of the Administrative Complaint* but was never presented to the administrative agency for investigation."  Willis, 2004 WL 1774575, at *1 (emphasis added).  In each case, the plaintiff alleged in his federal action an additional act of retaliation (termination) after the filing of his OSHA complaint.  In Willis, the plaintiff failed to amend his Administrative Complaint to allege the later claim of retaliatory termination, and thus he was "precluded from pursuing his retaliatory termination claim in [Federal] Court," but permitted to pursue his claims of retaliation based on an earlier threat of termination and the loss of job responsibilities.  Id. at *6-7.  In Trusz, the plaintiff filed an amended Administrative Complaint with new acts of retaliation, including his termination, which occurred after the filing of the original OSHA complaint, and thus the defendants' motion to dismiss for lack of subject matter jurisdiction was denied.  2010 WL 1287148, at *3-5.  In the instant action, however, there is no discrete act that arose after the filing of Plaintiff's OSHA Complaint, and thus there was no need for Ms. Sharkey to file an amended Administrative Complaint.  Therefore, the authority cited by Defendants in support of their jurisdictional argument is inapplicable and distinguishable to the case at bar.

Thus, where the general nature of Plaintiff's complaints against Defendants was presented in her OSHA Complaint, and where more specific allegations naturally originating from those general assertions have been asserted in the Amended Complaint in direct response to this Court's decision to grant Plaintiff leave to do so, the entirety of the Amended Complaint is appropriately subject to the jurisdiction of this Court.

**III.    PLAINTIFF HAS STATED A CLAIM UNDER THE SARBANES-OXLEY WHISTLEBLOWER PROVISION**

The whistleblower provisions of SOX provide, in relevant part:

No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 . . . or that is required to file reports under section 15(d) of the Securities Exchange Act . . ., or any officer, employee . . . or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee –

>   (1) to provide information, cause information to be provided, or otherwise assist in any investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by --
>
> >  (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct).

18 U.S.C. § 1514A(a).

To assert a whistleblower claim under SOX, a plaintiff must show that: (i) she engaged in protected activity; (ii) the employer knew of the protected activity; (iii) she suffered an unfavorable personnel action; and (iv) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action.  See Fraser II, 417 F. Supp. 2d at 322 (citing Collins v. Beazer Homes USA, Inc., 334 F.Supp.2d 1365, 1375 (N.D. Ga. 2004).  Further, "SOX protects employees who provide information, which the employee 'reasonably believes constitutes a violation' of any SEC rule or regulation or 'Federal law relating to fraud against shareholders.'"  Fraser II, 417 F. Supp. 2d at 322 (quoting Collins, 417 F. Supp. 2d at 1375) (citing 18 U.S.C. § 1514A(a)(1)).

17

In the instant motion, just as in their last, Defendants' argument centers on the first and second prong of a SOX retaliation claim.  First, despite the thirty specific paragraphs and subparagraphs in the Amended Complaint outlining the potentially fraudulent and illegal conduct of the Suspect Client, Defendants argue that the Amended Complaint fails to allege protected activity because it does not specify the illegal conduct Plaintiff allegedly reported to Defendants. Second, despite making specific references in the Amended Complaint to, *inter alia*, 18 U.S.C. §§ 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud] and 1348 [securities fraud], and the USA PATRIOT Act, 31 U.S.C. § 5328, Defendants argue that Plaintiff still does not allege which statute she believes the Suspect Client violated.  And finally, despite specific allegations to the contrary and this Court's previous finding that Plaintiff "has properly pled that she engaged in conduct protected by 18 U.S.C. § 1514A when she repeatedly reported her concerns regarding the [Suspect] Client's illegal activity to the Individual Defendants and JPMC's risk and compliance team," Defendants continue to argue that J.P. Morgan did not know that Plaintiff engaged in a protected activity.  Sharkey, 2011 WL 135026, at *6.

### A.   THE AMENDED COMPLAINT PROPERLY ASSERTS A PROTECTED ACTIVITY UNDER SOX

In an absolute contravention of this Court's prior decision and the established law of this case, Defendants insist on rearguing the issue of whether Plaintiff has alleged that she engaged in a protected activity under SOX.  As a threshold matter, Plaintiff submits that to improperly raise this argument again in this manner requires immediate rejection.  As previously stated, the only remaining question for the Court to decide on the instant motion is whether Ms. Sharkey properly amended her complaint to "identif[y] the allegedly illegal conduct that forms the basis of her whistleblower complaint . . . [in light] of the SOX requirement that specific violations must be the subject of the whistle blowing . . . ," as directed by this Court.  Id. at *8.  Plaintiff is

nevertheless forced, once again, to remind Defendants that Plaintiff has already "properly pled that she engaged in conduct protected by 18 U.S.C. § 1514A when she repeatedly reported her concerns regarding the [Suspect] Client's illegal activity to the Individual Defendants and JPMC's risk and compliance team." Id. at *6. However, even if given consideration, Defendants' argument must fail.

First, Defendants argue that the Amended Complaint does not specify which of the detailed allegations in paragraphs 27-36 of the Amended Complaint, "if any, were conveyed to which [J.P. Morgan] supervisor or when." See Def. Br. at 10. However, the Amended Complaint explicitly states, on no less than nine occasions, how, when and to whom Plaintiff reported her concerns of fraudulent and illegal activity on the part of the Suspect Client. See Am. Comp. ¶¶ 1, 17, 20, 26, 39, 40-41, 43-44. Defendants cite to no authority for the proposition that the exact date, time, and method of the protected activity must be pled and, at this very early pleadings stage, the Court must accept as true all of the factual allegations in the Amended Complaint and draw all inferences in Plaintiff's favor. See Rolon, 517 F.3d at 142. That being said, all of Plaintiff's communications and protected activity culminated in Ms. Sharkey's definitive communication to Defendants on July 30, 2009 – via her final KYC report – that J.P. Morgan immediately exit its relationship with the Suspect Client due to all of the concerns that Ms. Sharkey had previously reported.

Second, Defendants argue that the Amended Complaint is not specific enough to "assess whether Plaintiff's unspecified 'complaints' to [J.P. Morgan] 'definitively and specifically relate[d] to one of the six enumerated categories of misconduct contained in SOX § 806.'" See Def. Br. at 11 (quoting Fraser v. Fiduciary Trust Co. Int'l, No. 04 Civ. 6958 (PAC), 2009 WL 2601389, at *5 (S.D.N.Y. Aug. 25, 2009) ("Fraser III"). Just by way of example, Defendants

refer the Court to the allegations which, on their very face, implicate one or more of the six enumerated categories of misconduct contained in SOX § 806: the Suspect Client would secure loans or margins by deposits or other readily marketable assets, such as securities, which in effect would put J.P. Morgan and its shareholders at risk if any of said loans or margins defaulted; the Suspect Client was involved in potentially higher-risk activities, including activities that may be subject to export/import restrictions; under the several million dollar account that the Suspect Client had purportedly set up in the name of a law firm escrow account, the Suspect Client purchased several million dollars worth of securities on margin, i.e., on a loan from J.P. Morgan for which it and its shareholders would bear the risk.  See Am. Comp. ¶¶ 27.j-27.k, 28-29.  Thus, it is self-evident that in all of the aforementioned communications that are alleged by Plaintiff, which must be accepted as true, she was informing J.P. Morgan and the Individual Defendants of any and/or all of the suspected fraudulent and illegal activity being perpetrated by the Suspect Client against the Company and its shareholders.  Therefore, as this Court has already found, Plaintiff was engaging in a protected activity under SOX.

Furthermore, Defendants should not be permitted – again – to hide behind a cloak of anonymity.  Just as they did in their motion to dismiss the original complaint, Defendants are asserting that certain allegations with respect to the Suspect Client are too vague and non-specific to pass muster under Iqbal and Twombly.  However, it was Defendant J.P. Morgan itself, through counsel, who sought the intervention of this Court to ensure that the identity of the Suspect Client remained anonymous.  Thus, Plaintiff agreed not to identify the Suspect Client by name, and to phrase her allegations in such a manner that the Suspect Client could not readily be identified.  Therefore, in light of the fact that all inferences must be drawn in favor of Plaintiff at this stage of litigation, coupled with Plaintiff's willing agreement to allow the Suspect Client to

remain anonymous, Defendants should not be permitted to use Plaintiff's professional courtesy as a weapon against her.

As in their jurisdictional argument, the authority cited by Defendants is distinguishable and inapplicable.  Fraser III was decided on summary judgment, and thus the court had a full record and different standards by which to evaluate the plaintiff's claims.  2009 WL 2601389, at *1.  Defendants gloss over the fact that in Fraser II, two of the plaintiff's whistle-blowing "instances" were permitted to proceed to discovery, and instead – in a self-serving manner – focus on the two "instances" which pertained to "a complaint that [plaintiff's] advice was not being followed but contain[ed] no communication from [plaintiff] to any of the Defendants indicating that [plaintiff] believed the company to be violating any provision related to fraud on shareholders."  417 F. Supp. 2d at 323.  However, in the instant action, all of Plaintiff's communications to Defendants regarding the Suspect Client concerned the likelihood that he was in violation of several of the SOX enumerated statutes and that the Company's stockholders could be at risk.  Finally, Portes is the most clearly distinguishable, given that "[t]he purported violations involved [a] Consent Decree, FDA Regulations, EU regulations, and other drug manufacturing guidelines, not SEC rules or other federal law related to fraud against shareholders."  2007 U.S. Dist. LEXIS 60824, at *4.

### B.   THE AMENDED COMPLAINT EXPLICITLY ALLEGES EACH ENUMERATED SOX STATUTE WHICH PLAINTIFF BELIEVES THE SUSPECT CLIENT VIOLATED

In order to state a whistleblower claim under SOX, a "plaintiff need not show an actual violation of the law," instead, "SOX protects employees who provide information which the employee 'reasonably believes constitutes a violation' of any SEC rule or regulation or 'Federal law relating to fraud against shareholders.'"  Fraser I, 417 F. Supp. 2d at 322 (citing 18 U.S.C. § 1514A(a)(1)).  In assessing the reasonableness of a plaintiff's belief regarding the illegality of

21

the particular conduct at issue, courts look to the "basis of knowledge available to a reasonable person in the circumstances with the employee's training and experience."  See Mahoney v. Keyspan Corp., No. 04 CV 554 (SJ), 2007 WL 805813, *5 (E.D.N.Y. Mar. 12, 2007).  The legislative history of SOX provides that the reasonableness test "is intended to impose the normal reasonable person standard used and interpreted in a wide variety of legal contexts." Legislative History of Title VII of HR 2673: The Sarbanes-Oxley Act of 2002, 148 CONG. REC. S7418, S7420 (July 26, 2002).  "The threshold is intended to include all good faith and reasonable reporting of fraud, and there should be no presumption that reporting is otherwise, absent specific evidence."  Id.

In the Opinion on Defendants' motion to dismiss the original complaint, this Court found that Ms. Sharkey had "not [at that time] identified the allegedly illegal conduct that forms the basis of her whistleblower complaint."  Sharkey, 2011 WL 135026, at *8.  A review of the Court's analysis shows that this finding was based on the fact that Plaintiff – as the Court noted – conceded "that to state a SOX whistleblower claim the employee's communications must identify the specific conduct that the employee believes to be illegal . . . [and] that the [original] Complaint does not specifically state that Ms. Sharkey notified the Individual Defendants that she believed the Suspect Client had actually violated federal securities laws . . . ."  Id. (internal citations and quotations omitted).  However, as is clear from the Amended Complaint – which now contains no less than twelve paragraphs reciting each enumerated SOX statute Plaintiff reasonably believed the Suspect Client to be violating, in addition to money laundering (see Am. Comp. ¶¶ 1, 17, 20, 26-27, 36-38, 43-44, 52, 57), and no less than thirty distinct paragraphs and subparagraphs outlining the specific fraudulent and illegal conduct of the Suspect Client (see Am. Comp. ¶¶ 25.a-25.g, 27.a-27.q, 28-37) – Plaintiff has cured these shortcomings and

Defendants' renewed motion to dismiss must be denied.  It should be without debate that the

Amended Complaint now contains the requisite "degree of specificity and [] state[s] particular

concerns which, at the very least, reasonably identify [the Suspect Client's] illegal conduct that

[Plaintiff] believes to be illegal."  Fraser I, 417 F. Supp. 2d at 322 (internal citation omitted).

Defendants now complain that Plaintiff "lumps together all the enumerated statues from

SOX," and thus J.P. Morgan "is left trying to determine which statute could apply."  See Def. Br.

at 13.  However, what Defendants apparently do not understand is that Plaintiff, on the basis of

her knowledge and investigation, reasonably believed the Suspect Client to be violating each of

the enumerated SOX statutes, in addition to money laundering statutes.  "According to § 1514A,

plaintiff is only required to have *reasonably believed* that the problem about which he [or she]

was complaining constituted 'a violation of ... [a] provision of Federal law *relating to* fraud

against shareholders.'"  Smith v. Corning Inc., 496 F. Supp. 2d 244, 248 (W.D.N.Y. 2007)

(emphasis in original); see also Welch, 536 F.3d at 277 (noting that the Administrative Review

Board "has squarely held that § 1514A protects an employee's communications based on a

reasonable, but mistaken, belief that conduct constitutes a securities violation.").  Thus, while

Ms. Sharkey believed that the Suspect Client was violating the enumerated SOX statutes, and

communicating these concerns to Defendants, it was also reasonable for Ms. Sharkey – based on

a reasonable person in the circumstances with her training and experience – to believe that the

Suspect Client's suspected money laundering would also have constituted a violation of a

provision of Federal law relating to fraud against shareholders, especially where, as here, Ms.

Sharkey was a firsthand witness to the risk which the Suspect Client's activities exposed the

Company's shareholders.  Thus, even Plaintiff's concerns relating to money laundering would

constitute a protected activity under SOX.  Nevertheless, in their desperation, Defendants

attempt to distract the Court's attention by stating that "the Amended Complaint appears to focus on the money laundering statute."  See Def. Br. at 13.  However, in citing to the Federal Financial Institutions Examination Council ("FFIEC") Bank Secrecy Act/Anti-Money Laundering InfoBase, Plaintiff explicitly stated that it was "for example only," and Defendants' willful ignorance concerning the myriad of allegations implicating the enumerated SOX statutes will not obviate the fact that the instant motion must be denied.  See Am. Comp. ¶ 27.

In sum, it is clear that the Amended Complaint cures the limited deficiency on which the Court originally granted the motion to dismiss without prejudice and with leave to replead.  As such, Defendants' renewed motion must be denied.

### C.   PLAINTIFF ALLEGES FACTS SUFFICIENT TO ESTABLISH THAT DEFENDANT J.P. MORGAN KNEW ABOUT PLAINTIFF'S PROTECTED ACTIVITY

Whether in ignorance or disregard for the Court's prior Opinion, Defendants argue – as they did in their original motion to dismiss – that Plaintiff fails to allege that Defendant J.P. Morgan "knew or should have known that Plaintiff engaged in such [protected] activity."  See Def. Br. at 14.  "Plaintiff has properly pled that she engaged in conduct protected by 18 U.S.C. § 1514A *when she repeatedly reported her concerns regarding the [Suspect] Client's illegal activity to the Individual Defendants and JPMC's risk and compliance team*."  Sharkey, 2011 WL 135026 at *6 (emphasis added).  Thus, having failed to seek reconsideration of this finding, it remains the clear law of the case that: 1) Plaintiff engaged in conduct protected by SOX; and 2) Defendant J.P. Morgan and the Individual Defendants knew that Plaintiff engaged in conduct protected by SOX via her repeatedly reported concerns regarding the Suspect Clients fraudulent and illegal activity; and 3) Defendants are not presently entitled to relitigate this finding.  See Zdanok, 327 F.2d at 953.

Moreover, as previously stated, the Amended Complaint is rife with instances of how, when and to whom Plaintiff reported her concerns of fraudulent and illegal activity on the part of the Suspect Client.  See Am. Comp. ¶¶ 1, 17, 20, 26, 39, 40-41, 43-44.  As such, Defendant J.P. Morgan's claim that "Plaintiff still has not provided any detail about what she supposedly reported to [J.P. Morgan] . . . [and that] the Amended Complaint also fails to allege that [J.P. Morgan] knew or should have known about Plaintiff's alleged whistleblowing . . ." is wholly unsupported by the facts alleged in the Amended Complaint.

Based on these allegations and the sum total of the Amended Complaint, it is clear that Ms. Sharkey's supervisors, the Individual Defendants, and J.P. Morgan's compliance and risk management team were aware of her protected activity.  This is sufficient to establish that Defendant J.P. Morgan, as a corporate entity, was aware of her protected activity.  See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in protected activity.") (citing, inter alia, Alston v. New York City Transit Auth., 14 F. Supp. 2d 308, 311 (S.D.N.Y. 1998) ("In order to satisfy the second prong of her retaliation claim, plaintiff need not show that individual decision-makers within the NYCTA knew that she had filed . . . [an] EEOC complaint."); Reed v. A.W. Lawrence & Co., 95 F. 3d 1170, 1178 (2d. Cir. 1996) (holding that a plaintiff's complaint to an officer of the company communicated her concerns to the company as a whole).  Thus, even if the Court had not previously ruled on this issue, it is clear from the allegations of the Amended Complaint that Defendants had knowledge of Ms. Sharkey's protected activity.

## <u>CONCLUSION</u>

WHEREFORE, the Court should issue an order denying Defendants' motion to dismiss the Amended Complaint in its entirety, and for such other and further relief deemed just and proper.

Dated: New York, New York            Respectfully submitted,
       March 10, 2011

**THOMPSON WIGDOR & GILLY LLP**


By: /s/ Douglas H. Wigdor
      Douglas H. Wigdor
      Basil C. Sitaras

85 Fifth Avenue
New York, NY 10003
Tel: (212) 257-6800
Fax: (212) 257-6845
dwigdor@twglaw.com
bsitaras@twglaw.com

*Counsel for Plaintiff*