**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Lawrence M. Pearson**
lpearson@wigdorlaw.com

December 30, 2016

<u>VIA ECF</u>

The Honorable Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 18C
New York, NY 10007

      Re:   <u>Jennifer Sharkey v. J.P. Morgan Chase & Co., et al., No. 10 Civ. 3824 (RWS)</u>

Dear Judge Sweet:

We represent Plaintiff Jennifer Sharkey ("Sharkey" or "Plaintiff") in the above-referenced matter, and write in response to the letter of Jacques Semmelman sent to the Court on December 27, 2016, regarding his clients, who are the J.P. Morgan Chase & Co. ("JPMC") clients identified collectively in this litigation as "Client A," in reference to several individuals (a husband, wife and one of their sons, as well as their corporate entities). The Client A witnesses have first-hand personal knowledge and testimony to provide regarding the conduct and communications supporting Plaintiff's reasonable belief in potential unlawful activity. These witnesses must be subject to examination in person so their testimony can be properly subjected to follow-up questions and assessment by the jury. Further, Client A has made no proffer entitling them to confidentiality at trial, despite the well-established principles disfavoring such secrecy at trial. Finally, counsel for Client A did not meet and confer with Plaintiff's counsel regarding any of the requests or applications made to the Court (including that the subpoenas be quashed), despite the selective representations made regarding our brief telephone conversation about the subpoenas.

**I.    The Client A Witnesses Have Personal Knowledge of Essential Facts Regarding Sharkey's Belief of Possible Unlawful Activity and In-Person Testimony Is Necessary Beyond Their Depositions; No Reason to Excuse Client A from Testifying at Trial Has Been Presented**

Client A's counsel attempts to shift the focus and burden regarding the appropriateness of having the Client A witnesses testify at trial by asserting that his clients "have done nothing wrong." This assertion is unsupported, irrelevant and need not be taken at face value. The Client A witnesses are needed because they have first-hand knowledge that goes directly to whether Plaintiff had a reasonable belief that Client A was engaged in unlawful activity covered by the Sarbanes-Oxley Act ("SOX"). Their testimony clashes with that of several other witnesses, including Sharkey, which requires in-person examination. Finally, Client A has failed to present any substantive

# WIGDOR LLP
ATTORNEYS AND COUNSELORS AT LAW

The Honorable Judge Robert W. Sweet
December 30, 2016
Page 2

reasons or material that would come close to demonstrating the "undue burden" required to quash the subpoenas.

> A.  **The Client A Witnesses Have Direct Knowledge of Facts Relating to Plaintiff's Belief that Unlawful Activity May Have Been Occurring; Whether or Not They Engaged in Wrongdoing Is Not the Real Issue at Trial**

The presentation of Client A as an "innocent non-party" not engaged in unlawful activity or wrongdoing ignores why the testimony of the Client A witnesses is necessary. Whether or not Client A did, in fact, engage in fraud, money laundering, use bank accounts to avoid taxes or other unlawful conduct is not the pertinent inquiry or issue. Instead, Plaintiff's claim under SOX rests upon her reasonable belief that Client A could have been engaging in certain types of unlawful conduct, and whether her complaints to JPMC management contributed to her termination.[1] Client A's counsel, on the second page of his letter, acknowledges that Plaintiff's reasonable belief is one of the primary issues in the case.

The Client A witnesses all have direct knowledge of communications and events that directly relate to Sharkey's reasonable belief, and Sharkey specifically identified Client A, his wife and their son as each playing a role in forming her belief and the basis for her complaints. See Deposition Transcript ("Dep. Tr.") of Jennifer Sharkey (Dkt. No. 98 at Ex. 1) at 48:24-49:6, 50:12-17, 53:20-24.[2] Client A's assertion that they have no personal knowledge pertaining to the issues is manifestly untrue. The Client A witnesses all have personal, first-hand and essential knowledge of relevant events and communications – including contacts with Sharkey, her supervisor Defendant Lassiter and other JPMC personnel about Know Your Client ("KYC") requests, documents and other matters (such as whether or not JPMC followed through on Sharkey's recommendation to exit the relationship). See Dkt. No. 98 at Ex. 8 (Client A Dep. Tr.) at 19:10-25:22; Client A wife Dep. Tr. at 17:5-23:10; Client A son Dep. Tr. at 25:24-27:25, 34:16-54:22.

The Client A witnesses received many requests for material to satisfy federal KYC requirements from Sharkey and others at JPMC, and displayed a lack of cooperation with same (despite their

---

[1] For example, government banking authorities and industry experts recognize the use of lawyers' client trust accounts as a known money laundering method, and one that easily could have been suspected by Plaintiff to be at work here given Client A's seemingly unauthorized use of the Ostrager escrow account, among many other red flags. See, e.g., Beck, Susan, "Are US Lawyers a Weak Link in the Fight Against Money Laundering?," Dec. 22, 2016, Corporate Counsel, http://www.corpcounsel.com/home/id=1202775479896/Are-US-Lawyers-a-Weak-Link-in-the-Fight-Against-Money-Laundering?mcode=1202617073467&curindex=4 (last visited Dec. 28, 2016).

[2] Copies of the record evidence cited herein, much of which is still labeled "Confidential," can be provided to the Court and other parties, as appropriate, upon request.

**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

The Honorable Judge Robert W. Sweet
December 30, 2016
Page 3

letter's assertions to the contrary), all of which contributed to Sharkey's reasonable belief. See Dkt. No. 97 (Memorandum of Law in Opposition to Summary Judgment) at pp. 5-12; Dkt. No. 98 at Exs. 5 (Kathleen Gruszczyk (Risk department) Dep. Tr.), 16 (JPMC email commenting on Client A), 20 (April 8, 2009 email from Gruszczyk to Lassiter and Sharkey), 21 (JPMC email commenting on Client A), and 22 (Gruszczyk document regarding Client A). The above-cited JPMC documents, among others, show that Client A's "cooperation" was sporadic and grudging at best. These documents further demonstrate that suspicions of wrongdoing by Client A were not limited to Plaintiff and were based on substantial evidence, not just speculation or the input of Sharkey alone (as Client A seems to suggest).

      **B.**      **Discrepancies Between the Deposition Testimony of the Client A Witnesses, Sharkey and Defense Witnesses Require In-Person Testimony at Trial; In-Person Testimony at Trial Is Heavily Favored in the Second Circuit**

Client A's selective presentation of the "gist" of their deposition testimony also ignores various contradictions and disputes regarding the Client A witnesses' testimony. The third-party Client A witnesses are not being called simply to repeat deposition testimony. Their in-person trial testimony is necessary because at deposition they gave testimony about meetings, communications and documents that contradicted the testimony of other witnesses. See Dkt. No. 98 at Ex. 8 (Client A Dep. Tr.) at 19:10-25:22; Client A wife Dep. Tr. at 17:5-23:10; Client A son Dep. Tr. at 25:24-27:25, 34:16-54:22. These contradictions must be explored through further examination, and in the context of the trial testimony provided by other witnesses. Many of the disputes and discrepancies are central to the issues to be litigated at trial, such as the extent of the efforts to obtain documents from Client A, whether they complied with those requests, and whether JPMC followed through on its supposed endorsement of Sharkey's recommendation to sever the Client A relationship. By way of example only, the Client A witnesses are needed to testify on their direct communications with JPMC personnel, including Defendant Lassiter (Sharkey's immediate supervisor), in the wake of Sharkey's termination. Contrary to Lassiter's testimony that she told Client A about JPMC's plans to exit (a critical component of JPMC's defense), the Client A witnesses are expected to testify that JPMC made no mention of severing the relationship. See Dkt. No. 97 at pp. 14-15; Dkt. No. 98 at Exs. 2 (Lassiter Dep. Tr.), 8 (Client A Dep. Tr.), and 31 (Oct. 2, 2009 letter from Client A to JPMC failing to mention any exit discussion); Dkt. No. 99 (Rule 56.1 Counterstatement) at ¶¶ 21-27. If Sharkey's beliefs regarding the Client A witnesses' conduct is subject to challenge, she must be able to question those witnesses at trial, beyond their deposition testimony and in the presence of the jury.

Further, in-person testimony is vital for the jury to assess the credibility and accuracy of the testimony of the Client A witnesses (with whom Sharkey was dealing directly), and therefore whether Sharkey's suspicions were reasonable. For these reasons, and more, Plaintiff (and

**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

The Honorable Judge Robert W. Sweet
December 30, 2016
Page 4

virtually all parties) and courts do, in fact, have a general, overriding preference for in-person testimony at trial.  See BlackRock Inc. v. Schroders PLC, No. 07 Civ. 3183, 2007 WL 1573933, at *9 (S.D.N.Y. May 30, 2007) (noting that **although the matter could be tried without live testimony from unwilling witnesses, "so proceeding would be contrary to the policy of this Circuit"**) (citing DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 30 (2d Cir. 2002)) (emphasis added).  Live testimony is crucial to presenting one's case properly and effectively.

Therefore, the jury should be able to see and hear the Client A witnesses in person.  This is particularly important when discrepancies will exist between their testimony and that of other witnesses (such as Sharkey and Lassiter, who will of course be appearing in person as well).

> **C.  The Client A Witnesses Have Failed to Present Any Substantive Reason to Excuse Them From Testifying at Trial; Therefore, They Have Failed to Demonstrate the Necessary "Undue Burden" to Quash**

It is well-established that "the burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant."  Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y.1996) (internal quotation marks and citations omitted).  The Client A witnesses have provided no reason for being excused, apart from their having been deposed – an excuse that many witnesses at any civil trial could make.  This obviously is no reason to quash the subpoenas.[3]  See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 262 F.R.D. 293, 300-01 (S.D.N.Y. 2009) ("The preference for live testimony is well established in this Circuit . . . Thus, **parties who have been served properly under Rule 45 cannot demand that their depositions be used in lieu of live trial testimony**.") (emphasis added).

Client A refers to Fed. R. Civ. P. 45(d)(3)(A)(iv)'s "undue burden" provision regarding subpoenas, but fails to explain how their situation falls within this category, beyond a flat, conclusory assertion of innocence or "severe consequences."  Client A fails to cite any fact, authority or legal principle that supports blocking or limiting the testimony of these third-party witnesses.  "An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party.  Whether a subpoena imposes an 'undue burden' depends upon 'such factors as relevance . . . and the burden imposed.'"  Universitas Educ., LLC v. Nova Grp., Inc., No. 11 Civ. 1590 (LTS)(HBP), 2013 WL 3328746, at *5 (S.D.N.Y. July 2, 2013)

---

[3]    Plaintiff's designation of deposition testimony from the Client A witnesses in the Joint Pretrial Order is of no relevance.  The designations were made as a precautionary measure to comply with the Court's deadline, in anticipation of potential witness unavailability or noncooperation.  Whether there is deposition testimony that can be designated for the Client A witnesses has no bearing on whether or not they should testify at trial.  In fact, the designation of this testimony, and Client A's acknowledgement of it, demonstrates that their testimony is in fact necessary and will play a role in deciding the case.

**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

The Honorable Judge Robert W. Sweet
December 30, 2016
Page 5

(quoting Bridgeport Music Inc. v. UMG Recordings, Inc., No. 05 Civ. 6430 (VM)(JCF), 2007 WL 4410405, at *2 (S.D.N.Y. Dec. 17, 2007)).  "Because the burden is on the party seeking to quash a subpoena, **that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance**."  Kirschner v. Klemons, No. 99 Civ. 4823 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (internal citation omitted) (emphasis added); see also 9 James Wm. Moore et al., Moore's Federal Practice, ¶ 45.51[4] (3d ed. 2009) ("A party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").  Moreover, "**inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony**."  Kirschner, 2005 WL 1214330, at *2 (emphasis added).

Motions to quash trial subpoenas are generally granted only under the most dire of circumstances.  See, e.g., Kirschner, 2005 WL 1214330, at *3 (holding that it is not an undue burden for an 88-year-old non-party witness with mobility problems to testify at trial where the party seeking to quash the subpoena provided "no affidavit or specific information regarding the manner and extent of the burden"); James v. Runyon, No. 91 Civ. 246, 1993 WL 173468, at *2 (N.D.N.Y. May 17, 1993) (holding that movant non-party witness is not subjected to undue burden by testifying at trial because the Court's interest in having all available information germane to the controversy outweighs the temporary interruption of movant's substance abuse treatment).  The Client A witnesses have all accepted service of the subpoenas and have residences well within 100 miles of the courthouse.  Indeed, on my call with counsel for Client A, Mr. Semmelman, the only restriction that was mentioned regarding the Client A witnesses' availability at trial was that they are going on a cruise beginning on Friday, January 27, 2017, and therefore would have to appear on one of the first few days of the trial, set to begin on January 23, 2017.

The three Client A witnesses, Client A, his wife and one of their sons, are central to the facts of this case.  All three were subpoenaed and their depositions taken during discovery.  They have first-hand knowledge of the KYC requests from and communications with JPMC and Sharkey, and were the subject of Plaintiff's complaints to her managers.  Plaintiff must obtain testimony from the Client A witnesses in the context of other witnesses' trial testimony, and have the chance to further test their deposition testimony in light of various disputes in the record.  The jury also should have the chance to assess the Client A witnesses in person, given the substantial credibility questions and factual discrepancies present.  No substantive reason to excuse these witnesses has been presented.  Therefore, the motion to quash should be denied.

**WIGDOR LLP**

ATTORNEYS AND COUNSELORS AT LAW

The Honorable Judge Robert W. Sweet
December 30, 2016
Page 6

> D. **Counsel for Client A Did Not Confer with Plaintiff's Counsel on the Motion to Quash, and Plaintiff's Counsel Did Not Purport to Limit the Testimony Sought or Provide a Full Account of Why In-Person Testimony Is Necessary**

Despite the fact that counsel for Client A consulted with Defendants' counsel, Michael Schissel, in advance of filing his letter (as mentioned on page 4 of the December 27, 2016 letter), counsel for Client A did not confer with Plaintiff's counsel about the instant application to the Court. Mr. Semmelman's letter to the Court is the first Plaintiff heard of Client A'a position that the subpoenas should be quashed or that the parties should be forced to refrain from identifying Client A at trial. Regrettably, rather than limiting his discussion to the merits of Client A's position, counsel for Client A also made representations about a brief discussion with me about service of the trial subpoenas (he agreed to accept service) and a brief, high-level discussion of Plaintiff's need for the Client A witnesses to testify at trial. It is unfortunate that this discussion has been portrayed as one in which Plaintiff's counsel expressed a mere "general preference for live testimony," rather than one in which only general thoughts on the subpoenas were shared and counsel for Client A took no position regarding the subpoenas.

Counsel for Client A did not take any specific position or make any of the arguments presented in the letter, beyond a veiled warning that Plaintiff would have "no idea" what Client A "might say" at trial. Presented with such a vague and noncommittal stance, I could only express an unwillingness to forego in-person testimony and posed some of its general and considerable advantages over deposition testimony to Mr. Semmelman. Client A's counsel said that he was not waiving his right to contest the subpoenas, that he was still getting up to speed on the case, and was merely "absorbing" what I had to say before taking a position.

The fact that Plaintiff's counsel did not provide a comprehensive list of the testimony that might be sought at trial beyond the depositions is unremarkable and immaterial. This brief telephone discussion was not a meet-and-confer on any proposed motion, and should not have been misleadingly presented as a statement of Plaintiff's position.

> II. **Third-Party Client A Is Not Entitled to Confidentiality at Trial, and Needless Secrecy Will Only Distract and Confuse the Jury; the Protective Order Was Not Intended to Interfere with Presentation of Evidence at Trial, and Its Application at Trial Must Be Reviewed**

Client A has presented no reason to believe, and only conclusorily asserts that the Client A witnesses will suffer any meaningful harm if their names are used at trial. Counsel for Client A also refers to a "right not to have his identity disclosed," but fails to even identify any basis for that

**WIGDOR LLP**

ATTORNEYS AND COUNSELORS AT LAW

The Honorable Judge Robert W. Sweet
December 30, 2016
Page 7

purported "right," beyond the general terms of the Protective Order and Fed. R. Civ. P. 45(d)(3)(A).

Although Client A's letter quotes Paragraph 12 of the Protective Order, it deemphasizes the fact that the Order expressly provides for reconsideration of confidentiality at trial, stating that: "**Nothing herein shall restrict the presentation of any evidence to the Court at trial or any other hearing in this action** . . ." (Dkt. No. 38 at ¶ 12) (emphasis added).  Paragraph 12 also goes on to state that parties or the Court may seek to take "**reasonable steps** to maintain the confidentiality of confidential material at trial . . . **in such manner as the Court may direct**." Id. (emphasis added).  Therefore, the Protective Order was not intended to simply carry over all of the same confidentiality restrictions and designations from discovery to the trial.  The issue is whether any "reasonable steps" should be considered to prevent wide dissemination of material that might plausibly unduly harm Client A (for which no support has yet been presented), rather than merely employing blanket secrecy.

There is no substantive basis for the Client A witnesses to keep their identity secret at trial.  On the contrary, the weight of legal authority and federal court practice strongly favors that a trial be open and accessible to the public and comprehensible to the jury.  See, e.g., Huminski v. Corsones, 396 F.3d 53, 81 (2d Cir. 2005) (citing Gannett Co. v. DePasquale, 443 U.S. 368, 383 (1979)) ("there is a strong societal interest in public trials. Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system.").

In addition, Paragraph 21 of the Protective Order, unmentioned by Client A, expressly provides that matters raised regarding the Protective Order's restrictions are to be reconsidered on their own merits, and that no party's willingness to enter into the Protective Order in the first place shall serve to prejudice that party later on:

> "Notwithstanding the foregoing provisions, this Protective Order shall be **without prejudice to the right of either party** to challenge the propriety of discovery on other grounds, or **to move the Court to modify, revise or amend this Protective Order.  The fact that a party entered into this Protective Order may not be raised as a defense to or argument against any such motion**."

(Dkt. No. 38 at ¶ 21) (emphasis added).

Case 1:10-cv-03824-DLC   Document 141   Filed 12/30/16   Page 8 of 9
ATTORNEYS AND COUNSELORS AT LAW

The Honorable Judge Robert W. Sweet
December 30, 2016
Page 8

Therefore, the mere existence of the Protective Order does not, in itself, entitle Client A to confidentiality. Witness anonymity is sometimes permitted in highly sensitive or potentially dangerous criminal matters, such as those involving sexual abuse or potential violent reprisals, and typically not in civil employment or financial cases. Client A has not presented any substantive information, much less evidence, that shows they would suffer any significant harm. The parties are not litigating whether Client A did, in fact, engage in unlawful activity, and there will be no known need for Client A to invoke the Fifth Amendment to the U.S. Constitution or any other circumstance that might implicate collateral legal rights (indeed, the Client A witnesses did not do so at their depositions).

Various JPMC documents referenced above (including from the Risk department and media stories) show that Plaintiff's suspicions regarding Client A were shared by others, and therefore Client A cannot claim that their discussion at trial would present new or unique threats to their reputation. A general preference by Client A regarding his name being "splashed in the public record," is insufficient and fails to account for the importance of the jury receiving a full, unadulterated presentation. See United States v. Int'l Bus. Machines Corp., 83 F.R.D. 92, 96 (S.D.N.Y. 1979) (citing Branzburg v. Hayes, 408 U.S. 665 (1972) ("[T]he witness expresses a generalized desire for seclusion and noninterference, a wish that he not be made to expose his affairs to scrutiny. Such claims, sincere and understandable as they may be, must yield to the entitlement of the public to every person's evidence when he or she is properly summoned.").

Further, use of pseudonyms and heavily redacted documents would unnecessarily force witnesses to testify in an artificial and self-conscious manner, invite errors, and prejudice the parties by causing juror confusion and speculation as to the reasons for the unnecessary secrecy. Such unusual confidentiality measures would place a burden on the parties by requiring the redaction of hundreds of pages of exhibits and other trial materials (with trial only three weeks away). There are other, less burdensome means to address any legitimate privacy or confidentiality concerns that the Court may consider Client A to have, without keeping information from the jury or denying Plaintiff the opportunity to present a full record.

Plaintiff also fully anticipated raising this issue herself, and intends to file a motion *in limine* with the Court on January 9, 2017 on this precise issue, seeking to allow the use of the Client A witnesses' and entities' names at trial. Plaintiff further intends to file a motion *in limine* to exclude evidence at trial on whether or not Client A did, in fact, engage in fraud or other unlawful activity. Plaintiff did not and has no desire to probe into extraneous or unnecessary areas, such as Client A's business affairs, or other matters beyond the knowledge of Sharkey and other pertinent JPMC personnel (such as Lassiter, Grucsczyk of JPMC's Risk department and members of JPMC's anti-money laundering department, among others). In fact, these assurances, originally provided to Client A's counsel regarding the depositions, were repeated in my brief telephone call with Client

**WIGDOR LLP**

ATTORNEYS AND COUNSELORS AT LAW

The Honorable Judge Robert W. Sweet
December 30, 2016
Page 9

A's counsel regarding service of the subpoenas. Through this second motion *in limine*, Client A's concerns regarding questions about his business or illegality would be mooted.

For all of the foregoing reasons, Client A's application to the Court should be denied.

We thank the Court for its attention to this matter.

Respectfully submitted,

Lawrence M. Pearson

cc:    Michael D. Schissel, Esq. (*via* ECF)
       Kathleen A. Reilly, Esq. (*via* ECF)