UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JENNIFER SHARKEY,

                Plaintiff,

                v.

J.P. MORGAN CHASE & CO., JOE
KENNEY, ADAM GREEN, and LESLIE
LASSITER, in their official and individual
capacities,

                Defendants.

Civil Action No. 10-cv-3824 (RWS)

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE*
NUMBERS 5 & 6 SEEKING TO PRECLUDE THE TESTIMONY OF ANNE
MARCHETTI AND LIMIT THE SCOPE OF THE CLIENT A KYC PROCESS**

**ARNOLD & PORTER
KAYE SCHOLER LLP**

Michael D. Schissel
Kathleen A. Reilly
399 Park Avenue
New York, NY  10022-4690
Telephone: +1 212.715.1000
Fax: +1 212.715.1399

*Attorneys for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT REGARDING MOTIONS *IN LIMINE* NOS. 5 & 6 ................. 1

FACTS ........................................................................................................................... 2

LEGAL STANDARDS REGARDING MOTIONS *IN LIMINE* NOS. 5 & 6 ............................. 4

ARGUMENT ................................................................................................................... 4

I.   MOTION *IN LIMINE* NO. 5:  PRECLUDING PLAINTIFF'S SUPPOSED EXPERT ANNE
     MARCHETTI ........................................................................................................ 5

II.  MOTION *IN LIMINE* NO. 6:  PRECLUDING EVIDENCE OF KYC PROCESSES
     FOLLOWING JULY 2010 ...................................................................................... 8

CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

CASES

*523 IP LLC v. CureMD.com*,
    48 F. Supp. 3d 600 (S.D.N.Y. 2014)................................................................8

*Arlio v. Lively*,
    474 F.3d 46 (2d Cir. 2007)..........................................................................5

*Bechtel v. Admin. Review Bd.*,
    710 F.3d 443 (2d Cir. 2013)........................................................................5

*Contreras v. Artus*,
    778 F.3d 97 (2d Cir. 2015)..........................................................................4

*Giles v. Rhodes*,
    No. 94 Civ. 6385, 2000 WL 1425046 (S.D.N.Y. Sept. 27, 2000) ............................................4

*Highland Capital Management L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)................................................................7

*Nielsen v. AECOM Tech. Corp.*,
    762 F.3d 214 (2d Cir. 2014)......................................................................5, 6

*S.E.C. v. Lyon*,
    No. 06 Civ. 14338, 2009 WL 635519 (S.D.N.Y. Mar. 18, 2009) ............................................8

*Sharkey v. J.P. Morgan Chase & Co.*,
    805 F. Supp. 2d 45 (S.D.N.Y. 2011)................................................................6

*United States v. Edwards*,
    631 F.2d 1049 (2d Cir. 1980)......................................................................4

*United States v. Valencia*,
    826 F.2d 169 ....................................................................................4

STATUTES

Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ............................................................... *passim*

OTHER AUTHORITIES

Fed. R. Evid. 401 ....................................................................................4

Fed. R. Evid. 402 ....................................................................................4

Fed. R. Evid. 403 ...........................................................................................................4

Fed. R. Evid. 801 ...........................................................................................................8

Fed. R. Evid. 802 ...........................................................................................................8

Defendants J.P. Morgan Chase & Co. ("JPMC"), Joe Kenney, Adam Green, and Leslie Lassiter (together, "Defendants") respectfully submit this memorandum in support of the following motions *in limine*: (i) motion *in limine* No. 5 seeks to preclude the testimony of Anne Marchetti, Plaintiff's purported liability expert, and the introduction of her expert report, marked as Plaintiff's Exhibit 212; and (ii) motion *in limine* No. 6 seeks to preclude the introduction of Plaintiff's Exhibits 205, 206, and 208 included in the Joint Pre-Trial Order ("JPTO"), as well as any information regarding Know Your Client ("KYC") processes relating to Client A after July 2010.[1]

## PRELIMINARY STATEMENT REGARDING MOTIONS *IN LIMINE* NOS. 5 & 6

Plaintiff claims that, during the few months she was assigned to Client A in the spring and summer of 2009, she engaged in protected activity under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX"), and that Defendants terminated her in retaliation for such alleged activity.  Protected activity requires that the Plaintiff reasonably believed--objectively and subjectively--that she reported conduct that constituted a violation of one of the enumerated statutes in SOX.  Plaintiff designated as a trial witness, Anne Marchetti, a purported expert whose opinions this Court previously precluded in substantial part.  Plaintiff has also included Ms. Marchetti's entire report as an exhibit.  The Court should preclude any testimony by Ms. Marchetti and her entire report.

Additionally, Plaintiff was at JPMC only for a limited period of time, during which time she was assigned to the Client A relationship and asked to complete the ongoing KYC process for the relationship (which she did not).  After JPMC terminated Plaintiff in August 2009, JPMC completed the Client A KYCs after JPMC reversed a decision to exit Client A since the client

---

[1]   Defendants' request to preclude certain exhibits by motion *in limine* should not be deemed a waiver of Defendants' objections to other exhibits Plaintiff may offer at trial.

provided all KYC documentation.  Mr. Kenney then approved the KYCs in early 2010.  JPMC revisited those KYCs during the summer of 2010 in response to a United States Office of the Comptroller of the Currency ("OCC") examination.  This ended any KYC processes in which Plaintiff, even tangentially, may have been engaged.  However, as Client A remains a client of JPMC, KYC processes and due diligence relating to Client A continue to be an ongoing, routine obligation of JPMC employees assigned to the Client A relationship.  Plaintiff has designated Plaintiff Trial Exhibits 205, 206, and 208, which are documents relating to KYCs and due diligence that occurred well after the KYC process in which she was engaged ended--despite having no personal involvement in these subsequent KYCs.  The Court should preclude these exhibits as irrelevant to Plaintiff's SOX claim.

## FACTS

On February 14, 2011, Plaintiff filed her Amended Complaint ("Complaint").  Dkt. 20. Plaintiff alleged that Defendants terminated her in retaliation for complaints she allegedly made about "potential unlawful activities" of Client A.  Dkt. 20, ¶ 1.  Her supposed grievances regarding Client A form the sole basis for her alleged whistleblowing activity under SOX.  Dkt. 20, ¶¶ 1, 20, 25-28, 36-44, 47, 61.

### Ms. Marchetti

On May 14, 2013, Plaintiff produced a memorandum constituting the expert report of Ms. Marchetti.  Declaration of Michael D. Schissel, dated January 9, 2017 ("Schissel Decl."), Ex. A. Ms. Marchetti's ultimate conclusion in her report was that "the evidence supports the recommendation to terminate the relationship with" Client A.  Schissel Decl., Ex. A at 4.  On June 14, 2013, after taking Ms. Marchetti's deposition (during which she admitted that she could not identify any fraudulent activity about which Ms. Sharkey could have been suspicious),

Defendants requested a pre-motion conference regarding JPMC's anticipated motion to strike Ms. Marchetti's report.  Schissel Decl., Ex. A at 1.  Grounds for the motion were that Ms. Marchetti "intends to testify merely about lay matters which a jury is capable of understanding and deciding without an expert's help, and she intends to rehash and opine on evidence about which she has no personal knowledge thereby usurping the role of the jury."  Schissel Decl., Ex. A at 1; Schissel Decl., Ex. B ("Marchetti Tr."); *see also* Schissel Decl., Ex. C (Plaintiff's opposition); Schissel Decl., Ex. D (Defendants' reply).  On October 9, 2013, the Court limited Ms. Marchetti to testifying only "as to those matters and transactions which, *as an accountant*, might trigger concern under SOX (so called 'red flags'), and why."  Dkt. 80 at 10 (emphasis added).

*KYC Information*

During discovery, JPMC produced documents relating to the KYC process associated with the Client A relationship prior to, during, and after Plaintiff's time on the Client A account. On May 20, 2013, the Court ordered JPMC to produce purely factual documents from its privilege log over which the bank had previously asserted the bank examination privilege.  Dkt. 56 at 4.  Those documents related to an OCC examination that occurred over the summer of 2010, which included requests for information about the Client A KYC process in which Plaintiff had been involved while still employed by JPMC.  Consequently, JPMC produced purely factual documents from this time period to Plaintiff, which represented the end of the KYC processes that were started before Plaintiff was assigned to the Client A relationship and continued after she was terminated.

## LEGAL STANDARDS REGARDING MOTIONS *IN LIMINE* NOS. 5 & 6

The district judge "ha[s] discretion in deciding whether a pretrial ruling on evidence may be made in advance of trial."  *United States v. Valencia*, 826 F.2d 169. 172 (2d Cir. 1987); *see also Contreras v. Artus*, 778 F.3d 97, 108 (2d Cir. 2015) ("The assessment of the relevance of evidence for the purpose of its admission or exclusion is committed to the sound discretion of the district court." (citation omitted)).  This includes prohibiting irrelevant and prejudicial arguments or references at trial.  *See, e.g.*, *United States v. Edwards*, 631 F.2d 1049, 1051 (2d Cir. 1980) (finding that judge had discretion to exclude witnesses that were offered by defendant as irrelevant and collateral).

Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible." Evidence is relevant only if it has a "tendency to make a fact more or less probable than it would be without evidence" where "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  But even relevant evidence should be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "An irrelevant export report, like any irrelevant testimony, is not admissible."  *Giles v. Rhodes*, No. 94 Civ. 6385, 2000 WL 1425046, *4 (S.D.N.Y. Sept. 27, 2000) (excluding expert testimony and report as irrelevant).

## ARGUMENT

Precluding evidence is appropriate where, as here, such evidence is immaterial to the single issue to be tried:  whether Defendants violated the whistleblowing provision of SOX when they terminated Plaintiff, a private wealth manager.  *See Contreras*, 778 F.3d at 108-09 (finding that note victim wrote, which she said was not about defendant or incident at issue, should be

excluded as irrelevant); *Arlio v. Lively*, 474 F.3d 46, 52-53 (2d Cir. 2007) (noting that evidence regarding prior arbitration was irrelevant and should have been excluded).

To prevail, Plaintiff first must prove by a preponderance of the evidence that (i) she engaged in a protected activity; (ii) Defendants knew that she engaged in the protected activity; (iii) she suffered an unfavorable personnel action; and (iv) her protected activity was a contributing factor in the unfavorable personnel action. *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 451 (2d Cir. 2013). To prove she engaged in protected activity, Plaintiff must show that she reported conduct that she reasonably believed--both objectively and subjectively--constituted a violation of one of the enumerated statutes in SOX. *See Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 219, 221 (2d Cir. 2014) (listing enumerated statutes as mail fraud, wire fraud, bank fraud, securities fraud, any rule or regulation of the Securities & Exchange Commission, and/or any provision of Federal law relating to fraud against shareholders).

Then, and only if she proves her *prima facie* case (and she cannot here), Defendants must prove, by clear and convincing evidence, that they would have taken the same action in the absence of her protected activity.[2] *Bechtel*, 710 F.3d at 451.

## I. MOTION *IN LIMINE* NO. 5:   PRECLUDING PLAINTIFF'S SUPPOSED EXPERT ANNE MARCHETTI

Since the Court's 2013 ruling regarding Ms. Marchetti, the Second Circuit has stated that, for a belief to be objectively reasonable, Plaintiff must show that "a reasonable person *in [her] position* would have believed that the conduct constituted a violation." *Nielsen*, 762 F.3d at 221 (emphasis added, citation omitted). Specifically, "[t]he objective prong of the reasonable belief test focuses on the 'basis of knowledge available to a reasonable person in the circumstances

---

[2]   JPMC asserts that Plaintiff, a poor performer, was terminated after she lied to her supervisor with regard to another client of PWM ("Manager T"). Under JPMC's Corrective Action Policy, dishonesty is grounds for summary termination. Also, Plaintiff was an at-will employee.

with *the employee's training and experience*.'"  *Id.* (citing *Sharkey v. J.P. Morgan Chase & Co.*, 805 F. Supp. 2d 45, 55 (S.D.N.Y. 2011)) (emphasis added).  Plaintiff has always, as discussed further *infra*, sought to use Ms. Marchetti's report to support the supposed objective reasonableness of Plaintiff's belief.

The Court has already substantially limited the scope of any testimony from Ms. Marchetti to transactions or matters that she, *as an accountant*, believes may trigger concerns under SOX and why.  Dkt. 80 at 10.  However, Plaintiff was a *private wealth manager* at JPMC from the spring of 2008 through her termination on August 5, 2009.  She spent her entire career as a *banker*, not an accountant, and received any training regarding KYC obligations, fraud, or money laundering in her capacity as a banker.  *See* Schissel Decl., Ex. E (Plaintiff's resume setting forth her work history).   Therefore, the question of whether Plaintiff's belief was objectively reasonable under SOX centers on whether a reasonable private wealth manager (or even more broadly, a banker) would have believed Client A's conduct constituted a violation of the enumerated statutes, not what an accountant with Ms. Marchetti's training and experience may or may not have believed about the various transactions.  Plaintiff has no training as an accountant, and what an accountant believes to be red flags is irrelevant to whether Plaintiff, based on her experience and education, believed items to be red flags.

Additionally, despite the Court's prior ruling striking substantial portions of Ms. Marchetti's opinion, Plaintiff continues to cite to Ms. Marchetti's report in support of the reasonableness of Plaintiff's supposed belief.[3]   Essentially, Plaintiff's counsel, at every

---

[3]     *See* Dkt. 71 at 13, 20 (Plaintiff's Brief in Opposition to Defendants' First Summary Judgment Motion, dated September 27, 2013) ("[Marchetti] concluded, *inter alia*, that (i) the record contains 'sufficient, competent evidential matter to support a reasonable belief that [Client A] was engaging in fraud, money laundering, as well as violating federal security laws;' and (ii) '[there is] significant direct and/or circumstantial evidence to support concerns regarding potential illegal activity perpetuated by [Client A] including fraud, money laundering and

opportunity, attempts to utilize Ms. Marchetti's stricken opinions to bolster Ms. Sharkey's alleged objectively reasonable belief.

For these reasons, JPMC seeks to preclude Ms. Marchetti from testifying at trial, even in the more limited fashion ordered by the Court in 2013.  If she is precluded from testifying at trial, then her expert report should also be precluded as inadmissible, including for the reasons set forth in greater detail *infra*.  *See Highland Capital Management L.P. v. Schneider*, 379 F. Supp. 2d 461, 469-70, 474 (S.D.N.Y. 2005) (excluding expert testimony and report because inadmissible, and preventing supplementation of report to fix issues).

Even if Ms. Marchetti is permitted to testify at trial (and she should not be), her report, included on the JPTO as Plaintiff's Exhibit 212, should be precluded from use at trial as irrelevant and containing inadmissible evidence.  Ms. Marchetti has never revised her report to render it consistent with the Court's ruling, and Plaintiff's counsel has simply included her original report as Exhibit 212.  Schissel Decl., Ex. F.  Every single one of her statements in the report falls outside the scope of the Court's October 9, 2013 order limiting Ms. Marchetti's testimony.  Moreover, these statements by Ms. Marchetti read like conclusions of fact,

---

security law violations. . . . [As to the objectiveness of Plaintiff's belief,] [e]xpert witness Anne Marchetti also confirmed that, *inter alia*, that [sic] there was 'sufficient, competent evidential matter to support a reasonable belief that the suspect client was engaging in fraud, money laundering, as well as violating federal security laws.'"); Dkt. 97 at 10, 16 (Plaintiff's Brief in Opposition to Defendants' Second Summary Judgment Motion, dated January 26, 2015) ("Additionally, expert Anne M. Marchetti described many indicators of '**fraud**, money laundering and security law violations,' as well as 'red flag' indicators of financial '**fraud**,' such as money laundering, mail fraud, tax evasion or other fraud and/or violat[ions] [of] federal securities laws. . . . The reasonableness of Sharkey's belief is also supported by an uncontested expert report that confirms that the types of behavior observed by her are red flags for fraud." (emphasis in original)); *see also* Brief for Plaintiff-Appellant at 19, *Sharkey v. JPMorgan Chase & Co.*, No. 13-4741-cv (2d Cir. Mar. 31, 2014), ECF No. 32 ("[E]xpert witness Marchetti confirmed that the types of behavior observed by Sharkey were red flags for fraud"); Brief for Plaintiff-Appellant at 10 n.4, *Sharkey v. JPMorgan Chase & Co.*, No. 15-3400-cv (2d Cir. Feb. 8, 2016), ECF No. 32 ("Marchetti concluded that, *inter alia*, the conduct and indicators presented by Sharkey are all textbook examples of typical 'red flags' of potential illegal activity perpetuated by financial industry clients, such as various types of fraud, money laundering and securities law violations." (citation omitted)).

conclusions about evidentiary weight, or conclusions of law, which are more appropriate for the jury or this Court to determine.  *See, e.g.*, *523 IP LLC v. CureMD.com*, 48 F. Supp. 3d 600, 648 (S.D.N.Y. 2014) (striking portions of expert report as "irrelevant advocacy rather than helpful expert testimony"); *S.E.C. v. Lyon*, No. 06 Civ. 14338, 2009 WL 635519, *1 (S.D.N.Y. Mar. 18, 2009).  And these assertions are inadmissible hearsay.  Fed. R. Evid. 801; Fed. R. Evid. 802.  To provide this as an exhibit at trial or even to show it to the jury would not just simply introduce irrelevant information, it would be prejudicial to Defendants, mislead the jury as to the scope of Ms. Marchetti's supposed expertise, waste time as Defendants and the Court attempt to explain what the jury can and cannot rely on in Ms. Marchetti's report, and distract the jury from the true question--whether Sharkey, through her own testimony and the factual evidence presented in the case, reasonably believed Client A was violating one of the enumerated statutes in SOX.

For these reasons, both Ms. Marchetti's testimony and report should be precluded at trial.

## II.     MOTION *IN LIMINE* NO. 6:  PRECLUDING EVIDENCE OF KYC PROCESSES FOLLOWING JULY 2010

Plaintiff was assigned to the Client A relationship in early 2009, after the KYC process for that client had begun.  Shortly after she was assigned, Plaintiff was provided with a list of follow-up items by an individual within the JPMC Risk Department.  Schissel Decl., Ex. G. After Ms. Lassiter decided to exit the Client A relationship based on Plaintiff's representation that Client A would not provide necessary KYC documentation (Schissel Decl., Exs. H & I), JPMC undertook efforts to exit the Client A relationship (*see, e.g.*, Schissel Decl., Ex. J).

In the meantime, Plaintiff, a poor performer on an internal watch list, was terminated on August 5, 2009 after lying to Ms. Lassiter about contact with another client, Manager T. Following Plaintiff's termination, Ms. Lassiter and others within JPMC were able to acquire the necessary documentation and complete the Client A KYC process.  *See, e.g.*, Schissel Decl., Ex.

K.  Mr. Kenney then signed off on the Client A KYCs in February 2010, which was the same set of KYCs Plaintiff was supposed to have completed.  *See* Schissel Decl., Ex. L.  Thereafter, the OCC conducted an examination of JPMC.[4]   In the context of that examination, factual information regarding Client A and associated with the KYC process on which Plaintiff worked was circulated.

However, after the OCC examination concluded in the summer of 2010, JPMC began new KYC processes from those on which Plaintiff worked.  Because Client A was an ongoing JPMC client, additional KYCs were prepared beginning in the fall 2010 in the ordinary course; Plaintiff did not participate in this KYC process at all because JPMC had already terminated her employment more than a year prior.   Nevertheless, Plaintiff has designated three exhibits--Plaintiff's Exhibits 205, 206, and 208--that are part of this new KYC or other due diligence process, and contain information completely unknown to Plaintiff and irrelevant to her claim.  Schissel Decl., Exs. M, N, & O.

At a certain point, there must be an evidentiary cut-off regarding information about Client A.  Plaintiff's SOX claim relates solely to her supposed protected activity while still employed at JPMC.  Plaintiff has contended that JPMC never intended to exit Client A, and therefore the reasons that JPMC reversed its decision to exit Client A are relevant to that contention.  The post-fall 2010 KYCs for Client A are irrelevant to that issue since the decision to reverse the decision was made one year earlier, in the fall of 2009.

Plaintiff's Exhibits 205, 206, and 208 therefore should be precluded.

---

[4]   By referencing the OCC examination here, Defendants do not intend to waive any bank examination privilege or other privileges asserted.  The reference is simply used to indicate why, even after Mr. Kenney approved the Client A KYC in early 2010, there may be relevant evidence from the summer of 2010.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court grant their motions *in limine* Nos. 5 and 6.

Dated:    New York, New York
            January 9, 2017

ARNOLD & PORTER KAYE SCHOLER LLP

By:   /s/ Michael D. Schissel
       Michael D. Schissel
       Kathleen A. Reilly
       399 Park Avenue
       New York, NY  10022-4690
       Telephone: +1 212.715.1000
       Fax: +1 212.715.1399

       *Attorneys for Defendants*

## AFFIRMATION OF SERVICE

I, Kathleen A. Reilly, the undersigned attorney at law duly admitted to practice in the State of New York, respectfully show that on the 9th day of January, 2017, I caused a copy of the annexed **NOTICE OF MOTIONS, DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE* NUMBERS 5 & 6 SEEKING TO PRECLUDE THE TESTIMONY OF ANNE MARCHETTI AND LIMIT THE SCOPE OF THE CLIENT A KYC PROCESS**, and **DECLARATION OF MICHAEL D. SCHISSEL IN SUPPORT OF MOTIONS *IN LIMINE* NUMBERS 5 & 6 SEEKING TO PRECLUDE THE TESTIMONY OF ANNE MARCHETTI AND LIMIT THE SCOPE FO THE CLIENT A KYC PROCESS** to be served by ECF and FedEx upon:


Douglas H. Wigdor
Lawrence M. Pearson
WIGDOR LLP
85 Fifth Avenue
Fifth Floor
New York, NY 10003
(212) 257-6800


/s/ Kathleen A. Reilly
Kathleen A. Reilly
