UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER SHARKEY,<br><br>              Plaintiff,<br><br>         v.<br><br>J.P. MORGAN CHASE & CO., JOE KENNEY, ADAM GREEN, and LESLIE LASSITER, in their official and individual capacities,<br><br>              Defendants. | Civil Action No. 10-cv-3824 (RWS) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* NUMBER 7 SEEKING TO PRESERVE THE <u>CONFIDENTIALITY OF JPMC CLIENTS AND EMPLOYEES</u>**

**ARNOLD & PORTER
KAYE SCHOLER LLP**

Michael D. Schissel
Kathleen A. Reilly
399 Park Avenue
New York, NY  10022-4690
Telephone: +1 212.715.1000
Fax: +1 212.715.1399

*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTS ............................................................................................................................................ 2

ARGUMENT .................................................................................................................................. 4

I.   LEGAL STANDARDS ....................................................................................................... 4

II.  THE NAMES AND IDENTITIES OF JPMC CLIENTS AND EMPLOYEES ARE
     IRRELEVANT TO PLAINTIFF'S CLAIM ........................................................................ 6

CONCLUSION ............................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bechtel v. Admin. Review Bd.*,
  710 F.3d 443 (2d Cir. 2013)..............................................................................................6

*Contreras v. Artus*,
  778 F.3d 97 (2d Cir. 2015)................................................................................................5

*Nielsen v. AECOM Tech. Corp.*,
  762 F.3d 214 (2d Cir. 2014)..............................................................................................6

*United States v. Edwards*,
  631 F.2d 1049 (2d Cir. 1980)............................................................................................5

*United States v. Valencia*,
  826 F.2d 169 (2d Cir. 1987)..............................................................................................5

**STATUTES**

Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A .................................................................1, 6, 7

**OTHER AUTHORITIES**

Fed. R. Evid. 401 .........................................................................................................................5

Fed. R. Evid. 402 .........................................................................................................................5

Fed. R. Evid. 403 .........................................................................................................................5

Defendants J.P. Morgan Chase & Co. ("JPMC"), Joe Kenney, Adam Green, and Leslie Lassiter (together, "Defendants") respectfully submit this memorandum in support of their motion *in limine* No. 7, which seeks to preclude any efforts to encroach upon the privacy of JPMC clients and/or employees, and requests an order to ensure that documents and testimony offered as evidence at trial are redacted to avoid revealing client and employee names to the general public.

## PRELIMINARY STATEMENT

. Plaintiff claims that, during the few months Plaintiff was assigned to a specific JPMC client ("Client A") in the spring and summer of 2009, she engaged in protected activity under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX"), and that Defendants terminated her in retaliation for such alleged activity. Defendants assert that they terminated Plaintiff for lying to her immediate supervisor about another client ("Manager T"). Throughout this case, the parties, pursuant to a Protective Order issued by the Court on November 17, 2011, have sought to keep Client A's identity from the public (especially since Client A is an innocent non-party), as well as to preserve the confidentiality of other JPMC clients (for example, Manager T) and employees who are at most only tangentially involved in this action. The identity of these individuals and entities is irrelevant to the actual claim in this action--whether Defendants terminated Plaintiff because she allegedly reported concerns that Client A was engaged in a violation of one of the enumerated SOX statutes (which they did not).

To be clear, Defendants are not seeking to seal the entire record in this case, but simply want to ensure that appropriate protections are in place to avoid unnecessary prejudice, harassment, or other negative consequences to JPMC clients or employees.[1] The order requested

---

[1] Defendants reserve the right to subsequently request the sealing of specific exhibits utilized at trial.

by Defendants below is essentially how the parties and the Court have been acting throughout the pre-trial portions of this case, and it has not hampered the vigorous prosecution and defense of this case, or the Court's ability to render public rulings.

Consequently, Defendants request that the Court order:

- The use of the pseudonyms Client A and Manager T at trial;

- To the extent clients other than Client A or Manager T are identified during testimony at trial, the use of pseudonyms for those clients to prevent identification;

- The use of the redacted documents produced by Defendants at trial;

- The redaction from any exhibits entered into evidence of (i) any client names (including Client A or Manager T) that have not yet been redacted in documents, (ii) identifying information to the extent not necessary to the question of whether Plaintiff had a reasonable belief that Client A was engaged in a violation of an enumerated statute, and (iii) any names of individuals associated with clients. For purposes of this request, the redaction should indicate whether it pertains to Client A, Manager T, or another client for which a pseudonym is used at trial;[2]

- To the extent the performance of any employee other than Ms. Sharkey, Ms. Lassiter, Mr. Kenney, or Mr. Green (or any other current or former JPMC employee who testifies at trial) is referenced during testimony at trial, the use of pseudonyms for these employees to prevent any information or purported performance issues of those employees from becoming public knowledge; and

- That any other protective measures be taken to ensure that JPMC's clients and employees are not unnecessarily dragged into this action.

Defendants are willing to undertake the efforts to redact the exhibits identified by both Plaintiff and Defendants on the Joint Pre-Trial Order ("JPTO") to be consistent with any order issued by the Court.

## FACTS

On February 14, 2011, Plaintiff filed her Amended Complaint ("Complaint") in this action. Dkt. 20. In the Complaint, Plaintiff alleged that Defendants terminated her in retaliation

---

[2] For example, Defendants have asserted that Plaintiff had performance issues related to clients other than Manager T. Defendants will use pseudonyms, such as "Individual M," to identify those clients.

2

for her complaints during her employment at JPMC regarding "potential unlawful activities" of Client A. Dkt. 20, ¶ 1. Her supposed grievances regarding Client A form the sole basis for her alleged whistleblowing activity under SOX. Dkt. 20, ¶¶ 1, 20, 25-28, 36-44, 47, 61. In the Complaint, Plaintiff utilized the pejorative term "Suspect Client" to identify Client A, which essentially sought to draw a conclusion about the client relationship without any proof of actual wrongdoing.

On November 17, 2011, this Court so-ordered the stipulated Protective Order among the parties, which contains numerous protections regarding the identity of JPMC clients (not just Client A's identity). Dkt. 38. The Protective Order provided the following:

- ". . . Any party or nonparty may designate as 'ATTORNEYS' EYES ONLY CONFIDENTIAL' any materials produced or information disclosed in this action, including any document, any answer to interrogatories or other discovery requests in this action, or any portion of any deposition (including exhibits) if it contains highly confidential material that involves highly sensitive technical, business or research information, the disclosure of which might harm the business interests of the producing party or a third party, *including documents and/or other material containing the identity and/or information relating to a JPMC client*. . . ." (¶ 3 (emphasis added)).

- "Material and information of another designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY CONFIDENTIAL shall be used only for the purposes of this action and any appeal therefrom, shall not be used for any other purpose, and shall not be disclosed to any third-person including the press or the public. . . . " (¶ 8)

- "ATTORNEYS' EYES ONLY CONFIDENTIAL documents shall be held in confidence and shall not be disclosed in any manner, in any form, to any person, entity or judicial tribunal other than outside counsel for the parties, outside counsel for third-parties, and the individuals described in sub-paragraphs 10(a), 10(b), 10(e) and 10(g), except that ATTORNEYS' EYES ONLY CONFIDENTIAL documents may also be disclosed to Plaintiff Jennifer Sharkey provided that she, her attorneys and/or any person or entity acting on her behalf shall not disclose or cause to be disclosed to any third party (including the press and/or the public), the identity of and/or any information relating to any JPMC client or the substance or contents of any documents relating to a JPMC client." (¶ 11)

- "In addition to maintaining the confidentiality of documents marked CONFIDENTIAL or ATTORNEY'S [sic] EYES ONLY, the parties, including

3

> Plaintiff Jennifer Sharkey, her attorneys and/or any person or entity acting on her behalf shall not, so long as this Agreement remains in effect, disclose or cause to be disclosed to any third party (including the press and/or the public), the identity and/or any information relating to any JPMC client referred to in the course of this matter, unless the party wishing to disclose such information makes an application to the Court, which may be done *ex parte* with the Court's permission, and the Court expressly grants the application. JPMC's client referred to as the 'Suspect Client' in the Amended Complaint shall hereinafter be referred to as 'Client A' (or, as appropriate, 'Client A1,' 'Client A2,' and so on) in all publicly filed papers. The parties further agree to redact any identifying information about any JPMC clients in all publicly filed papers." (¶ 12)

- "Nothing herein shall restrict the presentation of any evidence to the Court at trial or any other hearing in this action, ***provided that such presentation shall not constitute a waiver of any restriction in this Protective Order, and the parties shall take reasonable steps to maintain the confidentiality of confidential material at trial or any other hearing in this action in such manner as the Court may direct.***" (¶ 17 (emphasis added))

Dkt. 38. In a letter submitted prior to the entry of the Protective Order, Plaintiff's counsel represented that "we have no intention of identifying [Client A] to the press or the public at large." Declaration of Michael D. Schissel, dated January 9, 2017 ("Schissel Decl."), Ex. A. Consistent with the Protective Order, both the parties and the Court have utilized Client A and Manager T to refer to JPMC clients in public filings, and the parties have filed any exhibits designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY CONFIDENTIAL under seal. Moreover, other than specific references to Client A, Manager T, or Plaintiff, Defendants have redacted out the names of clients and other JPMC employees from documents produced in discovery in order to further protect the confidentiality of those individuals.[3]

## ARGUMENT

### I. LEGAL STANDARDS

---

[3] The one exception was unredacted copies of previously produced redacted documents to which Plaintiff had access while employed at JPMC. However, none of the unredacted versions of the documents were identified by either party as potential exhibits on the JPTO, and redacted versions of each exhibit to which Plaintiff had access exist and should be utilized by the parties at trial.

4

The district judge "ha[s] discretion in deciding whether a pretrial ruling on evidence may be made in advance of trial." *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987); *see also Contreras v. Artus*, 778 F.3d 97, 108 (2d Cir. 2015) ("The assessment of the relevance of evidence for the purpose of its admission or exclusion is committed to the sound discretion of the district court." (citation omitted)). This includes prohibiting irrelevant and prejudicial arguments or references at trial. *See, e.g.*, *United States v. Edwards*, 631 F.2d 1049, 1051 (2d Cir. 1980) (finding that judge had broad discretion to exclude witnesses that were offered by defendant as irrelevant and collateral). Here, disclosure of the names of JPMC clients and employees is both irrelevant and deeply prejudicial to these third parties.

Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible." Evidence is relevant only if it has a "tendency to make a fact more or less probable than it would be without the evidence" and where "the fact is of consequence in determining the action." Fed. R. Evid. 401. But even relevant evidence should be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

To prevail, Plaintiff first must prove by a preponderance of the evidence that (i) she engaged in a protected activity; (ii) Defendants knew that she engaged in the protected activity; (iii) she suffered an unfavorable personnel action; and (iv) her protected activity was a contributing factor in the unfavorable personnel action. *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 451 (2d Cir. 2013). To prove she engaged in protected activity, Plaintiff must show that she reported conduct that she reasonably believed--both objectively and subjectively--constituted a violation of one of the enumerated statutes in SOX. *See Nielsen v. AECOM Tech. Corp.*, 762

F.3d 214, 219, 221 (2d Cir. 2014) (listing enumerated statutes as mail fraud, wire fraud, bank fraud, securities fraud, any rule or regulation of the Securities & Exchange Commission, and/or any provision of Federal law relating to fraud against shareholders).

Then, and only if she proves her *prima facie* case (and she cannot here), Defendants must prove, by clear and convincing evidence, that they would have taken the same action in the absence of her protected activity.[4]  *Bechtel*, 710 F.3d at 451.

## II.     THE NAMES AND IDENTITIES OF JPMC CLIENTS AND EMPLOYEES ARE IRRELEVANT TO PLAINTIFF'S CLAIM

This case centers on Plaintiff, her supposed protected activity, and the factors leading to her termination.  The names and identities of any JPMC clients, even the names of Client A or Manager T, are completely irrelevant to her claim.  Plaintiff does not need to utilize their names in order to prove her case (and, in fact, has never utilized names in publicly filed documents).  On this basis alone, Defendants' motion *in limine* should be granted.

Beyond being irrelevant and distracting to the single claim in this case, the introduction of evidence identifying JPMC clients by name is deeply prejudicial to JPMC and its clients.  First, JPMC is a bank that, among other things, is charged with maintaining the privacy of its customers.  To introduce evidence regarding any client that is not directly at issue in this case would be to violate that privacy of bank clients and drag them unnecessarily into this proceeding.  This far outweighs any supposed probative value Plaintiff may receive by naming or discussing other clients.  Second, the activities of JPMC's clients are not on trial in this action, and any efforts to introduce evidence regarding how JPMC treated other clients should be denied as lacking any probative value as to whether Plaintiff engaged in protected activity (which she did

---

[4]   JPMC asserts that Plaintiff, a poor performer, was terminated after she lied to her supervisor with regard to another client of PWM, Manager T.  Under JPMC's Corrective Action Policy, dishonesty is grounds for summary termination.  Also, Plaintiff was an at-will employee.

6

not) and whether that supposed protected activity was a factor in her termination (which it was not). Given this, the introduction of any information about JPMC clients--beyond what is specifically needed to address the actual claim and asserted defenses in this case--should be limited, and their identifying information should certainly be protected from public exposure.

Specifically, in relation to Client A and Manager T, the use of pseudonyms has protected the identity of these clients from the public. For Client A, in particular, to publish information about the identity of the client would permit spurious allegations that the client engaged in some sort of illegal activity (or, as Plaintiff claims, *may* have engaged in some form of illegal activity) to exist forever in public fora. It is deeply prejudicial to Client A without offering any probative value to Plaintiff, especially when the name of the client is completely irrelevant to what Plaintiff "reasonably believed" the client was doing.

Moreover, the performance and evaluation of other JPMC employees are not at issue in this case. SOX whistleblower cases focus on the alleged retaliation against the purported whistleblower, not the performance or conduct of their fellow employees (other than those identified as defendants in the action). Plaintiff has made efforts throughout this litigation to drag the performance of other individuals into the controversy. To the extent she is permitted to discuss the treatment of other employees (and she should not be), there is no need to utilize the names of those employees. Performance issues associated with other employees are tangential and irrelevant to whether Plaintiff, a poor performer, was terminated for lying to her supervisor, as Defendants maintain, or for purportedly engaging in a protected activity, as she claims.

On this basis, the Court should order measures to protect the identity and privacy of JPMC clients and employees, including, without limitation, ordering:

- The use of the pseudonyms Client A and Manager T at trial;

- To the extent clients other than Client A or Manager T are identified during testimony at trial, the use of pseudonyms for those clients to prevent identification;

- The use of the redacted documents produced by Defendants at trial;

- The redaction from any exhibits entered into evidence of (i) any client names (including Client A or Manager T) that have not yet been redacted in documents, (ii) identifying information to the extent not necessary to the question of whether Plaintiff had a reasonable belief that Client A was engaged in a violation of an enumerated statute, and (iii) any names of individuals associated with clients. For purposes of this request, the redaction should indicate whether it pertains to Client A, Manager T, or another client for which a pseudonym is used at trial;[5]

- To the extent the performance of any employee other than Ms. Sharkey, Ms. Lassiter, Mr. Kenney, or Mr. Green (or any other current or former JPMC employee who testifies at trial) is referenced during testimony at trial, the use of pseudonyms for these employees to prevent any information or purported performance issues of those employees from becoming public knowledge; and

- That any other protective measures be taken to ensure that JPMC's clients and employees are not unnecessarily dragged into this action.

Each of these measures are limited, reasonable processes to ensure that individuals and entities who are not on trial retain some aspect of privacy throughout the public portion of this case.

---

[5] For example, Defendants have asserted that Plaintiff had performance issues related to clients other than Manager T. Defendants will use pseudonyms, such as "Individual M," to identify those clients.

8

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court grant their motion *in limine* No. 7.

Dated:   New York, New York
         January 9, 2017

                                        ARNOLD & PORTER KAYE SCHOLER LLP


                                 By:   /s/ Michael D. Schissel
                                        Michael D. Schissel
                                        Kathleen A. Reilly
                                        399 Park Avenue
                                        New York, NY  10022-4690
                                        Telephone: +1 212.715.1000
                                        Fax: +1 212.715.1399

                                        *Attorneys for Defendants*

**AFFIRMATION OF SERVICE**

I, Kathleen A. Reilly, the undersigned attorney at law duly admitted to practice in the State of New York, respectfully show that on the 9th day of January, 2017, I caused a copy of the annexed **NOTICE OF MOTION, DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE* NUMBER 7 SEEKING TO PRESERVE THE CONFIDENTIALITY OF JPMC CLIENTS AND EMPLOYEES**, and **DECLARATION OF MICHAEL D. SCHISSEL IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* NUMBER 7 SEEKING TO PRESERVE THE CONFIDENTIALITY OF JPMC CLIENTS AND EMPLOYEES** to be served by ECF and FedEx upon:

Douglas H. Wigdor
Lawrence M. Pearson
WIGDOR LLP
85 Fifth Avenue
Fifth Floor
New York, NY 10003
(212) 257-6800

/s/ Kathleen A. Reilly
Kathleen A. Reilly