UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
JENNIFER SHARKEY,                                  :
                                                   :
                           Plaintiff,              :      Civil Action No.: 10-cv-3824 (RWS)
                                                   :
              v.                                   :
                                                   :
J.P. MORGAN CHASE & CO., JOE KENNEY,               :
ADAM GREEN, and LESLIE LASSITER, in                :
their official and individual capacities,          :
                                                   :
                           Defendants.             :
------------------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO
PRECLUDE DEFENDANTS FROM CURTAILING PLAINTIFF'S
ABILITY TO PRESENT HER CLAIMS TO THE JURY AND/OR
<u>LIMITING THE PUBLIC'S ACCESS TO TRIAL</u>**


**WIGDOR LLP**

Douglas H. Wigdor, Esq.
Lawrence M. Pearson, Esq.
Michael J. Willemin, Esq.
Alex J. Hartzband, Esq.

85 Fifth Avenue
New York, NY  10003
Tel:  (212) 257-6800

*Counsel for Plaintiff*

Plaintiff Jennifer Sharkey ("Plaintiff" or "Ms. Sharkey") by and through her undersigned counsel, hereby submits this motion *in limine* to preclude Defendants J.P. Morgan Chase & Co. ("JPMC" or the "Bank"), Joe Kenney ("Kenney"), Adam Green ("Green") and Leslie Lassiter ("Lassiter") (collectively, "Defendants") from curtailing Ms. Sharkey's ability to present her claims to the jury and/or limiting the public's access to the upcoming trial in this matter.

## DISCUSSION OF RECORD

*First*, on January 21, 2011, Defendants submitted a letter to Your Honor requesting that the identity of Client A not be publicly disclosed. See Ex. F. Apart from generally claiming that identifying the client "would be patently unfair and harmful to the client," Defendants set forth no precedential support or persuasive reasoning for their position. On January 24, 2011, Ms. Sharkey filed a letter in response, stating that Defendants had no legitimate basis to demand that Client A's name not be used, and stressing the deeply rooted principle that the public has a right of access to documents used at trial. See Ex. G. On the same day, Defendants filed a letter in response, asserting the same vague concerns that the disclosure of Client A's identity would somehow be "extremely harmful" to him. See Ex. H. Ultimately, following the direction of the Court, the parties entered into a Protective Order that prohibits the disclosure of Client A's identity. Dkt. No. 38 at § 12. Client A is to be referred to as "Client A," whereas his many businesses are to be referred to as "Client A1," "Client A2," "Client A3," etc. However, the Protective Order also provides that "Nothing herein shall restrict the presentation of any evidence to the Court at trial or any other hearing in this action," and "this Protective Order shall be without prejudice to the right of either party to challenge the propriety of discovery on other grounds, or to move the Court to modify, revise or amend this Protective Order." Id. at §§ 17, 21. The documents produced in this action refer to Client A's actual name, and not the moniker, "Client A."

1

*Second*, the Protective Order also permits the designation of certain documents and/or testimony as either "Confidential" or "Attorneys' Eyes Only Confidential" ("AEO"). See Dkt. No. 38. Under the terms of the Protective Order, a party may designate documents or testimony as AEO if they "contain[] highly confidential material that involves highly sensitive technical, business or research information, the disclosure of which might harm the business interests of the producing party or a third party, including documents and/or material containing the identity and/or information relating to a JPMC client." Id. at § 3. Where documents or testimony are designated as AEO, they "shall not be disclosed in any manner, in any form, to any person, entity or judicial tribunal other than [ ] counsel for the parties, outside counsel for third-parties," the Court, Ms. Sharkey, consultants or experts, or commercial photocopying and document processing firms. Id. at § 11. This list obviously excludes the public. Again, the protective order itself contemplates that its protections should not simply carry over to trial. Id. at § 17 ("Nothing herein shall restrict the presentation of any evidence to the Court at trial or any other hearing in this action").

## ARGUMENT

**I.  PROHIBITING REFERENCE TO CLIENT A BY NAME AT TRIAL WOULD CURTAIL MS. SHARKEY'S ABILITY TO PRESENT HER CASE TO THE JURY**

In order to establish her claims as they relate to complaints regarding Client A, Ms. Sharkey will need to prove to the jury, among other things, that she reasonably believed that Client A was potentially engaging in one or more of the unlawful activities listed in Section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX"). In order to do so, Ms. Sharkey must present the jury with numerous documents that substantiate that she reasonably believed Client A was engaged in unlawful conduct. See Leshinsky, 942 F. Supp. 2d 432, 441 (S.D.N.Y. 2013) (citing Bechtel v. Admin. Review Bd., United States Dep't of Labor, 710 F.3d 443, 447

(2d Cir. 2013)).  These documents include, *inter alia*: (i) correspondence between JPMC and Client A; (ii) significant amounts of internal communications among JPMC employees regarding Client A; (iii) JPMC's due diligence reports and Know Your Customer reports for Client A's businesses; (iv) documents retaliating to Client A's business, including articles of incorporation and identifications of owners; and (v) Ms. Sharkey's multiple recommendations that PWM exit its relationship with Client A.  Notably, all of these documents – as well as every other document bearing Client A's name, the names of his businesses or the other Client A Witnesses – were produced by Defendants without Client A's name redacted.

Use of the monikers "Client A," "Client A's wife," "Client A's son," "Client A1," "Client A2," "Client A3," "Client A4," "Client A5," "Client A6," "Client A7," "Client A8," "Client A9," "Client A10," "Client A11," "Client A12," "Client A13," etc. at trial is likely to cause massive amounts of confusion for the jury.  This is particularly true because the actual names of these individuals and entities appear in thousands and thousands of pages of documentary evidence produced by Defendants, and also were used by witnesses during the depositions.  It would be impossible, and, even if possible, highly prejudicial to Ms. Sharkey at this late stage, to somehow redact the tens of thousands of pages of documents produced in this action and, in each, replace the name of Client A and/or his family members or entities with "Client A," "Client A's wife," "Client A's son," "Client A1," "Client A2," "Client A3," "Client A4," "Client A5," "Client A6," "Client A7," "Client A8," "Client A9," "Client A10," "Client A11," "Client A12," "Client A13," etc.

As such, the jury will be reviewing documents and deposition testimony bearing the real names of these individuals and entities.  In this context, it would be impossible for the jury to follow the testimony and evidence presented at trial if the attorneys' and witnesses are required

to use pseudonyms during opening, closings and examination questions not explicitly referring to documents.

Even if it were possible to properly redact and replace Client A's name in every single document and deposition transcript, as well as the names of his companies and family members, it is exceedingly unlikely that confidentiality would be preserved. Witnesses at trial would have to refer to Client A and his family members and companies by code name. However, it is patently unreasonable to expect or require witnesses, particularly non-party witnesses, not to utter the names of these individuals and entities and instead memorize a lengthy list of "code names." Surely, the witnesses will, by force of habit, be inclined to use these individuals' actual names. If this happens even once, confidentiality will be vitiated. It also would be incredibly disruptive and inefficient for each witness to heave to consult a key each time he or she needs to mention the name of a Client A individual or entity. Moreover, using pseudonyms while Client A individuals actually appear in person at trial will be somewhat farcical. There is simply no way to preserve confidentiality.

Finally, Defendants' January 2011 submissions to the Court presented no reason to believe that Client A will suffer any actual harm if confidentiality is not preserved. Rather, Defendants offered only bald assertions that such harm will somehow manifest itself. Moreover, Defendants cannot state any substantive basis under the law for the position that Client A should be afforded secrecy. On the contrary, the weight of legal authority strongly favors that a trial be open and accessible to the public and comprehensible to the jury. See, e.g., Huminski v. Corsones, 396 F.3d 53, 81 (2d Cir. 2005) (citing Gannett Co. v. DePasquale, 443 U.S. 368, 383 (1979)) ("[T]here is a strong societal interest in public trials. Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant

testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system.").

A general preference for secrecy simply is not sufficient.  See United States v. Int'l Bus. Machines Corp., 83 F.R.D. 92, 96 (S.D.N.Y. 1979) (citing Branzburg v. Hayes, 408 U.S. 665 (1972) ("[T]he witness expresses a generalized desire for seclusion and noninterference, a wish that he not be made to expose his affairs to scrutiny. Such claims, sincere and understandable as they may be, must yield to the entitlement of the public to every person's evidence when he or she is properly summoned."). As such, Plaintiff should be permitted to use the names of the Client A individuals and entities at trial.

**II.      DEFENDANTS SHOULD BE PRECLUDED FROM LIMITING THE PUBLIC'S
         ACCESS TO THE PARTIES' UPCOMING TRIAL**

Although Defendants are not permitted to object to the introduction of a document on the basis of an AEO designation, Plaintiff anticipates that Defendants will seek to limit the public's access to trial when Client A and/or AEO documents are being discussed or used.

Fed. R. Civ. P. 26(c) authorizes protective orders in the course of discovery, "[a]n important purpose of [which] is to preserve the confidentiality of materials which are revealed in discovery but not made public at trial . . . At the adjudication stage, however, very different considerations apply." Joy v. N., 692 F.2d 880, 893 (2d Cir. 1982).  During discovery, Defendants designated many, many documents and every single page of deposition testimony as AEO.  However, at the adjudication stage, such designations are completely inappropriate and, in fact, run afoul of a well-established and deeply rooted societal interest in public access to proceedings held pursuant to Article III of the United States Constitution.  See United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II") ("We have [ ] consistently held that

the public has an especially strong right of access to evidence introduced in trials.") (internal quotation marks omitted).

"An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny . . . Indeed, any other rule might well create serious constitutional issues." Joy, 692 F.2s at 893.  Accordingly, "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons."  Id.  Rather, the presumption of public access attaches to "judicial documents."  See United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I").  The Second Circuit has articulated a clear definition of what constitutes a judicial document:

> We think that the mere filing of a paper or document with the court
> is insufficient to render that paper a judicial document subject to
> the right of public access. We think that *the item filed must be*
> *relevant to the performance of the judicial function and useful in*
> *the judicial process in order for it to be designated a judicial*
> *document*.

Id. (emphasis added).

Here, the documents and testimony at issue, to the extent admissible at trial, are, by definition, "relevant" and "useful" to the carrying out of the judicial process.  In other words, it is beyond dispute that such documents constitute "judicial documents" under Second Circuit law.  Thus, the Court must weigh two countervailing considerations: (i) "whether public access to the materials at issue is likely to impair in a material way the performance of Article III functions" by compromising law enforcement interests; and (ii) "the privacy interest of the person resisting disclosure."  Amodeo II, 71 F.3d at 1050.  As law enforcement has played no role in this civil action, the first consideration is inapplicable.  As for the second consideration, it is unclear what privacy interests Defendants could possibly raise as to the documents and testimony they have marked "attorneys' eyes only confidential."  However, such privacy interests surely do not

outweigh the presumption of public access and interest of performance of the judicial function at all, let alone enough to warrant shielding the public, the jurors and witnesses from vast amounts of relevant evidence.

The allegations of retaliation here are not so much more sensitive than those at issue in similar employment cases, and Defendants (or third parties) should not be entitled to extraordinary secrecy at the expense of the public.

**CONCLUSION**

Accordingly, Ms. Sharkey respectfully requests that Defendants be precluded from curtailing Ms. Sharkey's ability to present her claims to the jury and/or limiting the public's access to the upcoming trial in this matter.

Dated: January 9, 2017        Respectfully submitted,
New York, New York

**WIGDOR LLP**

By: _____

Douglas H. Wigdor
Lawrence M. Pearson
Michael J. Willemin
Alex J. Hartzband

85 Fifth Avenue
New York, New York 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
lpearson@wigdorlaw.com
mwillemin@wigdorlaw.com
ahartzband@wigdorlaw.com

*Counsel for Plaintiff*