UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JENNIFER SHARKEY,                                  :
                                                   :
                    Plaintiff,                     :   Civil Action No.: 10-cv-3824 (RWS)
                                                   :
          v.                                       :
                                                   :
J.P. MORGAN CHASE & CO., JOE KENNEY,               :
ADAM GREEN, and LESLIE LASSITER, in                :
their official and individual capacities,          :
                                                   :
                    Defendants.                    :
-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NUMBER 7 SEEKING TO PRESERVE THE CONFIDENTIALITY OF JPMC CLIENTS AND EMPLOYEES**

 

**WIGDOR LLP**

Douglas H. Wigdor, Esq.
Lawrence M. Pearson, Esq.
Michael J. Willemin, Esq.
Alex J. Hartzband, Esq.

85 Fifth Avenue
New York, NY  10003
Tel:  (212) 257-6800

*Counsel for Plaintiff*

Plaintiff Jennifer Sharkey ("Plaintiff" or "Ms. Sharkey"), by and through her undersigned counsel, hereby submits this memorandum in opposition to Motion *In Limine* No. 7 filed by Defendants J.P. Morgan Chase & Co. ("JPMC" or the "Bank"), Joe Kenney ("Kenney"), Adam Green ("Green") and Leslie Lassiter ("Lassiter") (collectively, "Defendants") in order to preclude documents and testimony offered as evidence at trial from revealing the identities of any and all JPMC clients and/or employees.

## ARGUMENT

### I. LEGAL STANDARD

As the Court is well aware, Fed. R. Evid. 401 and 402 proscribe the admission of irrelevant evidence. To be admissible, evidence must be relevant, which means: (i) it must "have a tendency to make a fact more or less probable than it would be without the evidence;" and (ii) "the fact is of consequence in determining the action." Fed. R. Evid. 401. Moreover, relevant evidence will be excluded if its probative value is substantially outweighed by a danger of one or more of the following: (a) unfair prejudice; (b) confusing the issues; (c) misleading the jury; (d) undue delay; (e) wasting time; or (f) needlessly presenting cumulative evidence. Fed. R. Evid. 403; see also Gierlinger v. Gleason, 160 F.3d 858, 871 (2d Cir. 1998) (recognizing that "[t]he trial court has considerable discretion in determining whether to admit or exclude evidence, and to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion.").

### II. DEFENDANTS' MOTION *IN LIMINE* NO. 7 SHOULD BE DENIED

    **A. Defendants' Entire Motion Rests on the Faulty Assumption that Client A's Public Reputation Is Beyond Reproach**

[redacted]



▮▮▮

### B.  The Identities of JPMC Clients and Employees Are Relevant to Ms. Sharkey's Claims and the Relief Requested By Defendants Will Cause Plaintiff Extreme Prejudice

Defendants argue that the identities of Client A, Manager T and other JPMC clients are not relevant to the upcoming trial because Ms. Sharkey purportedly "does not need to utilize their names in order to prove her case." Dkt. No. 152 at p. 6. This could not be further from the truth or reality. As explained more fully in Plaintiff's own motion i*n limine* (see Dkt. No. 162), the relief Defendants seek would force the jury to follow the use of several dozen monikers throughout the trial in order to refer to Client A, his wife, his son and his countless businesses. Monikers such as "Client A," "Client A's wife," "Client A's son," "Client A1," "Client A2," "Client A3," "Client A4," "Client A5," "Client A6," "Client A7," "Client A8," "Client A9," "Client A10," "Client A11," "Client A12," "Client A13," etc. (not to mention the monikers that would be needed for JPMC employees and any other JPMC clients, such as Manager T and the Ostrager firm, on whose third party escrow account Client A was trading without apparent authorization). There is no compelling purpose for using such pseudonyms, and their use will compromise the trial in various ways, including by creating massive amounts of confusion for the jury and the parties. Ms. Sharkey will be severely hindered in her ability to prove her case to the jury due to such an unnecessarily cumbersome and distracting artifice.

The utterly confusing, unworkable and unnecessarily broad nature of Defendants' proposed confidentiality restrictions would threaten to swallow the trial. The absurdity of Defendants' application, and the undefined and vague nature of their request even a week before trial, is revealed by Defendants themselves on page 8, footnote 5 of their motion. There,

3

Defendants reveal that there are various untold and unidentified persons who they also will be seeking to label with pseudonyms: "Defendants have asserted that Plaintiff had performance issues related to clients other than Manager T. Defendants will use pseudonyms, such as 'Individual M,' to identify those clients." Dkt. No. 152 at p. 8 n. 5. Defendants' application is unwieldy, unjustified and undefined.

Defendants' request, if granted, would require the attorneys in this action, *as well as every single witness*, to consult a massive key while asking and answering virtually every question posed at trial. This will cause significant delay and the jury will be forced to try to follow questions and answers that are interrupted every time the name of a third party needs to be mentioned. Moreover, it is simply unrealistic to expect that witnesses will not, by force of habit, use the actual names of the individuals and entities at issue. If this kind of error happens even once, confidentiality would no longer be preserved. Moreover, the use of pseudonyms while having Client A, Manager T and other JPMC clients and/or employees appear in person at trial would be somewhat strange and farcical.[1] It is unclear exactly how the identities of these people would remain confidential despite showing their faces in open court. Additionally, it will be very difficult for the jury to review and absorb information in documents littered with pseudonyms.

Using pseudonyms also could have the prejudicial effect of dehumanizing the individuals at issue, with effects on the jury's assessments that are hard to predict. This would harm Ms.

---

[1] Defendants and Client A have separately moved to preclude Client A's attendance at trial, claiming that Plaintiff can simply rely on his deposition testimony. Plaintiff has opposed those motions on numerous grounds, including, *inter alia*, that depositions serve a completely different function than trial testimony and questions are posed and responded to much differently (*e.g.*, open ended questions are used at deposition, whereas at trial much more direct and specific questions will be posed). In addition, it is critical that the jury hear from Client A to judge his credibility. These are but a few of the many reasons Client A must testify in person.

4

Sharkey in various ways.  First, making these individuals seem less real or human will undercut the severity or reality of the conduct about which Ms. Sharkey complained.  If "Client A," is an unknown figure, the gravity of the conduct about which Ms. Sharkey complained could be lost or underappreciated by the jury.  Second, the use of pseudonyms could simply cause the jury to lose interest, which, of course, would seriously prejudice Plaintiff.

Critically, this exact same issue has been litigated before in a case involving JPMC.  In NES Financial Corp. v. JPMorgan Chase Bank, the plaintiff moved to preclude JPMC from identifying clients by name and proposed "redacting client names and employing pseudonyms." 891 F. Supp. 2d 558, 558-59.  Ironically, JPMC opposed, and the court found that requiring witnesses to use "pseudonyms during trial" "would be unwieldy and unnecessary."  Id.; see also Doe v. Delta Airlines Inc., No. 15 Civ. 3561, 2016 WL 6989793, at *3 (2d Cir. Nov. 29, 2016) ("The public interest in scrutinizing judicial proceedings combined with the prejudice Delta would face from defending against claims prosecuted by an anonymous person at trial far outweigh Doe's interest in not suffering professional embarrassment and any concomitant financial harm.") (emphasis added); N. Jersey Media Grp. Inc. v. Doe Nos. 1-5, No. 12 Civ. 6152 (VM)(KNF), 2012 WL 5899331, at *8 (S.D.N.Y. Nov. 26, 2012) (as a result of permitting the defendant to proceed under a pseudonym, "[s]ignificant prejudice will also attend the plaintiff in the later stages of the proceedings, including the trial."); Guerrilla Girls, Inc. v. Kaz, 224 F.R.D. 571, 575 (S.D.N.Y. 2004) ("To conduct a trial . . . while using only pseudonyms [ ] promises trouble and confusion.").

Further, as evidenced by NES Financial Corp. (in which JPMC actually *favored* disclosure of its clients' identities) and several other decisions, the upcoming trial would hardly be the first occasion on which allegations of unlawful conduct by JPMC or other big bank clients

were made public by way of a lawsuit.  See Friedman v. JP Morgan Chase & Co., No. 15 Civ. 5899 (JGK), 2016 WL 2903273, at *3 (S.D.N.Y. May 18, 2016) (referencing allegations that "JP Morgan was aware" that JPMC client Norman Levy was "engaged in illegal transfers."); T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A., No. 10 Civ. 2843 (JG)(ARL), 2010 WL 4038826, at *1 (E.D.N.Y. Oct. 14, 2010) (referring openly to JPMC clients Xiuging Yao and Wenru Yang, and citing the dates and dollar amounts of certain transfers of funds made by these individuals); Mansor v. JPMorgan Chase Bank, N.A., 183 F. Supp. 3d 250, 275 (D. Mass. 2016) (mentioning "JP Morgan . . . customers, Wise and the Hoegels" by name); Gil v. JPMorgan Chase Bank, N.A., No. 07 Civ. 0181 (PHX)(SMM), 2009 WL 1628876, at *2 (D. Ariz. June 10, 2009) (explicitly naming the fact that Michael Mariaca was a JPMC customer).

      C.     **Defendants Erroneously Rely on Fed. R. Evid. 403**

Defendants also assert that disclosure of the names of JPMC clients would be "deeply prejudicial" to JPMC by damaging its relationships with those clients, and "deeply prejudicial" to Client A by causing Ms. Sharkey's allegations regarding his suspected unlawful conduct to be made public.  Defendants fundamentally misrepresent the purpose of Fed. R. Evid. 403, which is not designed to protect from "prejudice" the business interests of corporations or to prevent third-party individuals from having their identities revealed at trial simply because they prefer otherwise or unsurprisingly deny having done anything unlawful.  See Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997) ("Rule 403 allows the trial court to exclude relevant evidence on the ground of prejudice to the *party* against whom it is offered.") (emphasis added); Slainte Investments Ltd. P'ship v. Jeffrey, No. 14 Civ. 1750 (CSH), 2015 WL 1445331, at *5 (D. Conn. Mar. 30, 2015) ("[T]he Court will apply Federal Rule 403 of Evidence and give due consideration to 'the nature of the proceeding, how and when the privilege was invoked, and the

6

potential harm for prejudice *to opposing parties*.'") (quoting United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y., 55 F.3d 78, 84 (2d Cir. 1995)) (emphasis added); cf. U.S. v. Gelzer, 50 F.3d 1133, 1140 (2d Cir. 1995) ("Where allegedly prejudicial evidence is admitted solely against one defendant in a multi-defendant trial, the prejudice this might cause *to his co-defendants* is an appropriate consideration for Rule 403 balancing.") (emphasis added).  Rather, Fed. R. Evid. 403 generally goes to undue prejudice suffered by a party in the context of the dispute at issue.

Conspicuously, Defendants cite no case law whatsoever in support of their request that the identities of the individuals and entities that lie at the heart of Ms. Sharkey's protected complaints be completely shielded from the jury and the public.  Indeed, this is because it has no basis under the law.  It is not the role of the Court to protect the identities of individuals and businesses at trial simply because they do not wish to have their names in the record, particularly where doing so would be at the extreme detriment of Plaintiff's ability to present her case to the jury and the jury's ability to digest the evidence.  See United States v. Int'l Bus. Machines Corp., 83 F.R.D. 92, 96 (S.D.N.Y. 1979) ("[T]he witness expresses a generalized desire for seclusion and noninterference, a wish that he not be made to expose his affairs to scrutiny.  Such claims, sincere and understandable as they may be, must yield to the entitlement of the public to every person's evidence when he or she is properly summoned . . . Undoubtedly the duty so imposed at times involves material sacrifice, even invasion of personal privacy, and is carried out at great inconvenience, but this is part of the price we pay to secure the effective administration of justice.") (citing Branzburg v. Hayes, 408 U.S. 665 (1972), and Blackmer v. United States, 284 U.S. 421 (1932)).

### D. The Strong Societal Interest In Public Trials Militates In Favor of Disclosure of the Identities of JPMC's Clients and Witnesses

Defendants' motion also flies in the face of the well-founded principle within the Second Circuit, and the American legal system in general, that trials are to be entirely public.  "[T]here is a strong societal interest in public trials.  Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system." Huminski v. Corsones, 396 F.3d 53, 81 (2d Cir. 2005) (citing Gannett Co. v. DePasquale, 443 U.S. 368, 383 (1979)).  Defendants have not presented any special circumstances here that would justify obstructing public access to information about this case at trial.

### E. Defendants' Reliance on the Parties' Protective Order, Which Was Explicitly Drafted to Cover Only Discovery, Is Misplaced

In support of their motion, Defendants cite numerous provisions contained in the parties' Protective Order.  See Dkt. No. 38.  One of these provisions expressly provides for reconsideration of confidentiality at trial:  "***Nothing herein shall restrict the presentation of any evidence to the Court at trial or any other hearing in this action***." Id. at ¶ 12 (emphasis added).  Paragraph 12 also goes on to state that parties or the Court may seek to take "***reasonable steps** to maintain the confidentiality of confidential material at trial . . . **in such manner as the Court may direct***." Id. (emphasis added).  Therefore, the Protective Order was not intended to simply carry over automatically all of the same confidentiality restrictions and designations from discovery to trial.  The issue is whether any "reasonable steps" should be considered to prevent wide dissemination of material that might plausibly unduly harm Client A (for which no support has yet been presented), rather than merely employing blanket secrecy.

8

In addition, Paragraph 21 of the Protective Order, which is not mentioned by Defendants, expressly provides that matters raised regarding the Protective Order's restrictions are to be reconsidered on their own merits, and that a party's willingness to enter into the Protective Order in the first place shall not serve to prejudice that party later on:

> "Notwithstanding the foregoing provisions, this Protective Order shall be *without prejudice to the right of either party* to challenge the propriety of discovery on other grounds, or *to move the Court to modify, revise or amend this Protective Order. The fact that a party entered into this Protective Order may not be raised as a defense to or argument against any such motion*."

Id. at ¶ 21 (emphasis added).

Therefore, the mere existence of the Protective Order does not entitle JPMC's clients or employees to a special shield of confidentiality. Witness anonymity is sometimes permitted to a limited number of individuals in highly sensitive or potentially dangerous criminal matters, such as those involving sexual abuse or potential violent reprisals, and typically not in civil employment or financial cases. Defendants have not presented any substantive information, much less evidence, that shows they would suffer any significant harm. With respect to Client A specifically, the parties are not litigating whether Client A did, in fact, engage in unlawful activity (an issue that Defendants still seem intent upon obscuring), and there will be no known need for Client A to invoke the Fifth Amendment to the U.S. Constitution or any other circumstances that might implicate collateral legal rights (indeed, the Client A witnesses did not do so at their depositions).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion *In Limine* No. 7 in its entirety.

Dated:   January 13, 2017
         New York, New York

                                                        Respectfully submitted,

                                                        **WIGDOR LLP**

                                                        By: _____
                                                             Douglas H. Wigdor
                                                             Lawrence M. Pearson
                                                             Michael J. Willemin
                                                             Alex J. Hartzband

                                                        85 Fifth Avenue
                                                        New York, New York 10003
                                                        Phone: (212) 257-6800
                                                        Facsimile: (212) 257-6845
                                                        dwigdor@wigdorlaw.com
                                                        lpearson@wigdorlaw.com
                                                        mwillemin@wigdorlaw.com
                                                        ahartzband@wigdorlaw.com

                                                        *Counsel for Plaintiff*