

**Curtis, Mallet-Prevost, Colt & Mosle LLP**

Almaty
Ashgabat
Astana
Beijing
Buenos Aires
Dubai
Frankfurt
Geneva
Houston
London
Mexico City
Milan
Muscat
Paris
Rome
Washington, D.C.

101 Park Avenue
New York, New York 10178-0061

**Telephone +1 212 696 6000**
**Facsimile +1 212 697 1559**
www.curtis.com

**Jacques Semmelman**
Tel: +1 212 696 6067
Fax: +1 917 368 8867
E-Mail: jsemmelman@curtis.com

January 18, 2017

Hon. Robert W. Sweet
U.S. District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
Courtroom 18C
New York, NY 10007-1312

**Re: Sharkey v. JP Morgan Chase**
**No. 10-cv-3824 (RWS)**

Dear Judge Sweet:

I am writing on behalf of Client A to respectfully urge the Court to prevent a miscarriage of justice and revisit the Court's stated inclination to require the disclosure of Client A's identity at the upcoming trial of this action.

Through decades of hard work, Client A has built a highly successful family business. His adult sons work in that business and thereby support their families. Exposing Client A's identity threatens to cripple that business. That is no exaggeration. Client A is in a highly competitive industry. Competitors would relish using the information that Plaintiff seeks to publicize, in order to persuade customers to stay away from Client A. The Court need not take my word for this. If the Court wishes to take *in camera* testimony from Client A (with all counsel present), Client A would be willing and indeed eager to appear before Your Honor.

Client A has been in business for many decades, and enjoys a flawless reputation. Plaintiff has contended that Client A's reputation is not so pure that it warrants any protection at all. In support of that assertion, Plaintiff points to one incident in 1995, in which it was falsely alleged that Client A had engaged in wrongdoing, which was never proven. Nevertheless, that allegation caused damage to Client A in the many millions of dollars. It took Client A years to rebuild his business, which he has done very successfully, thanks in large measure to his outstanding reputation. The fact that Plaintiff has not located a single negative reference about Client A since 1995 is telling.





Balanced against this looming disaster to a very decent and upright citizen and his family is the asserted need of the Plaintiff to (i) have Client A and members of his family testify in person at trial; and (ii) apart from that, expose Client A's identity to avoid jury confusion. Respectfully, it is difficult to see how those considerations can outweigh the onerous cost that will be imposed on an innocent non-party.

I recognize that over the past few weeks, the Court has received papers from all directions. I am not looking to add unnecessarily to the Court's burden, and so I will try to be succinct:

1. I understand that the Court wants the jury to have the relevant evidence. But in light of the Second Circuit's decision in *Sharkey v. JPMorgan Chase*, 2016 U.S. App. LEXIS 16636 (2d Cir. Sept. 12, 2016), the relevance of live testimony from Client A and members of his family is tangential at best, since the issue is what Plaintiff reasonably believed *at the time* she worked for the bank. Eliciting testimony at trial from Client A or members of his family will not contribute to that issue. Their physical appearance is not relevant, and Plaintiff does not contend that it is. Their manner under cross-examination is not relevant, because there is no claim that Plaintiff conducted a cross-examination and came away on that basis with the reasonable belief that Client A was engaging in criminal conduct. There is therefore no purpose in requiring live testimony. To the extent Plaintiff needs to elicit certain facts from these witnesses, those facts can be presented through deposition testimony. As I indicated at oral argument, if Plaintiff wants to take follow-up depositions to fill any remaining gaps in her proof, such depositions can be arranged at a mutually convenient time. I would also add that, were it not for the fortuity that Client A is within reach of the Rule 45 subpoena power, he would not be required to testify in person, only by deposition, as is the case with the Chicago witnesses mentioned at oral argument. In light of the significant ramifications to Client A and his entire family as set forth above, the fortuity of his residence should not be dispositive.

2. Plaintiff claims the jury will become confused unless they hear the actual name of Client A. It is hard to see why there will be confusion. It is not as if there are multiple, *unrelated* pseudonymous clients the jury must keep track of. It is all one group: a man, his wife, their son, and a handful of closely held entities. They can be called the "Smith" family, if "Client A" is too stilted. As for the entities, there are very few instances in which the *specific* entity matters. According to the Second Circuit, the issue is whether Plaintiff had a reasonable belief that Client A (through his various entities) was engaged in criminal activity. There is no reason to believe the jury will become confused and unable to handle this. This should not tip the balance in favor of disclosure.

3. Finally, while there is no absolute right to confidentiality, there is also no absolute right to disclosure. As the Second Circuit noted in *United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ("*Amodeo II*"), there must be a balancing of competing interests, and "the privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation." *Id.* at 1050.



Curtis, Mallet-Prevost, Colt & Mosle LLP



I respectfully urge the Court to give further consideration and to take into account the likely severe and far-reaching ramifications to an innocent non-party and his family that would ensue as a result of exposing Client A's identity, which far outweighs the minimal need to do so.

Respectfully,

Jacques Semmelman

cc: Douglas Wigdor, Esq. (via email)
Lawrence Pearson, Esq. (via email)
Michael Schissel, Esq. (via email)
Kathleen Reilly, Esq. (via email)