UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JENNIFER SHARKEY,                             :
                                              :
                      Plaintiff,           :   Civil Action No.: 10-cv-3824 (RWS)
                                              :
            v.                              :
                                              :
J.P. MORGAN CHASE & CO., JOE KENNEY,          :
ADAM GREEN, and LESLIE LASSITER, in           :
their official and individual capacities,     :
                                              :
                      Defendants.          :
------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR A DIFFERENT JUDGE TO BE ASSIGNED TO
THIS MATTER PURSUANT TO 28 U.S.C. § 144 AND 28 U.S.C. § 455**


                                                            **WIGDOR LLP**

                                                            Douglas H. Wigdor, Esq.
                                                            Lawrence M. Pearson, Esq.
                                                            Michael J. Willemin, Esq.
                                                           Alex J. Hartzband, Esq.

                                                           85 Fifth Avenue
                                                           New York, NY  10003
                                                           Tel:  (212) 257-6800

                                                           *Counsel for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF FACTS ....................................................................................................1

ARGUMENT .......................................................................................................................11

I.    LEGAL STANDARD..............................................................................................11

II.    PLAINTIFF HAS ESTABLISHED THE REQUIREMENTS OF SECTION 144 AND SECTION 455................................................................................................13

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

Alexander v. Primerica Holdings, Inc.,
    10 F.3d 155 (3d Cir. 1993) ............................................................................................ 14, 15

Allen v. Colgate-Palmolive Co.,
    No. 79 Civ. 1076 (CSH), 1985 WL 406 (S.D.N.Y. Mar. 21, 1985) ................................. 10

Feldman-Boland v. Stanley,
    No. 15 Civ. 6698, 2016 WL 3826285 (S.D.N.Y. July 13, 2016) ....................................... 5

Halliburton, Inc. v. Admin. Review Bd.,
    771 F.3d 254 (5th Cir. 2014) ............................................................................................. 5

Hanna v. WCI Communities, Inc.,
    348 F. Supp. 2d 1332 (S.D. Fla. 2004) .............................................................................. 6

Jones v. Home Fed. Bank,
    No. 09 Civ. 336 (CWD), 2010 WL 255856 (D. Idaho Jan. 14, 2010) ........................... 5, 6

Lewis v. Tuscan Dairy Farms, Inc.,
    25 F.3d 1138 (2d Cir. 1994) ............................................................................................ 13

Liteky v. United States,
    510 U.S. 540 (1994) ................................................................................................... 12, 13

Mahony v. KeySpan Corp.,
    No. 04 Civ. 554 (SJ), 2007 WL 805813 (E.D.N.Y. Mar. 12, 2007) .................................. 5

Nielsen v. AECOM Tech. Corp.,
    762 F.3d 214 (2d Cir. 2014) .............................................................................................. 2

Perez v. Progenics Pharm., Inc.,
    No. 10 Civ. 08278 (LAP), 2016 WL 4533398 (S.D.N.Y. Aug. 30, 2016) ........................ 5

Sharkey v. J.P. Morgan Chase & Co.,
    580 F. App'x 28 (2d Cir. 2014) ......................................................................................... 2

Sharkey v. JPMorgan Chase & Co.,
    660 F. App'x 65 (2d Cir. 2016) ......................................................................................... 3

United States v. Antar,
    53 F.3d 568 (3d Cir. 1995) .............................................................................................. 14

United States v. Daley,
    564 F.2d 645 (2d Cir. 1977) .................................................................................... 13, 14

United States v. Grinnell Corp.,
    384 U.S. 563 (1966) ...................................................................................................... 12

United States v. Holland,
    655 F.2d 44 (5th Cir. 1981) .......................................................................................... 15

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003) ............................................................................................ 14

Williams v. City Univ. of N.Y.,
    633 F. App'x 541 (2d Cir. 2015) .................................................................................... 14

## Other Authorities

18 U.S.C. § 1514A ............................................................................................................. 1, 4, 5

28 U.S.C. § 144 .................................................................................................................. 11, 12

28 U.S.C § 455(a) ............................................................................................................ 12, 13, 14

Whistleblower Investigations Manual, U.S. D.O.L., O.S.H.A. (2016) ............................................ 6

Plaintiff Jennifer Sharkey ("Plaintiff" or "Ms. Sharkey") respectfully submits this memorandum of law in support of her motion for a different judge to be assigned to this matter pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455.

## STATEMENT OF FACTS

As the Court is aware, Ms. Sharkey has formed a belief that that Your Honor has demonstrated bias against her and/or in favor of Defendants and/or that Your Honor's impartiality might reasonably be questioned. See, generally, Affidavit of Plaintiff Jennifer Sharkey in support of the instant motion ("Sharkey Aff."). The basis for her belief is as follows:

*First*, on August 19, 2011, the Court, in the context of Defendants' motion to dismiss, held that the "definitively and specifically" standard is not the appropriate analysis for determining whether a plaintiff has engaged in protected activity under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX"). See Dkt. No. 32 at pp. 25-26. The Court even quoted a decision of the Department of Labor that held, *inter alia*, that applying the definitively and specifically standard is "not only inappropriate, but it also presents a potential conflict with the express statutory authority of [SOX]." Id. However, despite this Court's prior holding, on December 12, 2013, the Court applied the "definitively and specifically" standard in the context of a summary judgment motion brought by Defendants and, on the basis of that standard, dismissed Plaintiff's claim. See Dkt. No. 81 at pp. 23-24 ("Sharkey's reports to Defendants as to Client A do not constitute protected activity. Plaintiff fails to 'definitively and specifically' relate her allegations to one of the six enumerated categories of misconduct under SOX."). Ms. Sharkey believes that there is no rational explanation – other than bias or prejudice against her and/or in favor of Defendants – as to why the Court, in dismissing her claims, would apply a

1

standard that it had already recognized was inappropriate and overly stringent.  Sharkey Aff. at ¶ 2.

*Second*, on October 9, 2014, the Second Circuit held that the Court's decision granting summary judgment was based on the incorrect "definitively and specifically" standard.  See Sharkey v. J.P. Morgan Chase & Co., 580 F. App'x 28, 29 (2d Cir. 2014) (citing Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 221 (2d Cir. 2014)).  While the Second Circuit could have affirmed the Court's December 12, 2013 decision on several alternative grounds, it did not.  See id.  In fact, in Nielsen, the Second Circuit held that the lower court had improperly applied the "definitively and specifically" standard, but still affirmed a grant of summary judgment based on its view that the complaints would not be protected even under the correct standard.  762 F.3d at 221.  However, unlike in Nielsen, the Second Circuit remanded the Court's decision for further consideration, sending a clear message that summary judgment was not appropriate in this case.  See 580 F. App'x at 29.  Nevertheless, on October 9, 2015, the Court granted Defendants' second motion for summary judgment, which Ms. Sharkey also believes evinces bias against her and/or in favor of Defendants.  See Dkt. No. 108; Sharkey Aff. at ¶ 3.

*Third*, in order to grant Defendants' second motion for summary judgment, the Court misstated the facts (often contradicting previous statements of the same facts earlier in the decision), resolved factual disputes in Defendants' favor, and even drew inferences favorable to Defendants.  By way of example only, the Court: (i) repeatedly referred to the Manager T incident as an "intervening" cause of Ms. Sharkey's termination (id. at pp. 40, 42) despite the fact that the Manager T incident occurred *before* Ms. Sharkey's recommendation to exit the Client A relationship, and thus quite literally was not "intervening;" (ii) expressly recognized that whether the Manager T incident even occurred was disputed, yet granted summary judgment

2

on the basis that Defendants terminated Ms. Sharkey because of the Manager T incident (id. at pp. 22-23, 39-41); and (iii) drew an inference in favor of Defendants with regard to the meaning of an email sent by Adam Green to Joe Kenney (id. at pp. 37, 41).  On September 12, 2016, the Second Circuit reversed the Court's October 9, 2015 opinion, recognizing that, "as a matter of law," summary judgment was not warranted because Ms. Sharkey disputed that the Manager T incident even occurred.  See Sharkey v. JPMorgan Chase & Co., 660 F. App'x 65, 67 (2d Cir. 2016).  Ms. Sharkey believes that the Court's second decision granting summary judgment evinces bias against her and/or in favor of Defendants.  Sharkey Aff. at ¶ 4.

*Fourth*, on September 29, 2016, the parties appeared before the Court for a pretrial conference.  See Dkt. No. 114.  During the conference, while discussing scheduling and potential resolution talks, Your Honor put his hand over his face, closed his eyes and said, "I would do anything to get rid of this case."  Declaration of Douglas H. Wigdor in support of the instant motion ("Wigdor Decl.") at ¶ 2.  Ms. Sharkey believes that this statement and clear display of disdain provides context for the Court's decisions granting summary judgment – and its actions that would follow – and further evinces bias against her and/or in favor of Defendants.  Sharkey Aff. at ¶ 5.

*Fifth*, on December 23, 2016, after canceling oral argument on the morning for which it was scheduled, the Court granted Defendants' motion to amend their Answer to add an affirmative defense that was required, by law, to be asserted five years prior, but was not due to an apparent law office failure.  See Dkt. No. 138.  The Court's decision: (i) disregarded its own prior orders regarding the timing of motions; (ii) addressed virtually none of the arguments made by Plaintiff; (iii) did not analyze Defendants' motion under the appropriate standard, and instead, without any basis for doing so, analyzed Defendants' motion under a far less stringent standard;

3

and (iv) still improperly applied the inappropriate standard that was used in order to make it somehow even more lenient to Defendants.  See id.  In all of their submissions on this issue, Defendants never once even attempted to explain the five-year delay in asserting this affirmative defense.  See Dkt. Nos. 118, 122, 125, 130, 136.  Ms. Sharkey believes that the Court's decision granting Defendants leave to amend evinces bias against her and/or in favor of Defendants.  Sharkey Aff. at ¶ 6.

*Sixth*, on January 17, 2017, the Court held oral argument on, *inter alia*, 14 motions *in limine* filed by the parties in this action.  See, generally, Ex. A.[1]  Shortly before the oral argument, we were told that January 17, 2017 was Your Honor's first day back from holiday vacation, and that Your Honor had not yet read the papers filed in connection with the motions *in limine*.  Wigdor Decl. at ¶ 4.  We were asked to provide the Court with a copy of the papers, which had previously been provided and are, in total, approximately five inches thick.  Id. at ¶ 5.  Very shortly thereafter, Your Honor took the bench and began making rulings and preliminary rulings despite apparently having not read the papers.  Id. at ¶ 6.  Indeed, it appeared the Court was making rulings based solely on the titles of the motions, which were listed in a letter filed by Plaintiff the night before.  Id. at ¶ 7; see Dkt. No. 194.  Most of the rulings, particularly as to the motions that are most likely to affect Ms. Sharkey's chances of success and recovery, were favorable to Defendants.  See, generally, Ex. A.  Ms. Sharkey believes that this conduct evinces bias against her and/or in favor of Defendants (Sharkey Aff. at ¶ 7), including the following rulings:

- By way of example, Your Honor ruled that the Court, and not the jury, would determine Ms. Sharkey's back pay award without providing any rationale for this decision.  See Ex. A at 24:7-25:6.  There is no basis in law for this determination: juries determine compensatory relief and SOX states expressly that back pay is a

---

[1]  All references to "Ex. __" are to the exhibits attached to the Wigdor Decl.

"compensatory damage." 18 U.S.C. § 1514A(c)(2). Moreover, case law within the Second Circuit is clear in holding that damages for back pay under SOX are compensatory, not equitable. See, e.g., Perez v. Progenics Pharm., Inc., No. 10 Civ. 08278 (LAP), 2016 WL 4533398, at *14 (S.D.N.Y. Aug. 30, 2016) ("The jury's compensatory damages award of $1,662,951" covers "the time period from the day after Plaintiff's termination [ ] to [ ] the date that judgment will be entered."). In addition, unlike other discrimination and retaliation statutes, SOX also provides a right to a jury trial. 18 U.S.C. 1514A(b)(2)(E). Thus, it is unwarranted to preclude the jury from making a back pay determination.

- Further, the Court expressed a belief that SOX does not permit front pay awards. See Ex. A at 20:1-22:3 ("My understanding of the law in this area may very well be fault. Well, as events have proven, my understanding is occasionally faulty, but I don't think front pay . . . [is] available."). Not only is this untrue, but Defendants did not even argue that front pay could not be awarded under SOX. See Dkt. Nos. 146, 186. Indeed, they conceded in their motion that "[f]ront pay may be an acceptable proxy for reinstatement." Dkt. No. 186 at p. 6. Defendants only argued that Plaintiff waived her right to seek front pay because she did not include the words "front pay" in her Initial Disclosures. See Dkt. Nos. 146, 186. This argument, of course, is completely frivolous for many reasons, not the least of which is that the Court granted Defendants' motion to amend the Answer. Your Honor did state that the Court would review the submissions before making a final determination. See Ex. A at 20:1-22:3. It is hard to see why – other than based contempt for Plaintiff's case – the Court would make a preliminary ruling against Ms. Sharkey on a basis that is contrary to well-established law and was never even advanced by Defendants. Sharkey Aff. at ¶ 7.

- The Court also ruled that Plaintiff could not seek emotional distress or reputational damages, because they are purportedly not available under SOX. Ex. A at 20:1-22:3. Again, this decision is contrary to well-established law, including the decisions of every circuit court that has addressed the issue, which I pointed out at argument, as well as the Department of Labor. See, e.g., Feldman-Boland v. Stanley, No. 15 Civ. 6698, 2016 WL 3826285, at *6 (S.D.N.Y. July 13, 2016) ("With respect to damages for emotional distress, every circuit court to address the issue holds that such damages may be recoverable pursuant to SOX's language stating that a prevailing employee 'shall be entitled to all relief necessary to make the employee whole'" . . . "if damages for emotional distress are required to make an employee whole, they are not precluded by SOX."); Mahony v. KeySpan Corp., No. 04 Civ. 554 (SJ), 2007 WL 805813, at *1 (E.D.N.Y. Mar. 12, 2007) ("When reputational injury caused by an employer's unlawful discrimination diminishes a plaintiff's future earnings capacity, [she] cannot be made whole without compensation for the lost future earnings [she] would have received absent the employer's unlawful activity."); Halliburton, Inc. v. Admin. Review Bd., 771 F.3d 254, 266 (5th Cir. 2014) ("In light of SOX's plain text and the foregoing considerations, we find that the statute affords noneconomic compensatory damages, including emotional distress and reputational harm. SOX affords 'all relief necessary to make the employee whole,' and we think Congress

5

meant what it said.  All means all."); Jones v. Home Fed. Bank, No. 09 Civ. 336 (CWD), 2010 WL 255856, at *6 (D. Idaho Jan. 14, 2010) (permitting reputational harm damages because "allowing a plaintiff to claim damages for a reputational injury that caused a decrease in the plaintiff's future earning capacity could be consistent with SOX's goal of making the plaintiff whole" and "restore the status quo and order the return of that which rightfully belongs" to the plaintiff.); Hanna v. WCI Communities, Inc., 348 F. Supp. 2d 1332, 1334 (S.D. Fla. 2004) ("[A] successful Sarbanes–Oxley Act plaintiff cannot be made whole without being compensated for damages for reputational injury that diminished plaintiff's future earning capacity."); Whistleblower Investigations Manual, Chapter 6 § V(b) ("Damages for emotional distress and mental anguish may be awarded under all OSHA administered whistleblower statutes.").

- Moreover, the Court ruled that Ms. Sharkey would not be permitted to introduce a deferred prosecution agreement containing numerous admissions by J.P. Morgan Chase & Co. ("JPMC") that are directly relevant to this action.  Ex. A at 25:20-29:8.  These include, but are not limited to, admissions regarding the purpose of the Know Your Customer ("KYC") process that is at the heart of this case and the statutes that Ms. Sharkey believed Client A might be violating, inadequacies in JPMC's KYC process and JPMC's willingness to turn a blind eye to potential illegal activity.  Id.

*Seventh*, during the parties' January 17, 2017 conference, the Court conceded that defense counsel was engaged in "gamesmanship," but Your Honor refused to admonish them in any way.  See id at 30:10-32:2.  Ms. Sharkey believes that this fact evinces bias against her and/or in favor of Defendants.  Sharkey Aff. at ¶ 8.

*Eighth*, during the same conference, the Court held that defense counsel need not comply with Ms. Sharkey's subpoenas seeking communications between Defendants (and/or their attorneys) and Client A (and/or his attorneys).  See Ex. A at 34:24-38:5.  Defense counsel did not even deny that relevant documents exist, and instead repeatedly stated that Plaintiff has not explained how the documents sought could be relevant.  See id.  Defense counsel's contention was completely dishonest.  In Plaintiff's submission on this issue, Plaintiff wrote: "To the extent communications exist regarding the conduct of Client A when Ms. Sharkey serviced his accounts, positions that Defendants and/or Client A are and/or will take in this litigation, Client A's potential deposition or trial testimony, etc., such communications are highly relevant.[ ]  Any

6

agreements between Defendants and Client A regarding this matter also would be relevant to demonstrate bias and motive." Dkt. No. 184 at p. 3.  Nevertheless, the Court refused to enforce the subpoena on the basis that Plaintiff failed to establish relevance.  See Ex. A at 34:24-38:5.  The Court even went so far as to decline our request to review responsive documents *in camera* to determine whether they may be relevant to this matter.  See id.  Ms. Sharkey believes that this conduct evinces bias against her and/or in favor of Defendants.  Sharkey Aff. at ¶ 9.

*Ninth*, during the same conference, the Court postponed the trial of this action, which was set to begin six days later, on January 23, 2017.  See Ex. A at 2:10-23.  Ms. Sharkey has been waiting for seven years to have her day in Court, and Plaintiffs' counsel had spent significant time over the past two months preparing for trial.  Ms. Sharkey believes that this conduct evinces bias against her and/or in favor of Defendants.  Sharkey Aff. at ¶ 10.

*Tenth*, also during this conference, Plaintiff's counsel suggested assigning this case to another Judge for trial beginning on January 23, 2017.  See Ex. A at 5:1-7.  The Court dismissed the notion outright and Your Honor stated, "I wouldn't wish this case on my worst enemy."  Id.  Plaintiff believes that this statement evinces an extraordinary contempt for her case.  See Sharkey Aff. at ¶ 11.  It also puts into context the Court's various rulings against Plaintiff, described above, many of which were apparently made with no consideration for the parties' arguments or the relevant statutes and case law.  Id.

*Eleventh*, there is no legitimate reason that another Judge could not have tried this case, and the Court's failure to even consider this alternative suggests that the Court does not intend for this case to go to trial at all.  Id. at ¶ 12.  Indeed, Your Honor actually stated, "I've lived with [the case] and I suppose I can say I'll probably die with it."  Ex. A at 5:5-7.  Ms. Sharkey

7

believes that this statement evinces bias against her and/or in favor of Defendants. Sharkey Aff. at ¶ 12.

***Twelfth***, on January 26, 2017, Plaintiff submitted a pre-motion conference letter in anticipation of the instant motion, in which she explicitly requested that the Court "hold in abeyance any written decision regarding the motions *in limine* until this matter is resolved so that we have the opportunity to respond to the recent correspondence submitted by Client A (Dkt. Nos. 197-201), and to further supplement our arguments on the respective motions." Ex. B at pp. 6-7. Two hours later, and after hearing additional arguments presented only by Client A's counsel, the Court issued a decision as to the outstanding motions *in limine* without giving Ms. Sharkey the opportunity to respond, as was specifically requested. See Dkt. No. 202. Ms. Sharkey believes that this decision evinces bias against her and/or in favor of Defendants. Sharkey Aff. at ¶ 13.

***Thirteenth***, the rulings in this opinion exhibited even further demonstrable bias against Plaintiff. Sharkey Aff. at ¶ 14. At the parties' January 17, 2017 pretrial conference, the Court initially ruled that Client A's identity would be disclosed in the context of this trial. Specifically, Your Honor stated, "[l]ook, my concern is a simple one: I want the jury to have all the relevant facts. ***And this gentleman's affairs are to a degree -- and that's an issue, I understand -- are to a degree those relevant facts. And I am persuaded that there is no enforceable right to secrecy and that it would be confusing for the jury***. That's the reason I think that his identity will be revealed." Ex. A at 15:14-19. After reviewing a letter from Client A's attorney, Jacques Semmelman, Esq., and ignoring Plaintiff's request that the Court hold in abeyance any written opinion, Your Honor's decision effectively rescinded the Court's previous decision and deferred the judgment call to a later date. See Dkt. No. 202. Specifically, the January 26, 2017 opinion

held that "Client A's identity will be protected up until the time at which either of the parties can make an in camera showing that Client A's testimony will be relevant during trial." Id. at p. 2. That is to say, even though the Court had already clearly stated that Client A's affairs "are to a degree [ ] relevant facts," Your Honor reversed course and will now require Plaintiff to demonstrate that Client A's testimony is relevant. See id. This is even more troubling to Plaintiff given that the Court has presided over this case for nearly seven years, and the parties have filed myriad submissions concerning Client A – his testimony is plainly relevant. Sharkey Aff. at ¶ 14. Ms. Sharkey believes that the Court's apparent change of heart on this matter evinces bias against her and/or in favor of Defendants. Id.

*Fourteenth*, whereas the Court had already determined that the jury would be confused by the use of pseudonyms at trial, the January 26, 2017 decision would require that pseudonyms be used until some point in the middle of trial, thereby exacerbating the confusion previously recognized by the Court. See Dkt. No. 202 at pp. 2-5. Moreover, the Court's January 26, 2017 opinion did not address the issue of whether the documents that contain the name of Client A or any of his many companies would have to be redacted. See id. To comply with the Court's order, the parties would presumably have to use redacted documents until some point in the middle of trial, when Plaintiff demonstrates that Client A's testimony is relevant, at which point the parties will switch over to unredacted documents. Again, the Court had already held that this would create confusion for the jury and prejudice Ms. Sharkey in presenting her case to a jury. See Ex. A at 15:14-19. Finally, the Court also already held that "there is no enforceable right to secrecy," (id. at 15:18) and yet Your Honor is apparently providing such right, for a time, to Client A, to the detriment of Ms. Sharkey. Again, Ms. Sharkey believes that the Court's

9

apparent change of heart on this matter evinces bias against her and/or in favor of Defendants. Sharkey Aff. at ¶ 15.

*Fifteenth*, the Court's January 26, 2017 opinion also effectively held that Ms. Sharkey failed to mitigate her damages following December 2011 because she "made no reasonable efforts to seek such employment" after that point. Dkt. No. 202 at pp. 6-7. Putting aside the fact that this claim by Defendants is in dispute, the failure to mitigate defense is an *affirmative defense* for which Defendants bear the burden. Ms. Sharkey need not prove anything as to her mitigation efforts – the reverse is true. By ruling the way Your Honor did, the Court essentially granted summary judgment as to an affirmative defense that had not even been pled until years after the deadline to move for summary judgment. Moreover, even if it would have been proper to make a summary judgment determination on this issue *and* even assuming that Ms. Sharkey made no reasonable efforts to seek employment after December 2011, Defendants still would not be entitled to summary judgment. As laid out in Plaintiff's proposed jury charge, in order to succeed on their affirmation defense, Defendants will need to prove to the jury that "suitable alternative employment for Ms. Sharkey actually existed and could have been found by the exercise of reasonable diligence." Allen v. Colgate-Palmolive Co., No. 79 Civ. 1076 (CSH), 1985 WL 406, at *5 (S.D.N.Y. Mar. 21, 1985) ("the caselaw in this Circuit clearly requires the defendant who alleges failure to mitigate damages to show 'not only that plaintiff failed to exercise due diligence in seeking employment, but also that had [he] been diligent [he] might have found employment and had some earnings') (collecting cases). Again, the burden is on Defendants with regard to this affirmative defense and there was absolutely nothing in the record to support the Court's holding, as a matter of law, that both: (i) suitable alternative employment for Ms. Sharkey actually existed; and (ii) such employment could have been found by the

10

exercise of reasonable diligence.  Defendants have not proffered a single witness in this case that could opine on either of these two subjects.  Thus, the Court's decision, effectively granting summary judgment for Defendants on an issue for which they bear the burden, improperly prejudiced Ms. Sharkey and, for this reason, Ms. Sharkey believes that the Court has evinced bias against her and/or in favor of Defendants.  Sharkey Aff. at ¶ 16.

*Sixteenth*, while the Court's January 26, 2017 written decision reconsidered and/or reversed the scarce oral decisions initially favorable to Plaintiff, it nonetheless reaffirmed all of the negative ones, including the decisions to: (i) deny Plaintiff the right to assert damages for front pay based on a completely improper reading of the law for which Defendants never even advocated; and (ii) preclude Plaintiff from introducing a document containing a host of admissions by JPMC regarding its KYC processes.  See, generally, Dkt. No. 202.  The fact that the Court has stayed the course on these erroneous decisions even after reviewing the law leads Ms. Sharkey to believe that the Court is biased against her and/or in favor of Defendants.  Sharkey Aff. at ¶ 17.

## ARGUMENT

### I. LEGAL STANDARD

Under 28 U.S.C. § 144 ("Section 144"):

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It

shall be accompanied by a certificate of counsel of record stating that it is made in good faith.[2]

Under 28 U.S.C § 455(a) ("Section 455"), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Put another way, while Section 144 requires a demonstration of actual bias, Section 455 requires recusal where there is the mere potential that a judge's impartiality might reasonably be questioned.

Critically, despite Defendants' repeated and false claims to the contrary, neither Section 455 nor Section 144 *requires* a movant to establish that the bias or potential impartiality of a judge stems from an *extrajudicial* evidence. In United States v. Grinnell Corp., the Supreme Court held, in context of a motion under Section 144, "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." 384 U.S. 563, 583 (1966). In Liteky v. United States, the Supreme Court extended to the so-called "extrajudicial source doctrine" articulated in Grinnell to Section 455; however, the Supreme Court also cautioned:

> ***The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a* necessary *condition for "bias or prejudice" recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice* . . . Since neither the presence of an extrajudicial source necessarily establishes bias, *nor the absence of an extrajudicial source necessarily precludes bias*, it would be better to speak of the existence of a significant (and often determinative) "extrajudicial source" *factor,* than of an "extrajudicial source" *doctrine,* in recusal jurisprudence.**

. . .

---

[2] 28 U.S.C. § 455(b)(1) similarly requires that a judge disqualify himself where her actually harbors "personal bias or prejudice concerning a party."

12

> First, judicial rulings alone almost never constitute valid basis for a bias or partiality recusal motion.  ***Apart from surrounding comments or accompanying opinion***, they cannot possibly show reliance on an extrajudicial source; and, absent such reliance, they require recusal only when they evidence such deep-seated favoritism or antagonism as would make fair judgment impossible. Second, opinions formed by the judge on the basis of facts introduced or events occurring during current or prior proceedings are not grounds for a recusal motion ***unless they display a similar degree of favoritism or antagonism*** that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and ***they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible***.

510 U.S. 540, 554-55 (1994) (internal citation omitted) (emphasis added).

## II.     PLAINTIFF HAS ESTABLISHED THE REQUIREMENTS OF SECTION 144 AND SECTION 455

Respectfully, Plaintiff believes that Your Honor's consistently adverse rulings ***in combination with*** the various disparaging comments the Court has made about her case, establish that the Court harbors "such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky, 510 U.S. at 555.  Even if the Court does not harbor actual bias toward Ms. Sharkey, Your Honor's rulings and comments have, at the very least, created a situation "in which [the Court's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

As explained above, a plaintiff need not rely on an extrajudicial source of bias in order to satisfy the requirements of either Section 144 or Section 455.  Indeed, "[i]t is true that [t]here may be instances in which a judge's behavior during prior judicial proceedings can demonstrate sufficient friction between the judge and the complaining party to support a finding of bias.'" Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138, 1141 (2d Cir. 1994) (quoting United States v.

Daley, 564 F.2d 645, 651 (2d Cir. 1977)).  Under Section 455 in particular, "[t]he relevant inquiry is whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal,' or alternatively, whether 'a reasonable person, knowing all the facts,' would question the judge's impartiality." Williams v. City Univ. of N.Y., 633 F. App'x 541, 543 (2d Cir. 2015) (quoting United States v. Yousef, 327 F.3d 56, 169 (2d Cir. 2003)).  That is the case here.

In United States v. Antar, 53 F.3d 568, 573 (3d Cir. 1995) overruled on other grounds Smith v. Berg, 247 F.3d 532, 534 (3d Cir. 2001), during the sentencing phase of a criminal action, the judge stated: "My object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others."  The appellant-defendant argued that the judge's statement reflected "an appearance" that the court had "prejudged" the merits of the case and that "a number of his rulings were skewed" as a result."  Id.  Put another way, the appellant-defendant argued that "the judge's sentencing comments shed light on the reasons behind several of his adverse rulings."  Id.

In addition, on multiple occasions federal appellate courts have deemed recusal necessary where trial judges took unusual actions, or made comments, that exhibited partiality.  For example, in Alexander v. Primerica Holdings, Inc., the Third Circuit held that a judge's accusing plaintiff's counsel of acting in bad faith and one of plaintiff's witnesses who submitted a sworn affidavit of having committed perjury, in addition to sending a letter to plaintiff's counsel disputing the contention that he was biased or prejudiced, mandated that the judge recuse himself.  See 10 F.3d 155, 164 (3d Cir. 1993).  Notably, the Third Circuit also based its decision on the fact that, "[s]ince reversal of his summary judgment order by this court – and despite his protestations to the contrary – Judge Lechner has apparently not receded from his view that the

14

Summary Plan Descriptions, however they may be augmented to date, are unambiguous. Judge Lechner in each of his reported decisions has given strong indications that Primerica may have a right to eliminate or raise the cost of medical insurance benefits of its retired salaried employees." Id.  In other words, the Third Circuit felt the record demonstrated, as it does here as well, that the court simply failed to accept the Third Circuit's reversal of its summary judgment decision.

The Fifth Circuit has also required recusal under similar circumstances.  See United States v. Holland, 655 F.2d 44, 46-47 (5th Cir. 1981):

> The trial judge's remarks [that the defendant had 'broken faith' by consenting to the judge visiting the jury room but then raising the issue on appeal] reflect a personal prejudice against Holland for successfully appealing his conviction on the basis of the judge's actions during the prior trial.  The fact that these comments were made in a judicial context outside the presence of the jury does not prevent a finding of bias.

These cases support recusal here.  Indeed, rather than a single comment, Your Honor has on multiple occasions made comments that indicate impartiality and a bias towards Ms. Sharkey and her claims.  As noted supra at p. 3, during a conference on September 29, 2016, Your Honor put his hand over his face, closed his eyes and said, "*I would do anything to get rid of this case*."  The contempt this remark evinces for Ms. Sharkey and her claims is obvious.  Moreover, as noted supra at p. 7, on January 23, 2017, after the Court informed the parties that he would need to postpone the upcoming trial, Your Honor responded to the suggestion by Plaintiff's counsel that a new judge be assigned, "*I wouldn't wish this case on my worst enemy*," and then actually followed up by saying, "*I've lived with [the case] and I suppose I can say I'll probably die with it*."  This statement evinces extraordinary animus for Ms. Sharkey and her case, as there is no reason that Your Honor would insist that no other Judge preside over the trial other than a

desire to impact the outcome. Respectfully, the remarks noted above shed light on the various adverse rulings Your Honor has issued in this case, many of which seem at least in part due to the Second Circuit's reversal of the Court's summary judgment decisions.

In sum, taken as true, Ms. Sharkey's affidavit is clearly sufficient to establish bias against her and/or in favor of Defendants and, therefore, her motion under Section 144 must be transferred to another judge for a decision. In addition, at a minimum, on these facts a reasonable person could question Your Honor's impartiality, which mandates recusal under the more lenient Section 455 standard.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court granter her motion in its entirety.

Dated: March 20, 2017           Respectfully submitted,
      New York, New York

**WIGDOR LLP**

By: _____
    Douglas H. Wigdor
    Lawrence M. Pearson
    Michael J. Willemin
    Alex J. Hartzband

85 Fifth Avenue
New York, New York 10003
Phone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
lpearson@wigdorlaw.com
mwillemin@wigdorlaw.com
ahartzband@wigdorlaw.com

*Counsel for Plaintiff*