UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JENNIFER SHARKEY,

               Plaintiff,

           v.

J.P. MORGAN CHASE & CO., JOE
KENNEY, ADAM GREEN, and LESLIE
LASSITER, in their official and individual
capacities,

               Defendants.

Civil Action No. 10-cv-3824 (RWS)

---

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION TO DISQUALIFY THE HONORABLE ROBERT W. SWEET
PURSUANT TO 28 U.S.C. §§ 144 AND 455**

**ARNOLD & PORTER
KAYE SCHOLER LLP**

Michael D. Schissel
Kathleen A. Reilly
250 West 55th Street
New York, NY  10019-9710
Telephone: +1 212.836.8000
Fax: +1 212.836.8689

*Attorneys for Defendants*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

FACTS ............................................................................................................................... 4

ARGUMENT ................................................................................................................... 12

I.     GROUNDS FOR DISQUALIFICATION UNDER 28 U.S.C. §§ 144 AND 455.... 12

II.    THIS COURT'S PRE-TRIAL RULINGS PROVIDE NO BASIS FOR
DISQUALIFICATION ..................................................................................................... 16

III.   THIS COURT'S HUMOROUS COMMENTS FROM THE BENCH PROVIDE
NO BASIS FOR DISQUALIFICATION .......................................................................... 18

IV.    PLAINTIFF'S MOTION IS UNTIMELY ........................................................... 22

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aguinda*,
  241 F.3d 194 (2d Cir. 2001)...............................................................................2, 15

*Alexander v. Primerica Holdings, Inc.*,
  10 F.3d 155 (3d Cir. 1993)...............................................................................21, 22

*Bechtel v. Admin. Review Bd.*,
  710 F.3d 443 (2d Cir. 2013)...................................................................................5

*Berger v. United States*,
  255 U.S. 22 (1921)..............................................................................14, 15, 17

*In re Bucurescu*,
  No. 04 Civ. 3545, 2004 WL 2064864 (S.D.N.Y. Sept. 15, 2004) ..............................16

*Calle v. United States*,
  No. 05-CV-6094, 2008 WL 3852173 (E.D.N.Y. Aug. 14, 2008) ..............................16

*In re Drexel Burnham Lambert Inc.*,
  861 F.2d 1307 (2d Cir. 1988)...................................................................................2

*Da Silva Moore v. Publicis Groupe*,
  868 F. Supp. 2d 137 (S.D.N.Y. 2012)............................................................22, 24, 25

*Fox Inds., Inc. v. Gurovich*,
  323 F. Supp. 2d 386 (E.D.N.Y. 2004) ...................................................................21

*Giladi v. Strauch*,
  No. 94 Civ. 3976, 1996 WL 18840 (S.D.N.Y. Jan. 18, 1996)...................................17

*Greenway v. Buffalo Hilton Hotel*,
  143 F.3d 47 (2d Cir. 1998)...................................................................................12

*Hoffenberg v. United States*,
  333 F. Supp. 2d 166 (S.D.N.Y. 2004) (Sweet, J.)......................................................14

*Holmes v. NBC/GE*,
  925 F.Supp. 198 (S.D.N.Y. 1996) .......................................................................13, 17

*In the Matter of Huntington Commons Assocs.*,
  21 F.3d 157 (7th Cir. 1994) ...............................................................................20, 21

*In re Int'l Bus. Mach. Corp.*,
    618 F.2d 923 (2d Cir. 1980)................................................................................17, 18

*Katzman v. Victoria's Secret Catalogue*,
    939 F. Supp. 274 (S.D.N.Y. 1996) (Sweet, J.)......................................................23, 24

*Kirsch v. Fleet Street*,
    148 F.3d 149 (2d Cir. 1998)..........................................................................................12

*Lamborn v. Dittmer*,
    726 F. Supp. 510 (S.D.N.Y. 1989) ..............................................................................14

*Liteky v. United States*,
    510 U.S. 540 (1994)......................................................................................... *passim*

*LoCascio v. United States*,
    372 F.Supp.2d 304 (S.D.N.Y. 2005), *aff'd* 473 F.3d 493 (2d Cir. 2007) ....................16

*LoCascio v. United States*,
    473 F.3d 493 (2d Cir. 2007)....................................................................................16, 23

*Muller-Paisner v. TIAA*,
    No. 03 Civ. 6265, 2014 WL 148595 (S.D.N.Y. Jan. 15, 2014)....................................15

*Nielsen v. AECOM Tech. Corp.*,
    762 F.3d 214 (2d Cir. 2014)............................................................................................5

*Raghavendra v. Trustees of Columbia Univ.*,
    Nos. 06 Civ. 6841, 08 Civ. 8120, 09 Civ. 0019, 2012 WL 2878123
    (S.D.N.Y. July 13, 2012) ........................................................................................13, 14

*Rosen v. Sugarman*,
    357 F.2d 794 (2d Cir. 1966)....................................................................................14, 24

*Sharkey v. J.P.Morgan Chase & Co.*,
    580 F. App'x 28 (2d Cir. 2014) ................................................................................4, 5

*Sharkey v. J.P.Morgan Chase & Co.*,
    660 F. App'x 65 (2d Cir. 2016) ....................................................................................6

*Sharkey v. J.P.Morgan Chase & Co.*,
    No. 10 Civ. 3824, 2015 WL 5920019 (S.D.N.Y. Oct. 9, 2015), *vacated*
    *and remanded*, 660 F. App'x 65 (2d Cir. 2016) ......................................................5, 6

*Sharkey v. J.P.Morgan Chase*,
    No. 10 Civ. 3824, 2017 WL 374735 (S.D.N.Y. Jan. 26, 2017)..................9, 10, 11, 12

*Thorpe v. Zimmer*,
    590 F. Supp. 2d 492 (S.D.N.Y. 2008).........................................................................13

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995)....................................................................................11

*United States v. Antar*,
    53 F.3d 568 (3d Cir. 1995).......................................................................................20

*United States v. Carlton*,
    534 F.3d 97 (2d Cir. 2008).......................................................................................12

*United States v. El-Gabrowny*,
    844 F. Supp. 955 (S.D.N.Y. 1994) .........................................................................13

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966)................................................................................................16

*United States v. Holland*,
    655 F.2d 44 (5th Cir. 1981) .....................................................................................22

*United States v. Lovaglia*,
    954 F.2d 811 (2d Cir. 1992).....................................................................................15

*United States v. Young*,
    45 F.3d 1405 (10th Cir. 1995) .................................................................................20

*United States v. Yousef*,
    327 F.3d 56 (2d Cir. 2003).......................................................................................15

*Williams v. New York City Housing Auth.*,
    287 F. Supp. 2d 247 (S.D.N.Y. 2003)......................................................................14

*Wiltshire v. Williams*,
    No. 10 Civ. 6947, 2012 WL 899383, *3 (S.D.N.Y. Mar. 16, 3012) .............................2

**Statutes**

28 U.S.C. § 144..................................................................................................... *passim*

28 U.S.C. § 455..................................................................................................... *passim*

18 U.S.C. § 1514A...................................................................................................4, 5

**Other Authorities**

Federal Rule of Civil Procedure 15 .............................................................................7

Federal Rule of Civil Procedure 37 .............................................................................8

H.R. REP. NO. 93-1453 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351 ............................13

Cara Mannion, *JPMorgan Whistleblower Pushes For Snarky Judge's Removal* (Mar. 21, 2017), https://www.law360.com/articles/904341/jpmorgan-whistleblower-pushes-for-snarky-judge-s-removal ...........................................................................19

William Gorta, *JPMorgan Whistleblower Wants Snarky Judge to Step Aside*, LAW360 (Mar. 2, 2017), https://www.law360.com/articles/897807/jpmorgan-whistleblower-wants-snarky-judge-to-step-aside ...........................................................................6, 7

Defendants J.P. Morgan Chase & Co. ("JPMC"), Joe Kenney, Adam Green, and Leslie Lassiter (together, "Defendants") respectfully submit this memorandum in opposition to Plaintiff Jennifer Sharkey's motion, pursuant to 28 U.S.C. §§ 144 ("Section 144") and 455(a) ("Section 455(a)"), to disqualify the Honorable Robert W. Sweet on grounds of personal bias or prejudice.

## PRELIMINARY STATEMENT

Since January 26, 2017—almost three months ago—Plaintiff began demanding that Your Honor recuse himself from this case, but Plaintiff was reluctant to discuss the reasons in open court or to file a formal motion that would be available to the public.[1] We now know why. Plaintiff's formal motion confirms that Plaintiff has no grounds whatsoever to demonstrate disqualifying bias or prejudice on the part of this Court, and she is merely dissatisfied with the instances in which this Court ruled against her in pretrial proceedings dating back to 2013.

Plaintiff's motion, like her counsel's original January 2017 letter demanding recusal, is based entirely on this Court's pretrial rulings and obviously humorous comments from the bench. Those comments, on their face, concerned *this case generally* and *not* the Plaintiff or the merits of her claim. Under a long line of decisions, including those by the U.S. Supreme Court and the Second Circuit, Plaintiff does not come close to meeting the legal standard for proving disqualifying bias or prejudice. Granting Plaintiff's motion would encourage other plaintiffs to do precisely what Ms. Sharkey is doing here: use Sections 144 and 455(a) to "shop" for a new trial judge because she is

---

[1]    Plaintiff still refuses to call her motion one for "disqualification," even though that is the term utilized in 28 U.S.C. § 455, choosing instead to call it a motion for "reassignment," apparently in an effort to soften the harshness of the very serious accusations she has made against this Court.

dissatisfied with the outcome of certain pretrial motions.  As this Court stated in *Wiltshire v. Williams*, "[w]here the standards governing recusal are not met, 'disqualification is not optional; rather, it is prohibited.'"  No. 10 Civ. 6947, 2012 WL 899383, *3 (S.D.N.Y. Mar. 16, 3012) (quoting *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001) and citing *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.")).  This is especially so here when this case has been pending for seven years and Your Honor is the most qualified jurist to preside over the trial, which is currently scheduled to begin on May 8, 2017 if the Court denies the motion.

The affidavit Plaintiff submitted in support of her motion shows clearly that the asserted grounds for bias and prejudice are utterly meritless.  Section 144 requires a party seeking disqualification to submit an affidavit setting forth "the facts and the reasons for the belief that bias or prejudice exists."  28 U.S.C. § 144.  In her affidavit, Ms. Sharkey claims "I have personal knowledge of the facts set forth herein."  Affidavit of Jennifer Sharkey, dated March 20, 2017 ("Sharkey Aff."), ¶ 1.  Yet she has no personal knowledge of any of the facts asserted in the affidavit.  She merely regurgitates (almost verbatim) the same arguments her counsel made in his prior letters to the Court and touts her "understanding" of what has occurred during the course of the case as the basis for her claims.  In addition, Plaintiff complains about the humorous comments Your Honor made from the bench.  But she can have no "personal knowledge" of those comments (or the context in which they were made), because she never appeared at a single hearing in this case until March 2, 2017 ("March 2 Hearing")—seven years after filing suit—when she sought Your Honor's disqualification.  Notably absent from Ms. Sharkey's affidavit

is any mention of the March 2 Hearing, at which Your Honor explained the nature of the Court's comments, and provided context for them.   Your Honor explained that the comments were about the difficulty of the case in general over the past seven years, not about the merits of Plaintiff's claim and even apologized for any misunderstanding Plaintiff may have had.  It was incredibly dishonest for Ms. Sharkey to omit any mention of the March 2 Hearing when it is the only one she has ever attended, and when it provides additional context regarding the comments about which she complains.

Under both Section 144 and Section 455(a), judicial rulings "almost never" provide a basis for disqualifying bias and, in the rare instances when they do, it is because the context or content of the rulings plainly show bias borne of something outside the facts and law presented to the court such that there is evidence of "deep-seated favoritism" or "unequivocal antagonism."  *Liteky v. United States*, 510 U.S. 540, 554-56 (1994) (affirming appellate determination that judge's decision not to disqualify himself was appropriate because grounds presented showed judge "neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible").   Ordinarily, disqualifying bias requires a showing of an extrajudicial source for the alleged bias.  *Id.*; *see id.* at 555 (noting that it is "only in the rarest circumstances [that judicial rulings] evidence the degree of favoritism and antagonism required . . . when no extrajudicial source is involved.").   And "judicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."  *Id.* at 555.

3

## FACTS

As explained in detail below, Plaintiff's dissatisfaction with this Court's rulings provides no legal grounds for disqualification under well-settled precedent, and therefore Plaintiff's extensive factual discussion of those rulings is irrelevant; indeed that discussion reads more like a motion for reconsideration than an allegation of bias or prejudice. Nevertheless, it is important to reveal just how inaccurately and incompletely Plaintiff mischaracterizes these prior rulings and ignores relevant context. Set forth below are some of the more egregious examples.

**First**, Plaintiff criticizes this Court's December 12, 2013 decision granting summary judgment by arguing that the Court applied an incorrect standard to find that Plaintiff did not reasonably believe Client A was violating a statute enumerated in the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX"). Pl. Br. at 1. However, regardless of what the Court may have said in a prior decision, the standard the Court applied in evaluating the reasonableness of Plaintiff's belief was the applicable standard in the Second Circuit until that Court issued a decision clarifying the standard *after* this Court issued its December 2013 decision. *See Sharkey v. J.P.Morgan Chase & Co.* ("*Sharkey I*"), 580 F. App'x 28, 29 (2d Cir. 2014) ("In the time since the district court issued its opinion, we have discarded this standard as too strict."). Moreover, Plaintiff makes no mention of the fact that the December 2013 decision separately found that any whistleblowing activity was not a contributing factor in JPMC's decision to terminate Plaintiff and that JPMC would have terminated Plaintiff, regardless of any supposed whistleblowing activity, because she had lied to her boss. Each of these grounds would require dismissal under SOX *even if* the Court had applied a different standard and found

that Plaintiff had a reasonable belief. *See Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 451 (2d Cir. 2013) (requiring SOX plaintiffs to prove four elements by preponderance of evidence).

**Second**, Plaintiff argues that in its October 9, 2014 remand order, the Second Circuit "sen[t] a clear message that summary judgment was not appropriate in this case" and that this Court ignored that directive. Pl. Br. at 2. That argument is ludicrous. The two-page summary order did not discuss the facts of this case at all, let alone render an opinion on the appropriateness of summary judgment. *See generally Sharkey I*, 580 F. App'x 28. The Second Circuit simply directed this Court "to assess in the first instance whether Sharkey engaged in Section 806 protected activity under the standard set out in *Nielsen* [*v. AECOM Tech. Corp.*, 762 F.3d 214 (2d Cir. 2014), then recently decided by the Second Circuit]." *Id.* at 29. The remand order further provided as follows:

> Should the district court conclude that Sharkey engaged in any identifiable protected activity under the more lenient *Nielsen* standard, it should reassess, in the context of this finding, whether the identified protected activity "was a controlling factor in the unfavorable action," *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 451 (2d Cir. 2013), and if so, whether defendants have proven "with clear and convincing evidence that [they] would have taken the same unfavorable personnel action in the absence of [that] protected behavior," *id.*

*Id.* Nothing in the remand order is "sending a message" to this Court about what the outcome should be; Plaintiff made that up for purposes of her motion. On remand, *faced with the same factual submissions from the parties*, this Court followed the explicit instructions in the remand order by first considering whether Plaintiff engaged in protected activity under the more lenient *Nielsen* standard. *See Sharkey v. J.P.Morgan*

*Chase & Co.* ("*Sharkey II*"), No. 10 Civ. 3824, 2015 WL 5920019, at *11-*13 (S.D.N.Y. Oct. 9, 2015), *vacated and remanded*, 660 F. App'x 65 (2d Cir. 2016).  In contrast to its prior opinion, the Court found that Plaintiff had the requisite reasonable belief and therefore engaged in protected activity.  However, on the same facts on which the first summary judgment was decided, this Court found on the undisputed record that such activity was not a contributing factor in JPMC's decision to terminate Plaintiff's employment.  Ultimately, on a *de novo* review of this Court's opinion, the Second Circuit reversed, finding factual issues to be tried.  *See Sharkey v. J.P.Morgan Chase & Co.* ("*Sharkey III*"), 660 F. App'x 65, 66, 68-69 (2d Cir. 2016).  In that decision, the Second Circuit, having been made aware that this matter was already before it two years earlier, did not say that this Court ignored any instructions in the initial remand order.  *See generally Sharkey III*, 660 F. App'x 65.

**Third**, Plaintiff claims that the following statements by the Court evidence personal bias against Plaintiff and her claim:  "I would do anything to get rid of this case"; "I wouldn't wish this case on my worst enemy"; and "I've lived with [the case] and I suppose I can say I'll probably die with it."  Pl. Br. at 3, 7-8.  On their face, these statements say nothing about the Plaintiff or the merits of her case.  The comments are about "the case," which has been pending for seven years and has involved very substantial pre-trial motion practice and two appeals to the Second Circuit.  Importantly, Plaintiff's affidavit glaringly omits discussion of the March 2 Hearing at which this Court explained that the comments were made in jest and that they concerned the case in general (not the Plaintiff or the merits of her claim), and apologized for any misunderstanding.  *See generally* Sharkey Aff.; *see also* William Gorta, *JPMorgan*

6

*Whistleblower Wants Snarky Judge to Step Aside*, Law360 (Mar. 2, 2017), https://www.law360.com/articles/897807/jpmorgan-whistleblower-wants-snarky-judge-to-step-aside ("He said he regretted the implication Sharkey drew from his remarks and apologized for his levity if it was misconstrued."). There is nothing insidious about the Court's comments and they certainly do not reflect any bias or prejudice, personal or otherwise, against Plaintiff.

**Fourth**, Plaintiff continues to use her disqualification request to reargue this Court's decision granting Defendants' motion to amend their Answer to assert mitigation as an affirmative defense. Pl. Br. at 3. In doing so, Plaintiff omits critical facts, including that: the parties took full discovery on that issue; the Court decided the motion under Federal Rule of Civil Procedure 15 because no deadline for amending pleadings was ever entered; to reach that determination, the Court had to interpret its own prior orders; and, in permitting Defendants to amend their Answer, the Court gave Plaintiff time to designate a mitigation expert, which she has never done. Plaintiff also ignores that, after the January 2017 trial date was adjourned and it was clear it would be at least a couple of months until trial was rescheduled, Plaintiff withdrew her request for leave to file an interlocutory appeal on this issue. *See* Michael D. Schissel, dated March 24, 2017 ("Schissel Decl."), Ex. 1 at 5:20-5:21 (Plaintiff's counsel: "We were actually going to withdraw that anyway.").

**Fifth**, Plaintiff spends several pages of her brief rearguing some of the motions *in limine* decided by the Court. Pl. Br. at 4-6, 8-11. Plaintiff makes no mention of the *in limine* motions decided in her favor at the hearing, and fails to discuss the motions in which the Court reversed itself in favor of Plaintiff between the hearing on the motions

and the Court's written decision.  Specifically, Plaintiff seems most dissatisfied about rulings the Court made regarding her damages claims (most of which were reversed in the Court's subsequent written opinion).  However, Plaintiff makes no mention of the leniency this Court has shown Plaintiff by allowing her to even present her damages at trial, as she has *never* produced any damages calculations.  Despite this fundamental failure on the part of Plaintiff, the Court declined to grant Defendants' motions to preclude Plaintiff's damages under Federal Rule of Civil Procedure 37.

**Sixth**, Plaintiff argues that the Court failed to abide by her letter asking for the opportunity to *further* brief the motions *in limine* after oral argument was held on January 17, 2017 ("January 17 Hearing").  Pl. Br. at 8.  Again, Plaintiff selectively cites the record.  Prior to the January 17 Hearing, the parties (and Client A) submitted several letters concerning whether Client A's identity would be revealed at trial as well as separate motions *in limine* on the topic.  *See, e.g.*, Dkt. Nos. 141, 143, 151, 161, 173, 181, 188, 192, 198, 199.  Following the hearing, on January 18, 2017, counsel for Client A submitted a supplemental letter regarding his client's concerns.  *See* Dkt. No. 201.  Four hours later, Plaintiff's counsel submitted a letter to the Court stating (not requesting) that it would "respond to Mr. Semmelman's letter [regarding Client A] by January 27, 2017." *See* Schissel Decl., Ex. 2.  Instead of submitting such a letter, Plaintiff's counsel submitted its January 26, 2017 pre-motion letter seeking Your Honor's recusal (even though such letter is not required under Your Honor's Individual Rules), and asked for more time to address a topic (Client A's identity) that had already been fully briefed and argued.  *See* Declaration of Douglas H. Wigdor, dated March 20, 2017, Ex. B. *There was no reason, given that context, for the Court to refrain from issuing its written decision,*

*especially when that written decision gives Plaintiff another bite at the apple to show that Client A's identity and appearance at trial is, in fact, relevant to her case.  See Sharkey v. J.P.Morgan Chase* ("*Sharkey IV*"), No. 10 Civ. 3824, 2017 WL 374735, at *1-*2 (S.D.N.Y. Jan. 26, 2017) (noting that Plaintiff will need to make showing of relevance *in camera* during trial why Client A's testimony will be relevant, but also noting that "Defendants and Client A have not advanced an explanation for differentiated treatment for Client A and the absence of any explanation may cause jury confusion and concern on a peripheral issue.").

**Seventh**, Plaintiff argues that the Court "refused to admonish" Defendants' counsel for "gamesmanship" at the January 17 Hearing, when Defendants would not agree to produce a former JPMC employee (who lives in Chicago) in Plaintiff's case-in-chief.  Pl. Br. at 6.  Plaintiff misleadingly fails to disclose all relevant facts (discussed at the hearing), including that Plaintiff had previously deposed this witness for eight hours, and the deposition transcript is available for use in Plaintiff's case-in-chief.  *See* Schissel Decl., Ex. 1 at 32:19-33:1.  More importantly, Plaintiff fails to mention that the Court acknowledged at the hearing that the witness is outside the enforcement jurisdiction of the Court.  *See id.* at 30:17-30:18.

Plaintiff's counsel also fails to mention that she contended that Defendants should produce the witness in Plaintiff's case because Defendants produced relevant documents after the witness was deposed.  *See* Schissel Decl., Ex. 1 at 33:7-33:13, 33:19-33:21.  But as Defendants' counsel pointed out, the Court gave Plaintiff the opportunity to re-depose that witness in 2013 and Plaintiff failed to do so, to which the Court commented: "Enough said.  You had an opportunity, and you didn't choose to take it . . . ."  Schissel

Decl., Ex. 1 at 34:7-34:10.  Plaintiff makes no mention of her decision to not take the former employee's deposition when she had the opportunity to do so.

**Eighth**, Plaintiff reargues the Court's refusal to enforce trial subpoenas issued to Defendants' and Client A's law firms seeking communications between counsel for Defendants and counsel for Client A.  What Plaintiff fails to disclose is that, when pressed, Plaintiff could not articulate reasons why such communications are relevant to this case, and Plaintiff's counsel tried to argue that the burden was on Defendants to establish why the documents are *not* relevant.  *See* Schissel Decl., Ex. 1 at 35:6-35:7; *id.* at 36:7-36:10 (Plaintiff's counsel stating "They're not in my possession.  I can't tell you that they are relevant, because I haven't seen them.  But I think there is no ground to object to it."); Pl. Br. at 6.  That, of course, is not the law.  Similarly, Plaintiff argues that this Court is biased because it precluded settlements and consent orders concerning matters having nothing to do with this case, including those pertaining to the Bernie Madoff fraud.  Pl. Br. at 6, 11.  The Court correctly found that "[a]ny probative value [of such documents] would be far outweighed by the risk of confusion and prejudice."  *See Sharkey IV*, 2017 WL 374735, at *4.

**Ninth**, Plaintiff complains that, at the January 17 Hearing, the Court would not re-assign this seven-year-old case to a different judge—on one week's notice—when the Court was unable to begin trial on January 23, 2017.  Plaintiff claims this shows bias.  In making that argument, Plaintiff's counsel attached Pages 2 and 5 of the January 17 hearing transcript to his declaration, but failed to attach Pages 3 and 4.  On the omitted pages, after hearing that Plaintiff was in the late term of pregnancy, the Court offered to begin the trial *just one week later*, on January 30, 2017, despite initially indicating that

this timing would not work.  *See* Schissel Decl., Ex. 1 at 3:14-3:18.  But Plaintiff's counsel stated he was not available at the end of that week:

> THE COURT:  OK, so the 30th would not work for you.
>
> MR. WIGDOR:  No.

*Id.* at 3:22-3:23.  This was surprising, since the trial was estimated to take two weeks and continue through the end of the week of January 30th.  The Court also offered dates in March, *see id.* at 5:8-5:9, but Plaintiff's counsel subsequently declined those dates as well.  In short, the Court offered reasonable alternative dates, and Plaintiff declined.

**Tenth**, Plaintiff complains about this Court's order maintaining the anonymity of Client A and reserving decision on whether he should be required to testify until Plaintiff has demonstrated that Client A's testimony is relevant.  Pl. Br. at 8-9.  The Court denied Client A's motion to quash the trial subpoena and, therefore, Plaintiff prevailed on that motion.  In reaching its decision, the Court weighed the privacy interests of Client A in accordance with Second Circuit case law.  *See Sharkey IV*, 2017 WL 374735, at *2; *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).  That is mentioned nowhere in Plaintiff's motion to disqualify; instead, she complains that that she will have to demonstrate that Client A's testimony is relevant.

**Finally**, Plaintiff complains about this Court's ruling that Plaintiff's claim for back pay "will end at the date at which the jury determines she stopped actively applying for jobs and seeking employment."  Pl. Br. at 10.  Plaintiff suggests that this is tantamount to "granting summary judgment" in favor of Defendants on their mitigation defense.  In making that argument, Plaintiff (once again) describes the Court's decision in an incomplete and misleading manner.  The Court cited Second Circuit precedent holding that "plaintiffs are not entitled to back pay to the extent they 'fail[] to remain in the labor

market' because they 'may not simply abandon [their] job search and continue to recover back pay.'" *Sharkey IV*, 2017 WL 374735, at *2-*3 (quoting *Kirsch v. Fleet Street*, 148 F.3d 149, 168 (2d Cir. 1998)); *see also id.* at *3 (citing also to *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998)).  This is not a mitigation issue; it is a rule in this Circuit that a plaintiff may not decide to drop out of the marketplace and still continue to collect damages.  The Court has not decided when that occurred.  Rather, the Court ruled that the jury will "determine the proper amount of back pay based on when Plaintiff stopped actively applying for jobs and searching for work."  *Id.*  In reaching this decision, the Court simply commented that the (unrefuted) record shows that the last document indicating Plaintiff searched for work was dated October 2010 (about one year after her termination) and that Plaintiff testified at deposition that she looked for employment through December 2011.  *Id.* at *2-*3.  Plaintiff simply does not like the law that limits her damages to the time period before she opted to drop out of the workforce.

## ARGUMENT

### I.   GROUNDS FOR DISQUALIFICATION UNDER 28 U.S.C. §§ 144 AND 455

Whether a party moves to disqualify a judge based on alleged bias or prejudice under Section 144 or Section 455(a), the standard generally requires an extrajudicial source for the bias or prejudice.  *See Liteky*, 510 U.S. at 545, 554 ("Under § 144 and its predecessor, there came to be generally applied in the courts of appeals a doctrine . . . requiring that [t]he alleged bias and prejudice to be disqualifying [under § 144] must stem from an extrajudicial source.  . . . For all these reasons, we think that the 'extrajudicial source' doctrine, as we have described it, applies to § 455(a)," even though it may be considered a "factor" rather than a "doctrine" (quotations and citation omitted)); *see United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (recusal based on bias and lack

of impartiality "is commonly limited to those circumstances in which the alleged partiality stem[s] from an extrajudicial source" (quoting *Liteky*, 510 U.S. at 544)); *Thorpe v. Zimmer*, 590 F. Supp. 2d 492, 498 (S.D.N.Y. 2008) ("Section 144 must be read *in pari materia* with Section 455(a)").  For this reason, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" and "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."  *Liteky*, 510 U.S. at 555.  "Recusal motions should not be allowed to be used as 'strategic devices to judge shop.'"  *United States v. El-Gabrowny*, 844 F. Supp. 955, 958-59 (S.D.N.Y. 1994) (noting "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is") (citations omitted). And "judges must be alert to avoid the possibility that those who would question [their] impartiality are in fact seeking to avoid the consequences of [the judge's] expected adverse decision."  H.R. REP. NO. 93-1453 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355 (regarding amendment of Section 455(a)).  In fact, "[t]here is a presumption of judicial impartiality,[ ] and the burden the movant must carry to overcome this presumption is 'substantial.'"  *Holmes v. NBC/GE*, 925 F. Supp. 198, 201 (S.D.N.Y. 1996) (citations omitted).

For motions filed under Section 144, courts must first examine the affidavit filed by the movant for compliance with both procedural and substantive requirements.  First, the affidavit must be timely.  *See Raghavendra v. Trustees of Columbia Univ.*, Nos. 06 Civ. 6841, 08 Civ. 8120, 09 Civ. 0019, 2012 WL 2878123, at *5 (S.D.N.Y. July 13,

2012) ("An affidavit in support of a recusal motion is timely filed when it is 'made at the earliest possible moment after obtaining facts demonstrating a basis for recusal'" and recusal motions may be denied even where there is only a short delay (citations and quotations omitted)).  In considering the timeliness of the application, the court considers whether (i) "the movant has participated in a substantial manner in trial or pre-trial proceedings," (ii) "granting the motion would represent a waste of judicial resources," (iii) "the motion was made after the entry of judgment," and (iv) "the movant can demonstrate good cause for delay." *Id.* at *5 (quoting *Lamborn v. Dittmer*, 726 F. Supp. 510, 514-15 (S.D.N.Y. 1989)).  Substantively, before the Court decides whether another judge should be assigned to hear the proceeding, the Court "must review the facts included in the affidavit for their legal sufficiency and not recuse himself or herself unnecessarily." *Williams v. New York City Housing Auth.*, 287 F. Supp. 2d 247, 249 (S.D.N.Y. 2003) (quoting *Rosen v. Sugarman*, 357 F.2d 794, 797 (2d Cir. 1966)); *see also Hoffenberg v. United States*, 333 F. Supp. 2d 166, 171 (S.D.N.Y. 2004) (Sweet, J.) (same; quoting *Williams*, 287 F.Supp.2d at 249).  "To be legally sufficient under Section 144, an affidavit must show 'the objectionable inclination or disposition of the judge' [and] it must give 'fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.'" *Hoffenberg*, 333 F.Supp.2d at 171 (quoting *Rosen*, 357 F.2d at 798 (quoting *Berger v. United States*, 255 U.S. 22, 33-35 (1921)); *see also Raghavendra*, 2012 WL 2878123, at *2 (citing *Williams*, 287 F.Supp.2d at 249 and quoting *Rosen*, 357 F.2d at 798); *see also Berger*, 255 U.S. at 30-31 ("[T]he action of the affidavit is not automatic . . . but depends upon the substance and merits of its reasons

14

and the truth of its facts, and upon both the judge has jurisdiction to pass.").  If the affidavit is not legally sufficient, then the requirements of Section 144 are not met.

For motions under Section 445(a), according to the Second Circuit, courts should ask whether "'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal,' or alternatively, whether a 'reasonable person, *knowing all the facts*,' would question the judge's impartiality." *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003) (affirming judge's determination not to recuse himself when he became aware that criminal defendants had discussed kidnapping and harming unnamed federal judge; quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)) (emphasis added). However, if there is "remote, contingent, indirect or speculative interests, disqualification is not required.  Moreover, where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda*, 241 F.3d at 201.  Timeliness of the motion is also a consideration for applications made pursuant to Section 455(a).  *See, e.g.*, *Muller-Paisner v. TIAA*, No. 03 Civ. 6265, 2014 WL 148595, at *1 (S.D.N.Y. Jan. 15, 2014) (noting that Second Circuit has read Section 144 timeliness requirement into Section 455 (citation omitted)).

Plaintiff does not come close to meeting her burden under either section. Plaintiff's affidavit and the arguments in her brief are based entirely on certain pre-trial rulings and unrelated statements Your Honor made in jest from the bench, none of which are grounds for recusal under well-settled case law.

## II.    THIS COURT'S PRE-TRIAL RULINGS PROVIDE NO BASIS FOR DISQUALIFICATION

The U.S. Supreme Court has held that "judicial rulings alone almost never constitute a valid basis" for disqualification. *Liteky*, 510 U.S. at 555 (discussing Section 455(a)); *see also United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (discussing Section 144). The reason is that judicial rulings are based on the facts and argument presented to the court, and not on any extrajudicial source. *See, e.g.*, *Liteky*, 510 U.S. at 555. Trial courts in this Circuit have uniformly adhered to this doctrine. *See, e.g.*, *Calle v. United States*, No. 05-CV-6094, 2008 WL 3852173, at *1 (E.D.N.Y. Aug. 14, 2008) ("[A]dverse judicial rulings, whether over the course of the same proceeding or in other litigation involving the party who is seeking recusal, do not constitute a basis for recusal." (citing *Liteky*, 510 U.S. at 555)); *LoCascio v. United States*, 372 F.Supp.2d 304, 316 (S.D.N.Y. 2005) (denying recusal motion and noting that "[i]t is correct [in defendant's affidavit] that I decided most motions adversely to him and his co-defendant, John Gotti.  . . .  A resort to those opinions would, I believe, assure an objective, knowledgeable member of the public that decisions which were adverse to the defendant were dictated entirely by the record before me and the law without the slightest suggestions of bias, prejudice or personal animus."), *aff'd* 473 F.3d 493, 496-97 (2d Cir. 2007) (noting that denial of motions over 14 years do not raise "even a suspicion of a 'deep-seated and unequivocal antagonism that would render fair judgment impossible'"); *In re Bucurescu*, No. 04 Civ. 3545, 2004 WL 2064864, at *2 (S.D.N.Y. Sept. 15, 2004) (statements in Section 144 affidavit were legally insufficient as "[e]ach is directly related to my permitting appellees to file a motion to dismiss and requiring appellants to submit their opposition to the motion within the time frame set out in my rules of practice");

*Holmes*, 925 F. Supp. at 201-03 (affidavit resting on court rulings and supposed hostile treatment of counsel legally insufficient); *Giladi v. Strauch*, No. 94 Civ. 3976, 1996 WL 18840, at *5 (S.D.N.Y. Jan. 18, 1996) (affidavit failed to establish that alleged bias and prejudice was extrajudicial in nature or demonstrated antagonism to plaintiff or favoritism to defendants).

The only exception—not applicable here—is when the court either in the ruling itself or in comments outside of the ruling reveals "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 556. The judicial conduct in cases where a judge has been recused is extraordinary and those cases are extremely rare. For example, a district judge was recused in *Berger*, a World War I espionage case against German-American defendants. 255 U.S. at 28. There, the judge stated, "[o]ne must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because there "hearts are reeking with disloyalty." *Id.*

Here, Plaintiff's affidavit and brief merely march through various rulings over the past four years, beginning with this Court's first summary judgment decision and ending with this Court's rulings on the motions *in limine*, and re-argue the merits of those motions. Nowhere does Plaintiff demonstrate that the content of those rulings, or any judicial comments about them, evidence "such favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 556. Plaintiff seems to suggest that the sheer number of rulings with which she is dissatisfied somehow advances her bias argument. She is wrong. As the Second Circuit made clear in *In re Int'l Bus. Mach. Corp.*, "[a] trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may have created the

impression of bias.  Judicial independence cannot be subservient to a statistical study of the calls he made during the contest."  618 F.2d 923, 929 (2d Cir. 1980).

## III. THIS COURT'S HUMOROUS COMMENTS FROM THE BENCH PROVIDE NO BASIS FOR DISQUALIFICATION

Plaintiff contends that this Court's rulings against Plaintiff, together with "disparaging comments" about Plaintiff's case, require disqualification.  Pl. Br. at 13. Plaintiff has grossly mischaracterized this Court's statements from the bench and they provide no basis for recusal under the law.  And, the comments certainly do not convert Your Honor's rulings into evidence of bias or prejudice against Plaintiff.

**First**, the statements Plaintiff cites are not disparaging to her or the merits of her claim.  Plaintiff relies on the following statements by the Court:

- On September 29, 2016:  "I would do anything to get rid of this case."

- On January 17, 2017:  "I wouldn't wish this case on my worst enemy."

- On January 17, 2017:  "I've lived with [the case] and I suppose I can say I'll probably die with it."

The first statement was made in jest during a conference in the Court's Chambers in the context of discussing whether its was possible to settle the case.  The second two were made from the bench after Plaintiff's counsel declined to agree to begin the trial one week later than scheduled, and instead asked that the Court re-assign the case (on one week's notice) to another judge, even though it is seven years old, and, at the time, had 194 docket entries, including two opinions on motions to dismiss, two opinions on motions for summary judgment, and multiple pending motions *in limine*.  Schissel Decl.,

Ex. 1 at 5:1-5:4.  It was obvious to everyone in attendance that all three statements were made in jest.

Furthermore, none of the statements are, as Plaintiff contends, disparaging to Plaintiff or her claim.   All three concern "the case" generally, and not Plaintiff personally.  The Court made that clear at the March 2 Hearing, the only time Plaintiff personally appeared before this Court.  At the end of that conference, the Court explained the context in which the statements were made and apologized for any misunderstanding. *See* Cara Mannion, *JPMorgan Whistleblower Pushes For Snarky Judge's Removal*, LAW360   (Mar.   21,   2017),   https://www.law360.com/articles/904341/jpmorgan-whistleblower-pushes-for-snarky-judge-s-removal ("During a March hearing regarding Sharkey's request for a new judge, Judge Sweet said he regretted the implication Sharkey drew from his remarks and apologized for his levity if it was misconstrued.  The judge said his remarks were not directed at the case itself, but that he did not want to create a 'significant burden' for a fellow jurist by shifting a 'difficult' case just before trial.").  Plaintiff's affidavit completely ignores the March 2 Hearing.

**Second**, even if the Court had made remarks critical of one party's case or its counsel—and the Court has not done so here—that still would provide no grounds for disqualification.  *See Liteky*, 510 U.S. at 555 ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.").  The Supreme Court in *Liteky* went on to say:  "*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges,

sometimes display.  A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."  *Id.* at 555-56 (emphasis in original).

**Third**, in support of her Section 455(a) application, Plaintiff relies on three cases that are entirely different from the instant case.  *See* Pl. Br. at 14-16.  In *United States v. Antar*, the district court judge presided over both the SEC civil enforcement proceeding and the criminal case against two individuals associated with the Crazy Eddie, Inc. fraud. 53 F.3d 568, 570-72 (3d Cir. 1995), *overruled on other grounds*, *Smith v. Berg*, 247 F.3d 552 (3d Cir. 2001).  At sentencing, the district court judge stated with regard to the amount of restitution to award the victims, "*[m]y object in this case from day one has always been* to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others."  *Id.* at 573-74 (emphasis added).  The Third Circuit determined that "this is a case where the district judge, in stark, plain and unambiguous language, told the parties that his goal in the criminal case, from the beginning, was something other than what it should have been and, indeed, was improper."  *Id.* at 576; *see also id.* at 575.  The *Antar* court compared the statements in that case to those in two other cases where bias and prejudice were *not* found.  *Compare with United States v. Young*, 45 F.3d 1405, 1414 (10th Cir. 1995) (no disqualifying bias or prejudice where court stated "the obvious thing that's going to happen to [defendant] is that she's going to get convicted, and then they're going to sprinkle her and bless her with immunity, and then she's going to get to testify.  And then she's going to pull the same act on me again, and then she's going to the county jail . . ."); *In the Matter of Huntington Commons Assocs.*, 21 F.3d 157, 158 (7th Cir. 1994) (no recusal where, after

summarily granting motion to dismiss and motion to amend pleading, court stated, "any predisposition this court has in this matter is a result of things that have taken place in this very courtroom" and "I am perfectly entitled to conclusions and judgments based on what takes place in the courtroom"); *compare also with Fox Inds., Inc. v. Gurovich*, 323 F. Supp. 2d 386, 390 (E.D.N.Y. 2004) (denying recusal motion based, in part, on allegations of bias and prejudice based on judge's comments that defendant's attorney made arguments or statements that were "baloney," "false," "fraud," "impossible," "incredible," and "a lie").   In the three comments about which Plaintiff complains, this Court did not express any specific goals for the outcome of the case or reference any impressions Your Honor has had about the case since it was filed in May 2010.   *Antar* establishes that there is a vast difference between pre-judging the outcome of a case and making a humorous comment about the burdens arising from a heavily litigated seven-year-old case.

Plaintiff also cites *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155 (3d Cir. 1993).   There, the Third Circuit recused the district court judge from presiding over a bench trial because the judge seemed to have already made up his mind on certain facts prior to trial, appeared to have decided certain witnesses were perjurers, and submitted a letter to the parties regarding his recusal in which he could be perceived to assume an adversarial position to plaintiffs.   The Third Circuit noted that the judge's impartiality could reasonably be questioned, especially as it was a "non-jury case [where the judge would] be deciding each and every substantive issue at trial."   *Id.* at 163.   Consequently, "[w]hen the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced."   *Id.* at 166.   None of the facts in the *Alexander*

case are presented here and, unlike in *Alexander*, the facts in this case will be tried to a jury.

Finally, Plaintiff cites to *United States v. Holland*, which involved subsequent proceedings in front of the same judge.  655 F.2d 44 (5th Cir. 1981).  Specifically, the criminal defendant had been convicted and was sentenced by the district court judge.  *See id.* at 45.  His conviction was reversed on appeal based on an unrecorded conversation between the judge and the jury in the jury room after the jury sent a note asking for help filling out the verdict forms.  *See id.*  During re-trial before the same judge and out of the presence of the jury, the judge made multiple comments that the defendant, who had been sitting in the courtroom and raised no objection to the judge's trip to the jury room during the first trial, had "broken faith" with the court and "that he intended to increase [defendant's] sentence because of the incident he described."  *Id.* at 45-46.  When defendant was convicted, the judge did increase his sentence.  *Id.* at 46.  The Fifth Circuit found that these comments not only raised questions to a reasonable man under Section 455(a) about the trial judge's impartiality, they reflected a personal prejudice against the defendant because he had successfully appealed his prior conviction based on the judge's actions.  *See id.* at 47.  This is clearly inapposite to Plaintiff's allegations about Your Honor.  Your Honor has not made any comments about Plaintiff specifically indicating a personal prejudice, and has not punished Plaintiff for engaging in successful appeals to the Second Circuit.  *Holland* is not informative here.

## IV.    PLAINTIFF'S MOTION IS UNTIMELY

Courts are concerned that parties seeking recusal may simply be using it "as [a] 'fall-back position' to an unfavorable ruling."  *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 154 (S.D.N.Y. 2012) (compiling cases).  Consequently, the question

of the motion's timing is relevant to the analysis of the claims of bias and prejudice. Here, Plaintiff's purported grounds for disqualification go back to rulings or statements of the Court in 2013, 2014, 2015, and 2016, all of which occurred prior to any briefing on the motions *in limine*.  *See* Sharkey Aff., at ¶¶ 1-6; *see also LoCascio*, 473 F.3d at 496-97 (affirming denial of recusal motion and noting that defendant referenced comment by judge during court conference as evidence of bias in application, but "made no mention of the above remark until *after* the District Court had denied his motion to amend and *after* it had denied his § 2255 petition." (emphasis in original)); *Katzman v. Victoria's Secret Catalogue,* 939 F. Supp. 274, 277 (S.D.N.Y. 1996) (Sweet, J.) (in motion pursuant to Section 455(a), "[a] delay of two months, such as here, has resulted in a finding of untimeliness where the movant knew the facts on which the motion to disqualify is based, yet failed to file the motion while the court continued to hear and decide matters in the case.  . . . Katzman and her counsel now seek to do just that which the Second Circuit and other courts have warned against; namely, use a post-judgment recusal motion to try to get a second bite at the apple.  Katzman's recusal motion is based entirely on statements made by Judge Sweet at the April 30th Conference attended by Katzman's counsel.  As set forth above, counsel could have made this motion at any time during the two months which preceded the Court's issuance of the Opinion on June 25, 1996.").  Ignoring the arguments Plaintiff now makes about the supposed bias inherent in this Court's second summary judgment ruling, the trial date for this case was set during the September 2016 conference.  If Plaintiff truly was concerned about Your Honor's statement at that conference that he would "do anything to get rid of this case" and the purported implication that statement had on his prior summary judgment rulings, she had months

prior to the January 17 Hearing to make her motion.  Instead, she waited until after she prepared for trial, briefing on the motions *in limine* completed, and oral argument occurred on those motions (during which the Court did rule against her on certain applications) to seek Your Honor's recusal.  Such dilatory conduct in asserting this (albeit meritless) motion is clearly a tactic to avoid trial before a judge who is completely familiar with the strengths and weaknesses of the parties' positions after so many years of litigation.  *See Rosen*, 357 F.2d at 797-98 (noting obligation not to recuse oneself is "especially strong . . . where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience."); *Katzman*, 939 F. Supp. at 277 ("[A] prompt application [under Section 455(a)] avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters" (quoting *In re Int'l Bus. Mach. Corp.*, 45 F.3d 641, 643 (2d Cir. 1995)).

Here, Plaintiff participated fully in all pre-trial proceedings, including by briefing the motions *in limine*, when she could have instead sought recusal.  *See Da Silva Moore*, 868 F. Supp. 2d at 154 (analyzing first factor relating to timeliness of motion to recuse). Plaintiff offers no explanation why, after the January 17 Hearing, she somehow believed actions that had happened months or years prior were biased and prejudiced when she did not assert that claim before.  Moreover, Plaintiff brings her motion now, on the eve of trial, when granting the motion would represent a waste of the judicial resources expended over the seven years during which the Court has spent significant time becoming familiar with the issues and addressing the many motions and letters filed in this case.  *See id.* (noting that recusal would require any substitute magistrate judge to

24

spend significant time becoming familiar with complex case).  And while there has not

been an entry of judgment in this case, Plaintiff certainly waited until after the Court had

issued pre-trial rulings, only some of which were not in her favor, before raising concerns

about actions and comments taken months or years previously.  *See id.* at 154-55.

Plaintiff has offered no explanation for her delay in her affidavit, and her brief supplies

none.  *See id.* at 155-56 (compiling cases demonstrating that even two-, three- or four-

month delays in filing recusal motions are deemed untimely).  The untimeliness of

Plaintiff's application requires the denial of her motion.

## <u>CONCLUSION</u>

For the above reasons, Defendants respectfully request that the Court deny

Plaintiff's motion to disqualify.

Dated:    New York, New York
         March 24, 2017

                              ARNOLD & PORTER KAYE SCHOLER LLP

                            By:    /s/ Michael D. Schissel
                                    Michael D. Schissel
                                    Kathleen A. Reilly
                                    250 West 55th Street
                                    New York, NY  10019-9710
                                    Telephone: +1 212.836.8000
                                    Fax: +1 212.836.8689

                                    *Attorneys for Defendants*

<u>**AFFIRMATION OF SERVICE**</u>

I, Kathleen A. Reilly, the undersigned attorney at law duly admitted to practice in the

State of New York, respectfully show that on the <u>24th</u> day of <u>March</u>, 2017, I caused a copy of the

annexed **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S**

**MOTION TO DISQUALIFY THE HONORABLE ROBERT W. SWEET PURSUANT TO**

**28 U.S.C. §§144 AND 455** to be served by ECF and FedEx upon:

Douglas H. Wigdor
Lawrence M. Pearson
WIGDOR LLP
85 Fifth Avenue
Fifth Floor
New York, NY 10003
(212) 257-6800

/s/ Kathleen A. Reilly
Kathleen A. Reilly