**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
JENNIFER SHARKEY,                                            :

                          Plaintiff,       :          Civil Action No.: 10-cv-3824 (DLC)

v.                                                          :

J.P. MORGAN CHASE & CO., JOE KENNEY,                         :
ADAM GREEN, and LESLIE LASSITER, in
their official and individual capacities,                    :

                      Defendants.     :
-------------------------------------------------------------X

## NON-PARTY CLIENT A'S MEMORANDUM OF LAW IN OPPOSITION
## <u>TO PLAINTIFF'S MOTION FOR RECONSIDERATION</u>

## TABLE OF CONTENTS

Page

Introduction ..........................................................................................................1

BACKGROUND .................................................................................................3

     A.    Client A and the A-Family ......................................................................3

     B.    The Protective Order.............................................................................4

     C.    The Issues for Trial ...............................................................................5

Argument ..........................................................................................................6

POINT ONE   THE MOTION SHOULD BE DENIED BECAUSE IT IS UNTIMELY
AND OTHERWISE FAILS TO MEET THE REQUIREMENTS OF
LOCAL CIVIL RULE 6.3 ....................................................................6

POINT TWO   THE MOTION SHOULD BE DENIED BECAUSE SHARKEY HAS
MADE NO SHOWING OF THE RELEVANCE OF THE TESTIMONY
OF CLIENT A, HIS WIFE, OR HIS SON ...........................................7

     A.    Sharkey Does Not Argue the Testimony is Relevant to the Reason for Her
Termination...........................................................................................7

     B.    Sharkey Has Failed to Demonstrate the Testimony is Relevant to Her
Reasonable Belief in 2009 ..................................................................8

     C.    The Depositions of the Members of the A-Family Do Not Establish
Relevance.............................................................................................10

          1.    The Testimony of Client A is Not Relevant to Proving Sharkey's
Claims..........................................................................................10

          2.    The Testimony of Client A's Wife is Not Relevant to Proving
Sharkey's Claims.........................................................................11

          3.    The Testimony of Client A's Son is Not Relevant to Proving
Sharkey's Claims.........................................................................12

CONCLUSION.....................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Beckles v. City of New York*,
 08 Civ. 3687 (RJH)(JCF), 2010 U.S. Dist. LEXIS 45423 (S.D.N.Y.
 May 10, 2010)........................................................................................................6

*Cartier v. Samo's Sons, Inc.*,
 04 Civ. 2268 (RMB)(GWG), 2006 U.S. Dist. LEXIS 7764 (S.D.N.Y.
 Jan. 26, 2006)........................................................................................................6

*Sharkey v. J.P. Morgan Chase*,
 10 Civ. 3824 (RWS), 2013 U.S. Dist. LEXIS 183168 (S.D.N.Y. Dec. 12, 2013) ............ passim

*Sharkey v. J.P. Morgan Chase*,
 10 Civ. 3824 (RWS), 2015 U.S. Dist. LEXIS 138357 (S.D.N.Y. Oct. 9, 2015)........................1

*Sharkey v. J.P. Morgan Chase*,
 10 Civ. 3824 (RWS), 2017 U.S. Dist. LEXIS 11299 (S.D.N.Y. Jan. 26, 2017) .....................2, 3

*Sharkey v. JPMorgan Chase*,
 2016 U.S. App. LEXIS 16636 (2d Cir. Sept. 12, 2016) .........................................................5, 7

**Rules**

Local Civil Rule 6.3...................................................................................................3, 6, 7

Non-Party "Client A" (so designated by Order of the Hon. Robert W. Sweet) respectfully submits this Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration (the "Motion") (ECF Nos. 229-231). For the reasons set forth below, the Court should deny the Motion.

### Introduction

In this litigation, Plaintiff Jennifer Sharkey ("Sharkey") has made extremely serious, but spurious, allegations against Client A of illegal wrongdoing – allegations she never made while employed at JPMorgan Chase ("JPMorgan"), but has manufactured after-the-fact for litigation purposes. *See Sharkey v. J.P. Morgan Chase*, 10 Civ. 3824 (RWS), 2013 U.S. Dist. LEXIS 183168, at * 12 (S.D.N.Y. Dec. 12, 2013) (while at JPMorgan, "Plaintiff did not mention any illegal conduct or specific unlawful activity in which she suspected Client A to be engaged.") & *id.* at *27-28 ("As a Private Wealth Manager with eleven years of experience in the financial industry, it is unrealistic to infer that Plaintiff, if she had a subjective belief of illegal activity by Client A, would have not made that belief explicit").

After six years of litigation and extensive discovery, there is no evidence that Client A (or any member of his family (the "A-Family")) has engaged in any wrongdoing whatsoever. To this day, Client A remains a client in good standing of JPMorgan. *See Sharkey v. J.P. Morgan Chase*, 10 Civ. 3824 (RWS), 2015 U.S. Dist. LEXIS 138357, at *6 (S.D.N.Y. Oct. 9, 2015) ("Client A has been a client of JPMC for 20 years and remains a client today").

Although Client A and other members of the A-Family have done nothing wrong, they stand to suffer grave and irreparable reputational and financial harm from public dissemination of the ugly, unproven and disproven allegations being made by Sharkey in this litigation.

Since 2011, and continuing through the present, Judge Sweet has consistently safeguarded Client A's identity from disclosure. Sharkey is now trying to expose Client A's

identity, claiming that his testimony in court is necessary to proving her case. As shown below, his testimony, and his identity, are not relevant to proving Sharkey's claims. Bluntly stated, Sharkey is trying to exert leverage over JPMorgan by smearing JPMorgan's longstanding customer, Client A, with false allegations of criminal conduct, and pressing for his public identification.

Constraining Sharkey and impeding her *in terrorem* tactic, Judge Sweet has ruled that Client A will not be required to testify, and his identity will remain protected, *unless and until* either party is able to establish *in camera* that Client A's testimony is relevant. *Sharkey v. J.P. Morgan Chase*, 10 Civ. 3824 (RWS), 2017 U.S. Dist. LEXIS 11299, at *2-3 (S.D.N.Y. Jan. 26, 2017).

JPMorgan is on record that Client A's testimony (as well as that of the other members of the A-Family) is not relevant in any way. (ECF No. 143) Pursuant to Judge Sweet's January 26, 2017 Opinion, therefore, if Sharkey wants to compel Client A or a member of the A-Family to take the witness stand, she will first have to make the necessary *in camera* showing that the testimony is relevant to proving her claims. Sharkey cannot satisfy that requirement.

In her Motion, Sharkey submits pages from the deposition transcripts of Client A, his wife, and his son, and argues that these demonstrate the relevance of the testimony. (ECF No. 231 at ¶¶ 8-10 & Exs. F, G, H; ECF No. 230 at pp. 11-12.) But as discussed below, neither these transcript pages nor anything else supports any such conclusion. To the contrary, these transcript pages only underscore the *irrelevance* of the testimony.

In an appearance before Judge Sweet on January 17, 2017, Judge Sweet observed, before hearing oral argument of counsel, that he was inclined to allow Sharkey to call Client A as a witness at trial. Judge Sweet then listened to oral argument, after which he expressly reserved

decision on the issue. (Tr. Jan. 17, 2017 at p. 15.) On January 18, 2017, counsel for Client A

wrote to Judge Sweet, further urging him to continue to protect Client A's identity from

disclosure, and identifying the harm that such disclosure would cause to this innocent family for

no legitimate reason. (ECF No. 201.)

On January 26, 2017, Judge Sweet issued his written Opinion (ECF No. 202), in which

he ruled:

> Client A and Defendants moved to protect the names of Client A, other members
> of the A-Family, and affiliated entities from disclosure at trial and to quash the
> trial subpoenas. For the reasons that follow, Client A's identity *will be protected*
> *up until the time at which either of the parties can make an in camera showing*
> *that Client A's testimony will be relevant* during trial. ... Plaintiff will need to
> demonstrate to the Court *in camera during trial why Client A's testimony will be*
> *relevant*.

*Sharkey v. J.P. Morgan Chase*, 10 Civ. 3824 (RWS), 2017 U.S. Dist. LEXIS 11299, at *2-3

(S.D.N.Y. Jan. 26, 2017) (emphasis added).

Sharkey now asks this Court to reconsider Judge Sweet's ruling. There is no basis to do

so. The Motion should be denied for two distinct reasons: (i) the Motion is untimely and

otherwise fails to meet the standard for reconsideration under Local Civil Rule 6.3; (ii) Sharkey

has not shown (and cannot show) that the testimony of any member of the A-Family is relevant

to proving any of her claims.

## BACKGROUND

### A. Client A and the A-Family

Through decades of hard work, Client A has built a highly successful family business.

His adult sons work in that business and thereby support their families. Exposing Client A's

identity threatens to cripple that business. Client A is in a highly competitive industry, and

competitors would not hesitate to use Sharkey's vicious allegations to persuade customers to stay

away from Client A.  Client A has been in business for many decades, and enjoys a flawless

reputation.  (*See* ECF No. 201.)

In an attempt to create the false illusion that "Client A and his businesses have been

subjected to substantial negative press," Sharkey points only to two newspaper articles *from*

*1995*, in which it was falsely alleged that Client A had engaged in wrongdoing, which was never

proven.  (ECF No. 230, at p. 10, citing ECF No. 231, Wigdor Decl. ¶¶ 6-7 & Exs. E, F; *cf.* ECF

No. 201 at p. 1.)  The fact that Sharkey has not located a single negative reference about Client A

since 1995 is telling indeed.

Contrary to Sharkey's argument that the Court should now abandon its longstanding

protection of Client A's identity, we respectfully submit that this Court should continue to follow

Judge Sweet and shield Client A's identity from unwarranted and inappropriate disclosure.

**B.  The Protective Order**

In 2011, when the issue of safeguarding Client A's identity first arose, Judge Sweet

issued a Protective Order shielding Client A's identity from disclosure.  (ECF No. 38.)  In

relevant part, the Protective Order provides:

> … the parties, including Plaintiff Jennifer Sharkey, her attorneys and/or any
> person or entity acting on her behalf shall not, so long as this Agreement remains
> in effect, disclose or cause to be disclosed to any third party (including the press
> and/or the public), the identity of and/or any information relating to any JPMC
> client referred to in the course of this matter, unless the party wishing to disclose
> such information makes an application to the Court, which may be done ex parte
> with the Court's permission, and the Court expressly grants the application.
> **JPMC's client referred to as the "Suspect Client" in the Amended Complaint**
> **shall hereinafter be referred to as "Client A" (or, as appropriate, "Client**
> **A1," "Client A2," and so on) in all publicly filed papers.**

(ECF No. 38 at ¶ 12) (emphasis added).

The Protective Order further provides:

> Nothing herein shall restrict the presentation of any evidence to the Court at trial
> or any other hearing in this action, **provided that such presentation shall not**

- 4 -

**constitute a waiver of any restriction contained in this Protective Order, and the parties shall take reasonable steps to maintain the confidentiality of confidential material at trial** or any other hearing in this action **in such manner as the Court may direct.**

(*Id.* at ¶ 17) (emphasis added).

In his written decisions since then, Judge Sweet has always referred to "Client A." *See, e.g., Sharkey v. J.P. Morgan Chase*, 10 Civ. 3824 (RWS), 2013 U.S. Dist. LEXIS 183168, at *5 (S.D.N.Y. Dec. 12, 2013).

### C. The Issues for Trial

As determined by the Second Circuit in its 2016 decision in this case, the sole issues for trial are (i) whether at the time of her employment, Sharkey had a reasonable belief that Client A had been engaged in specified violations of federal law, and (ii) whether Sharkey's recommendation that Client A be terminated was a contributing factor to her dismissal by JPMorgan. *See Sharkey v. JPMorgan Chase*, 2016 U.S. App. LEXIS 16636, at *2-6 (2d Cir. Sept. 12, 2016).

As shown below, neither Client A, his wife, nor his son have relevant testimony with respect to either issue.

Their deposition testimony, cited by Sharkey in support of her Motion, does not support Sharkey's reasonable belief that Client A was engaged in specified violations of federal law. Nor does it support Sharkey's claim that her recommendation that Client A be terminated was a contributing factor to her dismissal.

In sum, apart from the untimeliness and other procedural deficiencies of the Motion, Sharkey has demonstrated no legitimate basis for calling any member of the A-Family as a trial witness. Their testimony is irrelevant to proving either issue identified by the Second Circuit. The Court should deny the Motion.

## Argument

### POINT ONE

### THE MOTION SHOULD BE DENIED BECAUSE IT IS UNTIMELY AND OTHERWISE FAILS TO MEET THE REQUIREMENTS OF LOCAL CIVIL RULE 6.3

The Opinion of Judge Sweet that is being sought for reconsideration was entered January 26, 2017.  (ECF No. 202.)  Local Civil Rule 6.3 – which Sharkey's Motion does not even cite – requires any motion for reconsideration to be filed within 14 days of entry of the ruling whose reconsideration is being sought.  The Motion for Reconsideration was filed April 18, 2017, more than two months past the deadline.  (ECF No. 229.)  The Motion is therefore untimely, and by a very substantial margin.  The Motion should be denied on this ground alone.

Sharkey acknowledges the lateness of the Motion, but claims to have a valid excuse: she points to the fact that she had asked Judge Sweet to recuse himself from the case, and takes the position that by doing so, she *unilaterally* extended the Rule's 14-day period *sine die*.  (ECF No. 230 at pp. 21-22.)

There is no basis in law or logic for this position.  Sharkey cites no authority in support, as there is none.  To the contrary, Rule 6.3 is strictly applied, and a failure to comply can only be excused for a "compelling reason." *See, e.g., Cartier v. Samo's Sons, Inc.*, 04 Civ. 2268 (RMB)(GWG), 2006 U.S. Dist. LEXIS 7764, at *6 (S.D.N.Y. Jan. 26, 2006).  Sharkey offers no compelling reason.  Sharkey should have moved to extend the 14-day period, but did not bother to do so.  *See, e.g., Beckles v. City of New York*, 08 Civ. 3687 (RJH)(JCF), 2010 U.S. Dist. LEXIS 45423, at *9-10 (S.D.N.Y. May 10, 2010) (no "excusable neglect" for missing Rule 6.3 deadline by two days where party "could and should have made  a proper request for an extension of time" but failed to do so). Indulging Sharkey would set a dangerous precedent, and would severely undermine Rule 6.3.

In addition, Rule 6.3 requires the movant to identify "the matters or controlling decisions which counsel believes the Court has overlooked." Again, Sharkey's Motion is deficient, as she fails to identify any such matters, and Judge Sweet – who has presided over this case since its inception in 2010 – has overlooked nothing. Put simply, Sharkey is unhappy with Judge Sweet's rulings, and wants another bite at the apple. She has failed to comply with the requirements of Local Civil Rule 6.3, and the Motion should be denied for this reason alone.

**POINT TWO**

**THE MOTION SHOULD BE DENIED BECAUSE
SHARKEY HAS MADE NO SHOWING OF THE RELEVANCE
OF THE TESTIMONY OF CLIENT A, HIS WIFE, OR HIS SON**

Apart from the untimeliness and other procedural infirmities that are fatal to the Motion, Sharkey has not established the relevance of the testimony of Client A, his wife, or his son to proving either of her claims.

As already noted, the Second Circuit has defined the issues for trial: (i) whether *at the time of her employment*, Sharkey had a reasonable belief that Client A had been engaged in specified violations of federal law, and (ii) whether Sharkey's recommendation that Client A be terminated was a contributing factor to her dismissal by JPMorgan. *See Sharkey v. JPMorgan Chase*, 2016 U.S. App. LEXIS 16636, at *2-6 (2d Cir. Sept. 12, 2016).

### A. Sharkey Does Not Argue the Testimony is Relevant to the Reason for Her Termination

Sharkey has not even attempted to argue that any of the testimony is relevant to showing that her recommendation that Client A be terminated was a contributing factor to her dismissal. There is no evidence, nor even a claim, that Client A or any member of the A-Family has any testimony to provide on this issue, which is purely internal to JPMorgan.

## B. Sharkey Has Failed to Demonstrate the Testimony is Relevant to Her Reasonable Belief in 2009

Sharkey focuses instead on the other issue identified by the Second Circuit: her reasonable belief that Client A had been engaged in specified violations of federal law. Critically, the issue is whether Sharkey entertained such a reasonable belief *at the time of her employment*. Inherently, this requires presenting the jury with an evidentiary snapshot from 2009, so that the jury can evaluate the factors claimed by Sharkey to have contributed to her suspicion *at that time*.

Sharkey can testify before the jury (as she did at her deposition) to the circumstances she says caused her to become suspicious of Client A in 2009. *She has never claimed that anything in Client A's physical appearance, personal manner, or demeanor caused or contributed to her suspicion*. Her testimony, rather, is that a confluence of circumstances – unrelated to appearance, manner, or demeanor, but having to do with bank accounts, documentation, business activities, and (alleged) unavailability – gave rise to her suspicion.

Judge Sweet has exhaustively listed the facts alleged by Sharkey to have contributed to her suspicion. *See Sharkey v. J.P. Morgan Chase*, 10 Civ. 3824 (RWS), 2013 U.S. Dist. LEXIS 183168, at *6-8 (S.D.N.Y. Dec. 12, 2013). These facts include, for example, that Client A had zero balance accounts, was in the diamond business, had an entity incorporated in Israel, transacted with Colombia, utilized his law firm's account (the "Ostrager Account") to conduct business, and (allegedly) could not be reached. *Id.* at *6-7. All of these alleged facts (and the other facts or putative facts invoked by Sharkey as her stated basis for suspicion) can and should be presented to the jury, so that the jury can place itself in Sharkey's mind as of 2009 – not as of 2017 – to assess whether the facts *she has alleged* provided a reasonable basis for her claimed suspicion that Client A was engaged in specified unlawful activity. This requires an assessment

- 8 -

of *Sharkey's* credibility and state of mind in 2009, not an assessment of *Client A's* credibility as a trial witness in 2017.

Sharkey argues that it would be "fundamentally unfair not to allow Plaintiff to call the Client A witnesses, cross-examine them and provide the jury with all of the information Plaintiff had (including judging the credibility of the Client A witnesses) when she came to her reasonable belief." ECF No. 230 at p. 11. But in 2009, Sharkey did not have the benefit of watching her current trial counsel cross-examine Client A (or his wife, or his son). Indeed, Sharkey does not even allege that she herself subjected Client A (or his wife, or his son) to searching face-to-face questioning and that his or her manner or demeanor in her presence caused or contributed to her suspicion.

The only relevant evidence consists of the facts Sharkey claims to have relied upon in 2009. Any additional evidence is not only irrelevant, but would cause the jury to erroneously conflate facts relied on by Sharkey in 2009 with other facts or visceral impressions not relied on by Sharkey in 2009, but only adduced at trial in 2017. The jury will be unable to disentangle the information Sharkey relied on in 2009, from the information and impressions adduced from Client A on the witness stand in 2017.

Even if, as Sharkey hopes, her trial counsel succeeds in making Client A appear to be suspicious-looking on the witness stand, Sharkey offers no reason why the jury should be provided a ground for suspicion that Sharkey herself did not have in 2009. Indeed, there is no valid reason to allow it, and every reason to disallow it.

Sharkey can testify to whatever information she had and relied upon *at that time*. Judge Sweet has carefully catalogued every piece of information she claims to have relied upon. On

that basis, the jury will assess *her credibility* as well as the reasonableness of her claimed suspicion. Anything else is irrelevant and should be excluded.

### C. The Depositions of the Members of the A-Family Do Not Establish Relevance

As noted, Sharkey's counsel has deposed Client A, his wife, and his son. In support of her Motion, as purported proof of the relevance and need for their live testimony, Sharkey has submitted excerpts of the depositions (under seal). *See* ECF No. 231, Wigdor Decl. ¶¶ 8-10 & Exs. G, H, I.

This deposition testimony, which is cited by Sharkey as proof of relevance, proves nothing of the kind. Quite the contrary.

As a threshold matter, Sharkey has never even claimed that any interaction with Client A's wife or son contributed to her suspicion in any way. *See Sharkey v. J.P. Morgan Chase*, 10 Civ. 3824 (RWS), 2013 U.S. Dist. LEXIS 183168, at *6-8 (S.D.N.Y. Dec. 12, 2013) (listing all grounds for suspicion invoked by Sharkey in her testimony; no reference to the wife or son of Client A). Their testimony is therefore irrelevant for this reason alone.

### 1. The Testimony of Client A is Not Relevant to Proving Sharkey's Claims

Sharkey cites the testimony on pages 19-25 of Client A's deposition as purportedly relevant to proving her claims. ECF No. 230 at pp. 11-12, citing ECF No. 231, Ex. G. It is not.

Client A testified that when he first opened accounts with JPMorgan in the late 1990s, he opened one account at the bank's branch on West 51st Street, and another account in the bank's Trust Division in Rochester NY. At that time, Client A provided all Know Your Customer ("KYC") information. Subsequently, the bank transferred the Trust Division account to the bank's Wealth Management Division. In addition, the branch on West 51st Street moved to a different location nearby. (ECF No. 231, Ex. G, at pp. 19-20.)

Client A recalls no more than one or perhaps two contacts (by phone) with Sharkey, and a single meeting with JPMorgan's Leslie Lassiter (in person) to discuss fees. In a phone call with Sharkey, which included other bank employees, there was a conversation about the KYC process. In that call, Client A explained to Sharkey and the other bank employees the circumstances (described above) under which the accounts had been opened and subsequently transferred by the bank, and specifically mentioned that all KYC information had previously been provided to the branch on West 51st Street and to the Trust Division in Rochester. During the call, Sharkey responded by saying "she wanted to update it again," and she followed up with an email to that effect. In response to Sharkey's request for an update, Client A's wife went back to her files, dug out the KYC information that had been provided upon opening the accounts, and provided another copy to the bank. (*Id.* at pp. 20-24.)

While this summarizes the testimony of Client A that appears in the transcript pages cited by Sharkey, Judge Sweet completes the picture:

> After JPMC terminated Plaintiff, JPMC learned that Plaintiff had not informed Client A that KYC documents were still outstanding. (*Id.* ¶ 24.) Client A was surprised to learn that JPMC believed Client A still owed KYC documents to the bank. (*Id.*) Promptly after learning that documentation was missing, Client A provided all information necessary to complete the KYC process. (*Id.* ¶ 25.)

*Sharkey v. J.P. Morgan Chase*, 10 Civ. 3824 (RWS), 2013 U.S. Dist. LEXIS 183168, at *12-13 (S.D.N.Y. Dec. 12, 2013).

Nothing in Client A's testimony is relevant to supporting Sharkey's claim that she had a reasonable basis for suspicion. Sharkey's claim that she needs to have the jury hear Client A provide this testimony live from the witness stand is entirely pretextual.

## 2.  The Testimony of Client A's Wife is Not Relevant to Proving Sharkey's Claims

Next, Sharkey cites the testimony on pages 17-23 of the deposition of Client A's wife. (ECF No. 230 at pp. 11-12, citing ECF No. 231, Ex. H.)

Client A's wife testified that she was never in communication with Sharkey, and does not even know who Sharkey is. Client A's wife never discussed KYC issues with anyone at JPMorgan, and does not even understand the term "Know Your Customer." Client A's wife testified that she recalls that her husband received a request for "for company documentation like, you know, incorporation papers and whatever it is that you use to open up a bank account." She had "no clue" as to the reason for the request, but assisted in gathering incorporation documents from her files in response to the request. ECF No. 231, Ex. H at pp. 17-22.

Nothing in this testimony is relevant to Sharkey's claim that she had a reasonable suspicion of Client A. Again, Sharkey's insistence that the jury must see Client A's wife relate these facts from the witness stand is pretextual.

### 3.   The Testimony of Client A's Son is Not Relevant to Proving Sharkey's Claims

Finally, Sharkey cites the testimony on pages 25-27 and 34-54 of the deposition of Client A's son. ECF No. 230 at pp. 11-12, citing ECF No. 231, Ex. I.

Client A's son testified that he was cc'd on an email from JPMorgan to one or both of his parents requesting corporate documentation, but that he himself had no involvement in responding. ECF No. 231, Ex. I at pp. 26-27.

Client A's son interacted briefly with Sharkey in an unrelated matter: he was involved in a mortgage transaction, and Sharkey "was cc'd on something I provided to the mortgage broker which we referred to." He had no role in providing documents to the bank. He may have briefly discussed the JPMorgan KYC process with one of his parents. Sharkey never requested information from him about his father's business or activities. He is aware of a request from the bank for additional documents or information regarding a specific entity, which was likely directed to his father. *Id.* at pp. 35-54.

Once again, nothing in this testimony is relevant to proving Sharkey's claim that she had a reasonable basis for suspicion. Again, Sharkey's claimed need to have Client A's son repeat this testimony from the witness stand is pretextual.

In sum, Sharkey has failed to demonstrate the relevance of the testimony of Client A, his wife, or his son. The Motion should be denied. [1]

---

[1] Sharkey also states, without any detail, that "at deposition, the Client A witnesses gave testimony about meetings, communications, and documents that contradicted the testimony of other witnesses," and argues that "[t]hese contradictions must be explored through further examination, and in the context of the trial testimony provided by other witnesses." (ECF No. 230 at p. 12.) Sharkey does not identify any specific contradiction, much less explain why it "must be explored." It appears from other filings that Sharkey is referring to a difference in recollection between Client A and JPMorgan's Lassiter about a particular conversation. *See* ECF No. 97 at p. 14; ECF No. 141 at p. 3. Lassiter testified that some months after Sharkey's termination, she informed Client A that JPMorgan was prepared to exit the relationship with him. ECF No. 141 at p. 3. Neither Client A, *nor Lassiter's associate Jonathan Spira*, have any recollection of such a conversation. *See* ECF No. 97 at p. 14. Sharkey cannot and does not maintain that this difference in recollection is relevant to Sharkey's reasonable suspicion. Sharkey argues instead that she needs Client A's testimony to demonstrate to the jury that "Lassiter testified falsely at her deposition" about this conversation. ECF No. 141 at p. 3. Even if that were deemed relevant, Sharkey can call JPMorgan's Spira to dispute Lassiter. Sharkey does not need Client A to duplicate Spira's testimony. Moreover, having argued that she intends to call Client A as a witness specifically to cross-examine and impeach him before the jury (ECF No. 230 at p. 11), it is ironic and disingenuous that Sharkey now purports to want to call Client A in order to vouch for his truthfulness.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion for Reconsideration.[2]

Dated: New York, New York
May 2, 2017

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By:

Jacques Semmelman
101 Park Avenue
New York, New York  10178
(212) 696-6000
jsemmelman@curtis.com

Attorneys for Client A and the A-Family[3]

---

[2] Client A respectfully incorporates the additional arguments raised in the Opposition dated May 2, 2017 filed by JPMorgan.

[3] Insofar as the Motion implicates discovery sought to be taken from the Curtis law firm (ECF No. 230 at pp. 18-19), Curtis respectfully joins in this Opposition in its *pro se* capacity.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                             :
JENNIFER SHARKEY,                                            :
                                                             :
                                    Plaintiff,               :
                                                             :
                    -against-                                :
                                                             :          10 Civ. 3824 (DLC)
J.P. MORGAN CHASE & CO., JOE KENNEY, ADAM                    :
GREEN, AND LESLIE LASSITER in their official                :
capacities,                                                  :
                                                             :
                                    Defendants.              :
                                                             :
------------------------------------------------------------- X

### AFFIDAVIT OF SERVICE
### BY ELECTRONIC MAIL AND FEDERAL EXPRESS

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK )

        JACQUES SEMMELMAN, being duly sworn, deposes and says:

        1.      That deponent is over the age of eighteen years and is not a party to this

action.

        2.      That on the 2nd day of May, 2017, deponent served by Electronic Mail and

Federal Express a copy of the Non-Party Client A's Memorandum of Law in Opposition to

Plaintiff's Motion for Reconsideration upon:

                Michael Schissel
                Arnold & Porter
                399 Park Avenue
                New York, NY 10022-2690
                Michael.Schissel@aporter.com

                and

11501822v1

Douglas Wigdor
Thompson Wigdor LLP
85 Fifth Avenue
New York, NY 10003
dwigdor@wigdorlaw.com

Jacques Semmelman

Sworn to before me this
2nd day of May, 2017

Notary Public

GLORIA DIAZ-BUJAN
Notary Public, State of New York
No. 01DI4701327
Qualified in New York County
Commission Expires April 30, 20_19_

1150182251