

**Curtis, Mallet-Prevost, Colt & Mosle LLP**

| | | |
|---|---|---|
| Almaty | Houston | |
| Ashgabat | London | |
| Astana | Mexico City | |
| Beijing | Milan | |
| Buenos Aires | Muscat | |
| Dubai | Paris | |
| Frankfurt | Rome | |
| Geneva | Washington, D.C. | |

101 Park Avenue
New York, New York 10178-0061

Telephone  +1 212 696 6000
Facsimile  +1 212 697 1559
www.curtis.com

Jacques Semmelman
Tel: +1 212 696 6067
Fax: +1 917 368 8867
E-Mail: jsemmelman@curtis.com

July 14, 2017

<u>**VIA ECF**</u>
Hon. Denise L. Cote
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY  10007

**Re: Sharkey v. J.P. Morgan Chase et al,**<br>
**Civ. Action No. 10-cv-3824 (DLC)**

Dear Judge Cote:

This law firm represents Client A, his wife, and his son (the "A-Family").  I write in compliance with the Court's June 28 Order (ECF No. 252).  As shown below, the testimony of Client A, his wife, and his son are irrelevant to the issues for trial.  Moreover, Client A's appearance at trial would confuse the jury, as it would be impossible to separate the information known and (allegedly) relied upon by Sharkey in 2009, from information and impressions newly adduced from the witness stand in 2017.  The Court should quash the trial subpoenas served on Client A, his wife, and his son.

### A. The Issues for Trial

The Second Circuit has defined the issues for trial: (i) whether *at the time of her employment*, Sharkey had a reasonable belief that Client A had been engaged in specified violations of federal law, and (ii) whether Sharkey's recommendation that Client A be terminated was a contributing factor to her dismissal by JPMorgan.  *See Sharkey v. JPMorgan Chase*, 2016 U.S. App. LEXIS 16636, at *2-6 (2d Cir. Sept. 12, 2016).  This Court has identified two fact patterns for the jury to assess:  (i) "[W]hether or not the plaintiff lied to her employer about her interaction with the client[1] and whether or not that lie if it was made was the reason for her

---

[1] This "client" is not Client A, but a different client's manager, referred to by Judge Sweet as "Manager T."  *See Sharkey v. J.P. Morgan Chase*, 10 Civ. 3824 (RWS), 2015 U.S. Dist. LEXIS 138357, at *21-26 (S.D.N.Y. Oct. 9, 2015).  Client A has no connection with Manager T.



**Curtis, Mallet-Prevost, Colt & Mosle LLP**

termination." (2) "[T]he conversations that the plaintiff had with her employer about concerns regarding Client A and the extent to which those conversations were implicated in the decision to fire the plaintiff." (Tr. May 5, 2017, p. 15.)

Sharkey has not even attempted to argue that any of Client A's testimony is relevant to showing that her recommendation that Client A be terminated was a contributing factor to her dismissal. There is no evidence, nor even a claim, that Client A or any member of the A-Family has any testimony to provide on this issue, which is purely internal to JPMorgan.

Sharkey focuses instead on the other issue identified by the Second Circuit: her reasonable belief that Client A had been engaged in specified violations of federal law. Critically, the issue is whether Sharkey entertained such a reasonable belief *at the time of her employment*. Inherently, this requires presenting the jury with an evidentiary snapshot from 2009, so that the jury can evaluate the factors claimed by Sharkey to have contributed to her suspicion *at that time*.

Sharkey can testify before the jury (as she did at her deposition) to the circumstances she says caused her to become suspicious of Client A in 2009. *She has never claimed that anything in Client A's physical appearance, personal manner, or demeanor caused or contributed to her suspicion*. Her testimony, rather, is that a confluence of circumstances – unrelated to appearance, manner, or demeanor, but having to do with bank accounts, documentation, business activities, and (alleged) unavailability – gave rise to her suspicion.

Judge Sweet has exhaustively listed the facts alleged by Sharkey to have contributed to her suspicion. *See Sharkey v. J.P. Morgan Chase*, 10 Civ. 3824 (RWS), 2013 U.S. Dist. LEXIS 183168, at *6-8 (S.D.N.Y. Dec. 12, 2013). These facts include, for example, that Client A had zero balance accounts, was in the diamond business, had an entity incorporated in Israel, transacted with Colombia, utilized his law firm's account to conduct business, and (allegedly) could not be reached. *Id.* at *6-7. All of these alleged facts should be presented to the jury, so that the jury can place itself in Sharkey's mind as of 2009 – not as of 2017 – to assess whether the facts *she has alleged* provided a reasonable basis for her claimed suspicion that Client A was engaged in specified unlawful activity. This requires an assessment of *Sharkey's* credibility and state of mind in 2009, not an assessment of *Client A's* credibility as a trial witness in 2017.

Sharkey argues that it would be "fundamentally unfair not to allow Plaintiff to call the Client A witnesses, cross-examine them and provide the jury with all of the information Plaintiff had (including judging the credibility of the Client A witnesses) when she came to her reasonable belief." ECF No. 230 at p. 11; *see also* ECF No. 243 at pp. 2-3. But in 2009, Sharkey did not have the benefit of watching her current trial counsel cross-examine Client A (or his wife, or his son). Indeed, Sharkey does not even allege that she herself subjected Client A (or his wife, or his son) to searching face-to-face questioning and that his or her manner or demeanor in her presence caused or contributed to her suspicion.

The only relevant evidence consists of the facts Sharkey claims to have relied upon in 2009. Any additional evidence is not only irrelevant, but would cause the jury to erroneously



**Curtis, Mallet-Prevost, Colt & Mosle LLP**

conflate facts relied on by Sharkey in 2009 with other facts or visceral impressions not relied on by Sharkey in 2009, but only adduced at trial in 2017. The jury will be unable to disentangle the information Sharkey relied on in 2009, from the information and impressions adduced from Client A on the witness stand in 2017.

Even if, as Sharkey hopes, her trial counsel succeeds in making Client A appear to be suspicious-looking on the witness stand, Sharkey offers no reason why the jury should be provided a ground for suspicion that Sharkey herself did not have in 2009. Indeed, there is no valid reason to allow it, and every reason to disallow it.

### B. The Depositions of the Members of the A-Family Do Not Establish Relevance

Sharkey's counsel has deposed Client A, his wife, and his son. As purported proof of the relevance and need for their live testimony, Sharkey has submitted excerpts of the depositions (under seal). *See* ECF No. 231, Wigdor Decl. ¶¶ 8-10 & Exs. G, H, I; ECF No. 243 at p. 2. This testimony, cited by Sharkey as proof of relevance, proves nothing of the kind.

Sharkey has never claimed that any interaction with Client A's wife or son contributed to her suspicion in any way. *See Sharkey v. J.P. Morgan Chase*, 10 Civ. 3824 (RWS), 2013 U.S. Dist. LEXIS 183168, at *6-8 (S.D.N.Y. Dec. 12, 2013) (listing all grounds for suspicion invoked by Sharkey in her testimony; no reference to the wife or son of Client A). Their testimony is therefore irrelevant for this reason alone.

### 1. The Testimony of Client A is Not Relevant

Sharkey cites the testimony on pages 19-25 of Client A's deposition as purportedly relevant to proving her claims. ECF No. 230 at pp. 11-12; ECF No. 243 at p. 2. It is not.

Client A testified that when he first opened accounts with JPMorgan in the late 1990s, he opened one account at the bank's branch on West 51st Street, and another account in the bank's Trust Division in Rochester NY. At that time, Client A provided all Know Your Customer ("KYC") information. Subsequently, the bank transferred the Trust Division account to the bank's Wealth Management Division. In addition, the branch on West 51st Street moved to a different location nearby. ECF No. 231, Ex. G, at pp. 19-20.

Client A recalls no more than one or perhaps two contacts (by phone) with Sharkey, and a single meeting with JPMorgan's Leslie Lassiter (in person) to discuss fees. In a phone call with Sharkey, which included other bank employees, there was a conversation about the KYC process. In that call, Client A explained to Sharkey and the other bank employees the circumstances (described above) under which the accounts had been opened and subsequently transferred by the bank, and specifically mentioned that all KYC information had previously been provided to the branch on West 51st Street and to the Trust Division in Rochester. During the call, Sharkey responded by saying "she wanted to update it again," and she followed up with an email to that effect. In response to Sharkey's request for an update, Client A's wife went back



**Curtis, Mallet-Prevost, Colt & Mosle LLP**

to her files, dug out the KYC information that had been provided upon opening the accounts, and provided another copy to the bank. *Id.* at pp. 20-24.

Nothing in Client A's testimony is relevant to supporting Sharkey's claim that she had a reasonable basis for suspicion. Sharkey's claim that she needs to have the jury to hear Client A provide this testimony live from the witness stand is entirely pretextual.

### 2.    The Testimony of Client A's Wife is Not Relevant

Sharkey cites the testimony on pages 17-23 of the deposition of Client A's wife as somehow relevant. ECF No. 230 at pp. 11-12; ECF No. 243 at p. 2. It is not.

Client A's wife testified that she was never in communication with Sharkey, and does not even know who Sharkey is. Client A's wife never discussed KYC issues with anyone at JPMorgan, and does not understand the term "Know Your Customer." Client A's wife testified that she recalls that her husband received a request for "for company documentation like, you know, incorporation papers and whatever it is that you use to open up a bank account." She had "no clue" as to the reason for the request, but assisted in gathering incorporation documents from her files in response to the request. ECF No. 231, Ex. H at pp. 17-22.

Nothing in this testimony is relevant to Sharkey's claim that she had a reasonable suspicion of Client A. Again, Sharkey's insistence that the jury must see Client A's wife relate these facts from the witness stand is pretextual.

### 3.    The Testimony of Client A's Son is Not Relevant

Finally, Sharkey cites the testimony on pages 25-27 and 34-54 of the deposition of Client A's son as somehow relevant. ECF No. 230 at pp. 11-12; ECF No. 243 at p. 2. It is not.

Client A's son testified that he was cc'd on an email from JPMorgan to one or both of his parents requesting corporate documentation, but that he himself had no involvement in responding. ECF No. 231, Ex. I at pp. 26-27.

Client A's son interacted briefly with Sharkey in an unrelated matter: he was involved in a mortgage transaction, and Sharkey "was cc'd on something I provided to the mortgage broker which we referred to." He had no role in providing documents to JPMorgan. He may have briefly discussed the JPMorgan KYC process with one of his parents. Sharkey never requested information from him about his father's business or activities. He is aware of a request from the bank for additional documents or information regarding a specific entity, which was likely directed to his father. *Id.* at pp. 35-54.

Once again, nothing in this testimony is relevant to proving Sharkey's claim that she had a reasonable basis for suspicion. Again, Sharkey's claimed need to have Client A's son repeat this testimony from the witness stand is pretextual.



**Curtis, Mallet-Prevost, Colt & Mosle LLP**

In sum, Sharkey has failed to demonstrate the relevance of the proffered testimony.

### C.  Vague Allegations About "Contradictions" Do Not Establish Relevance

Sharkey also states, without any detail, that "at deposition, the Client A witnesses gave testimony about meetings, communications, and documents that contradicted the testimony of other witnesses," and argues that "[t]hese contradictions must be explored through further examination, and in the context of the trial testimony provided by other witnesses."  ECF No. 230 at p. 12; ECF No. 243, at p. 2.  *Sharkey does not identify any specific contradiction*, much less explain why it "must be explored."  It appears that Sharkey is referring to a difference in recollection between Client A and JPMorgan's Lassiter about a particular conversation.  *See* ECF No. 97 at p. 14; ECF No. 141 at p. 3.  Lassiter testified that some months *after* Sharkey's termination, she informed Client A that JPMorgan was prepared to exit the relationship with him.  ECF No. 141 at p. 3.  Neither Client A, *nor Lassiter's associate Jonathan Spira*, have any recollection of such a conversation.  *See* ECF No. 97 at p. 14.  Sharkey cannot and does not maintain that this difference in recollection is relevant to Sharkey's reasonable suspicion.  Sharkey argues instead that she needs Client A's testimony to demonstrate to the jury that "Lassiter testified falsely at her deposition" about this conversation.  ECF No. 141 at p. 3.  Even if that were deemed relevant, Sharkey could have called Spira to dispute Lassiter, but Sharkey has elected not to call Spira.  (Tr. May 5, 2017, p. 12)  That strategic choice underscores that this purported "contradiction" is not relevant. In any event, Client A should not have to suffer the consequences of Sharkey's strategic choice.[2]

Moreover, having argued that she intends to call Client A as a witness specifically to cross-examine and impeach him before the jury (ECF No. 230 at p. 11; ECF No. 243 at pp. 2-3), it is ironic and disingenuous that Sharkey now purports to want to call Client A in order to vouch for his truthfulness.  In sum, Sharkey has made no showing of relevance.  Indeed, allowing Client A to testify will likely confuse the jury, as it will be unable to segregate information known to Sharkey in 2009 from facts and visceral impressions newly-adduced from the witness stand in 2017.  The Court should quash the subpoenas served on Client A, his wife, and his son.

Respectfully,

Jacques Semmelman

cc:     Counsel of Record (via ECF)

---

[2] The Court is respectfully referred to ECF No. 240 (pp. 1-4), which describes the grave and irreparable reputational and financial harm to the A-Family from public dissemination of the false, made-for-litigation allegations being made by Sharkey against Client A.