# WIGDOR LLP
ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Douglas H. Wigdor**
dwigdor@wigdorlaw.com

July 14, 2017

**VIA ECF AND U.S. MAIL**

The Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15B
New York, NY 10007

      Re:    Sharkey v. J.P. Morgan Chase & Co., et al., Civil Aciton No. 10 Civ. 3824 (RWS)

Dear Judge Cote:

We represent Plaintiff Jennifer Sharkey in the above referenced action against J.P. Morgan Chase & Co. ("JPMC"), Leslie Lassiter, Adam Green and Joe Kenney, and write pursuant to Your Honor's June 28, 2017 Order directing the parties to submit letters addressing the relevance of Client A's testimony and any other disputed trial witnesses. See Dkt. No. 252. The only disputed trial witnesses are Client A, his wife and his son (together, the "Client A Witnesses").

I. **The Testimony of Client A, His Wife and His Son Is Critical to Establishing that Plaintiff Engaged in Protected Activity**

This case involves only four issues: (i) whether Ms. Sharkey reasonably believed that Client A was engaged in fraud and/or another violation of the statutes enumerated in Sarbanes Oxley ("SOX"); (ii) whether she communicated that fact to Defendants; (iii) whether those communications contributed to her termination; and (iv) whether she would have been terminated in the absence of such communications. As described below, the testimony of Client A, his son and his wife is plainly relevant to issues (i), (iii) and (iv).

In order to succeed on her claim under SOX, Plaintiff must demonstrate, *inter alia*, that she engaged in protected activity. See Leshinsky v. Telvent GIT, S.A., No. 10 Civ. 4511 (JPO), 2013 WL 1811877 at *6 (S.D.N.Y. May 1, 2013) (citing Bechtel v. Administrative Review Bd., United States Dep't of Labor, 710 F.3d 443, 447 (2d Cir.2013)). To establish that she engaged in protected activity, Ms. Sharkey will have to prove that she provided information to Defendants that she "reasonably believe[d] constitute[d] a violation of the enumerated federal provisions." Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 221 (2d Cir. 2014). A reasonable belief contains both subjective and objective components. Id. Thus, a plaintiff must subjectively believe that the conduct may constitute a violation, and that belief must be objectively reasonable. Id.

**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

The Honorable Denise L. Cote
July 14, 2017
Page 2

In this case, Ms. Sharkey must prove, *inter alia*, that she had a subjectively and objectively reasonable belief that Client A was engaged in fraud and/or another violation of the statutes enumerated in SOX.  Ms. Sharkey, of course, alleges that she did hold this belief.  In large part, this belief was based on interactions that Ms. Sharkey had with Client A, his wife and his son while Ms. Sharkey was attempting to gather documents necessary to complete JPMC's "Know Your Customer" ("KYC") process for Client A.  Specifically, Ms. Sharkey has testified and will testify that she made numerous attempts to gather the necessary documentation and that Client A was evasive and refused to provide same.  Moreover, Ms. Sharkey will testify that Client A gave evasive and unsatisfactory explanations for many suspicious banking activities, including his refusals to close low and no balance accounts and trading on margin in an account held in the name of a third-party.  Ms. Sharkey also will testify that Client A structured funds transfers in a way that made it very difficult for Ms. Sharkey to track and monitor his account activity.

Ms. Sharkey will testify regarding a conversation in which Client A's son requested that Ms. Sharkey check up on the status of a wire from Columbia (a high-risk country) for the sale of emeralds (a high-risk industry), as well as other suspicious conversations regarding his persistent attempts to obtain a mortgage that he could not afford and his request to "secure" the mortgage with the same third-party escrow account in which Client A was trading without apparent authorization.  Furthermore, Client A's wife requested that Ms. Sharkey reimburse her for monies withdrawn from a joint-account by one of the joint-account holders, despite the fact that the joint-account holder had authorization to withdraw the monies.

In sum, the Client A Witnesses all have direct knowledge of communications and events that relate to Ms. Sharkey's reasonable belief, and Ms. Sharkey specifically identified Client A, his wife and his son as each contributing to her belief.  Thus, the Client A Witnesses all have personal, first-hand and essential knowledge of relevant events and communications, and their testimony on these points cannot possibly be deemed irrelevant.

The testimony of the Client A Witnesses is additionally relevant to rebut Defendants' defense to this action.  Defendants take the position that Ms. Sharkey did not have a reasonable belief that Client A was engaged in fraud or another violation of the statutes enumerated in SOX.  Specifically, Defendants have argued and will argue that Ms. Sharkey's interactions with Client A, his wife and his son could not have given rise to a reasonable belief.  By way of example only, they argue – **based on what Client A allegedly told Ms. Lassiter** – that Client A was unaware that documents remained outstanding because Ms. Sharkey did not communicate that fact to him.  Defendants also claim that Client A was fully forthcoming with the required documents following Ms. Sharkey's termination.  By way of a final example, Defendants claim that Client A adequately "explained-away" Ms. Sharkey's concerns regarding Client A trading in an escrow account that was in the name of a third-party, apparently without the appropriate authorization.

Ultimately, in order to establish that her belief was reasonable, Ms. Sharkey must be permitted to call Client A, his wife and his son so that the jury can assess their demeanor and credibility.  Moreover, as Ms. Sharkey did not communicate with Client A or Ms. Lassiter after her

**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

The Honorable Denise L. Cote
July 14, 2017
Page 3

termination, a cross-examination of Client A is quite literally the only way that Ms. Sharkey can present a differing account of his post-termination communications with JPMC.[1]

### II.     The Testimony of Client A Is Relevant to Establishing the Reason for Ms. Sharkey's Termination

Defendants claim that it is unreasonable to conclude that Ms. Sharkey was terminated for raising concerns about Client A because – according to Defendants – Ms. Lassiter actually agreed with Ms. Sharkey's recommendation to exit the Client A relationship. In support of this (disputed) claim, Ms. Lassiter testified that she told Client A that JPMC would be exiting the relationship. Client A, on the other hand, denied that Ms. Lassiter ever told him that JPMC would be exiting the relationship. Obviously, Client A's testimony in this regard undercuts Ms. Lassiter's claim that she intended to exit the relationship and, in turn, undercuts Defendants' argument that the purported willingness to exit the relationship demonstrates that Ms. Sharkey was not terminated for raising concerns about Client A.

### III.    Defendants' Irrelevant Arguments

Given the obvious relevance of the testimony of the Client A witnesses, Plaintiff expects Defendants to make the irrelevant argument that requiring Client A to testify could somehow damage Client A's reputation. This argument, if made, does not actually address Your Honor's question as to whether Client A's testimony is relevant. Moreover, the argument rests on the completely false assumption that Client A's reputation is pristine.



---

[1] It bears noting that much of the testimony Defendants will seek to elicit from their own witnesses with regard to their interactions with Client A is inadmissible hearsay (*e.g.*, Client A's claim to Ms. Lassiter that he had no idea that documents were outstanding). As such, in order to even present many aspects of their defense, Defendants will need to call Client A to testify. Of course, should the Court permit *Ms. Lassiter* to testify about her interactions and conversations with Client A, his presence at trial would be all the more necessary.

**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

The Honorable Denise L. Cote
July 14, 2017
Page 4

▮ However, again, any argument regarding reputational damage to Client A does not address the dispositive issue – whether his testimony is relevant.

Likewise, Defendants may suggest that Plaintiff can simply introduce the Client A Witnesses' deposition transcripts in lieu of live testimony. This, of course, is nothing more than an admission that the testimony of the Client A Witnesses is indeed relevant.

### IV. Conclusion

This action is based in very large part on the conduct of Client A and the resulting beliefs formed by Ms. Sharkey. For Defendants to argue that Client A is not relevant (while simultaneously relying on representations he made that they believe support their defense) is disingenuous. Although the Honorable Robert W. Sweet ultimately held that Ms. Sharkey would have to establish the relevance of Client A's testimony in order for his name to be uttered at trial, it bears noting that Judge Sweet already found, on the record, that Client A is relevant to this action and was very much leaning towards the use of Client A's real name at trial:

> I want the jury to have all the relevant facts. ***And this gentleman's affairs are to a degree -- and that's an issue, I understand -- are to a degree those relevant facts. And I am persuaded that there is no enforceable right to secrecy and that it would be confusing for the jury***. That's the reason I think that his identity will be revealed.

Ex. C at 15:14-19 (emphasis added).

We thank Your Honor for the Court's time and attention to this matter.

Respectfully submitted,

Douglas H. Wigdor

cc: Michael D. Schissel, Esq. (*via* ECF)
     Kathleen A. Reilly, Esq. (*via* ECF)