

Michael D. Schissel
+1 212.836.8240 Direct
Michael.Schissel@apks.com

July 14, 2017

**VIA ECF**

The Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl St., Courtroom 15B
New York, NY 10007-1312

    Re:    <u>Sharkey v. J.P. Morgan Chase & Co., et al.</u>, No. 10 Civ. 3824 (DLC)

Dear Judge Cote:

    Defendants JPMorgan Chase & Co. ("JPMC"), Joe Kenney, Adam Green, and Leslie Lassiter (collectively with JPMC, Kenney, and Green the "Defendants") respectfully submit this letter in accordance with the Court's June 28, 2017 Order requesting submissions regarding the relevance, or not, of trial testimony from Client A, his wife and his son (collectively, the "Client A Witnesses"). For the reasons set forth below, such testimony is not relevant to the issues to be tried.

    Plaintiff has one remaining claim for trial: Defendants' alleged violation of Sarbanes-Oxley's whistleblower provision, 18 U.S.C. § 1514A ("SOX"). To prevail, Plaintiff must prove that (i) she engaged in a protected activity covered by SOX; (ii) Defendants knew that she engaged in the protected activity; (iii) she suffered an unfavorable personnel action; and (iv) her protected activity was a contributing factor in the unfavorable personnel action. *See Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 451 (2d Cir. 2013). To prove she engaged in protected activity, Plaintiff must show that she reported conduct that she reasonably believed—both objectively and subjectively—constituted a violation of one of the enumerated statutes in SOX. *See Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 219, 221 (2d Cir. 2014) (enumerated statutes are mail fraud, wire fraud, bank fraud, securities fraud, any rule or regulation of the Securities and Exchange Commission, and/or any provision of Federal law relating to fraud against shareholders). Only if Plaintiff proves her *prima facie* case (and she cannot), Defendants must then prove, by clear and convincing evidence, that they would have taken the same action in the absence of her protected activity. *See Bechtel*, 710 F.3d at 451.

ARNOLD & PORTER
KAYE SCHOLER

The Honorable Denise L. Cote
July 14, 2017
Page 2

As Your Honor noted at a prior conference, two general fact patterns are at issue: (i) JPMC's decision to terminate Plaintiff, which "revolves around whether or not the plaintiff lied to her employer about her interaction with the client and whether or not that lie if it was made was the reason for the termination[,]"[1] and (ii) Plaintiff's supposed protected activity, which "revolves around the conversations that plaintiff had with her employer about the concerns regarding Client A and the extent to which those conversations were implicated in the decision to fire the plaintiff."  Dkt. No. 246 (May 5, 2017 Pre-Trial Conference Transcript), 15:2-15:16.

Testimony at trial from any of the Client A Witnesses is *not* relevant to either of these factual matters.  *See* Fed. R. Evid. 401 (evidence is relevant only if it has "tendency to make a fact more or less probable than it would be without the evidence" and where "the fact is of consequence in determining the action"); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").  As explained below, the only evidence relevant to both factual matters concerns interactions and conduct among Plaintiff and JPMC employees, for which testimony from the Client A Witnesses is of no probative value.

**The Client A Witnesses' Testimony Is Irrelevant to Whether Plaintiff Reasonably Believed a Statute Enumerated in SOX Was Being Violated**

At her deposition and in response to the subsequent summary judgment motions, Plaintiff made clear that her purported reasonable belief was based on the following items:

1. Client A had a connection to Israel.
2. Client A is in the jewelry and calling card businesses.
3. Client A had wired money to Colombia for the purchase of emeralds.
4. Client A had traded with funds in an escrow account in the name of his law firm.
5. Client A had not provided all the requested documents for the Know Your Customer ("KYC") process.
6. Client A was associated with companies that had filed for bankruptcy about 15 years earlier.
7. Client A had multiple bank accounts, some with zero balances.
8. Client A had made suspicious transfers of funds among bank accounts.

---

[1] The JPMC client about whom Plaintiff lied regarding her interactions is separate from and unrelated to Client A.

ARNOLD & PORTER
KAYE SCHOLER

The Honorable Denise L. Cote
July 14, 2017
Page 3

*See, e.g.*, Dkt. 64 at ¶¶ 11-15; Dkt. 72 at Resp. to ¶¶ 11-15; Dkt. 92 at ¶¶ 11-15; Dkt. 99 at Resp. to ¶¶ 11-15. The relevant issue for the jury is whether the above factors provided Plaintiff with a reasonable belief that Client A was violating one of the SOX enumerated statutes. Plaintiff will testify to these factors and explain why she had such reasonable belief. The jury will either believe Plaintiff, or not. Testimony from the Client A Witnesses is not relevant to what Plaintiff reasonably believed. This is particularly so since Plaintiff has never testified that any interaction with the Client A witnesses—with whom she had very little contact—made her suspect an enumerated statute was being violated. Therefore, the credibility of the Client A Witnesses is not at issue, and the jury does not need to evaluate their credibility to perform their fact-finding role.

Moreover, most of the above eight items are not in dispute or are reflected fully in documents for which the Client A Witnesses' testimony is wholly unnecessary. With regard to **Items 1-4**, these facts are *not* in dispute. Indeed, Client A himself provided this information to Plaintiff in their very first telephone conversation, as reflected in meeting notes from a JPMC employee who participated in the conversation. *See* Dkt. 250 at 45 (stipulating to admissibility of D-109). With regard to **Item 5**, there is *no* dispute that Plaintiff complained to her supervisor, Ms. Lassiter, and an individual within JPMC's Risk Department that Client A had not provided all KYC documents, and that, as of the date Plaintiff was terminated, JPMC had not received all KYC documents from Client A. *See id.* (stipulating to admissibility of D-130). With regard to **Items 6 and 7**, these facts are *not* in dispute; indeed, JPMC's Risk Department provided this information *to Plaintiff* in a memorandum after JPMC assigned Plaintiff to the Client A account. *See id.* (stipulating to admissibility of D-101). With regard to **Item 8**, if Client A had made suspicious fund transfers (and there is no evidence that he did), that evidence would be located in the account records of JPMC. But Plaintiff—and her accounting expert—both admitted during their depositions that they *never* bothered to review or analyze these records, which JPMC produced in discovery.

Accordingly, testimony from the Client A Witnesses is irrelevant to the "reasonable belief" factors identified by Plaintiff.

ARNOLD & PORTER
KAYE SCHOLER

The Honorable Denise L. Cote
July 14, 2017
Page 4

**The Client A Witnesses' Testimony Is Irrelevant to Whether Plaintiff's Complaints About Client A Were a Factor in JPMC's Decision to Terminate Plaintiff's Employment**

JPMC terminated Plaintiff, a poor performer, on August 5, 2009 after discovering that she had repeatedly lied to her immediate supervisor, Ms. Lassiter, about her contact with another client of the bank. Dishonesty is grounds for summary termination under JPMC's policies and procedures. The only testimony relevant to the reasons JPMC decided to terminate Plaintiff's employment is the testimony of the JPMC decision-makers about why they reached that decision, and whether they considered or discussed Plaintiff's alleged complaints about Client A. The Client A Witnesses were of course not involved in JPMC's decision to terminate Plaintiff; therefore, they can have no relevant information with regard to that decision.

Plaintiff has previously argued that testimony from the Client A Witnesses is relevant to whether Defendants took steps to exit the Client A relationship following her termination. *See* Dkt. 141 at 3. Based on Plaintiff's representation that Client A had not provided all requisite KYC documentation, JPMC began the process of exiting Client A *prior to and after* Plaintiff's termination. That process ended when Client A informed JPMC in October 2009 that he was not aware that KYC information was missing, and, more importantly, promptly provided the missing information to JPMC. These facts are irrelevant to whether Plaintiff's complaints about Client A were a factor in JPMC's decision to terminate Plaintiff's employment. In any event, there are multiple contemporaneous documents, internal to the bank, corroborating JPMC's initial decision to end JPMC's relationship with Client A and led JPMC to reverse that decision, all of which were produced to Plaintiff during discovery and explored during the depositions of various JPMC employees. Moreover, there are documents from October 2009 showing that Client A provided the missing information, which require no explanation from the Client A Witnesses.

**Conclusion**

District courts have the discretion to make evidentiary rulings in advance of trial, which includes the ability to exclude witnesses as irrelevant and collateral. *See, e.g.*, *United States v. Edwards*, 631 F.2d 1049, 1051 (2d Cir. 1980) (finding that judge had broad discretion to exclude witnesses that were offered by defendant as irrelevant collateral). The Court has discretion to preclude testimony, even if marginally relevant, where it would waste time or confuse the jury. *See Richards v. North Shore Long Island*

79305931v3



The Honorable Denise L. Cote
July 14, 2017
Page 5

*Jewish Health System*, 608 F. App'x 21, 22 (2d. Cir. 2015) (finding it was not abuse of discretion to exclude testimony of similarly situated employee because, even if "marginally relevant," "under 403 the waste of time and confusion that this witness will lead to far outweighs the probative value").

Here, the only issues in this single-claim case are whether Plaintiff reasonably believed Client A was violating a statute enumerated in SOX based on the factors she has identified (most of which are undisputed), and why JPMC terminated Plaintiff's employment, including whether Plaintiff's supposed whistleblowing activity was a factor in that decision. Testimony from the Client A Witnesses on these issues is irrelevant and would only confuse the jury with regard to the central issues it must decide.

In the event that Plaintiff raises additional issues in her simultaneous submission, Defendants respectfully request the right to submit a short response.

Respectfully submitted,

/s/ Michael D. Schissel

cc:   Douglas H. Wigdor, Esq.