# ARNOLD & PORTER KAYE SCHOLER

**Michael D. Schissel**
+1 212.836.8240 Direct
Michael.Schissel@apks.com

October 29, 2017

**VIA ECF**

The Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl St., Courtroom 15B
New York, NY 10007-1312

      Re:    *Sharkey v. J.P. Morgan Chase & Co., et al.*, No. 10 Civ. 3824 (DLC)

Dear Judge Cote:

      Today, we received a letter from Plaintiff's counsel (Ex. A) in which he informs us that Plaintiff intends to testify—*for the first time* in this seven-year-old case— that a basis for her belief that Client A was engaged in fraud concerned the Bernie Madoff Ponzi scheme. This testimony should be precluded for the following reasons.

      *First*, in seven (7) years of litigation, neither Plaintiff nor her counsel has ever asserted that the Madoff matter was one of the bases for Plaintiffs' alleged belief with regard to Client A. In this regard, Defendants note that Madoff is mentioned *nowhere* in the following:

- Plaintiff's 300-page deposition in which she was examined thoroughly about the basis for her alleged brief, including questioning on that topic by Plaintiff's own counsel, Mr. Wigdor.

- Plaintiff's Rule 56.1 counterstatements (Paragraph 11) where Plaintiff lists the bases for her alleged reasonable belief.

- The sworn declaration Plaintiff submitted in opposition to the summary judgment motions in which she adds further reasons for the basis for her belief.

- Plaintiff's briefing in response to the two summary judgment motions decided by Judge Sweet, which motions challenged, in part, whether Plaintiff reasonably believed Client A was engaged in fraud.

- Plaintiff's briefing to the Second Circuit Court of Appeals.

The first time Madoff was mentioned in this case was in connection with Plaintiff's efforts to introduce at trial a Deferred Prosecution Agreement ("DPA") related to Madoff -- not because it related to her state of mind relating to Client A, but because it discussed JPMorgan Chase & Co.'s KYC process. The Court excluded that DPA in January. After that occurred, the *first* time Plaintiff's counsel represented that Plaintiff had "Madoff was



The Honorable Denise L. Cote
October 29, 2017
Page 2

certainly on her mind" was before the Court in July 2017, but did not suggest that it provided any basis for her belief about Client A.  *See* Dkt. No. 264 at 27:24-28:7.  Nor did Plaintiff make that reference in any motion *in limine* briefing or argument associated with Defendants' application to preclude the DPA.  *See* Dkt. No. 182; Dkt. No. 204.  Plaintiff's counsel is now seeking improperly to insert the name "Madoff" and this topic into this case through his client.

*Second*, all that is relevant is what Plaintiff knew about Client A; not what she may have read about the Madoff matter.  In addition, it would be unduly prejudicial to allow Plaintiff to testify about Madoff, which is a highly inflammatory subject having nothing to do with this case.

Defendants will be prepared to address this further tomorrow.  We appreciate Your Honor's consideration of this matter.

Respectfully Submitted,

/s/ Michael D. Schissel

cc:    Douglas H. Wigdor, Esq.   (*via ECF*)
       Michael J. Willemin, Esq. (*via ECF)*

# EXHIBIT A

**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Douglas H. Wigdor**
dwigdor@wigdorlaw.com

October 29, 2017

<u>**VIA EMAIL**</u>

Michael D. Schissel, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022

      Re:    <u>Sharkey v. J.P. Morgan Chase & Co. et al.; No. 10 Civ. 3824 (DLC)</u>

Dear Michael

We write in response to your email from this morning regarding Ms. Sharkey's testimony and Bernie Madoff. Mr. Madoff's December 2008 arrest and March 2009 guilty plea, as well as what Ms. Sharkey was told by her colleagues regarding efforts to "get to know" Mr. Madoff, did play a role in the formation of her reasonable belief that Client A might also be engaged in fraud. Like Mr. Madoff (who used J.P. Morgan as his primary bank), Client A was a long-time customer of the bank and no Know Your Customer ("KYC") process had been completed with regard to Client A and his companies. Ms. Sharkey was aware that Mr. Madoff was able to perpetuate a tremendous fraud because J.P. Morgan never "got to know" Mr. Madoff. These issues were fresh in Ms. Sharkey's mind while she was attempting to complete the Client A KYC (as these events regarding Mr. Madoff were occurring in the weeks preceding Ms. Sharkey's involvement with Client A), and Ms. Sharkey's understanding as to the impact and consequences of a failure to produce KYC information (*e.g.*, one who refuses to produce KYC information may very well be engaged in fraud) were informed, in part, by the Madoff scandal.

Given that Defendants are contesting whether Ms. Sharkey had a reasonable belief that Client A was engaged in unlawful activity, I cannot think of any legitimate basis to preclude Ms. Sharkey from testifying before the fact finder about the basis for her belief. Preclusion of this testimony would deny Ms. Sharkey the ability to present all of the facts that supported her conclusion that Client A was engaged in unlawful activity. While you certainly can cross-examine Ms. Sharkey on this issue, there is no legitimate basis for preclusion.

Moreover, while she will not testify about this, her concerns were well founded. In connection with the $1.7 billion settlement that J.P. Morgan ultimately paid in 2014, J.P. Morgan admitted substantial failures relating to its efforts to "get to know" Mr. Madoff, and admitted that "efforts to electronically store KYC materials were behind schedule and, accordingly, as set forth herein, on

**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

Michael D. Schissel, Esq.
October 29, 2017
Page 2

some occasions AML investigations teams responding to alerts were unable to access the computerized KYC material on the client as part of their investigation."

In addition, given the many, many admissions contained in the deferred prosecution agreement relating to J.P. Morgan's customer identification process, we expect that you do not intend to elicit <u>any</u> testimony or make any statements that J.P. Morgan and its employees generally are good and honest and/or that they take their KYC obligations seriously.  Any such testimony will, of course, open the door to the admission of the deferred prosecution agreement.  Please confirm before 5:00 p.m. today whether you have an objection to Ms. Sharkey's contemplated testimony and please confirm that you do not intend on eliciting testimony or making any comments in your addresses to the jury as outlined in this paragraph.

Regards,

Douglas H. Wigdor

cc:    Kathleen A. Reilly, Esq. (*via* email)