**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
JENNIFER SHARKEY,                                          :
                                                          :
                            Plaintiff,                    :     Civil Action No.: 10-cv-3824 (DLC)
                                                          :
             v.                                           :
                                                          :
J.P. MORGAN CHASE & CO., JOE KENNEY,       :
ADAM GREEN, and LESLIE LASSITER, in        :
their official and individual capacities,               :
                                                          :
                            Defendants.                   :
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO
FILE AN INTERLOCUTORY APPEAL**

**WIGDOR LLP**

Douglas H. Wigdor, Esq.
Michael J. Willemin, Esq.

85 Fifth Avenue
New York, NY  10003
Tel:  (212) 257-6800
Fax: (212) 257-6845

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT.................................................................................................... 1

BACKGROUND ........................................................................................................................... 5

LEGAL ARGUMENT ................................................................................................................... 6

I.    LEGAL STANDARDS ........................................................................................................ 6

II.   THE COURT SHOULD PERMIT AN INTERLOCUTORY APPEAL OF ITS
      DECISION GRANTING DEFENDANTS' FRCP 59 MOTION ...................................... 6

      A.    The Court's Decision Granting Defendants' FRCP 59 Motion Involves A
            Controlling Question of Law .................................................................................. 6

      B.    Substantial Grounds for a Difference of Opinion Exist......................................... 8

            i.    Conflicting Authority Exists ....................................................................... 8

            ii.   The Issue Is One of First Impression ...................................................... 10

      C.    An Immediate Appeal From the Court's Order May Materially Advance the
            Ultimate Termination of the Litigation ................................................................ 10

III.  THE COURT SHOULD PERMIT AN INTERLOCUTORY APPEAL OF THE
      DECISIONS REGARDING RECOVERY AND DAMAGES......................................... 12

      A.    The Orders At Issue Involve Controlling Questions of Law ................................ 12

      B.    Substantial Grounds for a Difference of Opinion Exist....................................... 14

            i.    Conflicting Authority Exists ..................................................................... 14

            ii.   The Issue Is One of First Impression ...................................................... 16

      C.    An Immediate Appeal From the Orders At Issue May Materially Advance the
            Ultimate Termination of the Litigation ................................................................ 16

CONCLUSION........................................................................................................................... 17

<h1 style="text-align: center;"><u>TABLE OF AUTHORITIES</u></h1>

<u>**Cases**</u>

Binder v. Long Island Lighting Co.,
    847 F. Supp. 1007 (E.D.N.Y. 1994) ................................................................ 3, 8

Capitol Records, LLC v. Vimeo, LLC,
    972 F. Supp. 2d 537 (S.D.N.Y. 2013) ............................................................ 8, 14

Castle v. Sangamo Weston, Inc.,
    837 F.2d 1550 (11th Cir.1988) ............................................................................ 14

Dilley v. SuperValu, Inc.,
    296 F.3d 958 (10th Cir. 2002) ...................................................................... 14, 15

Ellis v. Ethicon, Inc.,
    No. 05 Civ. 726, 2009 WL 10641983 (D.N.J. Nov. 13, 2009) ............................. 15

Fed. Hous. Fin. Agency v. UBS Americas, Inc.,
    858 F. Supp. 2d 306 (S.D.N.Y. 2012) .................................................................. 7

Gotthardt v. Nat'l R.R. Passenger Corp.,
    191 F.3d 1148 (9th Cir.1999) ............................................................................. 14

Kim v. Dial Serv. Int'l, Inc.,
    No. 96 Civ. 3327 (DLC), 1997 WL 458783 (S.D.N.Y. Aug. 11, 1997) .................... 2, 3, 8, 10

Mendez v. Starwood Hotels & Resorts Worldwide, Inc.,
    746 F. Supp. 2d 575 (S.D.N.Y. 2010) ............................................................ 3, 8

Morales v. City of New York,
    No. 99 Civ. 10004 (DLC), 2001 WL 8594 (S.D.N.Y. Jan. 2, 2001) ............................. 2, 8, 10

S.E.C. v. Credit Bancorp, Ltd.,
    103 F. Supp. 2d 223 (S.D.N.Y. 2000) ........................................................ 6, 10, 12

Shea v. Icelandair,
    925 F. Supp. 1014 (S.D.N.Y. 1996) .................................................................... 16

Trivedi v. Cooper,
    No. 95 Civ. 2075 (DLC), 1996 WL 724743 (S.D.N.Y. Dec. 17, 1996) ..................... 2, 8, 10

Truskoski v. ESPN, Inc.,
    823 F. Supp. 1007 (D. Conn. 1993) .................................................................... 15

Yamaha Motor Corp., U.S.A. v. Calhoun,
   516 U.S. 199 (1996)................................................................................................ 6

**<u>Other Authorities</u>**

28 U.S.C. § 1292(b) ................................................................................................ 6, 8

Plaintiff respectfully submits this memorandum of law in support of her motion seeking certification of the following decisions for an interlocutory appeal: (i) the Court's March 5, 2018 decision granting Defendants' Fed. R. Civ. P. 59 motion; (ii) the Court's March 5, 2018 decision denying Plaintiff's motion for reinstatement; and (iii) the Honorable Robert W. Sweet's December 23, 2016 decision granting Defendants' motion for leave to amend their Answer.

## PRELIMINARY STATEMENT

On November 7, 2017, after more than eight years of litigation, two dismissals of this action on summary judgment and two successful appeals, a jury rendered an award in favor of Plaintiff Jennifer Sharkey and against Defendants J.P. Morgan Chase & Co. ("JPMC") and Leslie Lassiter (together, "Defendants"). Dkt. No. 312. Specifically, the jury found that Defendants terminated Plaintiff for engaging in protected activity in violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX"). Id. The jury awarded Plaintiff $563,000 in back pay damages and $563,000 in emotional distress damages. Id. Following the trial, Defendants moved for judgment notwithstanding the verdict ("JNOV") pursuant to Fed. R. Civ. P. ("FRCP") 50 and for a new trial (or, in the alternative, remittitur) under FRCP 59. Trial Transcript 1106-17; Dkt. No. 336. Plaintiff moved for an entry of judgment consistent with the jury's verdict, as well as an order of reinstatement. Dkt. No. 335. The Court decided the motions on March 5, 2018, and Plaintiff now seeks certification of the Court's decision for interlocutory appeal.

*First:* On March 5, 2018, this Court denied Defendants' FRCP 50 motion, but granted Defendants' FRCP 59 motion for a new trial on both liability and damages. Specifically, the Court held that:

> [T]he jury's verdict is vastly out of proportion to the maximum supportable damages award. The excessiveness of these awards reflects a jury motivated by passion or prejudice, or both. As a

1

> consequence, there can be no confidence in the integrity of the
> jury's verdict on liability.

Dkt. No. 340. In coming to this determination, the Court did not cite a single case decided in the Second Circuit in which a court – without offering remittitur – granted a new trial on liability on the basis that the jury's award was excessive. Likewise, in the extensive briefing and argument on this motion, Defendants did not cite a single case decided in the Second Circuit in which a court granted a new trial on liability, without an offer of remittitur, on the basis that the jury's award was excessive. Finally, Plaintiff's own research has not unearthed a single case decided in this Circuit in which a court granted a new trial on liability, without an offer of remittitur, on the basis that the jury's award was excessive.

Indeed, every single court in this Circuit that has ever faced a purported excessive verdict – ***including this Court*** – has offered a remittitur (or a retrial on damages alone) rather than forcing the plaintiff to retry the issues of both liability and damages, including:

- In <u>Morales v. City of New York</u>, No. 99 Civ. 10004 (DLC), 2001 WL 8594, at *8 (S.D.N.Y. Jan. 2, 2001), the jury rendered a $2,750,000 compensatory damages verdict. Your Honor held that the award was "completely unsupported" by the evidence presented at trial, and remitted it to $50,000. <u>Id.</u> Thus, Your Honor determined that the jury's award was ***53 times*** the allowable award; yet, Your Honor gave the plaintiff in <u>Morales</u> the option of remittitur. <u>Id.</u>

- In <u>Trivedi v. Cooper</u>, No. 95 Civ. 2075 (DLC), 1996 WL 724743, at *1 (S.D.N.Y. Dec. 17, 1996), the jury awarded $750,000 in compensatory damages. Your Honor remitted the award to $50,000 (***15 times less than*** the initial award). <u>Id.</u>

- In <u>Kim v. Dial Serv. Int'l, Inc.</u>, No. 96 Civ. 3327 (DLC), 1997 WL 458783 (S.D.N.Y. Aug. 11, 1997), <u>aff'd,</u> 159 F.3d 1347 (2d Cir. 1998), the jury awarded $300,000 in compensatory damages. Your Honor determined that this figure was "clearly excessive" and more than 10 times an appropriate amount. <u>Id.</u> Your Honor remitted the award to $25,000 (12 times less than the jury's award). <u>Id.</u> In the same case, Your Honor determined that the

jury's punitive damages award of $750,000 was ***30 times*** the appropriate award. <u>Id.</u> Again, though Your Honor held that the award was "grossly excessive," Your Honor simply remitted the award. <u>Id.</u>

- In <u>Binder v. Long Island Lighting Co.</u>, 847 F. Supp. 1007, 1028 (E.D.N.Y. 1994), <u>aff'd in relevant part,</u> 57 F.3d 193 (2d Cir. 1995), the jury awarded $497,738 in compensatory damages. The court held that the award was "grossly excessive." <u>Id.</u> Rather than forcing the plaintiff to endure a second trial on the issue of liability, the court remitted the award to $5,000 (*i.e.*, the jury awarded nearly ***100 times*** the appropriate award). <u>Id.</u>

- In <u>Mendez v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 746 F. Supp. 2d 575, 602 (S.D.N.Y. 2010), the jury awarded $1,000,000 in compensatory damages to the plaintiff. In describing the award, the court stated that the award was "entirely out of proportion to any injury that was or could have been attributed to the" retaliatory conduct. <u>Id.</u> The court was "convinced" that the jury simply "felt sorry for the plaintiff." <u>Id.</u> Nevertheless, the court did not require the plaintiff to retry his case on the issue of liability, but instead remitted the award to $10,000 (*i.e.*, the jury awarded nearly ***100 times*** the appropriate award). <u>Id.</u>

These, of course, are mere examples of myriad cases in which, like this one, a court determined that: (i) the evidence was sufficient to support a finding of liability; and (ii) the damages award was excessive. Again, in every single case in this Circuit, the court offered a remittitur or trial on damages alone. This Court's decision on Defendants' FRCP 59 motion appears to be literally the first time a court in the Second Circuit has ever required a plaintiff to retry issues of liability, without an offer of remittitur, because an award of damages was purportedly excessive.

***Second:*** In addition to granting Defendants' FRCP 59 motion, the Court denied Plaintiff's motion for an award of reinstatement, holding that

> Jennifer Sharkey stopped making reasonable efforts to secure employment in early 2010, and removed herself from the workforce altogether in 2012. That decision on her part ended the defendants' obligation to reinstate her. For, even if she is entitled to reinstatement at the same seniority and benefit status she would have had but for the discrimination, when she left the workforce she abandoned her claim for reinstatement.

Dkt. No 340 at p. 34.

The Court cited no authority suggesting that a party's right to reinstatement is contingent on or affected by mitigation efforts, or lack thereof. Defendants also did not cite to any case holding that mitigation is relevant to reinstatement under SOX. In fact, all of the relevant case law (which was cited in Plaintiff's motion papers) holds the exact opposite. See Dkt. No. 335 at pp. 22-25. Alternatively, the Court held that reinstatement was not appropriate because Ms. Sharkey struggled at her job and lied to her supervisor. Dkt. No. 340 at p. 35. However, these conclusions were obviously rejected by the jury. Finally, the Court held that reinstatement was inappropriate because of the adversarial nature of this litigation. Id. However, litigations are always adversarial and that is insufficient as a matter of law to refuse a plaintiff reinstatement, particularly given that Defendant Lassiter has moved to a different area and geographical region within JPMC.

***Third:*** Defendants should never have been able to even argue the issue of mitigation to the jury. Defendants were only permitted to plead and argue the affirmative defense because a December 23, 2016 opinion of the Honorable Robert W. Sweet allowed Defendants to amend their answer at the 11th hour – more than three years after the deadline to do so. Dkt. No. 138. The December 23, 2016 opinion was decided incorrectly for reasons explained in Plaintiff's opposition to the motion, as well as in a prior request for certification of the December 23, 2016 opinion for an interlocutory appeal. Dkt. Nos. 128, 140. In short, Judge Sweet permitted Defendants to amend their Answer without any showing of cause, let alone of "good cause," which was required pursuant to FRCP 16 and Judge Sweet's own scheduling orders. Id. Judge Sweet denied Plaintiff's initial request for certification of that decision for an interlocutory appeal (and Plaintiff intended at the time to withdraw the request because trial was about to

begin).  However, now that the jury has rendered a verdict in this matter, an interlocutory appeal on issues relating to damages is appropriate for the reasons explained herein.

## **BACKGROUND**

Plaintiff Jennifer Sharkey was fired by JPMC in August 2009.  Dkt. No. 20 at ¶ 1.  On May 10, 2010, she filed this action alleging that her termination was carried out in violation of SOX.  Dkt. No. 1.  On January 14, 2011, Plaintiff's initial Complaint was dismissed without prejudice.  Dkt. No. 16.  On February 14, 2011, Plaintiff filed an Amended Complaint.  Dkt. No. 20.  Defendants filed a motion to dismiss the Amended Complaint, which was denied on August 19, 2011.  Dkt. No. 32.  Following discovery, on August 12, 2013, Defendants filed a motion for summary judgment.  Dkt. No. 61.  On December 12, 2013, Defendants' motion was granted by the Honorable Robert W. Sweet.  Dkt. No. 81.  Plaintiff appealed, and Judge Sweet's decision was vacated by the Second Circuit on October 30, 2014.  Dkt. No. 88.  Defendants filed a second motion for summary judgment on December 22, 2014, which Judge Sweet granted on October 9, 2015.  Dkt. No. 108.  Plaintiff appealed, and Judge Sweet's second grant of summary judgment also was vacated on October 12, 2016.  Dkt. No. 116.

This action was assigned to this Court on April 20, 2017.  See April 20, 2017 Dkt. Text. On December 23, 2016, prior to the transfer of this case, Judge Sweet permitted Defendants to amend their Answer to add the affirmative defense that Ms. Sharkey failed to mitigate her damages.  Dtk. No. 138.  Trial was held from October 30, 2017 through November 7, 2017.  Dkt. Nos. 320-331.  On November 7, 2017, the jury rendered a verdict in Plaintiff's favor and awarded her $563,000 in back pay and $563,000 in emotional distress damages.  Dkt. No. 312. Following trial, Defendants made motions pursuant to FRCP 50 and FRCP 59.  Dkt. No. 330. The parties both submitted briefing on the motions.  Dkt Nos. 314, 335-336, 338.  On March 6,

2018, the Court denied Defendants' FRCP 50 motion, but granted Defendants' FRCP 59 motion.

Dkt. No. 340.

## LEGAL ARGUMENT

## I.     LEGAL STANDARDS

A district court may certify an order for interlocutory appeal if the order at issue:  "[(1)]

involves a controlling question of law; (2) as to which there is a substantial ground for difference

of opinion; and (3) [ ] an immediate appeal from [that] order may materially advance the ultimate

termination of the litigation."  28 U.S.C. § 1292(b).  In order to certify an order for interlocutory

appeal, a district court need only identify a single issue within the relevant order that satisfies

this test.  See, e.g., Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 204-05 (1996).

## II.    THE COURT SHOULD PERMIT AN INTERLOCUTORY APPEAL OF ITS
##        DECISION GRANTING DEFENDANTS' FRCP 59 MOTION

### A.     The Court's Decision Granting Defendants' FRCP 59 Motion Involves A
###        Controlling Question of Law

In determining whether a district court's decision implicates a controlling question of law,

courts consider whether reversal of the district court's opinion could result in:  (i) dismissal of

the action; (ii) a significant effect to the conduct of the action; or (iii) a decision that "has

precedential value for a large number of cases."  S.E.C. v. Credit Bancorp, Ltd., 103 F. Supp. 2d

223, 227 (S.D.N.Y. 2000).  Here, all three considerations favor certification of the issue of

whether the jury's verdict was sufficiently excessive to warrant a new trial.

*First*, if the Court's decision on the FRCP 59 motion is reversed, the issue of Defendants'

liability in this action will be resolved.  While that might not result in the immediate entry of a

final judgment, it will substantially narrow the issues remaining to be decided in this matter and

expedite the ultimate resolution of this action.

**Second**, regardless of whether the Court's decision is reversed, a decision from the Second Circuit on this issue would significantly affect the conduct of the litigation and trial in myriad ways. If the Court's decision is reversed, liability will be decided in Plaintiff's favor. The parties will not need to prepare for and conduct a second trial on liability, an extremely burdensome task that will consume weeks of time for counsel for both parties and result in substantial expense to the parties. If the Court's decision is not reversed, Plaintiff will know that there is no hope that the initial jury's verdict will ever be restored. Plainly, regardless of the outcome of the appeal, "[a]n appellate ruling [on the FRCP 59 motion] is likely to significantly affect the parties' bargaining positions and may hasten the termination of this litigation through settlement." <u>Fed. Hous. Fin. Agency v. UBS Americas, Inc.</u>, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012), <u>aff'd</u>, 712 F.3d 136 (2d Cir. 2013). Accordingly, "[w]hether or not . . . an interlocutory ruling on the issues raised . . . could not terminate the litigation, there can be no question that such a ruling would importantly affect the conduct of [the] action." <u>Id.</u> (quotation and citation omitted).

**Third**, review of the Court's decision also will have important precedential value for a large number of cases, which is a third independent reason for interlocutory review. As noted above, this Court did not cite, nor has research unearthed, a single opinion in the Second Circuit in which a court has granted a new trial on the issue of liability because it believed that the damages award was excessive. Defendants also did not cite a single case in their substantial briefing in which a court in this circuit granted a new trial on the issue of liability because it believed that the damages award was excessive. The Court's decision on Defendants' FRCP 59 motion is the first of its kind in the Second Circuit and, therefore, the Second Circuit's decision on this issue will inherently have precedential value for any case that is tried. It also will provide

important information to litigants who are evaluating the possible outcomes of an action and the value of their claims for purposes of settlement.

**B.**     **Substantial Grounds for a Difference of Opinion Exist**

In order to demonstrate that the issues implicated by a proposed interlocutory appeal create a "substantial ground for difference of opinion" pursuant to 28 U.S.C. § 1292(b), a party must demonstrate that "(1) there is conflicting authority on the issue, **_or_** (2) the issue is particularly difficult and of first impression for the Second Circuit." Capitol Records, LLC v. Vimeo, LLC, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (emphasis added). Notably, this standard does not require that the Court erred in making its original decision, merely that legitimate grounds exist for a difference of opinion on the issue such that the general body of jurisprudence would benefit from further guidance by the Second Circuit.

i.     Conflicting Authority Exists

As noted herein, the Court's decision granting a new trial on liability due to its belief that the damages award was excessive is the first of its kind in the Second Circuit. As such, apparently, literally every court in this Circuit, including this Court itself, that has ever been faced with a purportedly excessive award of damages has simply remitted the award or awarded a new trial on damages alone. Many of these cases involve far more excessive awards than that at issue in this case, as well as many cases decided by Your Honor. See, e.g., Morales, 2001 WL 8594; Trivedi, 1996 WL 724743; Kim, 1997 WL 458783; Binder, 847 F. Supp. 1007; Mendez, 746 F. Supp. 2d 575.

Moreover, as explained in Plaintiff's opposition to Defendants' FRCP 59 motion (Dkt. No. 335), the jury's verdict was not even excessive, and certainly was not excessive to the point of suggesting bias. The jury awarded less than what Plaintiff requested in summation, and it is simply not the case that a $563,000 emotional distress award demonstrates bias towards a bank

with assets worth approximately $2.5 ***trillion***.  See https://www.cnbc.com/2018/01/12/jp-morgan-chase-q4-2017.html.

The Court's opinion states that Ms. Sharkey failed to mitigate her damages after March 31, 2010.  Dtk. No. 340 at p. 31.  Accordingly, Ms. Sharkey could have been awarded back pay for the period from August through March 2010, which is approximately eight months of pay.  Ms. Sharkey was earning approximately $135,000 per year in base compensation.  Trial Transcript at 285-86.  Eight months of pay is equal to $90,000.  Additionally, Ms. Lassiter testified that Ms. Sharkey would have been entitled to a bonus for 2009 had she not been fired.  Id. at 569.  In 2008, Ms. Sharkey earned a bonus of approximately $91,000.  Id. at 592.  Thus, it is a reasonable conclusion that Ms. Sharkey would have earned a total of $181,000 between August 2009 and March 2010.  In addition, the Court held that the evidence was sufficient to sustain a $50,000 award for emotional distress.  Dkt. No. 340 at p. 32.  Thus, even pursuant to the Court's holdings, a total award of $231,000 is supported by the evidence.  The jury's award in this case was less than five times this figure, as opposed to the many cases in which remittiturs were offered where the jury awarded 30, 50 or even 100 times more than what was determined by the court to be reasonable.

Finally, there are also substantial grounds to disagree with the Court's finding that there cannot be a new trial in this matter on damages without having a new trial on liability.  First, as a practical matter, the issues of liability and damages in this case are not inexplicably intertwined.  There is nothing a jury would need to know about liability to determine what the damages would be to a plaintiff who loses her job.  The back pay damages are totally unaffected by the underlying evidence relating to liability.  To determine back pay, all the jury would need to know is what Ms. Sharkey was earning at JPMC and any relevant information (if any, see infra at p.

15) related to mitigation.  Similarly, Ms. Sharkey seeks an award of emotional distress resulting from the loss of her job, which can easily be described without advancing the underlying proof that resulted in the finding of liability.  All the jury needs to know is that she was unlawfully terminated, and she can describe the emotional distress she endured as a result.  This is not a hostile work environment or excessive force case where determinations would need to be made as to the extent of hostility or force that the plaintiff endured in order to determine damages.

Finally, as noted, in every instance where this Court has granted a new trial on the basis of an excessive verdict, and has determined that damages and liability are intertwined to the point that the new trial would have to be on both issues, this Court has still always offered a remittitur.  See, e.g., Morales, 2001 WL 8594; Trivedi, 1996 WL 724743; Kim, 1997 WL 458783.  This also supported a determination that substantial grounds for a difference of opinion exist.

ii.    The Issue Is One of First Impression

Again, the Court's decision is the first of its kind, and research has uncovered no case in which the Second Circuit has ever heard an appeal from a decision granting a new trial on liability on the basis that a jury's award of damages was excessive.  Accordingly, this case presents an issue of first impression for the Second Circuit, which is an independent basis for finding that substantial grounds for a difference of opinion exist.

**C.    An Immediate Appeal From the Court's Order May Materially Advance the Ultimate Termination of the Litigation**

"Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected."  Credit Bancorp, 103 F. Supp. 2d at 227.  Here, as noted above, a final resolution of Defendants' FRCP

59 motion is likely to advance the termination of this litigation either by bringing the parties to settlement or dramatically narrowing the issues left to be resolved.

Moreover, it is unclear how this litigation will otherwise terminate until Plaintiff loses a trial on liability and an appeal on Defendants' FRCP 59 motion is actually heard. The Court has already held that "there was absolutely no evidence that Client A was engaged in any illegal activity ___and insufficient evidence to permit anyone to form a reasonable belief that he was___." Dkt. No. 340 at p. 8 (emphasis added). In addition, the Court held that "not one document and ___no credible evidence linked Sharkey's firing to any report she voiced about Client A___." Dkt. No. 340 at p. 12. Given these determinations, it is clear that Ms. Sharkey could never obtain a verdict upon which this Court would enter judgment in her favor. Indeed, in order to succeed, Ms. Sharkey must prove that she held a subjectively and objectively reasonable belief that Client A was engaged in relevant unlawful activity and that her reports regarding Client A were a contributing factor in her termination. If this Court has already determined that Plaintiff cannot adduce evidence sufficient to establish these elements, then this Court cannot possibly enter a judgment in her favor. Plaintiff should not have to continue to retry this case until she loses.[1]

---

[1]     Indeed, the Court's denial of Defendants' FRCP 50 motion is inconsistent with its determinations that there is: (i) insufficient evidence to permit anyone to form a reasonable belief that Client A was engaged in unlawful conduct; and (ii) no credible evidence linking Ms. Sharkey's termination to her complaints. To prevail, Ms. Sharkey was required to prove that she held a reasonable belief of unlawful conduct and that her reports of such conduct contributed to her termination. If, as the Court determined, there was insufficient evidence presented to establish these elements of Plaintiff's claims (a proposition with which Plaintiff disagrees), the Court was required to grant Defendants' FRCP 50 motion. The fact that the Court did not grant Defendants' FRCP 50 motion confirms Plaintiff's concern that, even if she obtains another verdict in her favor, the Court will simply order a new trial on liability (rather than enter judgment on the verdict or grant a potential FRCP 50 motion), and Ms. Sharkey will be further delayed in the resolution of these claims.

## III.   THE COURT SHOULD PERMIT AN INTERLOCUTORY APPEAL OF THE DECISIONS REGARDING RECOVERY AND DAMAGES

### A.   The Orders At Issue Involve Controlling Questions of Law

As noted above, a district court's decision implicates a controlling question of law where reversal of the district court's opinion could result in:  (i) dismissal of the action; (ii) a significant effect to the conduct of the action; or (iii) a decision that "has precedential value for a large number of cases."  Credit Bancorp, 103 F. Supp. 2d at 227.  Here, the latter two considerations favor certification of:  (i) this Court's decision denying Plaintiff's motion for reinstatement; and (ii) Judge Sweet's December 23, 2016 decision granting Defendants' motion to amend their Answer.

A decision from the Second Circuit on these two opinions would significantly affect the conduct of the litigation.  To begin, if an interlocutory appeal is not permitted, both issues likely will not be finally decided until after a second trial.  Even if the Court's decision on Defendants' FRCP 59 motion is reversed, and a remittitur is offered, Plaintiff may not be able to accept the remittitur without waiving her right to appeal the failure to mitigate and reinstatement decisions. In that circumstance, if the Court does not certify those decisions for an interlocutory appeal, Plaintiff might be forced to reject a remittitur and endure a second trial to preserve her right to appeal.  If all three decisions are heard by the Second Circuit together, that would greatly increase the chances of avoiding a second trial and the attendant time and expense.  Moreover, if the appeal on these issues is heard only after the second trial, the parties may very well be forced to conduct a third trial on the issue of damages following the decision on the appeal.

Appellate review of these decisions also will have a significant impact on the recovery to which Ms. Sharkey will ultimately be entitled.  If Defendants are not permitted to rely on the failure to mitigate defense, Ms. Sharkey will be entitled to back pay through the date of

judgment, which will be a period of approximately nine or ten years, rather than a period of only seven months. If Ms. Sharkey is unsuccessful in her appeal on the failure to mitigate issue, the outer bounds of her potential recovery will be known. Both results will put the parties in a much better position to evaluate the value of Plaintiff's claims for the purposes of potential settlement negotiations before a second trial. Thus, a determination on this issue from the Second Circuit could lead to the resolution of this case without the need for the parties, or the Court, to expend time and resources on a second trial.

Finally, appellate review of these two decisions also will have important precedential value. As explained more fully in Plaintiff's first request for certification of the December 23, 2016 decision for an interlocutory appeal (Dkt. No. 140), deadlines are set in virtually every case litigated in the Second Circuit. If an interlocutory appeal is permitted, and the December 23, 2016 decision is reversed, this will have several precedential effects, including: (i) FRCP 16(b)(4) will apply when a party seeks to amend after a set deadline to file "all motions;" (ii) a "good cause" standard will be applied when a court's order expressly requires "good cause;" and/or (iii) a demonstration of prejudice, including delay and the need to expend additional resources to prepare for trial, will be sufficient to defeat a motion under FRCP 15(a)(2). Clarity as to these points will greatly increase the predictability and efficiency of every litigation.

As for the decision denying Plaintiff's motion for reinstatement, research has uncovered no case in which the Second Circuit has addressed the issue of whether a plaintiff is still entitled to reinstatement if she fails to mitigate her damages. None were cited by the Court or Defendants in connection with Plaintiff's motion for reinstatement. Accordingly, a decision on this issue will also have significant precedential value for all cases in which a plaintiff seeks reinstatement and mitigation is an issue. Moreover, such a decision is necessary because the

opinion of this Court is at odds with all other relevant authority.  See Dkt. No. 335 at pp. 22-25; infra at pp. 13-15.  Thus, a split in authority exists and a decision from the Second Circuit on this issue would constitute the leading precedent for courts on this issue going forward.

In sum, a decision on these issues from the Second Circuit would have a significant effect on the conduct of the action and precedential value for a large number of cases.  Thus, Plaintiff satisfies the "controlling legal precedent" element of her request.

> **B.**     **Substantial Grounds for a Difference of Opinion Exist**

Issues implicated by a proposed interlocutory appeal create a "substantial ground for difference of opinion" where: "(1) there is conflicting authority on the issue, *__or__* (2) the issue is particularly difficult and of first impression for the Second Circuit."  Capitol Records, 972 F. Supp. 2d at 551 (emphasis added).

> **i.**     Conflicting Authority Exists

As explained in Plaintiff's motion for reinstatement, all of the relevant authority (other than this Court's March 5, 2018 opinion) holds that a plaintiff's failure to mitigate her damages does not affect her right to reinstatement.  Indeed, as explained in Dilley v. SuperValu, Inc.,

> The failure to mitigate relied on by the district court was Dilley's failure to pursue available truck driving jobs with other employers. ***Such failure does not bear on Dilley's entitlement to reinstatement.***  Mitigation is relevant to determining a plaintiff's entitlement to back pay, *see supra* part V, and front pay, *see, e.g., Gotthardt v. Nat'l R.R. Passenger Corp.,* 191 F.3d 1148, 1157 (9th Cir.1999); *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1562 (11th Cir.1988), ***but there is no logical link between a plaintiff's pursuit of alternative employment and whether he should be reinstated to the position from which he was wrongfully discharged.***[1] ***A plaintiff's ability to replace some of the income lost by virtue of the wrongful discharge certainly affects how much lost income he is due, but it does not bear on whether the plaintiff is entitled to the job itself. This is reflected in the reality that courts routinely find that a plaintiff's failure to mitigate negates or reduces his claim for back pay or front pay, but***

> *nevertheless analyze his claim for reinstatement without even referencing the mitigation finding.*
>> . . .
>
> *The district court's reasoning also runs counter to those cases where courts have reduced damages based on a failure to mitigate even where reinstatement has been ordered.*

296 F.3d 958, 967–68 (10th Cir. 2002) (emphasis added) (internal citations omitted); see also Ellis v. Ethicon, Inc., No. 05 Civ. 726, 2009 WL 10641983, at *21 (D.N.J. Nov. 13, 2009) ("As a preliminary matter, Defendant suggests that if the Court were to find that Plaintiff failed to mitigate her damages, which the Court has found, reinstatement should be foreclosed. The Court disagrees. While an award of front pay may be foreclosed or reduced by a plaintiff's failure to mitigate, *reinstatement is not.*") (emphasis added).

By way of an example within the Second Circuit, in Truskoski v. ESPN, Inc., 823 F. Supp. 1007 (D. Conn. 1993), following a bench trial, the court determined that the plaintiff was terminated in 1987 in retaliation for engaging in protected activity. Id. at 1011, 1013-14. The plaintiff sought damages in the form of back pay and reinstatement. Id. at 1014-15. The plaintiff *conceded* that she stopped looking for work in 1989, two years after her termination and four years before the trial. Id. at 1015. In addition, the court found that the plaintiff did not make reasonable attempts to mitigate her damages in 1987 and 1988, and determined that the plaintiff was not entitled to back pay because she failed to mitigate her damages. Id. Nevertheless – despite finding that the plaintiff had failed to mitigate her damages during the four years preceding the trial – the court awarded reinstatement. Id. at 1016.

There are also substantial grounds for disagreement with regard to the Court's alternative grounds for denying Plaintiff's motion for reinstatement. First, the Court held that reinstatement was not appropriate because Ms. Sharkey struggled at her job and lied to her supervisor. Dkt. No. 340 at p. 35. However, these conclusions were obviously rejected by the jury. Second, the

Court held that reinstatement was inappropriate because of the adversarial nature of this litigation. Id. However, litigations are always adversarial and that is insufficient as a matter of law to refuse a plaintiff reinstatement, particularly given that Defendant Lassiter has moved to a different area and geographical region within JPMC. See Shea v. Icelandair, 925 F. Supp. 1014, 1030 (S.D.N.Y. 1996).

Similarly, in opposition to Defendants' motion to amend the Answer, Plaintiff provided ample case law and authority to support her position that Judge Sweet should have analyzed Defendants' motion under FRCP 16 (as opposed to FRCP 15), in which case Judge Sweet would have had no choice but to deny the motion. See Dkt. No. 128.

  ii.  The Issue Is One of First Impression

As noted, research has uncovered no case in which the Second Circuit has addressed the issue of whether a plaintiff who fails to mitigate is, as a result, barred from seeking reinstatement. Thus an interlocutory appeal of the Court's March 5, 2018 decision denying Plaintiff's motion for reinstatement would present an issue of first impression, which is an independent basis for finding that there are substantial grounds for difference of opinion as to the decision on that issue.

**C.  An Immediate Appeal From the Orders At Issue May Materially Advance the Ultimate Termination of the Litigation**

Naturally, a final resolution of the failure to mitigate and reinstatement issues is likely to advance the termination of this litigation either by bringing the parties to settlement or dramatically narrowing the issues left to be resolved. Moreover, if these issues are not resolved at this time, they will have to be resolved on a subsequent appeal after a second trial, and a third trial may even be necessary. Thus, to the extent an interlocutory appeal of the FRCP 59 decision

is permitted, it would be extremely inefficient not to have the two issues relating to recovery also reviewed by the Second Circuit at this time.

## CONCLUSION

Ms. Sharkey was fired more than eight and a half years ago. This case has been pending since 2010. It has been dismissed twice on summary judgment, and both times Ms. Sharkey was forced to appeal to the Second Circuit. She was successful in both appeals, but, as a result, Ms. Sharkey did not get her day in court until more than eight years after she was fired. If Ms. Sharkey is again successful on appeal, the parties – and the Court – can finally move on from this dispute. If she is unsuccessful, it is still likely that the case will soon thereafter terminate, as the value of the claims for settlement purposes will become far clearer.

What the Court did in this case is not only unique, but indicates that parties will be forced to retry this case over and over until Ms. Sharkey loses (if she ever does). That is not fair or equitable to the parties, nor is it a good or efficient use of the time and resources of the parties or the Court. Certifying these matters for an interlocutory appeal is not only appropriate under the law, but is also the correct course as a matter of equity. Accordingly, Plaintiff respectfully requests that this Court enter an order certifying the following decisions for an interlocutory appeal: (i) the Court's March 5, 2018 decision granting Defendants' FRCP 59 motion; (ii) the Court's March 5, 2018 decision denying Plaintiff's motion for reinstatement; and (iii) Judge Sweet's December 23, 2016 decision granting Defendants' motion to amend their Answer.

Dated: March 29, 2018
       New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
     Douglas H. Wigdor
     Michael J. Willemin

85 Fifth Avenue
New York, New York 10003
Tel: (212) 257-6800
Fax: (212) 257-6845
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com

*Counsel for Plaintiff*