UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JENNIFER SHARKEY,

               Plaintiff,

           v.

J.P. MORGAN CHASE & CO. and LESLIE
LASSITER, in her official and individual
capacities,

              Defendants.

Civil Action No. 10-cv-3824 (DLC)

---

**MEMORANDUM OF LAW NOS. 1-15 IN SUPPORT OF
DEFENDANTS' MOTIONS IN LIMINE SEEKING
TO PRECLUDE CERTAIN EVIDENCE AND ARGUMENTS**

**ARNOLD & PORTER
KAYE SCHOLER LLP**

Michael D. Schissel
Kathleen A. Reilly

250 West 55th Street
New York, NY 10019-9710
Telephone: +1 212 836 8000
Fax: +1 212 836 8689

*Attorneys for Defendants*

## Table of Contents

Page

ARGUMENT ........................................................................................................... 1

I.   LEGAL STANDARDS ...................................................................................... 1

II.  MOTION *IN LIMINE* NO. 1 TO PRECLUDE REFERENCE TO JOE KENNEY AND
     ADAM GREEN AS PRIOR DEFENDANTS ....................................................... 3

III. MOTIONS *IN LIMINE* NOS. 2-6 TO PRECLUDE CERTAIN DOCUMENTS ................. 3

     A.  Motion *In Limine* No. 2 to Preclude Emails Regarding Client A Preceding
         Plaintiff's Assignment to Client A (Including P-75, P-255, and P-266) ...................... 3

     B.  Motion *In Limine* No. 3 to Preclude P-8 ........................................................ 4

     C.  Motion *In Limine* No. 4 to Preclude P-22 ...................................................... 4

     D.  Motion *In Limine* No. 5 to Preclude P-245, P-246, and P-247 ............................ 5

     E.  Motion *In Limine* No. 6 to Preclude P-271 .................................................... 8

IV.  MOTIONS *IN LIMINE* NOS. 7-11 TO PRECLUDE CERTAIN TESTIMONIAL
     EVIDENCE ....................................................................................................... 8

     A.  Motion *In Limine* No. 7 to Preclude Discussions About Plaintiff's U5 and the
         Unsigned Release During Plaintiff's Termination .............................................. 8

     B.  Motion *In Limine* No. 8 to Preclude Testimony That Plaintiff Left Her Prior Jobs
         Voluntarily ................................................................................................. 9

     C.  Motion *In Limine* No. 9 to Preclude Testimony Regarding a Prior KYC JPMC
         Performed for Client A ................................................................................ 10

     D.  Motion *In Limine* No. 10 to Preclude Testimony Regarding Any Audit by the
         Office of the Comptroller of the Currency ("OCC") ........................................ 10

     E.  Motion *In Limine* No. 11 to Preclude Testimony As to the Reasons Other
         Employers Did Not Hire Plaintiff After JPMC Terminated Her .......................... 11

V.   MOTION *IN LIMINE* NOS. 12-14 TO PRECLUDE CERTAIN ARGUMENTS BY
     PLAINTIFF'S COUNSEL .................................................................................. 12

     A.  Motion *In Limine* No. 12 to Preclude Suggestion that JPMC Documents Were
         Fabricated or Not Genuine .......................................................................... 12

US:162676866v1 0014246/00025

B.    Motion *In Limine* No. 13 to Preclude Suggestion That the Manager T Incident Never Occurred .............................................................................................. 13

C.    Motion *In Limine* No. 14 to Preclude Argument About Which Client A Account Was Opened in December 2008 ........................................................................... 14

VI.   MOTION *IN LIMINE* NO. 15 TO PRECLUDE ARGUMENT AND JURY CHARGE THAT PLAINTIFF REASONABLY BELIEVED CLIENT A WAS ENGAGED IN MONEY LAUNDERING ........................................................................................ 15

CONCLUSION ........................................................................................................................ 19

US:162676866v1 0014246/00025

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arlio v. Lively*,
    474 F.3d 46 (2d Cir. 2007)......................................................................................2

*Bechtel v. Admin. Review Bd.*,
    710 F.3d 443 (2d Cir. 2013)...................................................................................2

*Contreras v. Artus*,
    778 F.3d 97 (2d Cir. 2015)..................................................................................1, 2

*In re General Motors LLC Ignition Switch Litigation*,
    14-MD-2543 (JMF), 2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015) .......................13

*Harp v. Charter Commc'ns, Inc.*,
    558 F.3d 722 (7th Cir. 2009) ................................................................................16

*Leshinsky v. Telvent GIT, S.A.*,
    942 F. Supp. 2d 432 (S.D.N.Y. 2013)...................................................................16

*Nielsen v. AECOM Tech. Corp.*,
    762 F.3d 214 (2d Cir. 2014).................................................................2, 16, 17, 18

*Park West Radiology v. CareCore Nat. LLC*,
    675 F. Supp. 2d 314 (S.D.N.Y. 2014)....................................................................1

*Sharkey v. J.P. Morgan Chase & Co.*,
    805 F. Supp. 2d 45 (S.D.N.Y. 2011).....................................................................17

*Sharkey v. J.P. Morgan Chase & Co.*,
    No. 10 Civ. 3824, 2013 WL 10796833 (S.D.N.Y. Dec. 12, 2013),
    *vacated and remanded*, 580 Fed. App'x 28 (2d Cir. 2014) ..................................17

*Sharkey v. J.P. Morgan Chase & Co.*,
    No. 10 Civ. 3824, 2015 WL 5920019 (S.D.N.Y. Oct. 9, 2015),
    *vacated and remanded,* 660 Fed. App'x 65 (2d Cir. 2016) ............................16, 17

*Sylvester v. Paraxel Int'l LLC*, 32 IER Cases 497, 2011 WL 2517148
    (U.S. Dep't of Labor May 25, 2011) .....................................................................16

*United States v. Edwards*,
    631 F.2d 1049 (2d Cir. 1980)..................................................................................1

*United States v. Valencia*,
    826 F.2d 169 (2d Cir. 1987)....................................................................................1

US:162676866v1 0014246/00025

**Statutes**

18 U.S.C. § 1514A .................................................................................................2, 8, 15, 16

**Other Authorities**

Fed. R. Evid. 401 ...................................................................................................................1

Fed. R. Evid. 402 ...................................................................................................................1

Fed. R. Evid. 403 ...................................................................................................................1

Fed. R. Evid. 801 ...................................................................................................................2

Fed. R. Evid. 802 ...................................................................................................................1

US:162676866v1 0014246/00025

Defendants J.P. Morgan Chase & Co. ("JPMC") and Leslie Lassiter (together, "Defendants") respectfully submit this memorandum in support of their motions *in limine* with regard to re-trial of this case scheduled to begin on June 18, 2018.

## ARGUMENT

### I.   LEGAL STANDARDS

The district judge "ha[s] discretion in deciding whether a pretrial ruling on evidence may be made in advance of trial." *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987); *see also Contreras v. Artus*, 778 F.3d 97, 108 (2d Cir. 2015) ("The assessment of the relevance of evidence for the purpose of its admission or exclusion is committed to the sound discretion of the district court." (internal quotation marks and citation omitted)).  This includes prohibiting irrelevant and prejudicial arguments or references at trial.  *See, e.g.*, *United States v. Edwards*, 631 F.2d 1049, 1051 (2d Cir. 1980) (finding that judge had discretion to exclude witnesses that were offered by defendant as irrelevant and collateral).  It also permits the district judge to exclude evidence deemed to be hearsay.  *See, e.g.*, *Park West Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 329-30 (S.D.N.Y. 2014).

Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible." Evidence is relevant only if it has a "tendency to make a fact more or less probable than it would be without evidence" where "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  But even relevant evidence should be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Federal Rule of Evidence 802 provides that "[h]earsay is not admissible."  Fed. R. Evid. 802.  Hearsay is "a statement that:  (1) the declarant does not make while testifying at the current

trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).

Precluding evidence is appropriate where, as here, such evidence is immaterial to the single issue to be tried:   whether Defendants violated the whistleblowing provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX").  *See Contreras*, 778 F.3d at 108-09 (finding that note victim wrote, which she said was not about defendant or incident at issue, should be excluded as irrelevant); *Arlio v. Lively*, 474 F.3d 46, 52-53 (2d Cir. 2007) (noting that evidence regarding prior arbitration was irrelevant and should have been excluded).

To prevail on her SOX claim, Plaintiff must prove by a preponderance of the evidence that (i) she engaged in a protected activity; (ii) Defendants knew that she engaged in the protected activity; (iii) she suffered an unfavorable personnel action; and (iv) her protected activity was a contributing factor in the unfavorable personnel action.  *See Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 451 (2d Cir. 2013).   To prove she engaged in protected activity, Plaintiff must show that she reported conduct that she reasonably believed—both objectively and subjectively—constituted a violation of one of the enumerated statutes in SOX.  *See Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 219, 221 (2d Cir. 2014) (listing enumerated statutes as mail fraud, wire fraud, bank fraud, securities fraud, any rule or regulation of the Securities & Exchange Commission, and/or any provision of Federal law relating to fraud against shareholders).   If Plaintiff proves her *prima facie* case, Defendants must prove, by clear and convincing evidence, that they would have taken the same action in the absence of her protected activity.  *Bechtel*, 710 F.3d at 451.

US:162676866v1 0014246/00025

## II.   MOTION *IN LIMINE* NO. 1 TO PRECLUDE REFERENCE TO JOE KENNEY AND ADAM GREEN AS PRIOR DEFENDANTS

In the first trial, the jury rendered a defense verdict in favor of Joe Kenney and Adam Green.  *See* Dkt. 312.  Plaintiff did not contest the verdict, and the Court ordered a new trial only as to JPMC and Ms. Lassiter.  *See* Trial Tr. at 1114:7-1114:11; Dkt. 340 at 36.  Therefore, the Court should preclude Plaintiff from referring to Messrs. Kenney and Green as former defendants in the case because such reference is irrelevant and would be unduly prejudicial. Reference to Messrs. Kenney and Green as prior defendants would inaccurately suggest that Plaintiff's claim against JPMC and Ms. Lassiter is valid since Messrs. Kenney and Green are no longer named in the case.

## III.   MOTIONS *IN LIMINE* NOS. 2-6 TO PRECLUDE CERTAIN DOCUMENTS

### A.   Motion *In Limine* No. 2 to Preclude Emails Regarding Client A Preceding Plaintiff's Assignment to Client A (Including P-75, P-255, and P-266)

Ms. Lassiter assigned Plaintiff to Client A in March 2009, and Plaintiff was copied on documents concerning Client A beginning in April 2009.  *See* Trial Tr. at 497:10; *see also* Trial Tr. 196:7-196:14 (referring to P-88 (April 7, 2009 email), Plaintiff testifying that she had just been assigned to Client A relationship).

Plaintiff's purported reasonable belief as to Client A cannot be based on documents and information she never saw:  in this case, internal JPMC emails about Client A generated before Plaintiff was assigned to the client.  The only documents relevant are those on which Plaintiff was copied or to which she had access after she was assigned to Client A.  *See, e.g.*, Dkt. 246 at 15:2-15:16 (Court noting one of two issues to be tried is Plaintiff's conversations with her employer regarding her concerns about Client A); Dkt. 264 at 20:20-20:22 ("Now, the starting point for relevance here is the plaintiff's state of mind at the time she engaged in what she asserts is protected activity.").

3

Additionally, not only did Plaintiff never see P-75, P-255 and P-266, which were received into evidence at the prior trial, but those documents also contain inadmissible hearsay about other JPMC employees' interactions with Client A.  Plaintiff included similar documents in the Joint Pre-Trial Order, *see* Dkt. 284, which Plaintiff did not seek to introduce into evidence at the prior trial.  Any relevance of these documents (and there is none) is substantially outweighed by the prejudice to Defendants.  They would tend to cause the jury to confuse Plaintiff's purported beliefs about Client A with those of other employees (which is not relevant), especially where Plaintiff is capable of testifying as to what she learned from other employees without the use of those documents.  *See, e.g.*, Trial Tr. at 169:22-173:12.

For these reasons, P-75, P-255, and P-266 should be precluded during the re-trial, as should any similar types of documents Plaintiff might seek to introduce.

### B.    Motion *In Limine* No. 3 to Preclude P-8

P-8 is Plaintiff's resume, which she prepared after she was terminated from JPMC.  *See* P-8; Trial Tr. at 122:10-122:11.  P-8 contains hearsay, which Plaintiff offered to prove the truth of the matters asserted regarding her educational and employment background.  *See* Trial Tr. at 121:5-127:1.  It should be precluded from evidence at re-trial and Plaintiff can simply testify about her background.

### C.    Motion *In Limine* No. 4 to Preclude P-22

P-22 is a seven-page document apparently printed from the website of the Federal Financial Institutions Examination Council Bank Secrecy Act/Anti-Money Laundering InfoBase. *See* P-22.  At trial, Plaintiff testified that "[i]t looks like it's the employee manual."  Trial Tr. at 127:12.  It is not.  It is a website document, printed *four years* after JPMC terminated Plaintiff's employment, setting forth possible "red flags" of terrorist financing and money laundering. Even though the document contains a date of 2013, Plaintiff testified that she was aware, in April

4

2009, of "all of these bullet points," without further explanation.  *See* Trial Tr. at 127:25-129:4.  There is no reliable evidence that Plaintiff reviewed it in 2009.  In addition, Plaintiff did not author the document and is not competent to testify about its contents.  This document is also not relevant because money laundering is not one of the statutes enumerated in SOX.

Both Plaintiff's counsel and Defendants' counsel questioned Ms. Gruszczyk about P-22.  *See* Trial Tr. 867:16-875:17.  During that testimony, Ms. Gruszczyk explained that certain aspects of the document had been included as part of JPMC's trainings, but that none of the bullets identified by Plaintiff's counsel during her deposition were potential issues Plaintiff identified to JPMC's Risk Department as concerns regarding Client A.  *See id.*  However, Ms. Gruszczyk's testimony stands on its own, without the need for admitting P-22.  Its admission into evidence should be precluded.

### D.        Motion *In Limine* No. 5 to Preclude P-245, P-246, and P-247

P-245, P-246, and P-247 are three newspaper articles from 1995 that Plaintiff claims she Googled and read in 2009.  *See* P-245; P-246; P-247; Trial Tr. at 187:18-190:11 (describing in general terms some of the information contained in articles).  It appears that Plaintiff printed them out for purposes of this litigation because she has no recollection of printing them in 2009.  *See* Trial Tr. 189:22-23.  The articles discuss the 1995 involuntary bankruptcy of a company of which Client A was the ex-president, *see* P-245 at 4, and the dispute that the company had with its creditors.  One of the articles also discusses allegations the debtor company made against the creditors, and an *allegation* made by one of the creditors that the debtor company had engaged in fraud.  *See* P-245 at 2, 4.  At trial, the Court received these exhibits into evidence and instructed the jury that the documents were not being admitted for the truth, but instead "for whatever light it sheds, if you find it sheds any, on what was in the plaintiff's mind in 2009."  Trial Tr. at 189:3-

US:162676866v1 0014246/00025

189:7; *see also id.* at 163:5-165:20.  The Court should preclude these articles at the retrial for several reasons.

*First*, the articles are unnecessarily cumulative of information contained in P-94, the April 8, 2009 email sent from JPMC's Risk Department to Plaintiff providing background information on Client A.  *See* P-94.  In that email, the Risk Department provided Plaintiff with information about the bankruptcies that it obtained from a LexisNexis search.  Admitting four exhibits about a then-15-year-old bankruptcy is unnecessarily cumulative and unduly prejudicial to Defendants because it places undue importance on the dated bankruptcy filing and related issues.

*Second*, it is undisputed that Plaintiff received the Risk Department email (P-94).  However, Plaintiff's claim that she read the three articles is suspect.  Plaintiff could not recall preserving the articles back in 2009, and there is no record of Plaintiff forwarding them to anyone at JPMC in 2009 (assuming she located them).  Therefore, the versions Plaintiff marked as trial exhibits presumably were printed for purposes of this litigation.  Furthermore, Plaintiff testified that it was P-94 that "led [her] to believe that the client was involved in criminal activities in the 1990s," not the newspaper articles.  Trial Tr. at 211:12-211:17; *compare with* Trial Tr. at 189:24-190:11.

*Third*, Plaintiff's counsel's use of these articles in his arguments to the jury demonstrate why they should be precluded.  In his opening statement, Plaintiff's counsel referred to the unproven allegations of fraud in the articles to tell the jury, "[t]he alleged disappearance of these assets were referred to in a news article that Ms. Sharkey read and helped form her views of Client A as a who done it mystery."  *See* Trial Tr. at 53:5-53:7; *see also* P-245 at 3-4 ("an

6

account of 'disappearing' assets that reads like a whodunit mystery."). Plaintiff's counsel continued in this vein in his summation:

> Plaintiff's Exhibits 245, 246, and 247 are the newspaper articles that Ms. Sharkey found regarding Client A. *You can read them yourselves and you can determine whether just reading those newspaper articles* and looking at Plaintiff's Exhibit 94 and given everything that Ms. Sharkey testified about her colleagues telling her about Client A and other things which I will get to in a moment were reason enough to form a belief, a reasonable belief, that Client A may be engaged in unlawful activity, including fraud and money laundering.
>
> MR. SCHISSEL: Your Honor, instruction on the articles, please.
>
> THE COURT: Ladies and gentleman, first of all, I will charge you on the elements just after lunch. But on the newspaper articles, they weren't received for the truth whatsoever. Their whole impact, if any, if you find there is any, is with respect to what effect they had on the plaintiff when she looked at them if you find she looked at them.
>
> MR. WIGDOR: When Ms. Sharkey read those newspaper articles, the question is whether that helped her form what we say, the plaintiff, is a reasonable belief in her mind as to this client being engaged in unlawful activity.

Trial Tr. at 1047:4-1047:25 (emphasis added).

Importantly, Plaintiff provided no testimony or other evidence that she ever followed up on the information in the articles—with Client A or anyone else. Accordingly, Plaintiff's strategy appears to be to encourage the jury to read the allegations in the articles and conclude that Client A must have done something wrong based simply on dated, unproven, hearsay allegations. As this Court has already found, "[a]t trial, there was absolutely no evidence that Client A was engaged in any illegal activity . . . ." Dkt. 340 at 8.

Accordingly, any probative value of the articles is substantially outweighed by the undue prejudice to Defendants.

US:162676866v1 0014246/00025

### E.     Motion *In Limine* No. 6 to Preclude P-271

P-271 is a page from Ms. Lassiter's notebook, dated December 15, 2009 (four months after Plaintiff's termination), entitled "comp discussion."   *See* P-271.   Plaintiff's counsel attempted to argue that the numbers set forth in that document reflected the bonus Plaintiff would have received if she had continued as a JPMC employee.   *See* Trial Tr. at 22:9-30:3, 568:11-569:20 (Ms. Lassiter's testimony).   In the end, Plaintiff's counsel appears to have abandoned that argument, *see* Trial Tr. at 1055:12-1056:2, and there was no support for it. Receipt of P-271 into evidence has the tendency to confuse the jury as to the proper numbers to consider in calculating any back pay damages owed to Plaintiff should she prove her case at re-trial.  Therefore, P-271 should be precluded.

## IV.    MOTIONS *IN LIMINE* NOS. 7-11 TO PRECLUDE CERTAIN TESTIMONIAL EVIDENCE

### A.     Motion *In Limine* No. 7 to Preclude Discussions About Plaintiff's U5 and the Unsigned Release During Plaintiff's Termination

Plaintiff and Mr. Grande, the Human Resources Business Partner for JPMC's Private Wealth Management group, testified regarding a discussion they had on the day of Plaintiff's termination about a standard form release agreement and Plaintiff's U5.  *See* Trial Tr. at 268:20-271:4; *id.* at 740:14-742:10, 746:20-751:3, 755:7-756:19, 759:4-759:11.[1]  The agreement was never signed and the U5 indicated that Plaintiff left JPMC on mutual consent.  *See* Trial Tr. at 271:3-271:4.   Nevertheless, Plaintiff's counsel spent much of his cross-examination of Mr. Grande on the U5 and the unsigned release, including its contents.  *See* Trial Tr. at 740:14-742:10, 746:20-751:3.  But these documents have no relevance to the core issues:  (i) whether Plaintiff reasonably believed Client A was violating one of SOX's enumerated statutes; or

---

[1]     At trial, the Court denied admission of the release agreement or the U5 into evidence.  *See* Trial Tr. at 268:17-269:1, 270:12-270:25.  Defendants request that these documents be precluded from admission at re-trial as well.

(ii) why JPMC terminated Plaintiff's employment.  Moreover, by the time Mr. Grande discussed the release and the U5 with Plaintiff, JPMC had already terminated her.  Plaintiff's counsel seeks to use the conversation between Mr. Grande and Plaintiff to prejudice the jury against JPMC, by arguing that JPMC somehow "threatened" Plaintiff.  *See, e.g.*, Trial Tr. at 1004:7-1004:13 (arguing in summation, "[t]his trial has exposed the bank.  It's exposed the bank's attempt at buying Ms. Sharkey's silence through an offer of severance in exchange for a release of her claims under the Sarbanes-Oxley Act that you will ultimately decide.  This trial has exposed the bank's attempt to intimidate Ms. Sharkey into silence by threatening her with negative comments, baseless negative comments on her U5 financial form.  But it has failed."); *see also id.* at 54:10-54:20 (Plaintiff's counsel characterizing this as a threat in opening); *but see id.* at 268:20-271:4 (Plaintiff testifying on issue without mention of feeling threatened).

But no such threat occurred and, in any event, that conversation is entirely irrelevant to the issues the jury must decide.  Accordingly, any probative value of discussions of the release agreement and U5 is substantially outweighed by the undue prejudice to JPMC and the confusion and distraction such testimony will cause the jury.

### B.     Motion *In Limine* No. 8 to Preclude Testimony That Plaintiff Left Her Prior Jobs Voluntarily

Plaintiff's counsel elicited testimony that Plaintiff left her prior jobs voluntarily.  *See* Trial Tr. at 125:5-125:6, 125:20-125:21; *see also id.* at 49:6-49:8 (Plaintiff's counsel arguing during opening statements that she left all prior jobs voluntarily), 1007:9-1007:11 (Plaintiff's counsel arguing during summation that she "left every other job voluntarily").  This testimony is entirely irrelevant because the circumstances under which Plaintiff left her prior places of employment are not probative of the reason why JPMC terminated Plaintiff, or whether her supposed protected activity was a factor in JPMC's termination decision.  Such testimony is

elicited only to improperly create sympathy for the Plaintiff.  This testimony should be precluded at re-trial.

### C.    Motion *In Limine* No. 9 to Preclude Testimony Regarding a Prior KYC JPMC Performed for Client A

At trial, Plaintiff asserted that JPMC had never completed a KYC for Client A since Client A became a JPMC client in 1993.  *See* Trial Tr. at 201:15-201:25.  Plaintiff's counsel made the same argument to the jury in both his opening statement and his closing argument.  *See* Trial Tr. at 53:16-53:18 (Plaintiff's counsel in opening:  "You will also come to learn that Ms. Sharkey was concerned that while Client A was a customer at the bank since 1993, no KYC was ever completed."); *see also id.* at 70:5-70:7 (Plaintiff's counsel pointing to demonstrative indicating no KYC completed between 1993 and 2010).

This assertion is both inaccurate and irrelevant.  Plaintiff received an email (P-88) in which she was informed of a KYC completed in 2007:  "the [KYC] dated 11/02/07 is the last completed KYC."  P-88; *see also* Trial Tr. at 195:11-197:3 (Plaintiff's direct testimony on P-88).  More importantly, it is irrelevant whether a prior KYC was completed.  There is no dispute that Plaintiff was tasked with completing the KYC for Client A in March/April 2009, and her conduct with regard to that task is all that is relevant here.  It would be confusing to the jury and prejudicial to Defendants to present evidence about a prior KYC, whether it was completed or not.

Consequently, Plaintiff should be precluded from introducing testimony regarding KYCs—completed or uncompleted—for Client A before Plaintiff was assigned the client.

### D.    Motion *In Limine* No. 10 to Preclude Testimony Regarding Any Audit by the Office of the Comptroller of the Currency ("OCC")

During her testimony at trial, Plaintiff made statements regarding an audit by the OCC.  *See* Trial Tr. at 185:15-185:22.  The Court provided a limiting instruction that it is routine for a

US:162676866v1 0014246/00025

government agency like the OCC to audit banks and that the reference to the audit was only permitted to the extent it pertained to what might have been in Plaintiff's mind. *See* Trial Tr. at 185:25-186:23; *see also id.* at 158:2-158:16.  Plaintiff's counsel later made reference to the same audit in his summation without reference to Plaintiff's mindset, *see* Trial Tr. at 1044:5-1044:7, and the Court provided a similar limiting instruction, *see id.* at 1044:9-1044:11.

Any routine OCC audit that may have occurred is irrelevant to the issues in this case.  It has nothing to do with whether Plaintiff reasonably believed Client A was committing fraud, and nothing to do with the reason JPMC terminated Plaintiff's employment.  It is difficult for a lay juror to understand the routine nature of an OCC audit.  Reference to an OCC audit will cause the jury to wonder why it is being discussed and could cause concern that the bank is the subject of an audit regardless of any curative instruction.  Therefore, any probative value to mentioning an OCC audit (and there is none), even as background information, is substantially outweighed by the undue prejudice to Defendants.  This includes references to the OCC audit in P-255 (discussed above) or other documents.

###    E.    Motion *In Limine* No. 11 to Preclude Testimony As to the Reasons Other Employers Did Not Hire Plaintiff After JPMC Terminated Her

Plaintiff testified that prospective employers told her that, because she filed this lawsuit, other financial services firms would not employ her after her termination.  *See* Trial Tr. at 279:15-279:20, 281:3-281:22.  Initially, the Court admitted this testimony, not for the truth, but for its effect on Plaintiff.  *See* Trial Tr. at 279:22-280:7, 281:23-282:1.  Later, the Court struck the prior testimony.  *See* Trial Tr. at 916:12-916:17, 933:20-936:3, 938:16-939:10.  At re-trial, any such testimony regarding why Plaintiff was not hired following her termination should be precluded for the same reasons the Court struck the testimony at trial.

US:162676866v1 0014246/00025

## V.   MOTION *IN LIMINE* NOS. 12-14 TO PRECLUDE CERTAIN ARGUMENTS BY PLAINTIFF'S COUNSEL

### A.   Motion *In Limine* No. 12 to Preclude Suggestion that JPMC Documents Were Fabricated or Not Genuine

During discovery in this case, Defendants produced notes written by Ms. Lassiter.  *See* D-077A; D-077B; P-163.[2]  Two sets of the notes, D-077A and D-077B, relate to performance counseling Ms. Lassiter gave Plaintiff; the other set of notes, P-163, reflects notes taken while Ms. Lassiter spoke on the phone with Manager T.  Prior to trial, Plaintiff's counsel inspected the notebook in which Ms. Lassiter took the notes produced as P-163, and, during trial, Plaintiff's counsel inspected the original versions of D-077A and D-077B.  In the original version of P-163, one comment is written in different color ink, which Ms. Lassiter testified meant it was a note taken during a second conversation with Manager T.  *See* Trial Tr. at 606:2-606:10.  Between the date of production and the date on which Plaintiff's counsel inspected the original versions of D-077A and D-077B, Ms. Lassiter had written dates at the top of the pages in different color ink. *See* P-300; Trial Tr. at 654:7-658:5.  P-300, reflecting these changes, was received into evidence at trial.  *See* Trial Tr. at 656:13-656:15.  No changes were made to P-163 between the date of production and the date Plaintiff inspected the original notebook.

During his summation, Plaintiff's counsel suggested that P-163, D-077A and D-077B were not genuine:  "I submit to you that these documents have no truth, veracity.  You should discard them.  They are not credible."  Trial Tr. at 1035:22-1035:24.  Ms. Lassiter testified completely about how the notes were taken, and Plaintiff's counsel cross-examined her about how the new information came to be on top of D-077A and D-077B, but not about the authenticity of P-163.  *See* Trial Tr. at 539:24-545:3 (cross-examination regarding P-163); *id.* at

---

[2]   These documents were also previously produced to the OSHA investigator in 2010 as part of the prior proceeding.

689:19-692:24 (cross-examination regarding D-077A and D-077B).  Plaintiff's counsel did not adduce a shred of evidence suggesting that the notes were in any way fabricated or lacked genuineness.  Accordingly, the argument of Plaintiff's counsel lacks any factual basis and is unduly prejudicial to Defendants and will confuse the jury; therefore, Plaintiff and her counsel should be precluded from making that argument at the retrial.  *See In re General Motors LLC Ignition Switch Litigation*, 14-MD-2543 (JMF), 2015 WL 8130449, *5 (S.D.N.Y. Dec. 3, 2015) (precluding evidence regarding alleged litigation misconduct in related cases because "the dangers of unfair prejudice, jury confusion, and waste of time are quite real. . . . [D]espite the absence of evidence that New GM engaged in any litigation misconduct with the intent to conceal the ignition switch defect, jurors may seek to punish New GM for what they view as an overly aggressive litigation strategy." (citations omitted)).

**B.      Motion *In Limine* No. 13 to Preclude Suggestion That the Manager T Incident Never Occurred**

During his summation, Plaintiff's counsel argued to the jury that the Manager T incident did not occur.  *See* Trial Tr. at 1029:15 ("I submit that that never happened"); *id.* at 1033:19-1033:21 ("Admittedly, Ms. Sharkey didn't have much to say about this whole incident.  That's because it didn't happen.  It is hard to recall something that didn't happen."); *id.* at 1037:5 ("this alleged Manager T incident -- ").  But Plaintiff admitted that Ms. Lassiter confronted her about not returning Manager T's telephone calls:

> Q.      Did there come a point in time when you had a conversation with Ms. Lassiter regarding Manager T?
>
> A.      Yes.
>
> Q.      Yes?
>
> A.      Yes.
>
> Q.      What was the first conversation that you recall with Ms. Lassiter regarding Manager T?

13

> A.    Had I ever spoken with the client.
>
> Q.    What did you say to Ms. Lassiter?
>
> A.    That I had spoken to the client.
>
> Q.    Was that true?
>
> A.    Yes.
>
> Q.    What did Ms. Lassiter say to you [on July 21, 2009]?
>
> A.    That the client -- not the client -- the client manager had told her that I hadn't called or she had never spoken to me and never heard of me.

Trial Tr. at 258:6-258:21.  From there, Plaintiff claimed she could not recall anything more of the conversation.  *See* Trial Tr. at 258:22-259:10.  However, Plaintiff's notes of her conversation with Mr. Grande about her termination reflect that she was told her termination was "for cause due to Client H," the client for whom Manager T was the office manager.  *See* D-404A.  Yet she did not dispute this reason for her termination at the time.  *See* Trial Tr. at 798:6-798:10 ("She did not deny it, that it happened, had remarked that she maybe didn't feel it was serious enough to warrant the termination.  But that was it.").

It is unduly prejudicial for Plaintiff's counsel to argue that the Manager T incident never occurred when he has no factual basis for that argument.   All evidence is to the contrary, including contemporary notes and Plaintiff's own testimony.   Consequently, Plaintiff's counsel should be precluded from making this argument at re-trial.

### C.    Motion *In Limine* No. 14 to Preclude Argument About Which Client A Account Was Opened in December 2008

In cross-examining Ms. Lassiter, Plaintiff's counsel was able to get her to agree (incorrectly) that the Client A account she approved to open in December 2008 was the Ostrager law firm escrow account.  *See* Trial Tr. at 492:5-492:15.  Plaintiff's counsel used a redacted document in conducting the examination.  *See* P-75; Trial Tr. at 464:24-492:7.  The unredacted

version (which JPMC produced to Plaintiff's counsel) showed clearly that the account Ms. Lassiter approved was *not* the law firm's escrow account. *See* Declaration of Michael D. Schissel, dated May 4, 2018 ("Schissel Decl."), Schissel Decl., Ex. A (unredacted version of P-75). The next day, on re-direct, Ms. Lassiter corrected her testimony. She explained that she had reviewed the unredacted version of P-75, and realized she had misspoken on cross-examination: that is, the account was not the Ostrager account. *See* Trial Tr. at 663:5-665:12; *see also* Schissel Decl., Ex. A; D-65A (trading authorization for law firm account, dated January 22, 2008).

Nevertheless, Plaintiff's counsel suggested in summation that this was an intentional misrepresentation by Ms. Lassiter. *See* Trial Tr. at 1013:10-1015:16. Plaintiff's counsel should be precluded from making such argument when it was clear that the redactions in the case caused confusion for the witness.[3] Plaintiff's counsel never had a factual basis to suggest that the account referred to in the redacted document was the escrow account, and such argument is unduly prejudicial to Defendants. It also causes unnecessary confusion for the jury. Accordingly, Plaintiff's counsel should be precluded from (i) attempting to impeach Ms. Lassiter at re-trial with this testimony and (ii) arguing to the jury that this confusion was a deliberate misstatement or lie by Ms. Lassiter.

## VI.   MOTION *IN LIMINE* NO. 15 TO PRECLUDE ARGUMENT AND JURY CHARGE THAT PLAINTIFF REASONABLY BELIEVED CLIENT A WAS ENGAGED IN MONEY LAUNDERING

Defendants respectfully ask the Court to reconsider in advance of the re-trial whether the jury can be instructed, and Plaintiff's counsel can argue, that money laundering can form the basis of a SOX claim.

---

[3]   Moreover, this argument is completely unsupported by the actual date of the trading authorization at issue, *see* D-65A, which states both (i) the name of the account to which it relates and (ii) the date on which it was signed (January 2008).

SOX lists the enumerated statutes on which a whistleblower claim may be brought: (1) 18 U.S.C. §§ 1341, 1343, 1344, or 1348; (2) "any rule or regulation of the [SEC]," or (3) "any provision of Federal law relating to fraud against shareholders." 18 U.S.C. 1514A(a)(1).  Money laundering is not on this list.  *See, e.g.*, *Nielsen*, 762 F.3d at 219 (listing enumerated statutes as mail, wire, bank and securities fraud and Securities and Exchange Commission provisions); *Sylvester v. Paraxel Int'l LLC*, 32 IER Cases 497, 506, 2011 WL 2517148, at *12 (U.S. Dep't of Labor May 25, 2011) ("To satisfy the subjective component of the 'reasonable belief' test, the employee must actually have believed that the conduct [s]he complained of constituted a violation of relevant law." (citing *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722 (7th Cir. 2009))); *see also Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 442 (S.D.N.Y. 2013) ("By contrast [to other federal whistleblower statutes], the SOX whistleblower protection provision . . . expressly identifies the several laws to which it applies." (internal quotation marks omitted)).

Over Defendants' objection, the Court instructed the jury that, in evaluating whether Plaintiff engaged in protected activity under SOX, it could consider whether Plaintiff reasonably believed Client A was engaged in money laundering.  *See* Trial Tr. at 923:12-924:17, 1066:12-1066:21.  The Court based its opinion on statements made by Judge Sweet in an October 19, 2015 decision, granting Defendants' motion for summary judgment.  *See* Trial Tr. at 924:9-924:17; *see also Sharkey v. J.P. Morgan Chase & Co.*, No. 10 Civ. 3824, 2015 WL 5920019 (S.D.N.Y. Oct. 9, 2015) ("*Sharkey II*"), *vacated and remanded,* 660 Fed. App'x 65 (2d Cir. 2016).  At most, Judge Sweet suggested that money laundering could be part of a fraudulent scheme that would constitute a violation of one of the enumerated fraud statutes.  But Judge

16

Sweet never ruled that the jury should be charged that money laundering can provide the basis for a SOX claim or that Plaintiff may argue that to the jury.

In his December 12, 2013 decision granting Defendants' first motion for summary judgment, Judge Sweet made clear that money laundering cannot provide the basis for a SOX whistleblower claim:

> Plaintiff relies almost exclusively on her purported belief that Client A was engaged in money laundering, *which is not a criminal statute specified in SOX nor is it an SEC regulation or a law relating to fraud against shareholders.* Even if Plaintiff reasonably believed that Client A was engaged in money laundering, such belief *cannot* form the basis for a SOX whistleblower claim.

*Sharkey v. J.P. Morgan Chase & Co.*, No. 10 Civ. 3824, 2013 WL 10796833, at *9 (S.D.N.Y. Dec. 12, 2013) ("*Sharkey I*") (emphasis added), *vacated and remanded*, 580 Fed. App'x 28 (2d Cir. 2014).

In his October 9, 2015 decision granting Defendants' second motion for summary judgment, Judge Sweet reiterated that money laundering is "not a criminal statute specified in SOX nor is it an SEC regulation or a law relating to fraud against shareholders." *See Sharkey II*, 2015 WL 5920019, at *11. In that decision, Judge Sweet goes on to list the "suspicious activities" Plaintiff alleged with regard to Client A's accounts, refer to a published list of red flags for terrorism financing and money laundering, and ultimately conclude that "[a] reasonable person with Sharkey's training could have concluded that Client A[ ] [ ] was engaged in *fraudulent conduct*." *Id.* at *12 (emphasis added); *see also id.* at *13 (citing to *Nielsen*, 762 F.3d at 223, which referenced, in analyzing other cases where complaints survived motion to dismiss, "*Sharkey* [*v. J.P. Morgan Chase & Co.*], 805 F. Supp. 2d [45,] 48-50, 55-56 [(S.D.N.Y. 2011)] (holding that a complaint sufficiently alleged violations of § 1514A where a bank's client exhibited a pattern of suspicious conduct, in which the bank may have been complicit, including

inconsistent financial statements, unverifiable identification documents, and unusual fund transfer patterns—behavior potentially consistent with fraud or money laundering)"). Accordingly, Judge Sweet did not rule that money laundering could provide the statutory predicate for a SOX whistleblower claim; nor did he rule that the jury should be so instructed. Rather, Judge Sweet seems to suggest only that an individual's belief that someone was potentially laundering money might indicate that "fraudulent conduct" was afoot.

This reading of Judge Sweet's decision is also consistent with the Second Circuit's statement in *Nielsen* that "the statutory language suggests that, to be reasonable, the purported whistleblower's belief cannot exist wholly untethered from these specific provisions" enumerated in SOX.  762 F.3d at 221 n.6; *see also id.* at 223 (plaintiff had not "alleged any facts plausibly suggesting that this supposed misconduct implicated *any* of the enumerated provisions in § 1514A").

Plaintiff and her counsel should not be allowed to argue that Plaintiff reasonably believed Client A was engaging in money laundering without tying it to a belief that it was evidence of an underlying fraud, which is Plaintiff's burden under the law.  As we know from the first trial, Plaintiff is unable to provide any details of the fraudulent conduct about which she claims she was suspicious; therefore, being permitted to rely on suspicions of money laundering in and of itself lowers her burden of proof.  *See* Trial Tr. at 211:19-21, 351:3-351:5, 351:20-353:25; 354:9-354:16; *see also id.* at 354:23-355:10 (Plaintiff unable to identify illegal activities underlying supposed money laundering).  Such argument should be precluded.  Similarly, the jury should not be instructed that a SOX whistleblower claim may be based on the money laundering statute.

US:162676866v1 0014246/00025

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that the Court grant their

motions *in limine* Nos. 1-15.

Dated:     New York, New York
           May 4, 2018

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:     /s/ Michael D. Schissel
        Michael D. Schissel
        Kathleen A. Reilly
        250 West 55th Street
        New York, NY 10019-9710
        Telephone: +1 212 836 8000
        Fax: +1 212 836 8689

        *Attorneys for Defendants*

19